UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

BRIAN BOWEN II,

        PLAINTIFF,

v.

ADIDAS AMERICA, INC.;
JAMES GATTO; MERL CODE;
CHRISTIAN DAWKINS; MUNISH
SOOD; THOMAS GASSNOLA; and
CHRISTOPHER RIVERS,

        DEFENDANTS.

NO. 3:18-CV-3118-JFA

**ADIDAS'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

Matthew T. Richardson (D.S.C. Id. No. 7791)
Mary Lucille ("Lucy") Dinkins (D.S.C. Id. No. 11961)
WYCHE
801 Gervais Street, Suite B
Columbia, South Carolina 29201
Tel: (803) 254-6542
mrichardson@wyche.com
ldinkins@wyche.com

Andrew J. Ceresney (*pro hac vice* application pending)
William H. Taft V (*pro hac vice* application pending)
Nathan S. Richards (*pro hac vice* application pending)
Miheer Mhatre (*pro hac vice* application pending)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Tel: (212) 909-6000
aceresney@debevoise.com
whtaft@debevoise.com
nsrichards@debevoise.com
mmhatre@debevoise.com

*Counsel to Defendant adidas America Inc.*

Dated: February 5, 2019

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................... 1

THE ALLEGATIONS OF THE COMPLAINT ........................................................... 4

ARGUMENT .................................................................................................................... 7

I.      Bowen Lacks Standing Because His Injuries Are Not Recoverable under RICO. ............. 8

II.     Bowen Lacks Standing Because the Alleged RICO Violations Did Not
        Proximately Cause His Injuries. ....................................................................... 9

        A.      RICO Imposes a Strict Proximate Causation Requirement ................................. 10

        B.      None of the Alleged RICO Violations Directly Caused Bowen's Injuries .......... 12

                1.      Alleged Wire Fraud.................................................................... 13

                2.      Alleged Money Laundering, Sports Bribery, and Use of
                        Racketeering Income ..................................................... 15

        C.      The "Motivating Principles" Underlying the Proximate Causation
                Requirement Confirm that Bowen Is Not a Direct Victim .................................. 15

III.    Bowen's Claims Are Barred by the Doctrine of *In Pari Delicto* ..................................... 16

        A.      Bowen Is Bound by His Father's Acts Because Bowen's Father Had
                Apparent Authority to Act as Bowen's Agent ....................................... 17

        B.      Bowen Is Barred from Recovery Pursuant to the Doctrine of *In Pari
                Delicto* ................................................................................... 19

IV.     Bowen Does Not Plausibly Allege an Association-in-Fact RICO Enterprise
        Sufficient to Support His § 1962(c) Claim. ..................................................... 20

        A.      The Only Members of the Alleged "Enterprise" That Plausibly Shared a
                Common Purpose Were adidas and Its Employees and Agents .......................... 21

        B.      Properly Defined, the Alleged "Enterprise" Consists Solely of adidas and
                Cannot Support Bowen's § 1962(c) Claim ....................................... 23

V.      Bowen Fails to Plead a RICO Conspiracy. ...................................................... 24

VI.     Bowen Has Not Alleged Facts that Justify Holding adidas Vicariously Liable for
        the Isolated Acts of Its Employees and Agents. .............................................. 24

CONCLUSION ............................................................................................................... 27

# TABLE OF AUTHORITIES

**CASES**

*Al-Abood ex rel. Al-Abood v. El-Shamari,*
217 F.3d 225 (4th Cir. 2000) ..................................................................................24

*Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,*
367 F.3d 212 (4th Cir. 2004) ..............................................................................6, 18

*Am. Soc. of Mechanical Eng'rs, Inc. v. Hydrolevel Corp.,*
456 U.S. 556 (1982)................................................................................................17

*Anza v. Ideal Steel Supply Corp.,*
547 U.S. 451 (2006)..............................................................................10, 11, 13, 16

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).......................................................................................7, 24, 25

*Auvil v. Grafton Homes, Inc.,*
92 F.3d 226 (4th Cir. 1996) ..................................................................................18

*Bast v. Cohen, Dunn & Sinclair, PC,*
59 F.3d 492 (4th Cir. 1995) ....................................................................................8

*Bateman Eichler, Hill Richards, Inc. v. Berner,*
472 U.S. 299 (1985)................................................................................................19

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)..................................................................................................7

*Bendfeldt v. Window World, Inc.,*
No. 17-CV-39, 2017 WL 4274191 (W.D.N.C. Sept. 26, 2017) .............................7

*Boyle v. United States,*
556 U.S. 938 (2009)................................................................................................21

*Busby v. Crown Supply, Inc.,*
896 F.2d 833 (4th Cir. 1990) ...........................................................................23, 25

*Cedric Kushner Promotions, Ltd. v. King,*
533 U.S. 158 (2001)................................................................................................20

*Cleveland v. United States,*
531 U.S. 12 (2000)..................................................................................................14

*Colonial Penn Ins. Co. v. Coil*,
   887 F.2d 1236 (4th Cir. 1989) ........................................................18

*Conn. Gen. Life Ins. Co. v. Advanced Surgery Ctr. of Bethesda, LLC*,
   No. 14-CV-2376, 2015 WL 4394408 (D. Md. 2015) ...........................22

*D & S Auto Parts, Inc. v. Schwartz*,
   838 F.2d 964 (7th Cir. 1988) ........................................................25

*Day v. DB Capital Grp., LLC*,
   No. 10-CV-1658, 2011 WL 887554 (D. Md. 2011) ............................25

*Dow Chem. Co. v. Exxon Corp.*,
   30 F. Supp. 2d 673 (D. Del. 1998) ................................................13

*Eitel v. Schmidlapp*,
   459 F.2d 609 (4th Cir. 1972) ........................................................19

*Founders Ins. Co. v. Richard Ruth's Bar & Grill LLC*,
   No. 14-CV-3272, 2016 WL 3189214 (D.S.C. June 8, 2016) ...............19

*GE Inv. Private Placement Partners II v. Parker*,
   247 F.3d 543 (4th Cir. 2001) ........................................................24

*Gibson v. Confie Ins. Grp. Holdings, Inc.*,
   No. 16-CV-2872, 2017 WL 2936219 (D.S.C. 2017) ...........................23

*Guaranteed Rate, Inc. v. Barr*,
   912 F. Supp. 2d 671 (N.D. Ill. 2012) ..............................................22

*Hemi Grp., LLC v. City of New York*,
   559 U.S. 1 (2010) ..........................................................10, 11, 12

*Holmes v. Sec. Inv. Prot. Corp.*,
   503 U.S. 258 (1992) ...............................................10, 11, 15, 16

*Kimberlin v. Nat'l Bloggers Club*,
   No. 13-CV-3059, 2015 WL 1242763 (D. Md. Mar. 17, 2015) ...............9

*Lyles v. Grant*,
   No. 17-CV-3245, 2018 WL 4999782 (D.S.C. Aug. 3, 2018) ...............24

*Martin v. Cavalier Hotel Corp.*,
   48 F.3d 1343 (4th Cir. 1995) ........................................................17

*McNally v. United States*,
    483 U.S. 350 (1987)..........................................................................................14

*Miranda v. Ponce Fed. Bank*,
    948 F.2d 41 (1st Cir. 1991)................................................................................7

