UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

BRIAN BOWEN II,

    PLAINTIFF,

v.

ADIDAS AMERICA, INC.;
JAMES GATTO; MERL CODE;
CHRISTIAN DAWKINS; MUNISH
SOOD; THOMAS GASSNOLA; and
CHRISTOPHER RIVERS,

    DEFENDANTS.

NO. 3:18-CV-3118-JFA

## ADIDAS'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

Matthew T. Richardson (D.S.C. Id. No. 7791)
Mary Lucille ("Lucy") Dinkins
   (D.S.C. Id. No. 11961)
WYCHE
801 Gervais Street, Suite B
Columbia, South Carolina 29201
Tel: (803) 254-6542
mrichardson@wyche.com
ldinkins@wyche.com

Andrew J. Ceresney (admitted *pro hac vice*)
William H. Taft V (admitted *pro hac vice*)
Nathan S. Richards (admitted *pro hac vice*)
Miheer Mhatre (admitted *pro hac vice*)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Tel: (212) 909-6000
aceresney@debevoise.com
whtaft@debevoise.com
nsrichards@debevoise.com
mmhatre@debevoise.com

*Counsel to Defendant adidas America Inc.*

Dated: March 20, 2019

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT .................................................................................................................................. 3

I.     Bowen Lacks Standing Because His Injuries Are Not Recoverable under RICO. .............. 3

     A.     Bowen Received the Full Benefits of His Agreement with UofL and Cannot Recover for Benefits and Opportunities He Only Expected to Have. .................................................................................................................... 3

     B.     Bowen's Amateur Eligibility Is Not a Tangible Property or Business Interest Recognized under RICO. ............................................................................. 4

     C.     Bowen Cannot Recover for Financial Costs that Defendants Did Not Proximately Cause. .................................................................................................. 6

II.     Bowen Lacks Standing Because the Alleged RICO Violations Did Not Proximately Cause His Injuries. ........................................................................................ 6

III.     Bowen's Claims Are Barred by the Doctrine of *In Pari Delicto*...................................... 10

IV.     Bowen's Enterprise, As Alleged, Cannot Support His § 1962(c) Claim. .......................... 12

V.     Bowen Fails to Plead a RICO Conspiracy. ........................................................................ 14

VI.     Bowen Has Not Adequately Pleaded Direct or Vicarious Liability against adidas. .......... 14

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

**CASES**

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006) ................................................................................................ 10

*Auvil v. Grafton Homes, Inc.*,
    92 F.3d 226 (4th Cir. 1996) ..................................................................................... 11

*Bendfeldt v. Window World, Inc.*,
    No. 17-CV-39, 2017 WL 4274191 (W.D.N.C. Sept. 26, 2017) ................................ 1

*Borg-Warner Acceptance Corp. v. Rossi*,
    365 F. Supp. 56 (D. Md. 1972) ................................................................................ 11

*Boyle v. United States*,
    556 U.S. 938 (2009) ................................................................................................ 12

*Busby v. Crown Supply, Inc.*,
    896 F.2d 833 (4th Cir. 1990) ............................................................................... 9, 15

*Cedric Kushner Promotions, Ltd. v. King*,
    533 U.S. 158 (2001) ................................................................................................ 12

*Gaines v. Texas Tech Univ.*,
    965 F. Supp. 886 (N.D. Tex. 1997) ........................................................................... 5

*Guaranteed Rate, Inc. v. Barr*,
    912 F. Supp. 2d 671 (N.D. Ill. 2012) ................................................................. 12, 13

*Hall v. Nat'l Collegiate Athletic Ass'n*,
    985 F. Supp. 782 (N.D. Ill. 1997) .............................................................................. 5

*Hall v. Univ. of Minn.*,
    530 F. Supp. 104 (D. Minn. 1982) ............................................................................. 5

*Hawkins v. Nat'l Collegiate Athletic Ass'n*,
    652 F. Supp. 602 (C.D. Ill. 1987) .............................................................................. 5

*In re Am. Honda Motor Co., Inc. Dealerships Relations Litig.*,
    941 F. Supp. 528 (D. Md. 1996) ................................................................................ 6

*Mid Atlantic Telecom, Inc. v. Long Distance Servs., Inc.*,
    18 F.3d 260 (4th Cir. 1994) ....................................................................................... 6

*Moffit v. Long*,
    No. 01-CV-1114, 2001 WL 37124656 (D.N.M. Dec. 19, 2001) ............................................. 5

