IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Brian Bowen, II,<br><br>Plaintiff,<br><br>v.<br><br>Adidas America, Inc., James Gatto, Merl Code, Christian Dawkins, Munish Sood, Thomas Gassnola, and Christopher Rivers,<br><br>Defendants. | C/A No.: 3:18-3118-JFA<br><br><br>**ORDER ON DEFENDANTS' MOTIONS TO DISMISS** |

This matter comes before this Court on multiple Motions to Dismiss the amended complaint (ECF No. 84) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") by Defendants Merl Code ("Code"), Adidas America, Inc. ("Adidas"), James Gatto ("Gatto"), Munish Sood ("Sood"), and Christopher Rivers ("Rivers") (collectively "Defendants").

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges Defendants derailed his promising basketball career when they engaged in racketeering activity by conspiring to bribe, and bribing, Plaintiff's father to persuade Plaintiff to play basketball for the University of Louisville, an Adidas sponsored university. (ECF No. 84). This bribe violated the rules of the National Collegiate Athletic Association and rendered Plaintiff ineligible to play top-tier college basketball and further, prevented him from having a chance to play in the NBA. *Id.*

Plaintiff brings this suit under the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. § 1962 (a), (c), and (d)), alleging two counts of substantive RICO violations and two counts of conspiracy to violate RICO. The RICO statute requires at least two predicate instances of racketeering activity which can include, wire fraud and money laundering as alleged

1

by Plaintiff. *See* 18 U.S.C. § 1962 (prohibiting racketeering activity); *see also* 18 U.S.C. § 1961(1) (defining "racketeering activity" to include wire fraud as described in 18 U.S.C. § 1343 and money laundering as described in 18 U.S.C. §§ 1957-57).

On August 8, 2019, this Court granted in part and denied in part Defendants' Motions to Dismiss. (ECF Nos. 27, 29, 30, 33, and 41). In its Order, this Court found that the Original Complaint's allegations of sports bribery and wire fraud were insufficient. (ECF No. 82). This Court dismissed with prejudice Plaintiff's allegation that Defendants committed sports bribery as a predicate act of racketeering, but granted Plaintiff leave to amend his wire fraud allegations to conform to the heightened pleading requirements of Rule 9(b) of the FRCP.[1] *Id.* This Court denied Defendants' Motions to Dismiss as to all remaining arguments. *Id.* With Respect to Defendants' Motions to Dismiss based on lack of standing, this Court denied Defendants' Motions due to the leave granted to Plaintiff to amend his pleading. *Id.*

On August 23, 2019, Plaintiff filed his Amended Complaint. (ECF No. 84). Defendants filed Motions to Dismiss the Amended Complaint (ECF Nos. 93, 94, 95, 96, and 97). On October 18, 2019, Plaintiff filed a responsive brief (ECF No. 101), and Defendants filed replies (ECF Nos. 106, 107, 108, and 109). Accordingly, the motions are ripe for review.

## II.    LEGAL STANDARD

When considering a motion to dismiss, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993) (citing *De Sole v. United States*,

---

[1] This Court concluded that Plaintiff's wire fraud allegations were deficient because Plaintiff failed to adequately plead with particularity the "who, what, when, where, and how" as required by Rule 9(b). Additionally, this Court held that Plaintiff's allegations which were plead on information and belief do not satisfy the pleading requirements of Rule 9(b). (ECF No. 82).

947 F.2d 1169, 1171 (4th Cir. 1991)). To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than an unadorned, [']the-defendant-unlawfully-harmed-me['] accusation," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), "in order to 'give the defendant fair notice of what the [. . .] claim is and the grounds upon which it rests,'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In other words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). A complaint alleging facts that are "'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## III.    DISCUSSION

Defendants raise three main arguments: (1) Plaintiff's allegations of wire fraud still fail to meet Rule 9(b)'s heightened standard; (2) due to Plaintiff's failure to adequately plead wire fraud as a predicate act of racketeering, Plaintiff's money laundering allegations also fail; and (3) Plaintiff lacks RICO standing because he has failed to plead a concrete injury to his business or property directly caused by the alleged RICO violation. (ECF Nos. 93, 94, 95, 96, and 97). Additionally, Defendant Adidas re-raises its argument that Plaintiff has failed to plausibly allege Adidas is vicariously liable for its employees' and agents' involvement in the bribery scheme. (ECF No. 94).

Based on the foregoing, this Court grants in part and denies in part Defendants' Motions to Dismiss.