*New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Amer.*,
    18 F.3d 1161 (4th Cir. 1994) .......................................................................3, 20

*Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*,
    437 F.3d 1145 (11th Cir. 2006) .......................................................................19

*Palmetto State Med. Ctr. v. Operation Lifeline*,
    117 F.3d 142 (4th Cir. 1997) ...........................................................................20

*Peters v. Aetna, Inc.*,
    No. 15-CV-109, 2016 WL 4547151 (W.D.N.C. Aug. 31, 2016) ...................21, 22

*R & G Const., Inc. v. Lowcountry Regional Transp. Auth.*,
    540 S.E.2d 113 (S.C. App. 2000) .....................................................................17

*Republic of Iraq v. ABB AG*,
    768 F.3d 145 (2d Cir. 2014)..............................................................................19

*Ricker v. Edmisten*,
    No. 93-CV-1756, 1994 WL 32807 (4th Cir. 1994) .............................................8

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*,
    30 F.3d 339 (2d Cir. 1994)................................................................................23

*Sedima, S.P.R.L. v. Imrex*,
    473 U.S. 479 (1985)............................................................................................8

*Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*
    884 F.3d 489 (4th Cir. 2018) ...............................................................10, 12, 13

*Starfish Inv. Corp. v. Hansen*,
    370 F. Supp. 2d 759 (N.D. Ill. 2005) ................................................................21

*Steinke v. Agora Syndicate, Inc.*,
    No. 98-CV-2081, 1999 WL 308600 (4th Cir. 1999) .........................................17

*Strates Shows, Inc. v. Amusements of Am., Inc.*,
    379 F. Supp. 2d 817 (E.D.N.C. 2005)..............................................................8, 9

*U.S. Airline Pilots Ass'n v. Awappa, LLC*,
    615 F.3d 312 (4th Cir. 2010) ................................................26

*United States v. Batts*,
    171 F. App'x 977 (4th Cir. 2006) ..........................................23

*United States v. Binday*,
    804 F.3d 558 (2d Cir. 2015)................................................14

*United States v. Gillion*,
    704 F.3d 284 (4th Cir. 2012) ..............................................14

*United States v. Jackson*,
    No. 16-CR-31, 2017 WL 1129941 (N.D.W. Va. Mar. 24, 2017)...........14

*United States v. James Gatto, et al.*,
    17-CR-686 (S.D.N.Y. 2018) ................................................15

*United States v. Najjar*,
    300 F.3d 466 (4th Cir. 2002) ..............................................25

*United States v. Sadler*,
    750 F.3d 585 (6th Cir. 2014) ..............................................14

*United States v. Takhalov*,
    827 F.3d 1307 (11th Cir. 2016) ............................................14

*Walters v. McMahen*,
    684 F.3d 435 (4th Cir. 2012) ..............................................12

## STATUTES

18 U.S.C. § 1961(4) ......................................................21

18 U.S.C. § 1962(a) ....................................................4, 24

18 U.S.C. § 1962(c) .................................................. *passim*

18 U.S.C. § 1962(d) ......................................................24

18 U.S.C. § 1964(c) .......................................................9

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 12(b)(6) ................................1, 7

Restatement (Second) of Agency § 27 cmt. a (Am. Law Inst. 1958)...........17

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant adidas America Inc. ("adidas") moves this Court to dismiss the above-captioned Complaint by Plaintiff Brian Bowen II ("Bowen") with prejudice for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

Bowen, a talented young basketball player, alleges that his promising career was derailed when the University of Louisville ("UofL") refused to let him play Division I collegiate basketball. That decision by UofL followed the revelation of an investigation by the Federal Bureau of Investigation ("FBI") into payments received by Bowen's father on the pretext of securing Bowen's commitment to attend UofL. The FBI's investigation led to a prosecution and conviction of an adidas employee and others for wire fraud and conspiracy on the theory that by directing payments to Bowen's father in violation of National Collegiate Athletic Association ("NCAA") rules, the defendants interfered with UofL's allocation of scholarships and defrauded the university.

Bowen now seeks to piggyback off the prosecutors' efforts in order to obtain treble damages for acts that did not cause him tangible or direct harm. Relying almost entirely on citations to the criminal trial transcript, Bowen alleges that the purported scheme violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), even though the prosecutors brought no such charge themselves, and even though the alleged scheme to enrich his family relied on his father's active participation.

Bowen's opportunistic civil RICO claims are meritless. He lacks standing to assert them, is barred by *in pari delicto* from bringing them, has failed to adequately allege their requisite elements, and has not pleaded facts sufficient to hold adidas vicariously liable.

*First*, Bowen lacks standing to bring a claim under civil RICO.  The universe of plaintiffs with standing to claim treble damages under civil RICO is limited to those who have suffered an injury that was both to *tangible* property and a *direct result* of the alleged RICO violation. Bowen has not alleged, and cannot allege, either.

The injuries Bowen alleges, such as losing the experience of playing collegiate basketball or reduced future earnings on a hypothetical contract to play in the National Basketball Association ("NBA"), are almost entirely speculative expectation damages or intangible harms that cannot be collected under RICO.  The lone exception is Bowen's purported lost scholarship at UofL.  But that allegation is conclusory and contradicted by a statement by UofL that Bowen expressly incorporates into his Complaint.  UofL's statement demonstrates that Bowen retained his scholarship even after being withheld from playing basketball and voluntarily relinquished it himself when he decided to leave UofL.

Bowen further lacks standing because his injuries did not flow directly from Defendants' alleged acts of wire fraud, money laundering, sports gambling, and use of racketeering income. As a result, the Complaint does not satisfy RICO's strict proximate causation requirement.  All of the harms alleged in the Complaint were contingent on and directly caused by UofL's decision to withhold Bowen from NCAA competition.  That intervening act by UofL forecloses Bowen's claims under RICO.

*Second*, even if Bowen had standing to bring the civil RICO claims he asserts, and even accepting as true his insistence that he lacked personal knowledge of the payments made to his father, his father's participation in the underlying alleged predicate acts is imputed to Bowen pursuant to well-established agency principles.  The transcript of the criminal trial, cited throughout the Complaint in support of Bowen's claims, shows that Bowen's father admitted to

receiving multiple payments over many years to secure his son's commitment to play for different amateur teams, leading others to reasonably conclude that he was authorized to act on his son's behalf.  Indeed, the Complaint alleges that by making a payment to Bowen's father, Defendant Munish Sood believed he had secured Bowen's commitment to attend UofL.  (Compl. ¶ 170.)  His father's conduct while acting on his behalf puts Bowen at equal fault with the defendants, barring recovery under the equitable doctrine of *in pari delicto*.

*Third,* while each of the preceding arguments independently supports dismissal of every count, specific counts are susceptible to challenge on the additional ground that the Complaint does not allege their requisite elements.  Count I, alleging a violation of 18 U.S.C. § 1962(c), fails to draw the necessary "distinction between the 'person' and the 'enterprise' in actions alleging a violation of § 1962(c)."  *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Amer.*, 18 F.3d 1161, 1163 (4th Cir. 1994).  The only persons plausibly alleged to share the requisite "common purpose" of increasing adidas's profit are adidas and the company's employees and agents named in the Complaint.  The allegations show that everyone else acted primarily to advance their own interests and, therefore, cannot be part of the so-called "Adidas Bribery Enterprise."  Because the RICO enterprise, properly defined, is indistinguishable from adidas itself, the Complaint does not state a claim for relief under § 1962(c).  Counts II and IV, alleging conspiracies to commit substantive RICO violations, must be dismissed not only because Bowen's substantive claims are defective, but also because the Complaint does not allege the requisite conspiratorial agreement with any specificity.