*Muigai v. IB Prop. Holdings, LLC*,
    No. 09-CV-1623, 2010 WL 5173313 (D. Md. Dec. 14, 2010) ................................................... 4

*Poth v. Russey*,
    99 F. App'x 446 (4th Cir. 2004) ............................................................................................. 15

*Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*,
    262 F.3d 260 (4th Cir. 2001) .................................................................................................... 6

*R & G Constr., Inc. v. Lowcountry Reg'l Transp. Auth'y*,
    540 S.E.2d 113 (S.C. App. 2000) ........................................................................................... 11

*Ricker v. Edmisten*,
    No. 93-CV-1756, 1994 WL 32807 (4th Cir. 1994) ................................................................... 5

*Salinas v. United States*,
    522 U.S. 52 (1997) .................................................................................................................. 14

*Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*,
    884 F.3d 489 (4th Cir. 2018) .................................................................................................... 6

*Spath v. Nat'l Collegiate Athletic Ass'n*,
    728 F.2d 25 (1st Cir. 1984) ....................................................................................................... 4

*Spelman v. Bayer Corp.*,
    No. 10-CV-91, 2011 WL 13312222 (D.S.C. Feb. 22, 2011) .................................................. 13

*Strates Shows, Inc. v. Amusements of Am., Inc.*,
    379 F. Supp. 2d 817 (E.D.N.C. 2005) .................................................................................. 3, 4

*Taylor v. Bettis*,
    976 F. Supp. 2d 721 (E.D.N.C. 2013) ...................................................................................... 4

*United States v. Batts*,
    171 F. App'x 977 (4th Cir. 2006) ........................................................................................... 13

*United States v. Najjar*,
    300 F.3d 466 (4th Cir. 2002) .................................................................................................. 13

*Walters v. McMahen*,
    684 F.3d 435 (4th Cir. 2012) .................................................................................................. 10

**STATUTES**

18 U.S.C. § 1962(a) ...........................................................................................................9, 14

18 U.S.C. § 1962(c) ...........................................................................................................12, 14

**PRELIMINARY STATEMENT**

Assuming the truth of the Complaint's allegations, adidas does not deny that Bowen's life was upended by the revelation of payments to his father and UofL's decision to withhold him from NCAA competition. Nor does adidas deny the prosecution of certain individuals involved in making those payments to Bowen's father. But while Bowen devotes most of his opposition to these undisputed facts, they are irrelevant to adidas's motion to dismiss. That a fraud has been committed, and that Bowen has been negatively impacted by that fraud, does not suffice to confer standing on Bowen to seek treble damages under civil RICO. Rather, to bring "the litigation equivalent of a thermonuclear device," *Bendfeldt v. Window World, Inc.*, No. 17-CV-39, 2017 WL 4274191, at *7 (W.D.N.C. Sept. 26, 2017) (internal quotation marks omitted), a plaintiff must allege a tangible harm to a property right or business interest directly caused by the defendant's alleged RICO violation. In this key respect, among others, the Complaint fails.

*First*, Bowen fails to allege a cognizable injury to a valid business interest or property right. He claims three such harms, none of which suffice. He asserts a lost property interest in his financial aid agreement with UofL, which he appends to his opposition. But the agreement on its face did not entitle him to the opportunity to compete in NCAA athletics or develop basketball skills. He also contends that his alleged lost NCAA eligibility is a property right. But he ignores case law to the contrary and overlooks that RICO standing requires injury to *tangible* interests, which NCAA eligibility—even were it a property right—is not. And he claims "various out-of-pocket costs," which were not caused by Defendants' alleged predicate acts but instead by Bowen's relinquishment of his UofL scholarship, his application to other college and professional basketball teams, and the government's criminal investigation.

*Second*, Bowen acknowledges he must show a cognizable injury proximately caused by Defendants' commission of a predicate act. Bowen remarkably contends that the conduct and

convictions in the criminal trial demonstrate that he "was the only one proximately injured by Defendants' racketeering," Resp. at 39, even though the underlying theory articulated a fraud upon the universities, not him, and despite the government's express statement—in the sentencing submission Bowen cites in support—that Bowen was *not* a statutory victim of the fraud. His repeated claims that the same conduct automatically and permanently "destroyed" his eligibility, and therefore harmed him directly, are contradicted by the NCAA bylaws attached to his brief, under which UofL could have requested his reinstatement, and by his allegations that he sought to play at other colleges after leaving UofL. Because the Complaint shows that Bowen's eligibility to play Division I basketball was the result of multiple decisions following the alleged fraud, the damages alleged are not "direct."