### a. Wire Fraud

Defendants' Motions to Dismiss Plaintiff's allegation of wire fraud as a predicate act of racketeering is granted in part and denied in part. (ECF Nos. 93, 94, 95, 96, and 97). To plead wire fraud, a plaintiff must plausibly allege "'(1) the existence of a scheme to defraud and (2) the use of . . . a wire communication in furtherance of the scheme.'" *United States v. Jefferson*, 674 F.3d 332, 366 (4th Cir. 2012), *as amended* (Mar. 29, 2012) (quoting *United States v. Curry*, 461 F.3d 452, 457 (4th Cir. 2006)). Wire fraud may be alleged as a predicate act of racketeering by a plaintiff seeking to establish a defendant violated RICO. *See* 18 U.S.C. § 1962 (prohibiting racketeering activity); *see also* 18 U.S.C. § 1961(1) (defining "racketeering activity" to include wire fraud as described in 18 U.S.C. § 1343). To plead wire fraud, a plaintiff must plausibly allege "'(1) the existence of a scheme to defraud and (2) the use of . . . a wire communication in furtherance of the scheme.'" *United States v. Jefferson*, 674 F.3d 332, 366 (4th Cir. 2012), *as amended* (Mar. 29, 2012) (quoting *United States v. Curry*, 461 F.3d 452, 457 (4th Cir. 2006)).

Under Fourth Circuit precedent, when wire fraud is asserted as a predicate act in a civil RICO claim it must be pled with particularity pursuant to Rule 9(b), FRCP. *See Jones v. Ram Med., Inc.*, 807 F. Supp. 2d 501, 513 (D.S.C. 2011) (citing *Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130, 1137 (4th Cir. 1993)); *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . ."). "To meet this standard, the complaint must describe 'the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *United States*

*v. Berkeley Heartlab, Inc.*, 247 F. Supp. 3d 724, 729 (D.S.C. 2017) (quoting *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)).

In its previous Order, this Court held that Plaintiff's wire fraud allegations were insufficient because they did not meet the specificity requirements of Rule 9(b). (ECF No. 82). This Court identified three of Plaintiff's wire fraud allegations and explained their Rule 9(b) deficiencies. *Id.* This Court will discuss the following previously identified deficient allegations in turn: (1) Plaintiff's allegations regarding of sham invoices, (2) Plaintiff's allegations regarding of a bribe to Dennis Smith, Jr., and (3) Plaintiff's general allegation against all Defendants. Additionally, Defendant Rivers filed a separate Motion to Dismiss, and this Court will address Defendant Rivers arguments as to Plaintiff's wire fraud allegations separately. (ECF No. 97).

### i. Plaintiff's Allegations of Alleged Sham Invoices

First, this Court examined Plaintiff's allegations that Defendants reviewed and approved sham invoices to secure funds for the alleged scheme to bribe families of high school aged players. *Id.* This Court cited to specific paragraphs in the Original Complaint which it found were deficient because they were pled on information and belief and did not include when the invoices were approved, where they were approved, and which invoices were approved by which people. *See Id.* at *6 citing (ECF No. 1 at ¶¶ 161, 166 – 67, 170, 174 – 75, 204 – 07).

Defendants cite to Amended Complaint ¶ 202 and argue that this allegation remains on information and belief. (*compare* ECF No. 1 at ¶ 161, *with* ECF No. 84 at ¶ 202.). (ECF No. 94 & 95). While factual allegations on information and belief are generally disallowed of pleadings pursuant to Rule 9(b), "an exception is made if the matters pled are with the particular knowledge of the adverse party." *Breckley v. Amway Corp.*, 1989 WL 140397 at 5 (D.S.C. 1989). "Rule 9(b) is deemed satisfied if the allegations are accompanied by a statement of facts on which the belief

is founded." *Degraw v. Wike*, 2011 WL 3268578 at 2 (E.D. Va. May 9, 2011) (citing *Drobnak v. Anderssen Corp.*, 561 F.3d 778, 783 – 84 (8th Cir. 2009). Plaintiff alleges "upon information and belief" that Adidas was expected to record the payment to Plaintiff's father "off the books." (ECF No. 84 at ¶ 202). This allegation meets the exception because Defendant Adidas has particular knowledge of its accounting system including how payments are recorded and approved. *Id.* Additionally, Plaintiff provides facts on which this belief is founded because Plaintiff explains that the payment to Plaintiff's father—like the payments to other high school players' families—was accomplished through "sham invoices." *Id.* For support, Plaintiff provides emails from Defendant Code to Defendant Gatto with attached invoices for travel team expenses and consulting fees which were sent to Adidas' marketing finance department for processing.  (ECF No. 84 at ¶ 203, 205, 206 and 209). Therefore, this Court finds that Plaintiff's allegation satisfies the requirements of Rule 9(b) and states a plausible claim for relief. (ECF No. 84 at ¶ 202).

Next, Defendants cite to Amended Complaint ¶ 260 – 262 and argue that this list of "sham invoices" still lacks key specifics such as "when the invoices were allegedly approved, where the invoices were approved, and which invoices were allegedly approved by which people." (ECF No. 94, 97). While Plaintiff did not make any substantive changes to these pleadings, Plaintiff did attach two exhibits which are summaries of the alleged "sham invoices."[2] (ECF No. 84 – 52 & 53). The summaries provide the key specifics that the original complaint was missing such as the dates of approval, the alleged purpose for the invoice, the invoices' payees, and the individual or individuals who approved each invoice. *Id.* Therefore, this Court finds that Plaintiff's allegation

---

[2] This Court is reading the facts of Exhibit 52 into the pleadings as incorporated by reference by Plaintiff such that Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) are not converted into a Rule 56 Motions for summary judgment.

satisfies the requirements of Rule 9(b) and states a plausible claim for relief. (ECF No. 84 at ¶ 260 – 262).