*Fourth*, were any of the claims adequately pleaded, the Complaint does not plausibly allege facts that justify holding adidas vicariously liable for the isolated actions of a few of its employees and agents.  Absent factual allegations showing that adidas either benefited from or

authorized the alleged criminal conduct, adidas cannot be held liable for the conduct of the other defendants.

Bowen purports to decry the state of amateur basketball in this country, but through the actions of his father over many years, Bowen was an active participant in and beneficiary of endemic recruiting violations.  The Complaint is a cynical attempt to recover indirect damages from his father's alleged co-conspirators for speculative injuries that he has not suffered and which he may never incur.  Even crediting Bowen's declarations of innocence—which the Court must at this stage—a careful analysis of the Complaint's allegations shows that it fails to state a claim under RICO and must be dismissed.

## THE ALLEGATIONS OF THE COMPLAINT

The Complaint sets forth Bowen's civil RICO claim in four counts.  He alleges that all defendants violated § 1962(c) (Count I), which makes it unlawful for a person to engage in an enterprise's affairs through a pattern of racketeering activity.  (Compl. ¶¶ 224-26, 231-32.)  He also alleges that adidas alone violated § 1962(a) (Count III), which prohibits a person from using or investing income derived from a pattern of racketeering activity to operate an enterprise.  (*Id.* ¶¶ 239-43, 247.)  He further alleges that all defendants conspired to violate § 1962(c) (Count II) and that adidas conspired to violate § 1962(a) (Count IV).  The conspiracy counts derive from the substantive RICO violations alleged in Counts I and III, respectively, such that they must be dismissed if the substantive count fails to state a claim.

Bowen alleges that employees of adidas, joined by various agents, coaches, and consultants spanning all levels of amateur basketball, aimed to boost adidas's market share by bribing parents of prospective student-athletes to play basketball at universities that adidas sponsored.  (*Id.* ¶¶ 37-38, 108.)  By showcasing the adidas brand and enhancing its popularity, the people involved allegedly sought to manipulate consumer preferences and generate

4

additional sales that would not have materialized without the underlying criminal acts.
(*Id.* ¶¶ 104, 183.)  Bowen asserts that the "enterprise" was comprised of adidas employees Jim

Gatto and Christopher Rivers; consultants Merl Code and Thomas Gassnola; aspiring sports

agent Christian Dawkins; financial planner Munish Sood; NCAA coaches at adidas-sponsored

universities; and individual directors of high school amateur athletics union ("AAU") teams

sponsored by adidas.

Bowen alleges that his father agreed to accept a payment of $100,000, and did in fact

receive $19,400 in July 2017 from Sood, on the pretext of securing Bowen's commitment to

attend UofL.  (*Id.* ¶¶ 155, 168-69.)  Bowen, though, disclaims all personal knowledge of the

payment and states that his decision to attend UofL was the result instead of his campus visit and

conversations with coaches and athletics staff.  (*Id.* ¶ 159.)  Bowen claims that similar payments

were made to the families of student-athletes who attended North Carolina State University and

the University of Kansas.  (*Id.* ¶¶ 125-46.)  Bowen alleges that NCAA rules prohibit student-

athletes from receiving any benefit, including money, directly or indirectly from a financial

advisor or an agent, and that student-athletes recruited in violation of NCAA rules "are at risk of

being declared ineligible to participate in athletics."  (*Id.* ¶ 31.)

The Complaint describes three predicate acts of racketeering to support the RICO claims.

The *first*, wire fraud, rests upon two theories:  (1) injury to the universities by depriving them of

information regarding Bowen's non-compliance with NCAA rules, thereby interfering with their

right to control their allocation of scholarships; and (2) injury to Bowen when Defendants did not

disclose information regarding their actions, which purportedly interfered with his career

decisions.  (*Id.* ¶¶ 120, 159.)  *Second*, Bowen alleges that Defendants engaged in money

laundering by funneling payments to his father and the families of other student-athletes.  (*Id.*

¶ 226.)  *Third*, Bowen alleges that by making those payments, adidas violated the federal sports bribery statute by conspiring to influence the outcome of NCAA games and affect the game-day strategy of teams facing adidas-sponsored schools.  (*Id.* ¶ 225.)

The payment Bowen's father accepted in July 2017 came to light on September 26, 2017, when the U.S. District Court for the Southern District of New York ("SDNY") unsealed a criminal complaint (the "Criminal Complaint") making public the alleged scheme.  After becoming aware of his father's alleged receipt of the payment, UofL chose to hold Bowen out of NCAA competition.  (*See id.* ¶ 227.)  On November 22, 2017, UofL announced its decision that Bowen would not play for the school in a tweet, which Bowen incorporates by reference in his Complaint.  (*See id.*)  UofL's tweet stated, in relevant part:

> Brian Bowen will not play at the University of Louisville.  ***He may remain on scholarship*** but will not be allowed to practice or compete[.]…  The University of Louisville has informed men's basketball student-athlete Brian Bowen that it will provide him written permission, per NCAA Bylaw 13.1.1.3, to contact another collegiate institutions [sic] if he wishes to transfer.  If he remains at the institution, ***he can continue to receive his athletics scholarship*** but will not be allowed to practice or compete for the institution's men's basketball team at any point in the future.

Dinkins Decl. Ex. A (emphasis added).[1]  Per the Complaint, Bowen states that he applied to and tried out for other Division I men's basketball teams following UofL's decision, eventually relocating to South Carolina.  (Compl. ¶ 227.)  Bowen enumerates thirteen injuries he claims to have suffered as a result of Defendants' conduct, including purported lost opportunities to compete in Division I athletics, develop basketball skills as an NCAA athlete, be drafted "as a

---

[1]    The Court properly may consider materials incorporated by reference and explicitly relied on in the Complaint in ruling on a motion to dismiss.  *See, e.g.*, *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).

first or second round draft pick" in the NBA after playing NCAA basketball, and the "associated impact" on "lifetime career earnings." (*Id.* ¶¶ 218-27.)

## ARGUMENT

To survive a Rule 12(b)(6) motion a plaintiff must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a court must accept well-pleaded allegations as true in considering a motion to dismiss, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A civil RICO claim is "the litigation equivalent of a thermonuclear device." *Bendfeldt v. Window World, Inc.*, No. 17-CV-39, 2017 WL 4274191, at *7 (W.D.N.C. Sept. 26, 2017) (quoting *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991)). Courts have thus "expressed skepticism toward civil RICO claims" and cautioned that "particular care is required when evaluating a RICO claim at the Rule 12 stage." *Id.* at *6 (internal quotation marks omitted) (noting that "[p]laintiffs wielding RICO almost always miss the mark").