*Third*, Bowen fails to contest the key points precluding his recovery under the doctrine of *in pari delicto*, which courts have held—contrary to his suggestion—is a valid basis for a pre-answer dismissal. Bowen does not dispute that the Complaint implicates his father as a conspirator who actively participated in the alleged plot, or that it was meant to enrich his family. And the Complaint admits that Gatto, Code, and Dawkins made payments to his father with the expectation that it would result in Bowen attending UofL, which in fact occurred. (*See* Compl. ¶ 170.) No additional allegations or fact finding are needed to dismiss on these grounds.

*Fourth*, Bowen defends the association-in-fact enterprise he alleges in Count I by repeating the conclusory and implausible allegation that Sood, Dawkins, NCAA coaches, and AAU directors shared a "common purpose" to support adidas's brand, despite the lack of any allegation that doing so would benefit them. His alternate theory, that the enterprise participants had a common interest in conducting the alleged predicate acts, is legally insufficient.

*Fifth*, Bowen accepts that Counts II and IV, alleging conspiracies to commit substantive RICO violations, must be dismissed if his substantive claims are found defective. The conspiracy claims further must be dismissed as to adidas because the Complaint does not allege adidas agreed to or adopted a criminal purpose. Were any of the claims adequately pleaded, the Complaint provides an insufficient basis to hold adidas liable, either directly or vicariously, for the unsanctioned conduct of a few employees and agents that violated company policy.

Bowen's opportunistic exploitation of the convictions of certain defendants cannot support a RICO claim. RICO pleading is demanding because the consequences and potential reach of the law are so significant. The Complaint fails to state a claim and must be dismissed.

## ARGUMENT

**I.    Bowen Lacks Standing Because His Injuries Are Not Recoverable under RICO.**

Bowen has not alleged, and cannot allege, an injury to tangible property directly caused by Defendants and therefore lacks standing. *See Strates Shows, Inc. v. Amusements of Am., Inc.*, 379 F. Supp. 2d 817, 825 (E.D.N.C. 2005). Though he acknowledges this burden, Resp. at 22, Bowen focuses almost exclusively on intangible and speculative injuries grounded in personal expectations rather than concrete contractual obligations. Bowen claims three purported harms: (1) interference with his financial aid agreement with UofL; (2) his alleged inability to play NCAA basketball; and (3) incidental out-of-pocket costs. None confer RICO standing.

**A.    Bowen Received the Full Benefits of His Agreement with UofL and Cannot Recover for Benefits and Opportunities He Only Expected to Have.**

Defendants' alleged interference with Bowen's contractual agreement with UofL, *see* Resp. at 11-12, does not confer standing because Bowen received the entirety of what he was owed. Bowen does not allege that UofL withdrew its scholarship to Bowen. Instead, Bowen argues that he was entitled to "tangible benefits," such as "elite training opportunities," access to

3

"nutritionists and dieticians," and other "specialized resources," *id.* at 12, and that he was denied this "'athlete' portion of the benefits that were also contractually-guaranteed," *id.* at 14, 28. But these were neither part of Bowen's agreement nor tangible. Bowen's financial aid agreement with UofL, which he attaches to his opposition, promised Bowen tuition, room, board, books, miscellaneous expenses, and nothing further—not even a spot on the team. (*See* Ram Decl. Ex. 5.) Because he had no contractual right to play basketball in the NCAA, Bowen harbored merely an expectation that he would have the opportunity to play college basketball. Even if that expectation was likely to be realized, it falls short of what Bowen must show in order to have RICO standing. *See Taylor v. Bettis*, 976 F. Supp. 2d 721, 737 (E.D.N.C. 2013) (plaintiffs lacked standing to pursue defendants for allegedly impeding ability to recover expected damages from potential judgment in plaintiffs' favor), *aff'd*, 693 F. App'x 190 (4th Cir. 2017) (per curiam); *Muigai v. IB Prop. Holdings, LLC*, No. 09-CV-1623, 2010 WL 5173313, at *5 (D. Md. Dec. 14, 2010) (plaintiff allegedly lost opportunity to purchase property due to defendants' rigged bidding process, but lacked standing because he had only "a possible expectancy interest in the property" and did not suffer actual concrete loss).