In its Reply, Defendant Adidas argues that Plaintiff's allegations against Defendant Adidas, specifically, fail to meet the standard of Rule 9(b) because none of them allege that anyone at Adidas, other than the individual named Defendants, had knowledge of the alleged scheme. (ECF No. 106). Defendant Adidas attempts to argue that the "true purpose" of the "sham invoices" and "recipient" of the funds was disguised and as a result, Plaintiff has failed to plead that Adidas was aware of the alleged scheme. (ECF No. 106). This Court is not persuaded by the argument that Defendant Adidas was a "victim" of the alleged wire fraud scheme. As asserted in the Amended Complaint, some of the alleged "sham invoices" were approved by Adidas' director of finance, Adidas' head of sports marketing, and Adidas America's second in command. (ECF No. 84 at ¶ 154, 205, 225).

Plaintiff pleads "Defendants knowingly and repeatedly used financial transactions to funnel bribe payments from Adidas to the families of student athletes using proceeds of the Enterprise's unlawful activity. Defendants engaged in such financial transactions…with knowledge that the transactions were designed to conceal and disguise the nature, location, source, ownership, and control of the money generated by Adidas through the Enterprise's unlawful activity." (ECF No. 84 at ¶ 281). Rule 9(b) states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Viewing the facts in the light most favorable to Plaintiff, this Court finds that the Plaintiff has adequately pleaded that Adidas had knowledge of the true purpose of the invoices. This Court declines to accept, especially at this stage in the proceedings, Defendant Adidas' contention that it did not or could not know the true purpose of these funds because the invoices were not labeled as a "bribe." Therefore, this Court finds that

Plaintiff's allegations meet Rule 9(b)'s requirements and state a plausible claim for relief. (ECF No. 106 ECF No. 84 ¶¶ 123, 125, 154, 205, 211, 217, 226).[3]

In its previous Order, this Court identified the wire fraud allegations in the following paragraphs of the Original Complaint: ¶ 166, 167, 170, 174, and 175. (ECF No. 1, 82). After extensive review of the Amended Complaint, this Court finds that these allegations have been properly amended to conform to the pleading requirements set forth in Rule 9(b). (ECF No. 84). Therefore, Defendants' Motions to Dismiss are denied as to these wire fraud allegations. (ECF No. 84 at ¶ 211, 212, 215, 222, and 223).

### ii. Plaintiff's Allegation of a Bribe to Dennis Smith, Jr.

In its previous Order, this Court found Plaintiff's allegation that Defendant Rivers approved a bribe payment of $25,000 to Dennis Smith, Jr. lacked sufficient supporting allegations. (ECF No. 82).[4] Defendants argue that Plaintiff has not remedied this insufficiency because Plaintiff has failed to allege any false representation as required by Rule 9(b). (ECF No. 94, 97). Plaintiff alleges that Defendant "Adidas made two bribe payments to secure Smith, Jr. to the Adidas brand." (ECF No. 84 at ¶ 144). The first bribe payment occurred in early 2015 when Defendants Gassnola, Gatto, and Rivers travelled to North Carolina to watch Smith, Jr. play. *Id.* Plaintiff attempted to amend the allegation by adding that while in N.C., Defendant Rivers and Smith, Jr.'s father had a private conversation. *Id.* After which, Defendant Rivers reported that "he had taken care of it, that the kid was going to stay with an Adidas program, team loaded, and that he would play the following year with us." *Id.* In complying with Rule 9(b), plaintiffs are required

---

[3] Plaintiff's allegations of Defendant Adidas' knowledge are further discussed in the "Vicarious Liability" section of this Order.

[4] A civil RICO Plaintiff may allege predicate acts targeting other victims when establishing evidence of a "pattern of racketeering." *See Sediman, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495 (1985).

to plead the "time, place, and *contents* of the alleged fraudulent misrepresentation…". (emphasis added). Plaintiff pleads the circumstances surrounding a potential misrepresentation but fails to plead an actual misrepresentation. Therefore, this Court finds that the allegation in ¶ 144 is still insufficient to satisfy Rule 9(b) and as such, this Court will not consider Plaintiff's allegation of the first bribe payment made to Smith, Jr.'s father in early 2015. (ECF No. 84 at ¶ 144).