Skepticism is fully warranted here. For the reasons set forth below, the Complaint fails in its entirety because Bowen (i) does not allege any damage recoverable under RICO; (ii) does not allege a direct relation between his claimed injuries and Defendants' purported violations and therefore cannot satisfy the basic proximate causation requirement for all civil RICO claims; and (iii) is barred from pursuing his claims by the equitable doctrine of *in pari delicto*. In addition, specific counts should be dismissed because Bowen (iv) does not adequately plead a distinct RICO enterprise under § 1962(c) and (v) fails to adequately allege RICO conspiracy claims. Even had Bowen met the requisite pleading standards and were he not barred from pursuing his

claims, adidas must be dismissed from this action because the Complaint fails to allege facts that warrant holding adidas vicariously liable for the alleged actions of others.

## I.    Bowen Lacks Standing Because His Injuries Are Not Recoverable under RICO.

A civil RICO claim is sustainable only if the plaintiff can show injury to "his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex*, 473 U.S. 479, 496 (1985). Injuries to "mere expectancy interests or to an intangible property interest [are] not sufficient to confer RICO standing." *Strates Shows, Inc. v. Amusements of Am., Inc.*, 379 F. Supp. 2d 817, 825 (E.D.N.C. 2005) (internal quotation marks omitted); *see also Bast v. Cohen, Dunn & Sinclair, PC*, 59 F.3d 492, 495 (4th Cir. 1995) (allegations of "personal injury and pecuniary losses occurring therefrom" do not qualify as actionable injuries); *cf. Ricker v. Edmisten*, No. 93-CV-1756, 1994 WL 32807, at *2 (4th Cir. 1994) (per curiam) ("unilateral expectations, however earnestly held," do not transform expectancy interest into property interest). Rather, a plaintiff must be able to point to an injury inflicted upon a concrete, tangible interest.

With one exception, Bowen's requested damages are entirely speculative and intangible and cannot be recovered under RICO. It is impossible to quantify the value of Bowen's lost opportunities to compete in Division I athletics and develop basketball skills, or how that experience might have impacted his prospects of being drafted by an NBA team, and the associated costs and impact on potential career earnings.[2] (Compl. ¶ 227.) This is especially so given the daunting odds that confront all collegiate athletes who seek to play in the NBA, which only a tiny percentage of student-athletes overcome. Not only are such injuries speculative and

---

[2]    This is so even had Bowen alleged that he was, in fact, declared ineligible—which he does not. (*See, e.g.*, Compl. ¶ 227 (simply claiming as damages purported "loss of eligibility" to play NCAA basketball).)

based on future events that may still, or may never, occur, but they are also purely intangible and carry no concrete financial loss. These purported harms do not suffice to confer RICO standing. *See Kimberlin v. Nat'l Bloggers Club*, No. 13-CV-3059, 2015 WL 1242763, at *12 (D. Md. Mar. 17, 2015) (references to lost "employment and funding opportunities" and "prospective business relationships" entirely speculative and did not establish RICO injury) (internal quotation marks omitted); *Strates Shows*, 379 F. Supp. 2d at 825-26 (lost opportunities to obtain loan, win contract, or earn business commissions merely intangible and too speculative to confer standing).

The sole non-speculative, property damage Bowen identifies is his alleged lost athletic scholarship to UofL, which Bowen cannot claim as damages because he voluntarily relinquished the scholarship when he chose to withdraw from UofL. The Complaint explicitly incorporates UofL's announcement that Bowen would not be permitted to play basketball at the school, but omits any mention of UofL's commitment, in the same statement, to honor his scholarship. (Compl. ¶ 227); Dinkins Decl. Ex. A. Bowen never alleges otherwise, acknowledging instead that he "appl[ied] for and tr[ied] out for other Division I men's basketball teams" and "relocat[ed] . . . to South Carolina." (Compl. ¶ 227.) Bowen's voluntary decision to leave UofL was the sole cause of the loss of his athletic scholarship.

Because the Complaint fails to identify a tangible, concrete injury caused by Defendants to a valid property interest, Bowen lacks standing to bring his RICO claims and the Complaint must be dismissed.

## II.    Bowen Lacks Standing Because the Alleged RICO Violations Did Not Proximately Cause His Injuries.

To state a civil RICO claim, a plaintiff must have been "injured in [its] business or property *by reason of* a violation of section 1962." 18 U.S.C. § 1964(c) (emphasis added). To satisfy this causal requirement, a plaintiff must show that the alleged violation "not only was a

'but for' cause of his injury, but was the proximate cause as well." *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010); *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006).  Bowen's RICO claims must be dismissed because his Complaint lacks any allegation that defendants' purported RICO violations injured him directly.  Even if the injuries he claims could be recovered, they at most flow from UofL's discretionary decision to withhold Bowen from NCAA competition, and not directly from Defendants' alleged conduct.  Bowen's failure to plead injuries resulting directly from the alleged RICO violations is incurable and requires the dismissal of Bowen's claims with prejudice.

### A.     RICO Imposes a Strict Proximate Causation Requirement.

To plead proximate causation, the Complaint must allege a *direct relation* between Bowen's injuries and the predicate acts of wire fraud, money laundering, and sports gambling, as well as Defendants' alleged investment of proceedings from these predicate acts.  *See Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992).  "RICO causation requires a proximity of statutory violation and injury such that the injury is sequentially the direct result—generally at the first step in the chain of causation."  *Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, 884 F.3d 489, 494 (4th Cir. 2018) (internal quotation marks omitted).  The fact that an injury may be "foreseeable," as Bowen alleges his were, (*see, e.g.*, Compl. ¶ 224), does not establish proximate causation; only "the directness of the relationship between the conduct and the harm" matters.  *Hemi Grp.*, 559 U.S. at 12.  Irrespective of "how foreseeable a plaintiff's claimed injury might be or even what motive underlaid the conduct that caused the harm, the injury for which a plaintiff may seek damages under RICO cannot be contingent on or derivative of harm suffered by a different party."  *Slay's Restoration*, 884 F.3d at 494 (affirming dismissal of RICO claims because plaintiff's claimed injury was not "the *direct* result" of defendant's fraudulent conduct

and therefore not "*proximately* caused by that conduct"); *see also Hemi Grp.*, 559 U.S. at 9 (link between violations and injuries that is remote, contingent, or indirect is insufficient).

The Supreme Court first articulated its "directness" requirement in *Holmes*, finding proximate causation lacking because the plaintiff's injuries were "purely contingent on the harm suffered" by a third party. 503 U.S. at 271. The Supreme Court reaffirmed that holding in *Anza* and *Hemi Group*. In *Anza*, a business accused its primary competitor of failing to charge New York sales tax and submitting fraudulent returns to the state tax authority, which allegedly allowed the competitor to undercut the plaintiff's prices, causing it to lose business. 547 U.S. at 453-54. The Supreme Court rejected this RICO theory because the "direct victim" of the competitor's conduct was not the plaintiff, but rather the state of New York, which was defrauded and lost tax revenue as a result. *See id.* at 457-58 (cause of plaintiff's asserted harms was defendant's lower prices, which was "entirely distinct" from alleged RICO violation of defrauding state).