      **B.**    **Bowen's Amateur Eligibility Is Not a Tangible Property or Business Interest Recognized under RICO.**

Nor can Bowen claim standing by citing his alleged lost NCAA eligibility. He attempts to argue that NCAA eligibility is a property interest, Resp. at 16, but even if it were, it would at most be an intangible right and therefore still insufficient to confer standing. *See Strates Shows*, 379 F. Supp. 2d at 825. Bowen's contention is also incorrect; notably, Bowen declines to address considerable precedent in the due process context rejecting the notion that participation in college athletics qualifies as a property interest at all. *See, e.g.*, *Spath v. Nat'l Collegiate Athletic Ass'n*, 728 F.2d 25, 29 (1st Cir. 1984) (due process rights did not attach to expectation of

4

playing college hockey); *Moffit v. Long*, No. 01-CV-1114, 2001 WL 37124656, at *2 (D.N.M. Dec. 19, 2001) (right to play college athletics not a property interest); *Hall v. Nat'l Collegiate Athletic Ass'n*, 985 F. Supp. 782, 799 (N.D. Ill. 1997) (property rights do not include participation in college athletics or anticipated professional career).

Bowen alternatively suggests that his eligibility was a business interest because he would have made more money as an NBA athlete had he practiced and prepared at UofL instead of in Australia. Resp. at 16 n.9. Though he urges that he "was a lock for the NBA" and that his professional career was "a given," Resp. at 17-18, his "unilateral expectations, however earnestly held," do not give rise to valid property or business interests sufficient to confer RICO standing. *Ricker v. Edmisten*, No. 93-CV-1756, 1994 WL 32807, at *2 (4th Cir. 1994) (per curiam); *see also Gaines v. Texas Tech Univ.*, 965 F. Supp. 886, 890 (N.D. Tex. 1997) (student-athlete rendered ineligible allegedly through school's fraud could not bring RICO claim for lost educational opportunities because damages "would require guesswork" and "[were] too speculative to be compensable under RICO"); *cf. Hawkins v. Nat'l Collegiate Athletic Ass'n*, 652 F. Supp. 602, 611 (C.D. Ill. 1987) (rejecting plaintiffs' claim to constitutionally protected right to secure future professional athletics careers as "mere expectations" and "far too speculative"); *Hall v. Univ. of Minn.*, 530 F. Supp. 104, 109 (D. Minn. 1982) (cited by Bowen) (potential loss of professional career "not really capable of an accurate monetary prediction").

Even if the NBA career he has not yet begun were guaranteed, which it is not, Bowen has not demonstrated any plausible basis to determine how playing abroad, as compared to in the NCAA, might, or might not, impact that career. Bowen attempts to align this putative impact with cases reasoning that "lost profits" can be recovered, but he ignores the distinction between "lost profits" and "future profits." The damages in the cases he cites were backward-looking and

thus not speculative. *See Mid Atlantic Telecom, Inc. v. Long Distance Servs., Inc.*, 18 F.3d 260, 261 (4th Cir. 1994) (plaintiff alleged defendant lured away existing customers); *In re Am. Honda Motor Co., Inc. Dealerships Relations Litig.*, 941 F. Supp. 528, 540-41 (D. Md. 1996) (plaintiffs could seek certain "lost *past* profits on cars they should have received," but not "the opportunity to obtain *future* profits," which would have required speculation (emphasis added)). Bowen further confuses a "quantifiable" injury with a "tangible" one, Resp. at 11, citing only to one case that permitted a plaintiff that did not allege the "precise amount of its injury" to proceed because it bargained for a service, was told it was performed, was charged for it, but in fact did not receive it. *Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*, 262 F.3d 260, 265 (4th Cir. 2001). In contrast to a tangible injury that can be ascertained with additional information, Bowen's alleged lost eligibility is an intangible injury. Its potential impact on Bowen's presumed NBA career is now, and will always be, speculative and undiscernible.

### C. Bowen Cannot Recover for Financial Costs that Defendants Did Not Proximately Cause.

The only tangible injury to property that Bowen identifies is his third and final set of injuries, Resp. at 18: out-of-pocket costs allegedly incurred when relocating to South Carolina and then Australia and when responding to the government's investigation. As explained below, in Section II, these nominal costs are insufficient to confer standing because Bowen has not, and cannot, allege that they were proximately caused by Defendants' alleged predicate acts.