Additionally, Defendant Rivers argues that Plaintiff fails to plead how Defendant Rivers, specifically, used interstate wires in furtherance of this fraudulent scheme against Smith, Jr. (ECF No. 97). However, Plaintiff is not required to plead that wires were used by each Defendant in furtherance of the alleged scheme. Defendants in *Superior Bank, F.S.B., Tandem Nat. Mortg., Inc.* posited a similar argument and the Court rejected it stating, "there is no requirement that mail or wire be used by each defendant." *Superior Bank, F.S.B. v. Tandem Nat. Mortg., Inc.*, 197 F. Supp. 298 (D. Md. 2000); *See also Kerby v. Mortg. Funding Corp.*, 992 F. Supp. 787, 801 (D. Md. 1998) ("mails and wires do not have to be used by each defendant, but merely in furtherance of the scheme."). This Court finds it sufficient that Plaintiff has alleged Defendant Rivers involvement and the use of interstate wires by other Defendants in furtherance of the alleged scheme. Therefore, Defendant Rivers' Motion to Dismiss is denied as to its claim that Plaintiff failed to sufficiently plead Defendant Rivers' used interstate wires in furtherance of the alleged scheme to defraud Dennis Smith, Jr. (ECF No. 97).

### iii.  Plaintiff's General Allegation against all Defendants

In its previous Order, this Court held that the general allegation that Defendants "knowingly made, intended to make, or caused, or intended to cause others to make false certifications to University of Louisville and the National Collegiate Athletic Association regarding the bribe to Plaintiff's father was insufficient under Rule 9(b) because it failed to identify "the specific time or

place that Defendants allegedly made or caused others to make false certifications regarding Plaintiff's eligibility." (ECF No. 82). Defendants argue that this deficiency remains as the Amended Complaint asserts the same general allegation with minor amendments. (ECF No. 95, 94, 97). Despite this Court's previous advice to Plaintiff to amend this allegation, Plaintiff has failed to add any substantive language to the allegation or answer the "who, what, when, where, how" as required by Rule 9(b) for this allegation. Therefore, this Court finds that this allegation is insufficient to satisfy Rule 9(b) and it will not consider this allegation as part of Plaintiff's pleadings against Defendants.

Although this allegation was not sufficiently amended to pass muster under Rule 9(b), this Court does find that Plaintiff has added substantial detail to his allegations of wire fraud regarding the perpetration of the alleged scheme. Courts have acknowledged the difficulty that arises in pleading a RICO suit against multiple defendants—as is the case here—and have determined that it is "not necessary that a plaintiff elucidate every single detail of the alleged fraud." *WW, LLC v. Coffee Beanery, Ltd.*, 2012 WL 3728184 at 10 (D. Md. 2012); *Mylan Labs, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1074 – 75 (D. Md. 1991).

The Fourth Circuit has instructed that the most important consideration when determining whether to dismiss a complaint under Rule 9(b) is whether "(1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial pre-discovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir. 1999). Overall, this Court is satisfied that Defendants have been made aware of the particular circumstances of the alleged wire fraud for which they will have to prepare a defense at trial. Additionally, Plaintiff's Amended Complaint does provide substantial pre-discovery evidence of the alleged facts as evidenced by the attachment

of over fifty exhibits. Therefore, Defendants' Motions to Dismiss Plaintiff's allegation of wire fraud as a predicate act of racketeering is denied as to all remaining arguments.

### iv. Defendant Rivers' Motion to Dismiss Plaintiff's Wire Fraud Allegations

Defendant Rivers filed a separate Motion to Dismiss the Amended Complaint in which he argues that Plaintiff has failed to sufficiently plead that Defendant Rivers committed wire fraud as a predicate act of racketeering under Rule 9(b). (ECF No. 97).  In his Response, Plaintiff argues that he has adequately pleaded Defendant Rivers involvement in the bribery enterprise and that he engaged in multiple predicate acts of wire fraud. (ECF No. 101). For support, Plaintiff points to two separate emails from February 2015 and May 2017.  In the February 2015 email, Defendant Rivers instructs Adidas personnel to exclude overt references to bribe payments in emails. (ECF No. 84 at ¶ 110 – 111). Defendant Rivers received the May 2017 email which provided him with the necessary information to set up Karolina Khaos as a payee in Adidas' accounting system. (ECF No. 84 at ¶ 176). Plaintiff argues that these emails are evidence that Defendant Rivers played a significant role in the alleged scheme because he directed the concealment of the alleged scheme and set up the account that would be used to funnel bribe money to families of players. (ECF No. 101).

Defendant Rivers argues that Plaintiff's 2015 email allegation is still insufficient to plead wire fraud against him. Plaintiff pleaded this 2015 email allegation in his original complaint, although Plaintiff was given a chance to amend the allegation to conform to Rule 9(b), Plaintiff did not add any substantive details. (ECF No. 108). Plaintiff amended the allegation to include the subject line of the email, "Adidas Soul Patrol aka BlackOpp's Update #1" and a directive to the recipients that they "provide him 'information' that demonstrates the moves we are making" such as the "Top 30

11

families" and "Top 30 high school players you have met with in the 2016, 2017, and 2018 classes." (ECF No. 84 at ¶ 110). Therefore, this Court finds Plaintiff includes the requisite information for Rule 9(b) by pleading the time the email was sent, the contents of the email, and the identity of the sender and recipients. *Id.*