Similarly, in *Hemi Group*, New York City alleged that an out-of-state vendor committed fraud by failing to report its cigarette sales to city residents, as required by law. Without those reports, the city could not determine which of its residents had not paid the city's cigarette tax, costing the city millions of dollars in uncollected taxes. 559 U.S. at 6. The city's theory of causation was defective because the conduct directly responsible for the city's harm was the customers' failure to pay their taxes, whereas the conduct constituting the alleged fraud was the defendant's failure to file its reports with the state. Because "the conduct directly causing the harm was distinct from the conduct giving rise to the fraud," the city could not show that the predicate act proximately caused its injury. *Id.* at 11. The Supreme Court declined to extend

RICO liability to include a "defendant's fraud on [a] third party (the State) [that] made it easier for a *fourth* party (the taxpayer) to cause harm to the plaintiff (the City)." *Id.*

The Fourth Circuit, applying these precedents, has rejected civil RICO liability where a defendant's alleged conduct did not directly cause the plaintiff's alleged harm. In *Slay's Restoration*, a subcontractor hired to repair flood damage alleged that the property owner's insurance company and its independent consultants conspired to reimburse a lower portion of the repair costs, which prevented the property owner from paying the subcontractor what it was owed. Even though the defendants' wrongdoing led to lower payments to the plaintiff, the Fourth Circuit held that the subcontractor's injury was not "sequentially the direct result" of the defendants' conduct or "the first step" in the chain of causation, but rather a loss that was "contingent on or derivative of harm suffered" by another. 884 F.3d at 490-91, 493-94; *see also, e.g.*, *Walters v. McMahen*, 684 F.3d 435, 437-38, 444 (4th Cir. 2012) (affirming dismissal of employees' RICO claim against employer because fraudulent practice of hiring undocumented workers was "fundamentally crime against the government of the United States," not against plaintiffs, and was only "one step in a chain of events" impacting plaintiffs' wages).

### B.    None of the Alleged RICO Violations Directly Caused Bowen's Injuries.

The injuries Bowen alleges—which, as discussed above, are speculative and not recoverable—did not result directly from Defendants' alleged conduct but instead—construed in the light most favorable to Bowen—from UofL's discretionary decision to withhold Bowen from NCAA competition after learning about the payments to Bowen's father. That decision by UofL, and Bowen's subsequent choice to abandon his athletic scholarship at the school, may have proximately caused the harm Bowen alleges; adidas's actions did not. *See Slay's Restoration*, 884 F.3d at 494; *see also Dow Chem. Co. v. Exxon Corp.*, 30 F. Supp. 2d 673, 695-96 (D. Del. 1998) (plaintiff's alleged injuries too remote because they did not stem directly from defendant's

alleged misrepresentations, but rather from third party's discretionary and intervening decision).
Simply put, "[t]he cause of [Bowen's] asserted harms . . . is a set of actions"—*i.e.*, starting with
not being permitted to play basketball at UofL—that is "entirely distinct from the alleged RICO
violation[s]"—*i.e.*, Defendants' supposed payments to Bowen's father. *See Anza*, 547 U.S. at
458.

Bowen's conclusory assertion that his purported harms were "directly" caused by
Defendants' violations (*see* Compl. ¶ 224) is accorded no weight on a motion to dismiss. *See,
e.g.*, *Anza*, 547 U.S. at 457-58 (proximate causation lacking even though plaintiff alleged it was
primary target of defendant's scheme); *Slay's Restoration*, 884 F.3d at 493-94 (same). None of
the purported predicate acts or investment of racketeering income alleged by Bowen directly
resulted in the harms he claims.

### 1.     Alleged Wire Fraud

The criminal trial, on which Bowen relies so heavily, rested on the theory that
universities were defrauded when they awarded athletic scholarships based on inaccurate NCAA
eligibility certifications. This alleged harm to the universities plainly does not amount to an
injury to Bowen, and so cannot support his RICO claims. Recognizing that an injury to UofL is
insufficient to support his claim, Bowen also alleges that he was harmed when Defendants failed
to inform him of "significant and necessary information regarding the actions taken to destroy
[his] NCAA eligibility." (Compl. ¶ 120.) But none of the harms Bowen asserts (*see id.* ¶ 227)
were directly caused by this purported lack of information, as opposed to potentially by UofL's
intervening determination to withhold him from competition. Nor would it matter were Bowen
to suggest that he might have chosen to attend a different university had UofL coaches disclosed
to him the payments to his father. (*See* Compl. ¶ 120.) Bowen has claimed that the payments
threatened his eligibility to play "at *any* NCAA member institution," (Compl. ¶ 227 (emphasis

added)) and thus the Complaint concedes that Bowen's choice to attend UofL—as opposed to any other school—did not directly cause any of his injuries.

Even if Bowen had alleged direct harm from Defendants' alleged failure to inform him of the payments to his father, this isolated and entirely conclusory assertion does not support a claim of wire fraud for three independent reasons. *First*, the right to make a fully-informed decision about where to attend college is not a property interest protected by the wire fraud statute. *See United States v. Sadler*, 750 F.3d 585, 590-91 (6th Cir. 2014) (property rights implicated by wire fraud statute do not include "the ethereal right to accurate information" (citing *McNally v. United States*, 483 U.S. 350, 360 (1987) and *Cleveland v. United States*, 531 U.S. 12, 23 (2000))); *see also United States v. Gillion*, 704 F.3d 284, 295 (4th Cir. 2012) (property must be a right that can be "assigned, traded, bought, or otherwise disposed of" (internal quotation marks omitted)). *Second*, Bowen cannot allege that he was denied any of the tangible economic benefits offered to him by UofL: a full scholarship that he abandoned when he decided to transfer schools. *Cf. United States v. Binday*, 804 F.3d 558, 570 (2d Cir. 2015) (rejecting application of wire fraud statute "where the purported victim received the full economic benefit of its bargain"). And *third*, Bowen has not alleged facts suggesting that Defendants' lack of disclosure was motivated by intent to harm him. *See Gillion*, 704 F.3d at 297 (wire fraud convictions require that defendant act with specific intent to defraud); *United States v. Jackson*, No. 16-CR-31, 2017 WL 1129941, at *3 (N.D. W. Va. Mar. 24, 2017) ("[A] schemer who tricks someone to enter into a transaction has not 'schemed to defraud' so long as he does not intend to harm the person he intends to trick." (quoting *United States v. Takhalov*, 827 F.3d 1307, 1310 (11th Cir. 2016))). To the contrary, the Complaint alleges a plan described at the criminal trial as a "win for the universities," for adidas, and for amateur players and their

families.  (*See* Compl. ¶ 105); Dinkins Decl. Ex. B ("Transcript") at 68-69, *United States v. James Gatto, et al.*, 17-CR-686 (S.D.N.Y. 2018).  Because the conduct alleged does not make out a predicate RICO violation of wire fraud, that conduct (and any resulting harm, even were it direct) cannot support Bowen's RICO claims.

### 2.     Alleged Money Laundering, Sports Bribery, and Use of Racketeering Income

The other two predicate acts Bowen alleges—money laundering and sports bribery—are speculative and unrelated to the injuries Bowen says he suffered.  Bowen asserts that the alleged money laundering offenses—which initially were included in the prosecutors' Criminal Complaint against Gatto and others but dropped in the indictment—"cheat[ed] the federal government out of significant tax revenue" and were committed "against the United States," not against him.  (*See* Compl. ¶¶ 122, 215.)  Similarly, the alleged victims of the sports bribery violations were non-adidas teams, which were unable to secure top recruits, and the NCAA, which presided over games with compromised integrity.  (*See id.* ¶¶ 121, 225.)  By his own admission, Bowen was not a victim—let alone a direct victim—of those alleged crimes and therefore cannot show that they proximately caused his injuries.  Nor does Bowen allege a direct harm from adidas's purported generation and use of income derived from the alleged scheme. (*See id.* ¶ 244.)