## II. Bowen Lacks Standing Because the Alleged RICO Violations Did Not Proximately Cause His Injuries.

Bowen does not dispute that, in order to have standing, he must allege that his injuries were directly caused by the Defendants' purported predicate acts. *See Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, 884 F.3d 489, 494 (4th Cir. 2018). Even if Bowen's claimed injuries were recoverable under RICO, he still lacks RICO standing because he has failed to

6

adequately allege proximate causation. Bowen attempts to demonstrate the requisite direct causal connection by asserting that Defendants' acts directly cost him the ability to play NCAA basketball. His argument, however, is contradicted by the NCAA bylaws he cites and by his own alleged attempts to play basketball at other NCAA schools, as described in the Complaint.

Contrary to the arguments in Bowen's brief, the alleged payments to his father did not automatically or forever foreclose Bowen from playing college basketball; they merely shifted the decision to UofL and the NCAA to determine whether, under the circumstances, Bowen should be permitted to compete. Under the bylaws that Bowen submits for the Court's consideration, any university can appeal to the NCAA to restore a student-athlete's eligibility "if it concludes that the circumstances warrant restoration." (*See* Ram Decl. Ex. 1, at § 12.12.1.) Bowen does not allege whether UofL or other universities chose to take that action. Regardless of whether they did, it would have been either their choice not to, or the NCAA's decision to deny an application for restoration, that would have caused Bowen's claimed lost opportunity to play college basketball. That the payments to Bowen's father did not conclusively strip him of this opportunity is evidenced by Bowen's allegation that, following UofL's decision to withhold him from competition, he applied to other Division I schools in hopes of playing on their teams. (*See* Compl. ¶ 227.) Defendants' alleged conduct did not cause UofL to refrain from seeking to restore Bowen's eligibility and therefore did not cause the alleged harm. Indeed, Bowen does not dispute his father's testimony that he previously accepted payment from several amateur teams in exchange for Bowen's services, (*see* Dkt. No. 29, Ex. B, at 545-47), which, under Bowen's theory, rendered him ineligible long before the scheme alleged in the Complaint. As reflected by the fact that he claims no similar harm from those payments, Bowen does not, and cannot, allege that his injuries would have occurred had UofL and the NCAA not learned of the

payments to his father, which means those payments cannot have directly caused Bowen's alleged injuries. (*Cf.* Compl. ¶¶ 125-31 (alleging Dennis Smith was paid to play at North Carolina State University, played one season there without the school's knowledge of the payment, was drafted ninth overall the following year, and is now a successful NBA player)).

The alleged costs associated with Bowen's relocation to South Carolina and then to Australia—which is the only tangible injury he cites in his Response—likewise fail for lack of proximate causation. Not only were these costs precipitated by the intervening decisions by UofL and other universities regarding whether to seek restoration of Bowen's eligibility—and thus not directly caused by Defendants' actions—but these costs occurred only after Bowen voluntarily chose to withdraw from UofL. (Compl. ¶ 227.) Though his brief takes issue with adidas's characterization of his decision to leave the university, it is the only plausible inference from UofL's statement—expressly incorporated by Bowen into the Complaint—that the school would not rescind Bowen's scholarship, and from Bowen's allegation that he applied to and tried out for other schools. (*Id.*) Nor can Bowen establish proximate causation for attorney's fees and costs that were not directly caused by Defendants' purported predicate acts but instead incurred "in connection with the federal government's investigation." (*Id.*) Indeed, were there a direct relation between these costs and Defendants' conduct, the prosecutors presumably would have advocated that Bowen recover restitution of legal expenses, as they did on behalf of certain universities. (*See* Ram Decl. Ex. 2, at 13.)

Bowen only briefly revisits his alternate theory that Defendants tainted his right to control his college decision by not informing him of the payments to his father. Resp. at 31. At most, Bowen derides the notion that Gatto, Code, and Dawkins did not unlawfully interfere with his decision-making process at the same time they unlawfully interfered with the universities'

8

allocation of scholarship funds. *See* Resp. at 30-31. But his unsupported rhetorical argument is inconsistent with the conclusions reached by the prosecutors on whose evidence and efforts he exclusively relies. Not once has the government accused the criminal defendants of defrauding Bowen. To the contrary, its memorandum appended to Bowen's brief stated that he was "not the statutory victim[] of the defendants' charged offense." (Ram Decl. Ex. 2, at 14.) And the restitution orders that he invokes, *see* Resp. at 14, 28, require payment only to the universities, as the sole victims of wire fraud identified throughout the entirety of the criminal proceedings.