Additionally, Defendant Rivers argues that Plaintiff has failed to plead facts sufficient to establish that the May 2017 email was sent in furtherance of a scheme to defraud. (ECF No. 108). Plaintiff alleges that "Code forwarded to Gatto an email sent earlier in the day to Chris Rivers" which "included information required to set up the AAU team, Karolina Khaos, as a vendor in Adidas's payment system." (ECF No. 84). A wire communication is in furtherance of a scheme to defraud if it's a "step in the plot" or "incident to an essential part of the scheme." *Schmuck v. United States*, 489 U.S. 705, 710–11, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989) (internal quotation marks omitted); see also *S. Atl. Ltd. P'ship of Tenn. v. Riese*, 284 F.3d 518, 531–32 (4th Cir. 2002) (applying *Schmuck* to wire fraud offense). This Court finds that the email was in furtherance of the scheme to defraud because it was a "step in the plot." *Id.* Plaintiff adequately pleads that the Karolina Khaos account was used to funnel funds for the alleged sham invoices and as such, setting up the account was necessary to accomplish the alleged scheme's purpose of paying high school players' families. (ECF No. 84 at ¶ 176, ¶ 202, and ¶ 203 "Code emailed Gatto a sham invoice dated June 8 from Karolina Khaos AAU team based in South Carolina for $25,000 in 'travel team expenses'").

Further, because Defendant Rivers did not send the email himself, Defendant Rivers asserts Plaintiff must allege that Defendant Rivers performed an act which would make it reasonably foreseeable that the email would be follow. (ECF No. 108). While Defendant Rivers' argument is persuasive, this Court disagrees that Plaintiff must allege the specific act Defendant Rivers took

which caused the email to be sent. One "causes" the use of a wire communication when one acts with knowledge that such use "will follow in the ordinary course of business" or where such use "can reasonably be foreseen, even though not actually intended." *United States v. Pierce*, 400 F.3d 176, 180 (4th Cir. 2005) (internal quotation marks omitted). The use of a wire transmission must be "objectively foreseeable, not subjectively foreseeable." *United States v. Taylor*, 760 Fed. Appx. 147, 150 (4th Cir. 2019) (citing *United States v. Edwards*, 188 F.3d 230, 233 – 34 (4th Cir. 1999). The May 2017 email includes a direct deposit form, a proof of account ownership letter, a w-9 form, and a copy of a voided check. (ECF No. 84 Ex. 20). This Court rejects Defendant Rivers' contention that Plaintiff must allege an act that caused this email. The sensitive nature of the email makes it reasonable to conclude that the email would not have been sent unless requested. Viewing the facts in the light most favorable to the Plaintiff, it was objectively foreseeable that the email would be sent to Defendant Rivers. Therefore, Defendant Rivers' Motion to Dismiss is denied as to his claim that Plaintiff failed to sufficiently plead he committed wire fraud according to Rule 9(b). (ECF No. 97).

### a. Money Laundering

Defendants' Motions to Dismiss Plaintiff's allegations of money laundering premised on tax fraud are granted. (ECF Nos. 93, 94, 95, 96, and 97).  In its previous Order, this Court denied Defendants' Motions to Dismiss with respect to Plaintiff's money laundering allegations because it found that Plaintiff pled sufficient factual material to allege plausible claims for relief. (ECF No. 82). Now, Defendants have raised a new argument regarding Plaintiff's money laundering allegations. (ECF Nos. 93, 94, 95, 96, and 97).  Defendants argue Plaintiff's money laundering allegations premised on tax fraud should be dismissed because tax fraud is not a "specified unlawful activity" for the purposes of money laundering. *Id.*

However, Plaintiff contends that this Court should not consider this new argument because this Court has previously denied Defendants' Motions to Dismiss on Plaintiff's money laundering allegations and Defendants failed to raise this argument in their first Motions to Dismiss. (ECF No. 101). Plaintiff cited case law and a secondary source as support for his contention and after review, this Court finds that Plaintiff's authority is inapplicable to the instant case. *Id*. Plaintiff's authority contemplates a situation in which Defendants are attempting to assert, for the first time, an affirmative defense which was waived by not being presented in the initial responsive pleading under Rule 12(g). *See Rowley v. McMillan*, 502 F.2d 1326, 1333 (4th. Cir. 1974) (holding "an amendment to the pleadings permits the responding pleader to assert only such of those defenses which may be presented in a motion under Rule 12 as were not available at the time of his response to the initial pleading. An unasserted defense available at the time of response to an initial pleading may not be asserted when the initial pleading is amended."); *See Maxtena, Inc. v. Marks*, No. DKC 11-0945, 2012 WL 113386, at 11 (D. Md. 2012) (holding defendant waived defense of improper venue when he asserted it for the first time in his motion to dismiss the amended complaint.).