### C.     The "Motivating Principles" Underlying the Proximate Causation Requirement Confirm that Bowen Is Not a Direct Victim.

Throughout its proximate causation decisions, the Supreme Court has articulated three "motivating principles" underlying the direct relationship requirement.  *First*, an indirect injury would make it more difficult to ascertain what damages are attributable to the violation "as distinct from other, independent, factors."  *Holmes*, 503 U.S. at 269.  *Second*, considering indirect injuries would force courts "to adopt complicated rules apportioning damages" among

indirect plaintiffs to address the risk of multiple recoveries.  *Id.  Third*, restricting civil RICO to claims by directly injured victims fulfills the general interest in deterring wrongful conduct without the burden and uncertainty associated with suits by plaintiffs with more remote injuries. *Id.* at 269-70.

The foregoing principles underscore why Bowen fails to allege proximate causation and why his claims must be dismissed.  Nearly all of Bowen's asserted damages are speculative, intangible, and attributable to several independent actors (including UofL, the NCAA, himself, and his father)—exactly the sort of "intricate [and] uncertain" injuries that the Supreme Court has warned against.  *Anza*, 547 U.S. at 460.  And to the extent Defendants' alleged conduct constituted a violation of RICO—which it did not—Bowen alleges that the universities were direct victims, (*see* Compl. ¶ 119), which also was the theory advanced by prosecutors in the criminal trial.  "[D]irectly injured victims can generally be counted on to vindicate the law," and here the "general interest in deterring injurious conduct" has been vindicated by SDNY's criminal prosecution, in which university employees testified on the government's behalf. *Holmes*, 503 U.S. at 269-70.  As the Supreme Court has emphasized, there is "no need to broaden the universe of actionable harms to permit RICO suits by parties who have been injured only indirectly."  *Anza*, 547 U.S. at 460.

## III.    Bowen's Claims Are Barred by the Doctrine of *In Pari Delicto*.

In addition to demonstrating that Bowen did not directly suffer a recoverable injury as a proximate result of Defendants' conduct, the Complaint further precludes Bowen from recovery because it implicates his father, his apparent agent, as a conspirator in a scheme meant to enrich, not defraud, Bowen's family.  Because his father's knowledge is imputed to Bowen under traditional agency principles, Bowen is an equal participant in the alleged conduct and thus barred by the equitable doctrine of *in pari delicto*.

16

A.    **Bowen Is Bound by His Father's Acts Because Bowen's Father Had Apparent Authority to Act as Bowen's Agent.**

Although Bowen maintains that he personally was unaware of the payments to his father, he possessed imputed knowledge of the payment scheme through his father, who acted with apparent authority on his behalf.  Apparent authority is created by conduct of a principal (*i.e.*, Bowen) that, reasonably interpreted, causes a third party to believe that the principal consents to the acts of the person purporting to act for him.  *See R & G Const., Inc. v. Lowcountry Regional Transp. Auth.*, 540 S.E.2d 113, 117-18 (S.C. App. 2000).  A principal is bound by the acts of his agent when he has placed the agent in such a position that "a person of ordinary prudence, reasonably familiar with business customs, would be led to believe that the agent has authority to act for the principal" and deals with the agent based on that assumption.  *Steinke v. Agora Syndicate, Inc.*, No. 98-CV-2081, 1999 WL 308600, at *3 (4th Cir. 1999) (per curiam); *see* Restatement (Second) of Agency § 27 cmt. a (Am. Law Inst. 1958) (apparent authority can exist where principal "should realize that his conduct is likely to create such belief").  A principal is liable for the acts of an agent with apparent authority even if the principal does not benefit from and never ratified those acts.  *See Am. Soc. of Mechanical Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 566-67 (1982); *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1351 (4th Cir. 1995) (principal may be liable for agent's acts even if agent's motive is to benefit himself and advance self-interest over principal's interest).

The Complaint does not allege any facts to contradict the natural and reasonable expectation that Bowen's father was acting on his son's behalf.  Indeed, Bowen alleges that Defendants made payment to his father *on the expectation that* it would result in Bowen attending UofL, and that Bowen did in fact choose the school.  (*See, e.g.*, Compl. ¶ 170 ("Sood

confirmed that he provided Brian's father the bribe money and expressed his belief that by doing so he had secured Brian's commitment to attend the University of Louisville."))  Defendants' perception that Bowen's father was authorized to make decisions on Bowen's behalf is further supported by testimony of Bowen's father from the criminal trial record that Bowen references and relies on in his Complaint.[3]  Bowen's father testified that he has been involved full-time in Bowen's basketball training and development since his son began playing the sport at three or four years old.  *See* Transcript at 529-30.  Over the years, several different individuals and teams, including a Nike AAU team and a high school coach unrelated to Defendants, approached Bowen's father with offers to pay money in exchange for Bowen's basketball services.  *Id.* at 545-47.  In those instances, the payments successfully secured Bowen's commitment to play for those teams.  *Id.*  This testimony shows a well-established pattern whereby third parties perceived that payments to Bowen's father would impact Bowen's decisions—an understanding that was solidified each time the payments achieved the intended result.

Bowen now asserts that at no time did he hire or authorize "Dawkins or anyone else to act in any capacity as a sports agent or to secure his admission to any university in exchange for any benefit."  (Compl. ¶ 156.)  Apparent authority, however, is controlled by a third party's reasonable perception that the agent is acting with the principal's consent, not by whether the principal in fact consented, rendering Bowen's express denial irrelevant as a matter of law.  *See Auvil v. Grafton Homes, Inc.*, 92 F.3d 226, 230 (4th Cir. 1996) (apparent authority not based on "actual understanding between the principal and agent").  Bowen's father's undisputed role in, and apparent control over, his son's basketball career makes his conduct imputable to Bowen.

---

[3]    Given the Complaint's reference to and reliance on the criminal trial record, it can properly be considered in connection with this motion to dismiss.  *See Am. Chiropractic Ass'n*, 367 F.3d at 234; *cf. Colonial Penn Ins. Co. v. Coil,* 887 F.2d 1236, 1239 (4th Cir. 1989).

**B.      Bowen Is Barred from Recovery Pursuant to the Doctrine of *In Pari Delicto*.**

A bribe requires both a willingness to pay and a willingness to accept payment.  Imputing to Bowen his father's conduct means Bowen bears at least equal fault for the conduct he alleges. His claims are thus barred by the doctrine of *in pari delicto*, which applies where "(1) as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress" and "(2) preclusion of suit would not significantly interfere with the effective enforcement of [federal law]."  *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310-11 (1985).  Courts will dismiss a civil RICO claim where *in pari delicto* is applicable.  *See, e.g.*, *Republic of Iraq v. ABB AG*, 768 F.3d 145, 163 (2d Cir. 2014); *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1155 (11th Cir. 2006) (doctrine advanced policy of civil liability under RICO because recovery by wrongdoer "would not divest RICO violators of their ill-gotten gains [but] would result in a wealth transfer among similarly situated conspirators").