Bowen does not contest adidas's arguments in its moving brief that the Complaint describes the alleged money laundering and sports bribery schemes as offenses committed against others, not Bowen. (*See* Dkt. No. 29, at 15; Compl. ¶¶ 121-22, 215, 225.) By his own admission, Bowen was not a direct victim of those alleged crimes and therefore cannot show that they proximately caused his injuries. Bowen additionally misses the mark when he accuses adidas of disregarding Fourth Circuit precedent. Resp. at 38. Bowen misunderstands the holding of *Busby v. Crown Supply, Inc.*, 896 F.2d 833 (4th Cir. 1990), which concluded that a plaintiff can sustain a claim under § 1962(a) by showing *either* damages proximately caused by a racketeering act *or* by the investment and use of illegally obtained income. 896 F.2d at 837. Because Bowen does not rebut adidas's assertion that he suffered no harm under the "investment injury" prong of § 1962(a), his claim rests solely on the assertion that Defendants' alleged predicate acts proximately caused him injury, which he has not shown.

Bowen unsuccessfully invokes the motivating principles underlying the Supreme Court's direct-relationship requirement, which confirm that Bowen is not a direct victim. The Court's concern with assessing causation for remote injuries applies with full force to Bowen's claims. The damages he seeks—namely, the purported harm to his potential NBA career—are highly

9

speculative and indirect. Should Bowen not be selected near the top of the NBA draft, or should he fail years later to receive a lucrative contract, he will have no way to show (and a trier of fact could not possibly assess) whether those results stem from the year he missed at UofL or innumerable other reasons, such as his decision to withdraw from last year's draft, the availability of superior players, or deficiencies in his game that would have persisted even had he attended UofL. These are exactly the concerns that motivate the direct relationship requirement. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006) (harm could have resulted from alleged fraud or other factors, requiring speculative proceedings); *Walters v. McMahen*, 684 F.3d 435, 444 (4th Cir. 2012) (noting "insurmountable" factual challenges of "attempting to measure indirect damages" and "distinguish[ing] among independent causal factors").

Bowen's implausible assertion that there are no more immediate victims that could bring a RICO claim (were one actionable) because he was the *sole* victim proximately injured, Resp. at 39, is at odds with the Complaint, which alleges that the universities were direct victims, (*see* Compl. ¶ 119), and undercut by the criminal proceedings, in which the government stated that Bowen was not a statutory victim of wire fraud. In marked contrast to this dispute, the judge in the criminal case could calculate a discrete monetary loss to the universities based on lost scholarship funds directly caused by false compliance certifications. *Cf. Anza*, 547 U.S. at 460.

### III.     Bowen's Claims Are Barred by the Doctrine of *In Pari Delicto*.

Bowen further is precluded from recovery based on the wrongdoing of his father, and apparent agent, whose extensive participation in the alleged scheme sprawls across the criminal trial transcript cited in the Complaint. Bowen contests whether *in pari delicto* can be considered at this stage, but cites irrelevant cases that ignore the precedent in adidas's moving brief confirming the doctrine can be applied on a motion to dismiss. (*See* Dkt. No. 29, at 19.)

10

Bowen's assertion that he "did not appoint anyone to represent him," Resp. at 45, is inconsequential. Apparent authority is not controlled by what a principal expressly disclaims, but rather by what a third party reasonably perceives the principal to have authorized. *See Auvil v. Grafton Homes, Inc.*, 92 F.3d 226, 230 (4th Cir. 1996) (apparent authority "entirely distinct" from and "sometimes conflicts with" express authority). That perception can develop where a principal's "course of conduct [] misleads a third party to his detriment into relying upon an apparent agency relationship." *Borg-Warner Acceptance Corp. v. Rossi*, 365 F. Supp. 56, 59-60 (D. Md. 1972) (crediting possibility that principal, who allowed daughter to affix principal's signature to documents, engaged in conduct that could mislead person into believing agency relationship existed), *aff'd*, 485 F.2d 1388 (4th Cir. 1973) (per curiam); *R & G Constr., Inc. v. Lowcountry Reg'l Transp. Auth'y*, 540 S.E.2d 113, 118-19 (S.C. App. 2000) (apparent authority exists where principal "passively permits" agent to appear to third person to be his agent).