Here, Defendants are not seeking to raise a new affirmative defense, but rather, a new argument. "A complaint is always vulnerable to a challenge for legal sufficiency, [and] it is far more efficient to treat the arguments prior to more extensive discovery." *Dart Drug Corp. v. Corning Glass Works*, 480 F. Supp. 1091, 1095 n.3 (D. Md. 1979). Therefore, Defendants' argument regarding Plaintiff's money laundering allegations premised on tax fraud are ripe for review.

Plaintiff alleges that the "specified unlawful activity" underlying his predicate act of money laundering is wire fraud and tax fraud. (ECF No. 84). Money laundering is "knowingly [engaging] in a monetary transaction in criminally derived property of a value greater than $10,000 and is

derived from specified unlawful activity." 18 U.S.C. § 1957(a). "Specified unlawful activity" is defined in § 1956(c)(7) and includes a number of different criminal activities including wire fraud. Defendants argue tax fraud is not considered a "specified unlawful activity" for the purposes of money laundering. (ECF Nos. 93, 94, 95, 96, and 97); *See* 18 U.S.C. § 1956(c)(7). Plaintiff concedes that tax fraud is not "specified unlawful activity" for the purposes of money laundering and asserts that his tax fraud allegation relates to the intent requirement of the money laundering statute. (ECF No. 101). The federal money laundering statute specifically prohibits money laundering of proceeds from specified unlawful activity when done "with intent to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 1986." 18 U.S.C. 1956(a)(1)(A)(ii).

The issue with Plaintiff's argument is that Plaintiff explicitly pleaded "tax fraud" and failed to plead that Defendants intended to violate the Internal Revenue Code. (ECF No. 84 at ¶ 140). "Specifically, Defendants…did knowingly and willfully combine, conspire, confederate, and agree…to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce, which transactions involved the proceeds of specified unlawful activity—that is, wire fraud and *tax fraud.*") (emphasis added); (*Id.* at ¶ 235 "In executing the bribery scheme described above, the Adidas Bribery Enterprise participants conspired to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce involving proceeds of specified unlawful activity—i.e., wire fraud and *tax fraud.*") (emphasis added). Plaintiff argues that his allegations of tax fraud relate to Defendant Adidas' practice of funneling bribe money through 501(c)(3) tax exempt organizations in order to create an impermissible tax benefit. However, Plaintiff fails to allege anywhere that this meant Defendants *intended* to violate the Internal Revenue Code. This Court cannot read allegations into the pleadings that Plaintiff failed to allege,

15

especially, after being given an opportunity to amend the complaint. Therefore, Defendants'

Motions to Dismiss Plaintiff's money laundering allegation premised on tax fraud is granted. (ECF

Nos. 93, 94, 95, 96, and 97).

### b. Vicarious Liability

Defendant Adidas' Motion to Dismiss is denied as to its claim that Plaintiff failed to to

plausibly allege its vicarious liability for its employees' involvement in the bribery scheme. (ECF

No. 94). Defendant Adidas raised this argument in its first Motion to Dismiss (ECF No. 29), and

this Court denied its Motion because it found that Plaintiff pled sufficient factual material to meet

the heightened pleading standard in Rule 9(b). (ECF No. 82). This Court continues to be

unpersuaded by Defendant Adidas' argument on this ground. First, principles of corporate liability

apply in the RICO context. *U.S. v. Najjar*, 300 F.3d 466, 484 (4th Cir. 2002). To establish a

corporation's liability under Civil RICO, a Plaintiff must establish that the corporation engaged in

"conduct or participate[d], directly or indirectly, in the conduct of [the] enterprise's affairs through

a pattern of racketeering activity." 18 U.S.C. § 1962(c). "The formulation of the statute is designed

to impose liability upon a corporation which is a perpetrator of illegal activity but not upon an

unwitting conduit of its employees' RICO violations." *Busby v. Crown Supply, Inc.*, 896 F.2d 833,

n. 5 (4th Cir. 1990) (quoting *D & S Auto Parts, Inc. v. Schwartz*, 838 F.2d 964, 967 (7th. Cir.

1988).

A corporation may be held liable for the unlawful acts of its employees if the employees

were acting with the scope of their employment. *United States v. Automated Med. Labs., Inc.*, 770

F.2d 399, 406 (4th Cir. 1985); See *Morley v. Cohen*, 610 F. Supp. 798 (D. Md. 1985) (Holding a

corporation can be held liable under RICO for the acts of its agents and/or representatives

committed within the scope of their authority); See also *Bernstein v. IDT Corp.,* 582 F. Supp. 1079,

1083 (D. Del.1984) ("When conduct is proscribed by a federal statute and civil liability for that conduct is explicitly or implicitly imposed, the normal rules of agency law apply in the absence of some indications that Congress had a contrary intent."). "The appropriate 'scope of employment' of such an employee or agent has been defined to include all those acts falling within the employee's or agent's general line of work, when they are motivated—at least in part—by an intent to benefit the corporate employer." *United States v. Singh*, 518 F.3d 236, 249 (4th Cir. 2008). An employee's actions may be within the scope of employment "even if ... such acts were against corporate policy or express instructions." *United States v. Basic Constr. Co.*, 711 F.2d 570, 573 (4th Cir. 1983). Scope of employment "has been broadly defined to include acts on the corporation's behalf in performance of the agent's general line of work." *Automated Med. Labs.*, 770 F.2d at 407. "[T]he scope of an agent's authority is not unlimited and does not extend to actions that harm the interests of the principal." *United States v. Hilton*, 701 F.3d 959, 970 (4th Cir. 2012). "[A]n act of a servant is not within the scope of employment if it is 'within an independent course of conduct not intended by the employee to serve any purpose of the employer.'" *Id.* (quoting Restatement (Third) of Agency § 7.07(2) (2006)).