As his son's agent, Bowen's father's actions and knowledge of the alleged fraud is imputed to Bowen.  *See Eitel v. Schmidlapp*, 459 F.2d 609, 615 (4th Cir. 1972) (principal had imputed notice of fraud where record left "no doubt" that agent had "full knowledge of fraud," despite lack of evidence that principal had actual knowledge); *cf. Founders Ins. Co. v. Richard Ruth's Bar & Grill LLC*, No. 14-CV-3272, 2016 WL 3189214, at \*4 (D.S.C. June 8, 2016) (negligent acts by apparent agent could be imputed to principal).  Bowen's father helped coordinate the transfer of funds, traveling to New York and then to New Jersey before accepting from Sood an envelope full of cash.  (*See* Compl. ¶¶ 169-70); Transcript at 622-23; 625.  Bowen asserts that the families of student-athletes that Defendants allegedly targeted, including his father, accepted these types of payments "unwittingly" without understanding the consequences

for their sons' athletic careers.  (Compl. ¶ 5.)  But Bowen's father acknowledged at trial that he was intimately familiar with the NCAA rules, understood they did not permit him to receive this money, and knew it could pose a risk to his son's NCAA eligibility.  *See* Transcript at 530-32.

Even crediting Bowen's assertions that he was unaware of the payments and did not authorize anyone to be his agent, the conduct of Bowen's father is imputed to him under recognized agency principles and renders Bowen at least substantially equally responsible as a matter of law.  Bowen cannot now seek to profit as the supposed victim of a scheme allegedly designed to funnel payments to his father from those who reasonably understood his father to be acting as his agent.  Because Bowen is bound by his father's acts, the Complaint should be dismissed.

## IV.    Bowen Does Not Plausibly Allege an Association-in-Fact RICO Enterprise Sufficient to Support His § 1962(c) Claim.

A fourth, and independent, basis for dismissal of Bowen's § 1962(c) claim against all defendants (Count I) is the Complaint's failure to plausibly allege an association-in-fact enterprise distinct from adidas and its employees and agents.

Because § 1962(c) prohibits activities by "any person employed by or associated with any enterprise," courts have held that "to establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name."  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001); *accord Palmetto State Med. Ctr. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997) ("The enterprise must be distinct from the persons alleged to have violated § 1962(c).");  *New Beckley Mining Corp.*, 18 F.3d at 1164-65.  Here, Bowen alleges a vast purported "Adidas Bribery Enterprise" but fails to plausibly plead a shared purpose among all its members.  This "enterprise," once stripped down to its only plausible core, consists at most

of adidas and its employees and agents named in the Complaint.  Because adidas is not legally

distinct from the employees and agents through which it acts, Bowen has failed to allege an

enterprise separate from the persons associated with the enterprise and therefore cannot support a

claim under § 1962(c).

A.     **The Only Members of the Alleged "Enterprise" That Plausibly Shared a Common Purpose Were adidas and Its Employees and Agents.**

Bowen alleges that a sprawling group of disparate individuals purportedly constituted an

enterprise "associated in fact," 18 U.S.C. § 1961(4), which, among other things, must constitute

"a continuing unit that functions with a common purpose," *Boyle v. United States*, 556 U.S. 938,

948 (2009).  Bowen has not plausibly alleged, however, that Sood, Dawkins, assistant coaches at

Division I schools sponsored by adidas, and directors of adidas-sponsored AAU teams all acted

with a common purpose.  Bowen asserts that the "overarching purpose" of the alleged

racketeering enterprise was to generate revenue and visibility for adidas.  (Compl. ¶ 121.)  He

alleges no facts, however, to explain why members of the purported enterprise who were

unaffiliated with adidas shared that "overarching purpose" or were acting to advance anything

other than their own self-interest.  The "enterprise" as alleged is thus legally insufficient.  *See*

*Peters v. Aetna, Inc.*, No. 15-CV-109, 2016 WL 4547151, at *9 (W.D.N.C. Aug. 31, 2016)

(rejecting RICO enterprise where plaintiff alleged no reason to believe that defendants acted on

behalf of the enterprise as opposed to pursuing "their own, independent interests"); *Starfish Inv.*

*Corp. v. Hansen*, 370 F. Supp. 2d 759, 770 (N.D. Ill. 2005) (courts appropriately should consider

"whether the defendants' actions were motivated by anything other than self-interest").

The allegations of the Complaint confirm that the non-adidas members of the alleged

"enterprise" lacked a common purpose.  The Complaint contends that Sood and Dawkins, for

instance, were motivated to secure recruits as future clients.  (*See* Compl. ¶ 170.)  Their success

21

(or failure) had no impact on adidas's bottom line because adidas potentially benefited only if a player committed to a school it sponsored.  Nor were Sood's and Dawkins's fortunes affected if adidas sold more shoes or increased its market share (or not), given that there is no allegation that either shared in the profits of the alleged enterprise.  *Cf. Guaranteed Rate, Inc. v. Barr*, 912 F. Supp. 2d 671, 687 (N.D. Ill. 2012) (dismissing RICO claim for failure to allege enterprise where defendants merely took "their own respective profits from their respective actions related to the scheme").

Allegations that the AAU team directors and Division I coaches participated in the "enterprise" to enhance their professional reputations (*see* Compl. ¶ 116), show that they, too, were primarily motivated by self-interest.  To the extent they "helped create and grow the market for adidas bribes," (*id.* ¶ 108(c)), the Complaint frames such results as a byproduct of their conduct, not their purpose.  At its core, the Complaint alleges that by attracting superior players, the AAU team directors and Division I coaches improved their teams and their personal stature relative to others in the basketball community.  (*Id.* ¶ 116.)  Allegations that competing coaches and directors independently engaged in similar transactions with adidas do not constitute an association-in-fact enterprise.  *See Conn. Gen. Life Ins. Co. v. Advanced Surgery Ctr. of Bethesda, LLC*, No. 14-CV-2376, 2015 WL 4394408, at *14-15 (D. Md. 2015).  Not only does Bowen not allege coordination or common purpose amongst the coaches of competing universities—such as UofL and Kansas—or the directors, coaches, and administrators of adidas-sponsored AAU teams, but any such allegation would be wholly implausible because securing commitments from top players is a zero-sum game in which one team's gain is another's loss.  This arrangement cannot sustain a RICO claim.  *Compare Peters*, 2016 WL 4547151, at *8 (no RICO enterprise where subcontractors allegedly reached separate agreements with common

defendant, but had no connection with one another) *with United States v. Batts*, 171 F. App'x 977, 981 (4th Cir. 2006) (per curiam) (gang could constitute enterprise because members protected each other and shared business).  Bowen's allegations suggest that these individuals, along with Sood and Dawkins, acted to advance their own interests and not with the supposed common purpose "to generate more revenue for Adidas."  (Compl. ¶ 121.)