As Bowen does not dispute, the Complaint and incorporated trial transcript show that Bowen's father oversaw his son's entire basketball career and that several different teams successfully secured Bowen's services in the past in exchange for payment, (*see* Dkt. No. 29, Ex. B, at 529-30, 545-47); Bowen questions only what inferences can be drawn from this conduct. The Complaint does not allege, and Bowen does not provide, any facts to contradict the natural and reasonable inference that third parties perceived that payments to Bowen's father would (and did) impact Bowen's decision. (*See* Compl. ¶ 170.)

Bowen further asserts that *in pari delicto* should not preclude his recovery because he is not alleged to have participated in or known about the scheme, Resp. at 44, but he again misapprehends adidas's argument. For purposes of this motion, adidas accepts Bowen's position that he had no personal knowledge of the alleged scheme. Even so, his father's knowledge is

11

imputed to him under traditional agency principles. To the extent he contests imputation on the basis that his "agent acted adverse to the principal's interests," Resp. at 46, the Complaint does not allege that Bowen's father sought to harm or deceive his son, nor did Bowen's father express any such intent in his testimony. Bound by his father's acts, Bowen is equally responsible as a matter of law for the alleged scheme to enrich his family and therefore cannot recover.

### IV.    Bowen's Alleged Enterprise Cannot Support His § 1962(c) Claim.

Bowen's § 1962(c) claim against all defendants (Count I) additionally fails because he does not plausibly allege an enterprise distinct from adidas and its employees and agents. Bowen does not dispute that an association-in-fact enterprise must be "a continuing unit that functions with a common purpose." *Boyle v. United States*, 556 U.S. 938, 948 (2009). Nor does he dispute that, if the only association plausibly alleged to have a "common purpose" is adidas and its employees and agents, Bowen's § 1962(c) claim must be dismissed. *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001) ("person" and "enterprise" must be distinct).

Bowen contends only that he has sufficiently alleged that the non-adidas members of the enterprise—Sood, Dawkins, assistant coaches at Division I schools, and directors of AAU teams—shared the requisite "common purpose." But not once does Bowen point to any allegation in the Complaint to suggest why these disparate individuals unaffiliated with adidas acted "principal[ly]" to help adidas "grow and preserve market share" and "band[ed] together to prop up" the adidas brand. See Resp. at 41-42. To the contrary, the Complaint acknowledges that each acted in their own self interest—Sood and Dawkins to secure future clients, and the coaches and AAU directors to secure premier players and enhance their professional reputations. (Compl. ¶¶ 116, 170.) Persons acting jointly out of self-interest lack the requisite common purpose to constitute an association-in-fact enterprise. *See, e.g.*, *Guaranteed Rate, Inc. v. Barr*, 912 F. Supp. 2d 671, 687 (N.D. Ill. 2012) (dismissing complaint lacking "a single factual claim

12

asserting the RICO Defendants had any interest in the outcome of the alleged scheme beyond their own individual interests"). The enterprises Bowen cites as examples to the contrary—such as the Gambino Crime Family and drug gangs, *see* Resp. at 42, whose members directly share in the enterprise's success and profits—stand in stark contrast to an alleged enterprise consisting of an unaffiliated agent (Dawkins), financier (Sood), and NCAA coaches and AAU directors. *See United States v. Batts*, 171 F. App'x 977, 981 (4th Cir. 2006) ("Third Ward Gang" constituted enterprise based on evidence that "members 'looked out for the police for one another,'" "protected each other," referred "customers to other gang members," and "took turns selling").

Bowen fares no better by suggesting that Gassnola's control of an AAU team rendered him distinct from adidas, *see* Resp. at 43-44, because the Complaint alleges that Gassnola was "[a]t all relevant times" a "paid outside consultant" to adidas who "reported to" Gatto and joined the enterprise in this role. (Compl. ¶¶ 20, 103.) These allegations underscore that the only enterprise plausibly alleged consisted of adidas and its employees and agents. The enterprise alleged in the one case Bowen cites for this point, *United States v. Najjar*—consisting of the head of a "theft and chop shop ring," a company he formed to facilitate his scheme, a distinct car dealership, and other persons—did not suffer the same defect. *See* 300 F.3d 466, 470-71, 484-85 (4th Cir. 2002).