This Court denies Defendant Adidas' Motion to Dismiss as to its claim that Plaintiff failed to plausibly allege Defendant Adidas' vicarious liability for three reasons. (ECF No. 94). First, this Court finds that Plaintiff has sufficiently alleged Defendant Adidas' employees or agents knew that the purported sham invoices were false and that the certifications of Plaintiff's eligibility were inaccurate in order to meet the requirements set forth by Rule 9(b). *Id.* Plaintiff adequately alleged that Defendant Gatto (Director of Sports Marking for basketball at Adidas for over twenty years) had knowledge of the scheme and played a significant role in the approval of the sham invoices. (ECF No. 84 at ¶ 202, 203, 205, 206, 218, 219, 224, and 225).

Additionally, Plaintiff alleged Defendant Rivers (Senior Player Relations Manager for Adidas' basketball division since 2009) had knowledge of the scheme because he advised the participants not to include details about it in writing. (ECF No. 84 at ¶ 110). Defendant Rivers is also alleged to be responsible for Plaintiff's false certification because he allegedly set up the Karolina Khaos account in Adidas' system which was used to funnel bribe payments to players' families, including Plaintiff's father. (ECF No. 84 at ¶ 176).

Second, Defendant Adidas' argues that Plaintiff has failed to establish knowledge of the alleged scheme by anyone in senior management at Adidas such that it can be held vicariously liable. (ECF No. 94) ("This is not the kind of case implicating the corporation's general counsel"). In *United States v. Basic Construction*, the Fourth Circuit rejected this exact argument and held that the Government did not have to prove "that the corporation presumably as represented by its upper level officers and managers, had an intent separate from that of its lower level employees." *United States v. Basic Construction Co.*, 711 F.2d 570, 573 (4th Cir. 1983) (The Fourth Circuit affirmed defendant's conviction based on evidence showing that the bid rigging activities were perpetrated by two relatively minor officials and were done without the knowledge of high level corporate officers); *See United States v. Automated Medical Laboratories, Inc.*, 770 F.2d 399 (4th Cir. 1985) (The Court rejected corporate Defendant's argument that Plaintiff failed to establish that "any officer or director…knowingly and willfully participated in or authorized the unlawful practices…"). Despite Fourth Circuit precedent establishing that knowledge by high level officials is unnecessary, Plaintiff adequately alleged Defendants Gatto and Rivers had knowledge of the alleged scheme and were senior management as indicated by their titles. Further, Plaintiff alleged approval of sham invoices by Zion Armstrong (Adidas America's second in command), Chris

McGuire (Adidas' Head of Sports Marketing), and Gerald Adams (Adidas' Director of Finance). (ECF No. 84 at ¶ 154, 225 and 205).

Third, this Court declines to accept Defendant Adidas' argument that it cannot be held liable for unauthorized actions of its employees and/or agents. (ECF No. 94). Defendant Adidas' argues that wire fraud and money laundering were not within the scope of authority provided by Adidas to its employees or agents. (ECF No. 94). For support, Defendant Adidas points to Defendant Gassnola's contract which explicitly states that it would be terminated if Gassnola's team "fails to abide by the laws, statutes, regulations or rules of any government." (ECF No. 84-11). In *United States v. Automated Medical Laboratories, Inc.*, the Fourth Circuit held that a corporate Defendant could not be absolved of legal responsibility for its agents' actions even though their actions were "unlawful and contrary to corporate policy." *U.S. v. Automated Medical Laboratories, Inc.*, 770 F.2d 399 (4th Cir. 1985) (citing *United States v. Basic Construction Co.*, 711 F.2d 570 (4th Cir. 1983). Further, scope of employment has been defined as acts falling within the employee's or agent's general line of work, when they are motivated—at least in part—by an intent to benefit the corporate employer." *United States v. Singh*, 518 F.3d 236, 249 (4th Cir. 2008).