**B.    Properly Defined, the Alleged "Enterprise" Consists Solely of adidas and Cannot Support Bowen's § 1962(c) Claim.**

Removing Sood, Dawkins, and the Division I and AAU personnel from the alleged enterprise because they were not plausibly alleged to have been primarily motivated by the common purpose of increasing adidas's revenues and market visibility leaves only adidas and its employees and alleged agents.  Because a corporation is not legally distinct from the employees and agents through which it acts, an "enterprise" under § 1962(c) that is not "separate from the persons who are employed by or associated with the enterprise" fails as a matter of law.  *Gibson v. Confie Ins. Grp. Holdings, Inc.*, No. 16-CV-2872, 2017 WL 2936219, at *8-9 (D.S.C. 2017); *see also, e.g.*, *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994) (rejecting theory that defendant corporation was RICO "person" distinct from the employees and agents alleged to constitute the RICO enterprise "[b]ecause a corporation can only function through its employees and agents"); *cf. NCNB Nat'l Bank of N.C. v. Tiller*, 814 F.2d 931, 936 (4th Cir. 1987) ("[W]hen a corporation and its wholly owned subsidiary are involved," "a 'person' is not distinct from an 'enterprise.'"), *overruled on other grounds by Busby v. Crown Supply, Inc.*, 896 F.2d 833 (4th Cir. 1990).  Count I of the Complaint, setting forth Bowen's § 1962(c) claim, should therefore be dismissed for failure to plausibly allege a "person" distinct from the "enterprise."

**V.      Bowen Fails to Plead a RICO Conspiracy.**

Counts II and IV, alleging conspiracies to commit substantive RICO violations, fail for at least two reasons. *First*, because Bowen has not adequately pleaded a substantive RICO claim under either § 1962(a) or (c), his claims of conspiracy under § 1962(d) must fail as well.  *See GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 551 n.2 (4th Cir. 2001); *Lyles v. Grant*, No. 17-CV-3245, 2018 WL 4999782, at *7 (D.S.C. Aug. 3, 2018).

*Second*, the conspiracy claims fail for the additional reason that Bowen makes only a conclusory allegation that defendants agreed to commit a substantive offense.  Nowhere does the Complaint allege a specific time, place, date, or other circumstance surrounding the formation of any purported conspiratorial agreement.  Nor is there any specific allegation as to when each purported member of the alleged conspiracy joined, with whom he or she reached an agreement to join, what was agreed to, or any other circumstances by which each individual supposedly joined.  The Complaint offers only the formulaic recitation of the legal elements, (*see, e.g.*, Compl. ¶¶ 231-32), which is insufficient to survive a motion to dismiss, *Iqbal*, 556 U.S. at 678.

**VI.     Bowen Has Not Alleged Facts that Justify Holding adidas Vicariously Liable for the Isolated Acts of Its Employees and Agents.**

Even if the Complaint had plausibly alleged a viable enterprise whose racketeering activity had proximately caused Bowen actionable injury—all elements the Complaint lacks— Bowen's allegations regarding adidas's conduct fall well short of the standards required to hold the company vicariously liable for the acts of its employees and agents.  In light of the Fourth Circuit's decision to "reserve[] RICO liability for ongoing unlawful activities whose scope and persistence pose a special threat to social well-being," *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000) (internal quotation marks omitted), the deficiencies in Bowen's Complaint render his claims against adidas unsustainable.

adidas should not be held vicariously liable because Bowen has not adequately alleged

that adidas benefited from or promoted the acts of its employees and agents.  Courts reject

vicarious liability for RICO claims where a plaintiff has not shown that the culpable employees

intended to benefit their employer.  *See D & S Auto Parts, Inc. v. Schwartz*, 838 F.2d 964, 967

(7th Cir. 1988); *Day v. DB Capital Grp., LLC*, No. 10-CV-1658, 2011 WL 887554, at *21

(D. Md. 2011) (rejecting vicarious liability claim because plaintiff failed to allege employees

were motivated by desire to benefit employers).  As part of this inquiry, the Fourth Circuit has

considered whether a corporation benefited from or authorized the alleged criminal conduct

when assessing whether it should be held vicariously liable.  *See, e.g.*, *United States v. Najjar*,

300 F.3d 466, 485 (4th Cir. 2002) (corporation could be held vicariously liable due to evidence

that president of corporation knew about illicit activities and did not seek to stop them); *Busby*,

896 F.2d at 838 n.5 (RICO liability "is designed to impose liability upon a corporation which is a

perpetrator of illegal activity but not upon an unwitting conduit of its employees' RICO

violations") (quoting *D & S Auto Parts*, 838 F.2d at 967).

  The unauthorized acts of a limited number of employees and agents do not warrant

holding adidas vicariously liable.  Bowen alleges that adidas maintains unwritten finance and

marketing practices that allegedly facilitate and sanction payments to families of prospective

student-athletes, but he does so in an entirely conclusory—and thus insufficient—fashion.  *See*

*Iqbal*, 556 U.S. at 678 (plausibility requires "more than a sheer possibility" that defendant acted

unlawfully).  The few claims that Bowen does raise are either misleading or unpersuasive.  He

contends, for instance, that according to SDNY prosecutors, "the company . . . maintained a

'multimillion-dollar budget' for bribe payments."  (Compl. ¶ 113.)  This patently misrepresents

the prosecutors' opening statement, in which they stated only that Gatto, as director of global

sports marketing, oversaw a "multi-million dollar budget," not that this budget was for bribes. Transcript at 52. Bowen further highlights adidas's change in course in 2014, when it announced it was refocusing its efforts on amateur basketball as compared to NBA sponsorship, (Compl. ¶¶ 66-67), but this hardly suggests that adidas proceeded to adopt corporate policies aimed at evading NCAA rules and facilitating alleged fraud.

The Complaint's other allegations contradict the notion that adidas aided or approved the payments to Bowen's father and others, undercutting any basis for holding adidas vicariously liable. The Complaint highlights conversations, for instance, in which Gatto and Code discuss the difficulty of getting invoices approved by adidas's finance department and the need to conceal the true purpose of the funds. (*Id.* ¶¶ 161, 164-65, 172-75.) Bowen also omits reference to the trial testimony of adidas employee Lindsay Harksen, who provided finance approval for certain invoices relevant to the scheme and testified that she was unaware of the plan to pay Bowen's father and would not have approved the requests had she known. *See* Transcript at 1284-85. The Complaint continues with threadbare allegations that adidas earned additional revenue as a result of the schemes, (*see, e.g.*, Compl. ¶ 183), which in Bowen's view evidences the company's complicity. But the Complaint never alleges that marketing efforts associated with any improperly recruited athlete in particular generated increased sales for adidas. Thus, the Complaint does not support a plausible inference that the alleged payment schemes supported adidas's business goals.

In the absence of allegations supporting a plausible inference that adidas encouraged or benefited from the isolated acts of a few of its employees and agents, there is no basis for holding adidas vicariously liable pursuant to a statute primarily "concerned with eradicating organized, long-term, habitual criminal activity," *U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615

F.3d 312, 317 (4th Cir. 2010), the likes of which bear no relation to the assertions in the

Complaint.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

Respectfully submitted,

/s/Matthew T. Richardson
Matthew T. Richardson (D.S.C. Id. No. 7791)
Mary Lucille ("Lucy") Dinkins (D.S.C. No. 11961)
WYCHE
801 Gervais Street, Suite B
Columbia, South Carolina 29201
Tel: (803) 254-6542
mrichardson@wyche.com
ldinkins@wyche.com

Andrew J. Ceresney (*pro hac vice* application pending)
William H. Taft V (*pro hac vice* application pending)
Nathan S. Richards (*pro hac vice* application pending)
Miheer Mhatre (*pro hac vice* application pending)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Tel: (212) 909-6000
aceresney@debevoise.com
whtaft@debevoise.com
nsrichards@debevoise.com
mmhatre@debevoise.com

*Counsel to Defendant adidas America Inc.*