Bowen alternatively argues that the purported enterprise participants had a "shared goal[] to defraud" and "engag[ed] together in the predicate acts." Resp. at 41-42. Under this circular reasoning, any assertion of joint criminal activity would suffice to allege an association-in-fact enterprise. Not surprisingly, that is not the law. *See Guaranteed Rate, Inc.*, 912 F. Supp. 2d at 686 ("A RICO enterprise is more than just a group of people who get together to commit a pattern of racketeering activity."); *Spelman v. Bayer Corp.*, No. 10-CV-91, 2011 WL 13312222,

13

at *5 (D.S.C. Feb. 22, 2011) (cited by Bowen) (dismissing RICO claim where alleged enterprise and pattern of racketeering activity were same).

## V.     Bowen Fails to Plead a RICO Conspiracy.

Bowen does not dispute that his conspiracy claims against adidas (Counts II and IV) must fail if the Court concludes that he has not adequately pleaded a substantive RICO claim under either § 1962(a) or (c). He argues only that a conspiracy may exist so long as the purported conspirators "agree to pursue the same criminal objective" and "adopt the goal of furthering or facilitating" the alleged criminal conduct. Resp. at 47; *see Salinas v. United States*, 522 U.S. 52, 63 (1997). Bowen recites several allegations that he says reflect the views of individuals who participated in the scheme, Resp. at 47, but none are relevant to adidas because he has not alleged adidas agreed to or adopted any of those individuals' acts. As to the company, he points only to his allegation that adidas maintained a discretionary budget to fund bribe payments, but concedes that this is premised on arguments by the government, which stated that Gatto oversaw a budget he could use to fund bribes, not that adidas provided the budget for that purpose. *Id.* at 48 & n.25. Bowen's isolated allegation, tied to an underlying assertion by the government that a rogue employee exploited his position of authority, falls well short of showing adidas's agreement to, or adoption of, the alleged scheme.

## VI.     Bowen Has Not Adequately Pleaded Direct or Vicarious Liability against adidas.

Bowen cannot pursue adidas directly as a culpable "person" because, as noted in Section V, the Complaint has not adequately pleaded any specific allegations regarding the company's conduct. Bowen's attempt to hold adidas vicariously liable similarly is unavailing. His focus on alleged statements by Gatto, Code, and Gassnola, Resp. at 47, is misguided because none were officers or directors, and only knowledge of the scheme by adidas's officers or directors could

14

suffice to impute that knowledge to the company. *See Poth v. Russey*, 99 F. App'x 446, 457 (4th Cir. 2004) (per curiam). No such assertion appears in the Complaint.

The trial testimony of adidas employee Lindsay Harksen, curiously relied on by Bowen as "substantiat[ing] Adidas's knowledge of the fraud," Resp. at 50, only underscores the absence of well-pleaded allegations that would justify holding adidas vicariously liable. Harksen's unambiguous testimony that she was unaware of the plan to pay Bowen's father, would not have approved the payments had she known, and understood that the payments violated NCAA rules and adidas policy, (Ram Decl. Ex. 9, at 1284-85), hardly reflects evidence of adidas's complicity. And the Complaint admits that Gatto and Code schemed to evade adidas's financial controls, (*see* Compl. ¶¶ 161, 164-65, 172-75), which cannot be reconciled with any plausible inference that adidas aided or approved the scheme. As "an unwitting conduit of its employees' [alleged] RICO violations," *Busby*, 896 F.2d at 838 n.5 (internal quotation marks omitted), adidas should not be held vicariously liable.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice. adidas respectfully requests that the Court hear oral argument on its motion to dismiss.

| | |
|---|---|
| /s/ Matthew T. Richardson | /s/ Andrew J. Ceresney |
| Matthew T. Richardson (D.S.C. Id. No. 7791) | Andrew J. Ceresney (admitted *pro hac vice*) |
| Mary Lucille ("Lucy") Dinkins | William H. Taft V (admitted *pro hac vice*) |
| (D.S.C. No. 11961) | Nathan S. Richards (admitted *pro hac vice*) |
| WYCHE | Miheer Mhatre (admitted *pro hac vice*) |
| 801 Gervais Street, Suite B | DEBEVOISE & PLIMPTON LLP |
| Columbia, South Carolina 29201 | 919 Third Avenue |
| Tel: (803) 254-6542 | New York, New York 10022 |
| mrichardson@wyche.com | Tel: (212) 909-6000 |
| ldinkins@wyche.com | aceresney@debevoise.com |
| | whtaft@debevoise.com |
| | nsrichards@debevoise.com |
| | mmhatre@debevoise.com |

*Counsel to Defendant adidas America Inc.*

15