Several Defendants have conceded that they acted for the benefit of Defendant Adidas. (ECF No. 34) (Gatto admitted "every allegation in the Complaint with respect to Mr. Gatto involves his acts…within the scope of his employment with Adidas."); (ECF No. 56-4) ("The actions taken by Mr. Code…were both directed and encouraged by Adidas."); (ECF No. 56-9) (During the Gatto trial, Gassnola admitted to paying families…and the payments were made for Adidas benefit.). This Court finds the evidence cited by Plaintiff in its Response to be highly persuasive and significant to this Court's conclusion that Plaintiff has plausibly alleged

Defendants' actions were within their scope of employment and that Defendant Adidas was not a mere victim of the alleged scheme. Therefore, Defendant Adidas' Motion to Dismiss based on Plaintiff's failure to plausibly allege Defendant Adidas' vicarious liability is denied. (ECF No. 94).

### c.  Standing

Defendants' Motion to Dismiss based on lack of RICO standing is denied. (ECF No. 93, 94, 96, and 97).  Defendants raised this argument in their first Motions to Dismiss, and in its previous Order, this Court reserved its decision on whether Plaintiff's allegations satisfied the RICO standing requirements "due to the leave granted to Plaintiff to amend his pleadings." (ECF No. 82). Defendants contend that the allegations in Plaintiff's Amended Complaint still do not meet the requirements for RICO standing. (ECF No. 93, 94, 96, and 97).  Defendant Adidas argues that Plaintiff's amended complaint does not allege the Defendants committed RICO violations which were the direct and proximate cause of any business or property injury. (ECF No. 94). Defendants Code and Sood adopt and join the argument set forth by Defendant Adidas in its Motion to Dismiss. (ECF No. 93 & 96). Defendant Rivers has filed a separate Motion to Dismiss arguing Plaintiff lacks RICO standing as to Defendant Rivers, specifically. (ECF No. 97).

The RICO statute provides a civil cause of action to one "injured in his business or property by reason of" a RICO violation. 18 U.S.C. § 1964(c). To have standing to bring a private RICO claim, a plaintiff plausibly must allege that he suffered an injury to his property and that injury was caused by the asserted RICO violation. *See generally Walters v. McMahen*, 684 F.3d 435, 444 (4th Cir. 2012) ("[T]he RICO predicate acts must not only be a 'but for' cause of a plaintiff's injury, but the proximate cause of that injury as well."). Based on the foregoing reasons, this Court denies Defendants' Motions to Dismiss based on Plaintiff's lack of RICO standing. (ECF No. 93, 94, 96, and 97).

Defendants assert that Plaintiff has failed to allege he suffered a cognizable injury to his business or property as a result of the Defendants' alleged RICO violations because the amended complaint merely contains bald assertions that Plaintiff lost opportunities or expectancy interests associated with his ineligibility to play NCAA basketball. *Id.* Plaintiff has pled thirteen injuries that he has suffered as a result of Defendants' alleged racketeering activity. (ECF No. 84 at ¶ 282).

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *National Organization of Women, Inc. v. Scheilder*, 510 U.S. 249, 255, 114 S.Ct. 798, 803 (1994) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992)). In *National Organization of Women, Inc. v. Scheilder*, the Delaware Women's Health Organization, Inc. ("DWHO") and Summit Women's Health Organization, Inc. ("SWHO") alleged that respondents were members of a nationwide conspiracy to shut down abortion clinics through a pattern of racketeering activity. *Id.* Respondents argued DWHO and SWHO lacked RICO standing to bring their claims because the complaint "alleges no 'injury' to DWHO and SWHO 'fairly traceable to the defendant's allegedly unlawful conduct.'" *Id.* Petitioners alleged "this conspiracy 'has injured the business and/or property interests of the [petitioners].'" *Id.* Notably, the Supreme Court held "nothing more is needed to confer standing on DWHO and SWHO at the pleading stage." *Id.*

Additionally, "standing represents a jurisdiction requirement which remains open to review at all stages of the litigation." *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 546 – 547, 106 S. Ct. 1326, 1333 – 1334 (1986). While Defendants' standing arguments may have merit, their arguments to do not warrant dismissal of Plaintiff's claims at this early stage in the proceedings. (ECF No. 93, 94, 95, 96, and 97). Therefore, Defendants' Motions to Dismiss are denied as to

standing because this Court finds Plaintiff has alleged sufficient facts concerning causation and injury required for RICO to enable him to proceed beyond the pleading stage of this case. *Id.*

## IV.    CONCLUSION

After carefully reviewing the applicable laws, the record in the case, and the briefs of the parties, Defendants' Motions to Dismiss are granted as to Plaintiff's allegation of money laundering premised on tax fraud, and that allegation is dismissed with prejudice. (ECF No. 93, 94, 95, 96, and 97).  Further, Defendants' Motion to Dismiss is granted as to Plaintiff's allegation of the first bribe payment made to Smith, Jr.'s father in ¶ 144 as it failed to satisfy Rule 9(b) and as such, this Court will not consider it. Finally, Defendants' Motions to Dismiss are denied as to all remaining arguments. Accordingly, Defendants' Motions to Dismiss (ECF No. 93, 94, 95, 96, and 97) are granted in part and denied in part.

IT IS SO ORDERED.

February 27, 2020                                          Joseph F. Anderson, Jr.
Columbia, South Carolina                              United States District Judge