UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

BRIAN BOWEN II,

PLAINTIFF,

v.

ADIDAS AMERICA, INC.;
JAMES GATTO; MERL CODE;
CHRISTIAN DAWKINS; MUNISH
SOOD; THOMAS GASSNOLA; and
CHRISTOPHER RIVERS,

DEFENDANTS.

NO. 3:18-CV-3118-JFA

## ADIDAS'S ANSWER TO THE AMENDED COMPLAINT AND CROSSCLAIMS AGAINST CROSS-DEFENDANTS BOWEN SR., GASSNOLA, AND SOOD

Throughout Brian Bowen Jr.'s high school career, his father, Brian Bowen Sr., solicited and accepted money in return for promising that his son would play basketball for specific schools and programs. In each instance that Bowen Sr. took money for his son's services, Bowen Jr. in fact played or committed to play for a particular team.

Some of the funds Bowen Sr. received were misappropriated from adidas America, Inc. ("adidas") as part of a larger scheme. In this scheme, former adidas employees and other individuals misappropriated funds to pay families of high school athletes, like Bowen Jr., in exchange for those athletes committing to play for certain schools and programs. The participants in this scheme did not act on behalf of adidas or for its interests. To the contrary, the participants worked together to submit, and cause to be submitted, fraudulent invoices to obtain funds from adidas. In order to evade adidas's internal controls, the fraudulent invoices contained false descriptions of how the funds would be used. For example, an invoice submitted for purported "travel expenses" generated funds used to pay a player's family. adidas was unaware

of this scheme and never would have approved the invoices had it known the funds' intended use.

Bowen Sr. played a central role in this scheme, culminating in striking a $100,000 deal for his son to play basketball at the University of Louisville ("UofL"). Bowen Sr. negotiated the price for Bowen Jr.'s commitment to UofL, arranged for a campus visit, agreed to mischaracterize himself as an Amateur Athletics Union "consultant" (even though he never had provided any such services), accepted a cash payment in a New Jersey office parking lot, and ultimately caused Bowen Jr. to commit to play at UofL. All along, Bowen Sr. knew the funds to be paid to him would be misappropriated from adidas.

Bowen Sr. and his co-conspirators are liable to adidas for the injury to the company resulting from their fraudulent scheme, including the misuse of adidas's money to steer Bowen Jr. to UofL. Likewise, Plaintiff Bowen Jr.'s attempt to use the scheme perpetrated by his father and others as a basis for RICO claims against adidas must fail.

For these reasons, adidas submits this Answer denying liability under the claims asserted in Bowen Jr.'s Amended Complaint, and it brings crossclaims for violations of RICO and Oregon common law fraud against Bowen Sr., as well as Gassnola and Sood who both pleaded guilty to related federal charges of conspiracy to commit wire fraud.

## <u>ADIDAS'S ANSWER TO THE AMENDED COMPLAINT</u>

Defendant adidas America, Inc. ("adidas"), by its undersigned attorneys, for its Answer to the Amended Complaint, states as follows:

1. Denies the allegations in Paragraph 1.

2. Denies the allegations in Paragraph 2.

3. Denies the allegations in Paragraph 3.

4.      Denies the allegations in Paragraph 4, except admits that adidas sponsors various University athletic teams and departments.

5.      Denies the allegations in Paragraph 5, except denies knowledge or information sufficient to form a belief as to the truth of the allegation that the families of student-athletes implicated in the alleged scheme "come from poor or modest backgrounds."

6.      This paragraph does not contain allegations to which a response is required.  To the extent a response is required, adidas denies the allegations in Paragraph 6.

7.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7.

8.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8, except admits that UofL men's basketball team competes at the highest level of college athletics, often plays in front of large crowds and television audiences, and plays home games in the KFC Yum! Center.

9.      Denies the allegations in Paragraph 9, except admits that the Amended Complaint purports to quote from the opinion issued in *O'Bannon v. NCAA*, 802 F.3d 1049 (9th Cir. 2015) and respectfully refers the Court to the reported decision for its true form and contents.

10.      Denies the allegations in the first, fourth, and fifth sentences of Paragraph 10. Denies knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 10.  Admits that when, where, and whether an athlete will be drafted by a professional sports team is determined by many factors that are outside of the athlete's control.

11.      Paragraph 11 states legal conclusions to which no response is necessary.

12.      Paragraph 12 states legal conclusions to which no response is necessary.

13.     Paragraph 13 states legal conclusions to which no response is necessary, except admits that adidas has an agent located at 2 Office Park Court, Suite 103, Columbia, South Carolina 29223.

14.     Denies the allegations in Paragraph 14, except admits that Brian Bowen Jr. is a citizen of the United States and a resident of Columbia, South Carolina, and that in 2017 Bowen Jr. was a McDonald's All-American high school basketball player.

15.     Denies the allegations in Paragraph 15, except admits that adidas is headquartered in Portland, Oregon; sponsors numerous high school basketball programs, NCAA Division I college athletic programs, and professional athletes; is a subsidiary of adidas AG; and distributes a significant percentage of its North American sales from and employs hundreds of individuals in the State of South Carolina.

16.     Denies knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 16, except admits that James Gatto is a citizen of the United States and a resident of Oregon, that he was employed at adidas for over twenty years and at one time held the position Director of Sports Marketing—Basketball, and that on or around September 25, 2017, Gatto was arrested and charged in a criminal complaint by the U.S. Attorney for the Southern District of New York and respectfully refers the Court to that complaint for its true form and contents.

17.     Denies knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 17, except admits that Code is a citizen of the United States and resident of South Carolina, and that on or around September 25, 2017, Code was arrested and charged in a criminal complaint by the U.S. Attorney for the Southern District of New York; adidas respectfully refers the Court to that complaint for its true form and contents.

18.     Denies knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 18, except admits that Dawkins is a citizen of the United States and a resident of Michigan; that Dawkins was a director of the adidas-sponsored AAU team Dorian's Pride, and that, on or around September 25, 2017, Dawkins was arrested and charged in a criminal complaint by the U.S. Attorney for the Southern District of New York; adidas respectfully refers the Court to that complaint for its true form and contents.

19.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19, except admits that Sood is a citizen of the United States and resident of New Jersey, and that Sood was arrested and charged by the U.S. Attorney for the Southern District of New York and pleaded guilty to certain offenses; adidas respectfully refers the Court to the applicable court documents for their true form and contents.

20.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20, except admits that Gassnola is a citizen of the United States and a resident of Massachusetts; was a paid outside consultant to adidas; was team director of the adidas-sponsored AAU basketball team known as the New England Playaz, a program that received approximately $761,810 in sponsorship money from adidas; and was arrested and charged in a criminal complaint with one count of conspiracy to commit wire fraud by the U.S. Attorney for the Southern District of New York; and pleaded guilty to that charge.

21.     Denies knowledge and information sufficient to form a belief as to the allegations in Paragraph 21, except admits that Rivers is a citizen of the United States, resides in Oregon, and is a former adidas employee who at one time held the title of Senior Player Relations Manager.

22.     Admits the allegations in Paragraph 22.

23.    Admits that intercollegiate athletics provide significant revenue and publicity for the NCAA, its member schools, and its conferences, and denies knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 23.

24.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24, except admits that the NCAA stated that "[t]elevision and marketing rights fees, primarily from the Division I men's basketball championship, generate the majority of our revenue. Championship ticket sales provide most of the remaining dollars."

25.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25.

26.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26.

27.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27, except admits that the Amended Complaint purports to quote from an opening statement in a different proceeding and respectfully refers the Court to that document for its true form and contents.

28.    Denies the allegations in Paragraph 28, except admits that the Amended Complaint purports to quote from an article published by Bloomberg and respectfully refers the Court to that document for its true form and contents.

29.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29 and respectfully refers the Court to the NCAA constitution, bylaws, regulations, manuals, rule interpretations, and policy statements for their true form and contents.

30.    Admits that NCAA rules govern eligibility for student athletes, but denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in Paragraph 30 and respectfully refers the Court to the NCAA rules and regulations for their true form and contents.

31.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 and respectfully refers the Court to the NCAA rules and bylaws for their true form and contents.

32.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 and respectfully refers the Court to the NCAA rules and bylaws for their true form and contents.

33.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33 and respectfully refers the Court to the NCAA rules and bylaws for their true form and contents.

34.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34 and respectfully refers the Court to the NCAA rules and bylaws for their true form and contents.

35.     Denies the allegations contained in Paragraph 35, except admits that the Amended Complaint purports to quote from an article in NewsOK and respectfully refers the Court to that article for its true form and contents.

36.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36, except admits that the Amended Complaint purports to quote from an article in the Oregon Law Review and respectfully refers the Court to the article for its true form and contents.

37.    Denies the allegations in Paragraph 37, except admits that the Amended Complaint purports to quote from an NCAA report and the NCAA constitution and respectfully refers the Court to those documents for their true form and contents.

38.    Denies the allegations in Paragraph 38.

39.    Denies the allegations in Paragraph 39.

40.    Omitted.

41.    Denies the allegations of Paragraph 41, except admits that, from time to time, adidas has entered into sponsorship agreements with various leagues, teams, and professional basketball players.

42.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 42.

43.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 43.

44.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 44.

45.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 45.

46.    Denies the allegations contained in Paragraph 46.

47.    Denies the allegations contained in Paragraph 47, except admits that adidas's original tennis shoe was renamed and rebranded as the "Stan Smith" in 1971, and that adidas has sold approximately 30 million pairs of Stan Smith sneakers since the shoe's introduction.

48.    Denies the allegations contained in Paragraph 48, except admits that adidas signed sneaker endorsement deals with Pharrell Williams and Kanye West.

49.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 49.

50.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 50, except admits that Sports Illustrated's March 26, 1979 cover featured Larry Bird wearing Nike sneakers.

51.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 51.

52.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 52, except admits that the Amended Complaint purports to quote an article in the Portland Business Journal and respectfully refers the Court to that document for its true content.

53.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 53, except admits that the Amended Complaint purports to quote an interview published in The New York Times and respectfully refers the Court to that document for its true content.

54.     Admits the allegations in Paragraph 54.

55.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 55.

56.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 56, but admits the Amended Complaint purports to quote from a court filing by Skechers and respectfully refers the Court to that document for its true content.

57.     Denies the allegations in Paragraph 57.

58.    Denies the allegations in Paragraph 58.

59.    Denies the allegations in Paragraph 59, except admits that a photograph formerly displayed on an adidas webpage regarding adidas-sponsored grassroots basketball competitions and programs included Bowen Jr. and another basketball player in the foreground, with numerous other players in the background.

60.    Denies the allegations in Paragraph 60.

61.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 61.

62.    Denies the allegations in Paragraph 62.

63.    Denies the allegations in Paragraph 63, except admits that adidas signed a deal in 2006 allowing it to place its logo on NBA players' warm-up gear.

64.    Denies the allegations in Paragraph 64, but admits that adidas signed a player endorsement contract with Derrick Rose on February 24, 2012 and respectfully refers the Court to that document for its true form and contents.

65.    Denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 65, except admits that adidas signed a player endorsement contract with Derrick Rose on February 24, 2012 and respectfully refers the Court to that document for its true content.

66.    Denies the allegations in Paragraph 66, except admits that in June 2014 Mark King became the CEO of adidas.

67.    Denies the allegations in Paragraph 67, except admits that Chris Grancio previously held the position of adidas's General Manager for Global Basketball and admits that the Amended Complaint purports to quote from a Portland Business Journal article and respectfully refers the Court to that document for its true content.

68.    Denies the allegations in Paragraph 68, except admits that certain basketball teams and leagues sponsored by the AAU and sneaker companies receive benefits from sneaker companies, such as athletic gear and expenses for travel to basketball tournaments.

69.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 69.

70.    Denies the allegations in Paragraph 70, except admits that sneaker companies sponsor summer camps and tournaments for middle school and high school basketball players.

71.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 71, but admits that the Amended Complaint purports to quote from an NBA Basketball document and respectfully refers the Court to that document for its true form and contents.

72.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 72, but admits that the Amended Complaint purports to repeat a quote attributed to Tom Konchalski in a New York Times article and respectfully refers the Court to that article for its true form and contents.

73.    Denies the allegations in Paragraph 73, except admits that adidas's Junior Gauntlet summer league includes player-participants in fifth to eighth grades, and that the Amended Complaint purports to quote an article in The Big Lead and respectfully refers the Court to that document for its true form and contents.

74.    Denies the allegations in Paragraph 74, except admits that the Rice Commission made the statement quoted in Paragraph 74.

75.    Admits that Mark King previously served as CEO of adidas, and admits that during his tenure adidas entered into sponsorship agreements with universities including UofL, but otherwise denies the allegations in Paragraph 75.

76.    Denies the allegations in Paragraph 76, except admits that adidas and UofL signed an agreement in 1998 and respectfully refers the Court to that agreement for its true form and contents.

77.    Admits the allegations in Paragraph 77.

78.    Admits the allegations in Paragraph 78.

79.    Admits the allegations in Paragraph 79.

80.    Denies the allegations in the first sentence of Paragraph 80 and admits the allegations in the second sentence of Paragraph 80.

81.    Denies the allegations in Paragraph 81 and respectfully refers the Court to the referenced agreement for its true form and contents.

82.    Denies the allegations in Paragraph 82, except admits that adidas's contract with UofL includes terms governing the rights and obligations of the parties when circumstances require that players not wear adidas apparel or cover the adidas logo.  adidas respectfully refers the Court to that contract for its true form and contents.  adidas also admits that the Amended Complaint purports to quote from a book authored by Michael Sokolove and respectfully refers the Court to that document for its true content.

83.    Denies the allegations contained in Paragraph 83, except admits that negotiations over the agreement lasted a period of months and that adidas employees were involved in the negotiations.

84.    Denies the allegation in Paragraph 84 that adidas engaged in racketeering activity, and otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 84.

85.    Admits that, on September 26, 2017, federal authorities arrested Gatto, Sood, and Dawkins, and unsealed three criminal complaints.  adidas respectfully refers the Court to those criminal complaints for their true form and contents.

86.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 86.

87.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 87.

88.    Denies the allegations in Paragraph 88.

89.    Admits the allegations in Paragraph 89.

90.    Admits the allegations in Paragraph 90.

91.    Admits the allegations in Paragraph 91.

92.    Denies the allegations in Paragraph 92 to the extent it makes allegations against adidas, and admits that the Amended Complaint quotes a statement made by then-Acting U.S. Attorney for the Southern District of New York Joon Kim.

93.    Denies the allegations in Paragraph 93 to the extent it makes allegations against adidas, and admits that the Amended Complaint quotes a statement made by then-FBI Assistant Director William Sweeney, Jr.

94.    Admits the allegations in Paragraph 94.

95.    Admits the allegations in Paragraph 95.

96.    Admits the allegations in Paragraph 96.

97.     Admits the allegations in Paragraph 97.

98.     Admits the allegations in Paragraph 98.

99.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 99, except admits that adidas produced over 89,000 pages of material in response to subpoenas it received.

100.    Admits the allegations in the first sentence of Paragraph 100 and admits that the second sentence of Paragraph 100 purports to quote from a subpoena issued to the University of Kansas and respectfully refers the Court to that document for its true form and contents.

101.    Admits the allegations in Paragraph 101.

102.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 102 relating to Bowen Jr.'s beliefs and intentions, and otherwise denies the allegations in Paragraph 102.

103.    Denies the allegations in Paragraph 103.

104.    Denies the allegations in Paragraph 104.

105.    Denies the allegations in Paragraph 105, except admits that the Amended Complaint quotes accurately from the transcript.

106.    Denies the allegations in Paragraph 106, except admits that the Amended Complaint quotes accurately from the transcript.

107.    Denies the allegations in Paragraph 107.

108.    Denies the allegations in the introductory sentence of Paragraph 108.  Denies the allegations in Paragraph 108(a), except admits that funds fraudulently taken from adidas were used by others to pay Bowen Sr.  Denies the allegations of Paragraph 108(b), except admits that Sood and Dawkins liaised with the family members of student-athletes who accepted payments.

14

Denies the allegations in the first through third sentences of Paragraph 108(c), except admits that certain coaches at NCAA Division I men's basketball programs, including UofL, were aware of payments accepted by family members of student-athletes and solicited those payments.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the fourth, fifth, and sixth sentences of Paragraph 108(c), except admits that Kenny Johnson was an assistant basketball coach at UofL, and, before that, at Indiana University; that Jordan Fair was an assistant basketball coach at UofL, that Bill Self is the head men's basketball coach at the University of Kansas; that Kurtis Townsend is an assistant head men's basketball coach at the University of Kansas; and that Orlando Early was an assistant men's basketball coach at North Carolina State University.  Denies the allegations of the first and second sentences of Paragraph 108(d), and denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the third through sixth sentences of Paragraph 108(d), except admits that 1 Family, Karolina Khaos, and New England Playaz were adidas-sponsored AAU basketball teams based respectively in Florida, South Carolina, and Massachusetts.

109.    Denies the allegations in Paragraph 109.

110.    Denies the allegations in Paragraph 110, except admits that the Amended Complaint purports to quote from an email sent by Rivers and respectfully refers the Court to that document for its true form and contents.

111.    Admits the allegations in Paragraph 111 as to the description of Gassnola's testimony, and otherwise denies the allegations in Paragraph 111.

112.    Admits the allegations in Paragraph 112 as to the description of Gassnola's testimony, and otherwise denies the allegations in Paragraph 112.

113.    Denies the allegations in Paragraph 113.

114.    Paragraph 114 contains legal conclusions to which no response is necessary.  To the extent a response is necessary, adidas denies the allegations in Paragraph 114.

115.    Denies the allegations in Paragraph 115.

116.    Denies the allegations in Paragraph 116 insofar as they relate to the purported conduct and motivations of adidas and the existence of the alleged "Enterprise," and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 116.

117.    Denies the allegations in Paragraph 117, except admits that steps were taken by certain defendants to conceal their conduct from adidas.

118.    Admits the allegation in the first sentence of Paragraph 118.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of Paragraph 118.

119.    Denies the allegations in Paragraph 119.

120.    Denies the allegations in Paragraph 120, except admits that the Amended Complaint purports to quote from a filing by adidas in a proceeding in the U.S. District Court for the District of Kansas and respectfully refers the Court to that filing for its true form and contents.

121.    Denies the allegations in Paragraph 121.

122.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 122.

123.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 123, except admits that Paragraph 123 purports to quote from a sponsorship agreement between adidas and UofL and from a filing in *Adidas v. NCAA*,

referenced in ECF No. 56-8; adidas respectfully refers the Court the those documents for their true form and contents.

124.   Denies the allegations in Paragraph 124.

125.   Denies the allegations in Paragraph 125.

126.   Denies the allegations in Paragraph 126, except admits that certain players are highly sought after by college basketball programs for reasons that may include the possibility that their play may enhance the success, revenues, and prestige of the basketball program.

127.   Admits the Amended Complaint purports to quote from an expert report authored by Daniel Rascher and respectfully refers the Court to that document for its true form and contents.

128.   Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 128, except admits that the Amended Complaint quotes from media reports.

129.   Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 129.

130.   Denies the allegations in Paragraph 130, except admits that the Amended Complaint quotes a recorded conversation to which Code was a party.

131.   Denies the allegations in Paragraph 131.

132.   Denies the allegations in Paragraph 132.

133.   Denies the allegations in Paragraph 133.

134.   Denies the allegations in Paragraph 134.

135.    Denies the allegations in Paragraph 135, except admits that the Amended Complaint quotes the NCAA bylaws and respectfully refers the Court to that document for its true form and contents.

136.    Denies the allegations in the first sentence of Paragraph 136.  The second sentence of Paragraph 136 contains legal conclusions to which no response is necessary.  To the extent a response is necessary, adidas denies the allegations in Paragraph 136.

137.    Denies the allegations in Paragraph 137.

138.    A response to Paragraph 138 is not necessary because the Court has held that these allegations are insufficient and will not be considered as part of the Amended Complaint. (Feb. 27, 2020 Order at 9–10.)  To the extent any response to the allegations contained in Paragraph 138 is necessary, adidas denies them.

139.    A response to Paragraph 139 is not necessary because the Court has held that these allegations are insufficient and will not be considered as part of the Amended Complaint. (Feb. 27, 2020 Order at 9–10.)  To the extent any response to the allegations contained in Paragraph 138 is necessary, adidas denies them.

140.    A response to Paragraph 140 is not necessary because the Court has dismissed these allegations with prejudice.  (Feb. 27, 2020 Order at 13–16, 22.)  To the extent any response to the allegations contained in Paragraph 140 is necessary, adidas denies them.

141.    Denies the allegations in Paragraph 141.

142.    Denies the allegations in Paragraph 142.

143.    A response to Paragraph 143 is not necessary because the Court has dismissed these allegations with prejudice.  (Feb. 27, 2020 Order at 8–9, 22.)  To the extent any response to the allegations contained in Paragraph 143 is necessary, adidas denies them.

144.    A response to Paragraph 144 is not necessary because the Court has dismissed these allegations with prejudice.  (Feb. 27, 2020 Order at 8–9, 22.)  To the extent any response to the allegations contained in Paragraph 144 is necessary, adidas denies them.

145.    Admits the allegations in Paragraph 145.

146.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 146, except admits that the Amended Complaint purports to quote a transcript of testimony given by Gassnola and respectfully refers the Court to that transcript for its true form and contents.

147.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 147 subparts (a)–(e) and (g)–(i); admits that Gassnola submitted an invoice to adidas dated November 1, 2015, requesting $30,000 for matters related to the New England Playaz; admits that on November 5, 2015, Gatto emailed this invoice to an adidas accountant with his approval for adidas to make the payment; admits that, on November 12, 2015, adidas deposited $30,000 from its corporate account into the New England Playaz account via ACH electronic bank transfer; and otherwise denies the allegations in Paragraph 147.

148.    Denies the allegations in the first and second sentences of Paragraph 148, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in the third and fourth sentences of Paragraph 148.

149.    Admits the allegations in Paragraph 149.

150.    Denies the allegations in Paragraph 150, except admits that Dennis Smith Jr. entered the NBA draft, played for the Dallas Mavericks for two years, and now plays for the New York Knicks, and admits that the Amended Complaint purports to quote from an article appearing in SBNation.com and respectfully refers the Court to that article for its true content.

151.    Admits the allegations in Paragraph 151.

152.    Denies the allegations in Paragraph 152.

153.    Denies the allegations in Paragraph 153.

154.    Denies the allegations in Paragraph 154, except admits that Gassnola submitted, with Gatto's knowledge, sham invoices to adidas requesting the funds and that the Amended Complaint purports to summarize testimony given by Gassnola, and respectfully refers the Court to the transcript and referenced exhibits for their true form and contents.

155.    Denies the allegations in Paragraph 155.

156.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 156, except admits that the Amended Complaint purports to quote from records of messages exchanged between Kurtis Townsend and Gassnola and respectfully refers the Court to those records for their true form and contents.

157.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 157, except admits that the Amended Complaint purports to quote from records of messages exchanged between Kurtis Townsend and Gassnola and respectfully refers the Court to those records for their true form and contents.

158.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 158.

159.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 159, except admits that the Amended Complaint purports to quote from messages between Bill Self and Gassnola and respectfully refers the Court to those communications for their true content.

160.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 160, except admits that in August 2017 adidas and the University of Kansas were negotiating an extension of their apparel sponsorship agreement.

161.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 161, except admits that the Amended Complaint purports to quote from records of messages exchanged between Townsend and Gassnola and respectfully refers the Court to those records for their true content, and admits that De Sousa was a player on the Florida Vipers AAU team.

162.    Denies the allegations in Paragraph 162, except admits that the Amended Complaint purports to quote from records of messages exchanged between Bill Self and Gassnola and respectfully refers the Court to those records for their true form and contents.

163.    Denies the allegations in Paragraph 163, except admits that the Amended Complaint purports to summarize evidence and testimony introduced in another proceeding and respectfully refers the Court to the transcript and documents described for their true form and contents; admits that on September 22, 2017, adidas publicly announced the extension of its sponsorship agreement with the University of Kansas wherein adidas agreed to continue providing Kansas student-athletes with adidas-branded footwear, uniforms, apparel, and accessories through 2031; admits that De Sousa orally committed to play basketball at the University of Kansas on August 27, 2017, and officially signed with the University of Kansas on August 30, 2017; and denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 163(j).

164.    Denies the allegations in the first and second sentences of Paragraph 164, denies knowledge or information sufficient to form a belief as to the truth of the allegations in the third

sentence of Paragraph 164, and admits that the Amended Complaint purports to summarize testimony of University of Kansas compliance officials and respectfully refers the Court to the transcript of that testimony for its true form and contents.

165.    Denies the allegations in Paragraph 165, except admits that the Amended Complaint purports to quote from messages between Gatto and Code and respectfully refers the Court to those communications for their true form and contents, and admits that the University of Miami played 32 games during the 2017–18 season, each of which was publicly announced prior to its occurrence.

166.    Denies the allegations in Paragraph 166.

167.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 167.

168.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 168.

169.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 169, except admits that under the NCAA rules recruits are allowed five official visits to Division I schools.

170.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 170.

171.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 171.

172.    Admits the allegations in Paragraph 172.

173.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 173.

174.     Denies the allegations in Paragraph 174.

175.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 175, except admits that the Amended Complaint purports to quote from a text message between Dawkins and Code and respectfully refers the Court to that document for its true form and contents.

176.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 176, except admits that the Amended Complaint purports to quote from a text message between Gatto and Code and respectfully refers the Court to that document for its true form and contents, and admits that on May 18, 2017, Brian Chatman submitted information to Chris Rivers relating to the Karolina Khaos team.

177.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 177, except admits that the Amended Complaint quotes from records of a text message exchange between Dawkins and Code and respectfully refers the Court to those records for their true form and contents.

178.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 178, except admits that the Amended Complaint quotes from call records between Dawkins and Code and respectfully refers the Court to those records for their true form and contents.

179.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 179, except admits that the Amended Complaint quotes from records of text messages exchanged between Dawkins and Bowen Jr. and respectfully refers the Court to those records for their true form and contents.

180.     Admits the allegations in Paragraph 180.

181.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 181, except admits that the Amended Complaint quotes from records of text messages exchanged between Dawkins and Code and respectfully refers the Court to those records for their true form and contents.

182.    Admits the allegations in Paragraph 182.

183.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 183.

184.    Denies the allegations in Paragraph 184, except admits that Dawkins accompanied Bowen on his visit to UofL.

185.    Denies the allegations in Paragraph 185.

186.    Denies the allegations in Paragraph 186.

187.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in in Paragraph 187.

188.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 188.

189.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 189, except admits that Division I programs are limited in the number of basketball scholarships they may offer and that UofL has been ranked by Forbes as the most valuable college basketball program in America, averaging annual revenues of $52 million and profits of $30 million during the 2014–15 to 2016–17 seasons.

190.    Denies the allegations of Paragraph 190.

191.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 191, except admits that the Amended Complaint purports to quote from

records of text messages exchanged between Dawkins and Code and respectfully refers the Court to those records for their true form and contents.

192.    Denies the allegations in Paragraph 192, except admits the Amended Complaint references records of a series of phone communications among Code, Gatto, and Dawkins and records of text messages exchanged between Dawkins and Code, and respectfully refers the Court to those records for their true form and contents.

193.    Denies the allegations in Paragraph 193, except admits the Amended Complaint references records of a series of phone communications among Code, Gassnola, Gatto, and Dawkins and records of text messages exchanged among Code, Dawkins, and Gassnola, and respectfully refers the Court to those records for their true form and contents.

194.    Denies the allegations in Paragraph 194, except admits the Amended Complaint references records of a series of messages exchanged between Dawkins and Bowen Jr.'s mother and respectfully refers the Court to those records for their true form and contents, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 194(d).

195.    Denies the allegations in Paragraph 195, except admits the Amended Complaint references records of text message exchanged between Dawkins and Gassnola and respectfully refers the Court to those messages for their true form and contents.

196.    Admits the allegations in Paragraph 196.

197.    Denies the allegations in Paragraph 197, except admits that on June 1, 2017 Bowen Jr. entered into a student-athlete financial aid contract with UofL.

198.    Admits the allegations in Paragraph 198.

199.    Admits the allegations in the first sentence of Paragraph 199, and admits that the Amended Complaint references testimony of a UofL compliance official and respectfully refers the Court to the transcript of that testimony for its true content.

200.    Denies the allegations in Paragraph 200.

201.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in the first and third sentences of Paragraph 201, except denies the allegation that adidas was engaged in criminal acts and denies the allegations in the second sentence of Paragraph 201.

202.    Denies the allegations in Paragraph 202, except admits that Gatto and Code needed to generate sham purchase orders and invoices to obtain funds from adidas.

203.    Admits the allegations in Paragraph 203.

204.    Denies the allegations in Paragraph 204, except admits that the Amended Complaint references records of text messages exchanged between Code and Dawkins and respectfully refers the Court to those records for their true form and contents.

205.    Admits the allegations in Paragraph 205.

206.    Admits the allegations in Paragraph 206.

207.    Denies the allegations in Paragraph 207, except admits that, on June 20, 2017, Code, Dawkins, Sood, Sood's personal assistant, Marty Blazer, and two undercover FBI agents posing as "Jill Bailey" and "Jeff DeAngelo" met in New York; that the Amended Complaint purports to quote from a transcript of a recording made during that meeting; and respectfully refers the Court to that transcript for its true form and contents.

208.    Admits the allegations in Paragraph 208.

209.    Admits the allegations in the first sentence of Paragraph 209.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 209.

210.    Denies the allegations in Paragraph 210, except admits that, on July 7, 2017, Dawkins was recorded making phone calls on an FBI Wiretap and respectfully refers the Court to the transcript of those recordings for their true form and contents.

211.    Denies the allegations in Paragraph 211, except admits that on July 10, 2017, Code, Sood, and DeAngelo spoke on a telephone call, and that the Amended Complaint purports to summarize the substance of that discussion, and respectfully refers the Court to the transcript of that call for its true form and contents.

212.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 212, except admits the Amended Complaint quotes from records of a text message and respectfully refers the Court to those records for their true form and contents.

213.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 213, except admits the Amended Complaint quotes from records of text messages and respectfully refers the Court to those records for their true form and contents.

214.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 214, except admits the Amended Complaint quotes from transcripts of recorded phone calls and text message records and respectfully refers the Court to the transcript and records for their true form and contents.

215.    Admits the allegations in Paragraph 215.

216.    Admits the allegations in Paragraph 216.

217.     Denies the allegations in Paragraph 217, except admits the Amended Complaint quotes from a transcript of a recorded phone call and records of text messages exchanged between Dawkins and Gatto, and respectfully refers the Court to the transcript and those records for their true form and contents.

218.     Admits the allegations in Paragraph 218.

219.     Admits the allegations in Paragraph 219.

220.     Admits the allegations in the first sentence of Paragraph 220.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in the second and third sentences of Paragraph 220.

221.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 221.

222.     Denies the allegations in Paragraph 222, except admits that the Amended Complaint quotes from a transcript of a recorded phone call that took place on August 16, 2017, and respectfully refers the Court to the transcript of that call for its true form and contents.

223.     Denies the allegations in Paragraph 223, except admits that on August 31, 2017, individuals associated with UofL certified the eligibility of the players on its men's basketball team, including Bowen Jr.

224.     Denies the allegations in Paragraph 224, except admits that in mid-September 2017, Gatto and Code discussed plans to create another sham invoice to cover a second $25,000 installment of the payment that was to be made to Bowen Sr., and admits the Amended Complaint purports to quote from a transcript of a recorded telephone call between Gatto and Code that took place on September 13, 2017, and respectfully refers the Court to the transcript of that call for its true form and contents.

225.    Admits the allegations in Paragraph 225.

226.    Denies the allegations in the first sentence in Paragraph 226, except admits that, on September 20, 2017, adidas wired $25,000 to the Karolina Khaos account.  Admits the remaining allegations in Paragraph 226.

227.    Admits the allegations in Paragraph 227.

228.    Denies the allegations in Paragraph 228.

229.    Denies the allegations in Paragraph 229.

230.    Denies the allegations in Paragraph 230.

231.    Denies the allegations in Paragraph 231.

232.    Denies the allegations in Paragraph 232, except admits that the Amended Complaint purports to summarize the testimony of John Carns and respectfully refers the Court to the transcript of that testimony for its true form and contents.

233.    Denies the allegations in the first sentence of Paragraph 233, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations, except admits that the Amended Complaint purports to summarize a meeting that took place on or about July 27, 2017, that was recorded by federal authorities, and respectfully refers the Court to the transcript of that recording for its true form and contents.

234.    Admits the allegations in Paragraph 234.

235.    A response to Paragraph 235 is not necessary because the Court has dismissed these allegations with prejudice.  (Feb. 27, 2020 Order at 13–16, 22.)  To the extent any response to the allegations contained in Paragraph 235 is necessary, adidas denies them.

236.    Denies the allegations in Paragraph 236.

237.    Denies the allegations in Paragraph 237, except admits that the Amended Complaint purports to quote from a pleading filed in *Sketchers USA, Inc. v. Adidas America, Inc.*, No. 2:18-cv-03882 (C.D. Cal. May 9, 2018) and respectfully refers the Court to that document for its true form and contents.

238.    Denies the allegations in Paragraph 238.

239.    Denies the allegations in Paragraph 239, except admits that adidas's funds were illicitly embezzled and misappropriated by Code and Gassnola.

240.    Denies the allegations in Paragraph 240, except admits that the Karolina Khaos, New England Playaz, and 1Family AAU teams received portions of the funds illicitly embezzled and misappropriated from adidas.

241.    A response to Paragraph 241 is not necessary because the Court has dismissed these allegations with prejudice.  (Feb. 27, 2020 Order at 13–16, 22.)  To the extent any response to the allegations contained in Paragraph 241 is necessary, adidas denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 241.

242.    A response to Paragraph 242 is not necessary because the Court has dismissed these allegations with prejudice.  (Feb. 27, 2020 Order at 13–16, 22.)  To the extent any response to the allegations contained in Paragraph 242 is necessary, adidas denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 242, except admits that Paragraph 242 purports to quote and reference a transcript of trial testimony, to which adidas respectfully refers the Court for that transcript's true form and contents.

243.    Admits that Code sent Gatto an invoice on or around June 5, 2017, with a description stating it requested funds for "team travel expenses," that Gatto submitted and

approved that invoice for payment by adidas, and otherwise denies the allegations in Paragraph 243.

244.     Admits the allegations in Paragraph 244.

245.     Admits that, on or around June 22, 2017, an employee from adidas's marketing finance department sent an email to Gatto and respectfully refers the Court to the pertinent portions of that communication for its true form and contents.

246.     Admits that Code sent an email to adidas attaching an invoice on or around July 6, 2017, and admits that Code included a false description of expenses in that communication. Otherwise, adidas denies knowledge or information sufficient to form a belief as to the truth of the other allegations in Paragraph 246, except to the extent Paragraph 246 purports to summarize documents and communications.  adidas respectfully refers the Court to the pertinent portions of those documents and communications for their true form and contents.

247.     Denies the allegations in Paragraph 247, except admits that the Amended Complaint purports to summarize documents and communications and respectfully refers the Court to the pertinent portions of those documents and communications for their true form and contents.

248.     Admits the allegation in Paragraph 248 and respectfully refers the Court to the communication referenced therein for its true form and contents.

249.     A response to Paragraph 249 is not necessary because the Court has dismissed these allegations with prejudice.  (Feb. 27, 2020 Order at 13–16, 22.)  To the extent any response to the allegations contained in Paragraph 249 is necessary, adidas admits the allegations in the first sentence of Paragraph 249, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 249.

250.     A response to Paragraph 250 is not necessary because the Court has dismissed these allegations with prejudice.  (Feb. 27, 2020 Order at 13–16, 22.)  To the extent any response to the allegations contained in Paragraph 250 is necessary, adidas denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 250.

251.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 251, except admits that Paragraph 251 purports to quote from records of text messages, and adidas respectfully refers the Court to those records for their true form and contents.

252.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 252.

253.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 253.

254.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 254, except admits that Paragraph 254 purports to quote from email records, and adidas respectfully refers the Court to those records for their true form and contents.

255.     A response to Paragraph 255 is not necessary because the Court has dismissed these allegations with prejudice.  (Feb. 27, 2020 Order at 13–16, 22.)  To the extent any response to the allegations contained in Paragraph 255 is necessary, adidas denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 255, except admits that Paragraph 255 purports to quote and reference a September 15, 2017 invoice, and adidas respectfully refers the Court to the invoice for its true form and contents.

256.     A response to Paragraph 256 is not necessary because the Court has dismissed these allegations with prejudice.  (Feb. 27, 2020 Order at 13–16, 22.)  To the extent any response

to the allegations contained in Paragraph 256 is necessary, adidas admits the allegations in Paragraph 256.

257.    A response to Paragraph 257 is not necessary because the Court has dismissed these allegations with prejudice.  (Feb. 27, 2020 Order at 13–16, 22.)  To the extent any response to the allegations contained in Paragraph 257 is necessary, adidas denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 257, except admits Paragraph 257 purports to quote from and summarize text-message and call records. adidas respectfully refers the Court to those records for their true form and contents.

258.    A response to Paragraph 258 is not necessary because the Court has dismissed these allegations with prejudice.  (Feb. 27, 2020 Order at 13–16, 22.)  To the extent any response to the allegations contained in Paragraph 258 is necessary, adidas denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 258, except admits that Paragraph 258 purports to quote from and summarize financial records.   adidas respectfully refers the Court to those records for their true form and contents.

259.    A response to Paragraph 259 is not necessary because the Court has dismissed these allegations with prejudice.  (Feb. 27, 2020 Order at 13–16, 22.)  To the extent any response to the allegations contained in Paragraph 259 is necessary, adidas denies knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 259, and denies the allegations in the second sentence of Paragraph 259 to the extent it suggests adidas was a part of rather than a victim of the fraud scheme.

260.    A response to Paragraph 260 is not necessary because the Court has dismissed these allegations with prejudice.  (Feb. 27, 2020 Order at 13–16, 22.)  To the extent any response to the allegations contained in Paragraph 260 is necessary, adidas denies the allegations in

Paragraph 260, respectfully refers the Court to the sponsorship agreement between adidas and New England Playaz for its true form and contents, and admits that between January 2016 and August 2017 adidas made payments totaling $761,810 to New England Playaz.

261.    Denies the allegations in Paragraph 261, except to the extent Paragraph 261 asserts that Defendant Gassnola submitted sham invoices to adidas.

262.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 262, except admits that the invoices in Exhibit 52 were paid by adidas.

263     A response to Paragraph 263 is not necessary because the Court has dismissed these allegations with prejudice.  (Feb. 27, 2020 Order at 13–16, 22.)  To the extent any response to the allegations contained in Paragraph 263 is necessary, adidas denies the allegations in Paragraph 263.

264.    A response to Paragraph 264 is not necessary because the Court has dismissed these allegations with prejudice.  (Feb. 27, 2020 Order at 13–16, 22.)  To the extent any response to the allegations contained in Paragraph 264 is necessary, adidas denies the allegations in Paragraph 264.

265.    A response to Paragraph 265 is not necessary because the Court has dismissed these allegations with prejudice.  (Feb. 27, 2020 Order at 13–16, 22.)  To the extent any response to the allegations contained in Paragraph 265 is necessary, adidas denies the allegations in Paragraph 265.

266.    A response to Paragraph 266 is not necessary because the Court has dismissed these allegations with prejudice.  (Feb. 27, 2020 Order at 13–16, 22.)  To the extent any response to the allegations contained in Paragraph 266 is necessary, adidas denies knowledge or information sufficient to form a belief as to the truth of the allegation that "AAU basketball

tournament fees average around $500" and otherwise denies the allegations in Paragraph 266, except admits that an invoice purportedly for "tournament fees" in the amount of $70,000 was approved on May 1, 2017.

267.    A response to Paragraph 267 is not necessary because the Court has dismissed these allegations with prejudice. (Feb. 27, 2020 Order at 13–16, 22.) To the extent any response to the allegations contained in Paragraph 267 is necessary, adidas denies the allegations in Paragraph 267, except admits that adidas's marketing finance department employs procedures such as budget codes to track expenses.

268.    A response to Paragraph 268 is not necessary because the Court has dismissed these allegations with prejudice. (Feb. 27, 2020 Order at 13–16, 22.) To the extent any response to the allegations contained in Paragraph 268 is necessary, adidas denies the allegations in Paragraph 268.

269.    A response to Paragraph 269 is not necessary because the Court has dismissed these allegations with prejudice. (Feb. 27, 2020 Order at 13–16, 22.) To the extent any response to the allegations contained in Paragraph 269 is necessary, adidas denies the allegations in Paragraph 269.

270.    A response to Paragraph 270 is not necessary because the Court has dismissed these allegations with prejudice. (Feb. 27, 2020 Order at 13–16, 22.) To the extent any response to the allegations contained in Paragraph 270 is necessary, adidas denies the allegations in Paragraph 270.

271.    A response to Paragraph 271 is not necessary because the Court has dismissed these allegations with prejudice. (Feb. 27, 2020 Order at 13–16, 22.) To the extent any response

to the allegations contained in Paragraph 271 is necessary, adidas denies the allegations in Paragraph 271.

272.    A response to Paragraph 272 is not necessary because the Court has dismissed these allegations with prejudice.  (Feb. 27, 2020 Order at 13–16, 22.)  To the extent any response to the allegations contained in Paragraph 272 is necessary, adidas denies the allegations in Paragraph 272.

273.    A response to Paragraph 273 is not necessary because the Court has dismissed these allegations with prejudice.  (Feb. 27, 2020 Order at 13–16, 22.)  To the extent any response to the allegations contained in Paragraph 273 is necessary, adidas denies the allegations in Paragraph 273, except admits that Paragraph 273 purports to quote from wiretap transcripts. adidas respectfully refers the Court to those transcripts for their true form and contents.

274.    Paragraph 274 states definitional allegations to which no response is necessary.

275.    Paragraph 275 states legal conclusions to which no response is necessary.  To the extent a response is necessary, adidas denies the allegations in Paragraph 275.

276.    Paragraph 276 states legal conclusions to which no response is necessary.  To the extent a response is necessary, adidas denies the allegations in Paragraph 276.

277.    Paragraph 277 states legal conclusions to which no response is necessary.  To the extent a response is necessary, adidas denies the allegations in Paragraph 277.

278.    Paragraph 278 states legal conclusions to which no response is necessary.  To the extent a response is necessary, adidas denies the allegations in Paragraph 278.

279.    Paragraph 279 states legal conclusions to which no response is necessary.  To the extent a response is necessary, adidas denies the allegations in Paragraph 279.

280.    Paragraph 280 states legal conclusions to which no response is necessary.  To the extent a response is necessary, adidas denies the allegations in Paragraph 280.

281.    Paragraph 281 states legal conclusions to which no response is necessary.  To the extent a response is necessary, adidas denies the allegations in Paragraph 281.

282.    Paragraph 282 states legal conclusions to which no response is necessary.  To the extent a response is necessary, adidas denies the allegations in Paragraph 282.

283.    Paragraph 283 states definitional allegations to which no response is necessary.

284.    Admits the allegations in Paragraph 284.

285.    Paragraph 285 states legal conclusions to which no response is necessary.  To the extent a response is necessary, adidas denies the allegations in Paragraph 285.

286.    Paragraph 286 states legal conclusions to which no response is necessary.  To the extent a response is necessary, adidas denies the allegations in Paragraph 286.

287.    Paragraph 287 states legal conclusions to which no response is necessary.  To the extent a response is necessary, adidas denies the allegations in Paragraph 287.

288.    Paragraph 288 states legal conclusions to which no response is necessary.  To the extent a response is necessary, adidas denies the allegations in Paragraph 288.

289.    Paragraph 289 states legal conclusions to which no response is necessary.  To the extent a response is necessary, adidas denies the allegations in Paragraph 289.

290.    Paragraph 290 states legal conclusions to which no response is necessary.  To the extent a response is necessary, adidas denies the allegations in Paragraph 290.

291.    Paragraph 291 states definitional allegations to which no response is necessary.

292.    Paragraph 292 states definitional allegations to which no response is necessary.

293.   Paragraph 293 states legal conclusions to which no response is necessary.  To the extent a response is necessary, adidas denies the allegations in Paragraph 293.

294.   Paragraph 294 states legal conclusions to which no response is necessary.  To the extent a response is necessary, adidas denies the allegations in Paragraph 294.

295.   Denies the allegations in Paragraph 295, except admits that the Amended Complaint purports to quote from a pleading in a civil matter and respectfully refers the Court to that document for its true form and contents.

296.   Denies the allegations in Paragraph 296.

297.   Paragraph 297 states legal conclusions to which no response is necessary.  To the extent a response is necessary, adidas denies the allegations in Paragraph 297.

298.   Paragraph 298 states legal conclusions to which no response is necessary.  To the extent a response is necessary, adidas denies the allegations in Paragraph 298.

299.   Paragraph 299 states legal conclusions to which no response is necessary.  To the extent a response is necessary, adidas denies the allegations in Paragraph 299.

300.   Paragraph 300 states definitional allegations to which no response is necessary.

301.   Paragraph 301 states legal conclusions to which no response is necessary.  To the extent a response is necessary, adidas denies the allegations in Paragraph 301.

302.   Paragraph 302 states legal conclusions to which no response is necessary.  To the extent a response is necessary, adidas denies the allegations in Paragraph 302.

303.   Paragraph 303 states legal conclusions to which no response is necessary.  To the extent a response is necessary, adidas denies the allegations in Paragraph 303.

304.   Paragraph 304 states legal conclusions to which no response is necessary.  To the extent a response is necessary, adidas denies the allegations in Paragraph 304.

305.    Paragraph 305 states legal conclusions to which no response is necessary.  To the extent a response is necessary, adidas denies the allegations in Paragraph 305.

306.    Paragraph 306 states legal conclusions to which no response is necessary.  To the extent a response is necessary, adidas denies the allegations in Paragraph 306.

### ANSWER TO PRAYER FOR RELIEF

adidas denies that Plaintiff is entitled to the relief requested or to any relief, and denies any and all other allegations of the Amended Complaint, except as specifically admitted above.

### ANSWER TO JURY DEMAND

adidas admits that Plaintiff demands a trial by jury.

### ADDITIONAL DEFENSES

As additional defenses, adidas alleges, asserts, and states the following, which apply to each and every cause of action asserted in the Amended Complaint to which such defense may be applicable.  By virtue of alleging these further defenses, adidas does not assume any burden of proof, persuasion, or production not otherwise legally assigned to them.  adidas also does not concede that facts contrary to one or more of the statements that follow would support liability as to any or all of them.  adidas asserts and expressly reserves all rights to assert any and all other defenses as appropriate, including as may be revealed during the course of discovery.

**First Defense**

The Amended Complaint fails to state any claim upon which relief can be granted.

**Second Defense**

Plaintiff lacks RICO standing to bring his RICO claims because he has not suffered an injury to his business or property.  Plaintiff's alleged injuries or damages are lost opportunities or expectancy interests, which are not recoverable in a civil RICO action.

**Third Defense**

Plaintiff lacks RICO standing to bring his RICO claims because Plaintiff's alleged injures or damages are too speculative to recover under RICO.

**Fourth Defense**

Plaintiff lacks Article III standing to bring his claims.

**Fifth Defense**

Plaintiff's claims are barred by *in pari delicto* because his father, Brian Bowen Sr., acted with authority to act on Plaintiff's behalf when soliciting and receiving bribes.  In return for the bribes, Bowen Sr. used his authority to act on Plaintiff's behalf to cause Plaintiff to commit to attend and play basketball at UofL, just as he had done when he received prior payments and caused Plaintiff to play at La Lumiere High School and for AAU basketball teams.

**Sixth Defense**

Plaintiff's claims are barred in whole or in part because he did not suffer damages.

**Seventh Defense**

Plaintiff's claims are barred in whole or in part because he failed to mitigate damages.

**Eighth Defense**

Plaintiff's claimed injuries or damages were the result of independent intervening or superseding acts or omissions of others and were not caused by adidas.

**Ninth Defense**

Plaintiff's claimed injuries or damages were not proximately caused by the alleged predicate acts or any other act by adidas.

**Tenth Defense**

adidas is not vicariously liable for the unauthorized misconduct of its employees and agents.

**Eleventh Defense**

Plaintiff's claim is barred because he does not allege an association-in-fact enterprise distinct from adidas and its employees and agents.

*    *    *

**WHEREFORE**, adidas respectfully requests judgment dismissing the Amended Complaint in its entirety and awarding to adidas costs and attorneys' fees, together with such other and further relief as the Court deems just and proper.

## ADIDAS'S CROSSCLAIMS AGAINST CROSS-DEFENDANTS BOWEN SR., GASSNOLA, AND SOOD

Defendant adidas America, Inc. ("adidas"), by its undersigned attorneys, brings crossclaims pursuant to Rule 13(g)–(h), and alleges as follows:

### PARTIES

1.      Defendant-Crossclaimant adidas is a corporation registered in Oregon with its principal place of business in Oregon.  adidas is engaged in the sports apparel business.  It is the United States subsidiary of adidas AG, a corporation registered and headquartered in the Federal Republic of Germany.

2.      Cross-Defendant Brian Bowen Sr. is a citizen of the United States and resides in Saginaw, Michigan.  He is the father of Plaintiff Brian Bowen Jr.  Bowen Jr. authorized Bowen Sr. to act on his behalf during his recruitment process as Bowen Jr. became of increasing interest to university athletics programs.  Bowen Sr. was authorized by Bowen Jr. to respond to

universities that contacted Bowen Jr., to assist in narrowing the list of prospective schools that Bowen Jr. might attend, and to control Bowen Jr.'s recruitment process.

3.    Defendant and Cross-Defendant T.J. Gassnola is a citizen of the United States and resident of the Commonwealth of Massachusetts.  During all relevant times, Gassnola was an independent contractor and consultant for adidas, engaged in efforts to assist adidas in grassroots basketball marketing to AAU teams.  Gassnola also assisted in administering the AAU basketball team, the New England Playaz, which was sponsored by adidas.  Gassnola entered into a guilty plea agreement on March 30, 2018 and was convicted on one count of conspiracy to commit wire fraud in the U.S. District Court for the Southern District of New York.  He was sentenced to one year of supervised release on September 10, 2019.

4.    Defendant and Cross-Defendant Munish Sood is a citizen of the United States and resident of the State of New Jersey.  Sood was a financial advisor and a co-founder and co-owner of LOYD Inc. with Dawkins.  Sood pleaded guilty to and was convicted on one count of conspiracy to commit bribery and other offenses, one count of bribery, and one count of conspiracy to commit wire fraud.  Sood was sentenced on September 12, 2019 and ordered to pay a $25,000 fine.

5.    Bowen Sr., Gassnola, and Sood are referred to as "Cross-Defendants."

### JURISDICTION AND VENUE

6.    The Court has subject-matter jurisdiction over adidas's crossclaims pursuant to 28 U.S.C. § 1331 and § 1367.  adidas's RICO claims arise under 18 U.S.C. § 1962 and § 1964, and its Oregon state law claims arise out of the same transaction or occurrence as those at issue in Bowen Jr.'s Amended Complaint and adidas's RICO crossclaims.

7.    The Court has personal jurisdiction over all Cross-Defendants pursuant to 18 U.S.C. § 1965(a)–(d) and Rule 4(k)(1)(C), because personal jurisdiction has already been

established for Gassnola and Sood pursuant to Bowen Jr.'s claims and the ends of justice require

that the Court exercise nationwide jurisdiction over all Cross-Defendants, including Bowen Sr.

8.    Venue is proper in the District of South Carolina pursuant to 18 U.S.C.

§ 1965(a)–(d), and 28 U.S.C. § 1391(b), because a substantial part of the events or omissions

giving rise to this action occurred in the District of South Carolina.

## FACTUAL ALLEGATIONS

### adidas's Grassroots Basketball Marketing

9.    adidas is the American subsidiary of adidas AG, the adidas parent company

headquartered and registered in Germany.  Over 59,000 employees work for adidas entities

worldwide, with adidas America, Inc. employing a fraction of the worldwide organization,

including approximately 2,000 individuals at the headquarters in Portland, Oregon.  Within

adidas America, Inc.'s basketball division, the marketing department has a grassroots marketing

group focused on marketing adidas products to amateur athletes, such as those on high school

AAU teams.  In 2017, adidas America, Inc. had revenue of approximately $4 billion.  The same

year, the grassroots basketball marketing group had a budget of approximately $9.75 million—

that is roughly 0.24% of adidas America, Inc.'s annual revenue.

10.    James Gatto and Christopher Rivers are former adidas employees who worked in

the grassroots basketball marketing group.  In 2017, Gatto held the title of Director of Global

Sports Marketing—Basketball, and Rivers held the title of Senior Players Relations Manager.

Both were mid-level managers.  Globally at adidas entities in 2017, over 1,800 employees held

positions equivalent or senior to Gatto and Rivers.

11.    Gatto and Rivers's responsibilities included the sponsorship of AAU teams and

the hiring of independent contractors who would aid in grassroots marketing involving AAU

teams.  They did not have authority to set corporate strategy.  They did not have authority to

approve payments to third parties without obtaining authorizations through established company procedures.  Gatto and Rivers were trained to comply with adidas's "Fair Play Code of Conduct," which prohibits adidas employees from engaging in corrupt practices, including the payment of bribes and fraud.

### The Misappropriation of adidas Funds to Pay Players' Families

12.     Circumventing adidas's compliance policies and internal controls, beginning no later than 2015, a small group of individuals—some then-adidas employees and others independent contractors—worked in concert with player advisors and family members to misappropriate adidas funds to pay players' families for the purpose of placing players at universities and colleges with adidas sponsorship agreements.  This scheme was not known to adidas, and was not approved by adidas.

13.     The scheme included then-adidas employees Gatto and Rivers, independent contractors Merl Code Jr. and Gassnola, independent player-advisors Christian Dawkins and Sood, coaches and assistant coaches at certain universities, and family members of certain players, including Plaintiff's father, Bowen Sr.

14.     Gatto, Rivers, Code, Gassnola, Dawkins, Sood, and Bowen Sr. all joined into this enterprise sharing the common objective of influencing players to play for schools or programs with an adidas-sponsorship relationship.  For Gatto and Rivers, the motivation was to bolster and increase reputations within adidas and the grassroots basketball community by placing high-profile recruits with adidas-associated schools.  Code and Gassnola, as independent contractors, were similarly motivated to bolster and increase their reputations as successful independent grassroots marketers and AAU team administrators.  For Dawkins and Sood, the motivation was to build notoriety and reputation as successful player advisors.  For Bowen Sr., the motivation was financial—he received tens of thousands of dollars in payments from programs interested in

having his son play for them and expected to receive a total of $100,000 in return for causing Bowen Jr. to commit to UofL.

**The Scheme Prior to Bowen Sr.'s Involvement**

15.    Prior to Bowen Sr.'s involvement, Gatto, Rivers, Code, Gassnola, Dawkins, and Sood took numerous actions in furtherance of the scheme.

16.    Player 1:

(a)    In the fall of 2015, Gassnola and Gatto worked together with coaches at North Carolina State University ("N.C. State") to secure the commitment of a high school basketball player ("Player 1") to play at N.C. State.

(b)    On October 30, 2015, Gassnola withdrew $40,000 from an account created for his AAU team, the New England Playaz, which was sponsored by adidas, and paid those funds over to Player 1's family for the purposes of paying their personal expenses.

(c)    On November 1, 2015, Gassnola emailed adidas an invoice dated November 1, 2015, requesting payment in the amount of $30,000.  The invoice listed Gassnola's New England Playaz vendor authorization and falsely stated that the funds were for a "Monthly Consultant Fee, travel expenses for October & November."  In fact, the funds were for reimbursement of the amounts he paid to the family of Player 1.  Gassnola intentionally misrepresented his true purpose in order to deceive adidas into approving this requested payment.

(d)    Gatto submitted this invoice to adidas's Finance Department with the fraudulent description.

On November 30, 2015, $30,000 in adidas's funds were deposited in the New England Playaz bank account.

17.    Player 2:

(a)    From October 2016 to November 2017, Gatto and Gassnola used sham invoices to transfer approximately $90,000 of adidas funds in coordination with an assistant coach from the University of Kansas in efforts to recruit another high school basketball player ("Player 2") to commit to the school.

(b)    On October 15, 2016, Gassnola emailed Gatto an invoice for $50,000 dated October 15, 2016.  Gassnola had written on the invoice a description that stated the funds were to be used for a "Basketball Team Tournaments Fee" for Gassnola's AAU team, the New England Playaz.  Gassnola knew this description was false, and, in fact, he intended that the funds would be used to pay the mother of Player 2 to increase the likelihood that Player 2 would attend the University of Kansas, which had a sponsorship arrangement with adidas.

(c)    On October 18, 2016, Gatto approved the invoice, knowing that the description was incorrect, and that the funds would not be used for a tournaments fee.

(d)    On October 21, 2016, following the submission and approval of the invoice, adidas disbursed $50,000 to the New England Playaz bank account.

(e)    On November 1, 2016, Gassnola paid $30,000 in cash of this amount to the mother of Player 2.  Gassnola kept the remaining $20,000.

(f)    On January 4, 2017, Gassnola submitted another invoice to Gatto, this time seeking $90,000.  Gassnola had written on the invoice a description that stated the funds would be used for "2017 1st Quarter Consultant Fee and T & E for 1st Quarter 2017."  In fact, Gassnola knew that a portion of the funds would be used to pay Player 2's mother to influence Player 2's selection of a university.

(g)     Gatto forwarded the fraudulent invoice to the adidas Finance Department, which paid the invoice on January 18, 2017.

(h)     On January 19, 2017, Gassnola withdrew $27,500 of those funds from the New England Playaz bank account.  Gassnola then met Player 2's mother and paid her $20,000, keeping the remaining $7,500 for himself.

(i)     On February 24, 2017, Gassnola instructed his fiancée to wire $20,000 to the partner of Player 2's mother, labeling the wire transfer "basketball camp."  *See* Pl.'s Ex. 14. Gassnola later testified under oath in the *Gatto* trial that he and Gatto had agreed to funnel this payment to Player 2's mother and to obtain reimbursement from adidas.

(j)     Gassnola later sent an invoice to Gatto dated May 1, 2017, in the amount of $70,000, under the pretense of a "tournament activation fee."  Gatto approved the invoice and submitted it to adidas.  Later, Gassnola testified that the description of this invoice was false.

(k)     The funds were disbursed to the New England Playaz account on May 31, 2017.

18.     In September of 2017, Gatto and Gassnola worked with coaches at the University of Kansas to secure the commitment of a third amateur basketball player ("Player 3").  Gatto and Gassnola discussed by telephone a scheme to use "20 grand" of adidas's money to pay Player 3's family.

19.     adidas finance personnel did not have cause to question the fraudulent invoices, where descriptions indicated the requested funds would be used for ordinary, legitimate business purposes.

20.     Each fraudulent invoice in this series constituted a scheme to obtain adidas's funds under false pretenses.  Cross-defendants and enterprise participants used interstate wires in their submission of these invoices.

**Bowen Sr.'s Collusion with Scheme Participants**

21.     As Bowen Jr. progressed in his basketball development during high school, he drew increasing interest from university athletic programs.  Through words and actions, Bowen Sr. represented and demonstrated that he was authorized by Bowen Jr. to act on Bowen Jr.'s behalf in his recruitment process.  Bowen Sr. responded to universities that contacted Bowen Jr. and assisted in narrowing the list of the prospective schools that Bowen Jr. should consider. Bowen Sr. also offered NCAA programs and AAU teams access to his son for recruiting.

22.     Bowen Sr.'s control of Bowen Jr.'s recruitment process, and use of that process to enrich himself and his family, was a continuation of the role he had played throughout his son's amateur athletic career.  In 2015, Bowen Sr. accepted $25,000 paid by Gassnola and Rivers, and arranged by Dawkins, in return for Bowen Jr.'s commitment to play on the adidas-sponsored Michigan Mustangs AAU basketball team.  The first $4,000 of this $25,000 total was paid in cash to Bowen Sr. by Rivers at an AAU tournament.  The second payment was delivered by Rivers in the form of a $2,000 check from Dawkins on which Dawkins had written on the memo line that the purpose of the payment was for Bowen Sr.'s "staff help"; Bowen Sr. understood that the funds he was accepting had originated at adidas, and that he had never in fact provided any staff help to Rivers, the Michigan Mustangs, or adidas.  He nevertheless signed and deposited the checks and received the funds.

23.     The next season, Bowen Jr. went to play for the Nike-sponsored Mean Streets AAU basketball team in Chicago, and, in return, Bowen Sr. received $5,000 to $8,000 from individuals affiliated with Nike.

24.     For Bowen Jr.'s final two years of high school, the Bowens moved to Indiana, and Bowen Jr. played basketball at La Lumiere High School.  Bowen Sr. received $2,000 per month in payments from La Lumiere's basketball coach in return for his son's play on the school basketball team.  Bowen Jr. came to play at La Lumiere following an introduction from Dawkins, and, during his time at the school, Dawkins paid Bowen Sr. $1,500 to $2,000 per month.  On information and belief, Bowen Jr. reinforced the belief of third parties, including Dawkins and Sood, that Bowen Sr. exercised authority over Bowen Jr.'s basketball career, including by consistently playing on teams following his father's receipt of payments.

25.     When Bowen Jr. entered his senior year of high school—the 2016–17 academic year—he had not yet chosen a university to attend.  By May 2017, Bowen Jr. still had not committed, even though numerous top recruits had already done so, including many in November 2016, the earliest an athlete in Bowen Jr.'s class could sign a formal letter of intent.

26.      During this period of time, Dawkins remained in direct contact by phone and text message with both Bowen Sr. and Bowen Jr., discussing Bowen Jr.'s prospective university options.  Bowen Sr. had provided Bowen Jr.'s phone number to Dawkins.  On information and belief, Bowen Sr.'s introduction of Dawkins to his son caused Bowen Jr. to grow to trust Dawkins and form a relationship with him.  Bowen Sr. first grew to know Dawkins when Bowen Jr. played as a middle schooler on Dawkins's Michigan-based AAU team, Dorian's Pride. In return, over the years, Dawkins paid Bowen Sr. for Bowen Jr.'s services as an amateur athlete.

**Bowen Sr. Negotiates Bowen Jr.'s Commitment to UofL**

27.    On May 8, 2017, Bowen Jr. made an unofficial visit to the University of Oregon, which was at the time and remains a Nike-sponsored school.

28.    On May 18, 2017, Bowen Jr. had still not committed to a university, and Dawkins sent Merl Code a text message in reference to Bowen Jr., asking "Any adidas schools that make sense for Bowen?"

29.    On the same day, Code forwarded to Gatto an email that had been sent by an employee of the Kharolina Khaos—an AAU team located in South Carolina—to Rivers that included information necessary for Gatto to register the AAU Team Kharolina Khaos in adidas's vendor payment system.

30.    On May 19, 2017, Dawkins and Bowen Sr. exchanged text messages with Dawkins stating that certain players at the University of Arizona and North Carolina State University had said they would return for an additional season, thereby indicating that Bowen Jr. would be unlikely to see immediate playing time if he were to attend and play at those schools. Dawkins then raised with Bowen Sr. the possibility of Bowen Jr. playing at UofL.  In that initial conversation, Dawkins offered that he would supply Bowen Sr. with $60,000 to $80,000 to be provided by Code and Gatto if Bowen Jr. were to commit to UofL.  Bowen Sr. indicated an interest in such an arrangement.

31.    On May 22, 2017, at 12:47 pm EST, Code texted Dawkins, "Don't send Bowen to Oregon!!!! Call me."  The two then spoke by phone the same day, at 12:48 pm EST, in a call that lasted 12 minutes.

32.    On May 23, 2017, at 6:43 pm EST, Dawkins texted Bowen Jr. on the phone number given to him by Bowen Sr.  Dawkins stated in the message, "Let me know if u have any

questions or want to know anything background wise about the coaches or players before u make a final decision . . . whatever u do u will kill it!!"

33.     Hours later, at 10:23 pm et, Dawkins exchanged text messages with a UofL basketball coach discussing the possibility of Bowen Jr. attending UofL.  Dawkins stated, "Would you have any interest in Brian Bowen or are you done recruiting?"  The UofL coach stated in response, "We would love to have him."

34.     On May 29, 2017, Dawkins accompanied the Bowen family on a campus visit to UofL.  On an official record of his UofL visit, Dawkins identified himself as an "AAU Coach," which was false, and caused himself to be listed in a UofL recruiting program as Bowen Jr.'s "friend."

35.     Bowen Sr. negotiated a higher price than the $60,000–$80,000 that Dawkins initially had quoted, and Dawkins and Bowen Sr. agreed that the amount of adidas funds to be paid to Bowen Sr. through Dawkins, Code, and Gatto would be $100,000.  In return, Bowen Sr. would use his authority to cause Bowen Jr. to commit to UofL.

36.     Dawkins and Bowen Sr. agreed that, if asked by third parties, Bowen Sr. would state he received the funds by acting as a "consultant" to adidas.  Both Dawkins and Bowen Sr. knew that this explanation was false, and that Bowen Sr. had never provided consulting services to adidas.

37.     On May 31, 2017, Code, Gatto, Gassnola, and Dawkins engaged in numerous phone calls and exchanged numerous text messages, agreeing for a necessary amount of adidas funds to be misappropriated and transferred to Bowen Sr. in exchange for Bowen Sr. to cause Bowen Jr. to commit to UofL.  At 8:04 pm et, Gassnola texted Dawkins and stated, "Bowen

needs to commit this evening."  Dawkins replied at 12:19 am EST that night (the early hours of June 1, 2017) and stated, "He's going to Louisville.  He confirmed to them tonight."

38.    On June 1, 2017, Bowen Jr. entered into a financial aid contract with UofL, providing him with an academic scholarship, funding for room and board, and other academic-related support.

### Code, Gassnola, and Gatto's Invoices to Defraud adidas and Pay Bowen Sr.

39.    After Bowen Jr. committed to UofL, Code, Gassnola, Gatto, and Dawkins took steps to misappropriate the necessary funds from adidas to Bowen Sr.  Code and Gatto submitted invoices containing intentionally false statements as to the funds' intended use, so as to deceive adidas's marketing finance department.  Code and Gatto knew that if the invoices stated the truth—that the funds were intended to be used for payments to Bowen Sr.—adidas would not approve the invoices or transfer the funds.  Each of the relevant invoices was submitted over email, via interstate wires.

40.    On June 5, 2017, Code emailed Gatto an invoice dated June 8, 2017, from the Karolina Khaos AAU team, on which Code had written that $25,000 was needed for "travel expenses."  In fact, as both Code and Gatto knew, this description was false; the funds were not for travel expenses, but rather for payments to Bowen Sr.  Gatto approved submission of the payment, knowing that the description was false and that the funds would instead be transferred to Bowen Sr., and knowing that because of the false description, adidas would likely be unaware of the true purpose of the transfer.

41.    On June 17, 2017, Code submitted another invoice to Gatto, seeking $50,000 purportedly for his "consulting fee" and $25,000 for his "travel expenses."  These descriptions, written by Code, were false, as both Code and Gatto knew the true purpose of the funds was to

pay Bowen Sr.  Gatto forwarded the invoice for approval and, with the recipients unaware that the descriptions were false, and relying on those descriptions as being true, obtained such approval.

42.    On June 19, 2017, Gatto forwarded a third invoice from Code to the adidas finance department.  Gatto represented that the invoice, for $5,000, was for "some travel" for the Karolina Khaos AAU team, but he knew that description was false and that in fact the funds were to be transferred to Bowen Sr.

43.    On June 22, 2017, the adidas finance department emailed Gatto in response to the June 19 invoice, stating that the team was not in the adidas-approved vendor payment system. This meant that neither of the invoices, dated June 8 and June 19, could be processed.  Gatto informed Code of the issue.

44.    On July 6, 2017, Code emailed with adidas's finance department and submitted a combined version of the June 8 and June 19 invoices, for $30,000, again with intentionally false statements, but now including the Karolina Khaos's adidas vendor number.

45.    The next day, Code expressed concern about delays due to his difficulty avoiding adidas's internal controls.  He complained that adidas was "asking for all these PO numbers and vendor numbers and blah blah blah blah blah."  He was going to have to "create a vendor number" and a "purchase order" to create a false pretext to induce the finance department to approve the invoice.

46.    On information and belief, Code grew concerned that his July 6 invoice would take too long to go through adidas's payment process.  On July 10, 2017, Code asked Sood, Dawkins, and an undercover FBI Agent, posing as "Jeff DeAngelo," an investor in Dawkins and Sood's sports management business LOYD Inc., to provide $25,000 for payment to Bowen Sr.

with the promise that Gatto, Rivers, and Code would reimburse the trio with funds to be misappropriated from adidas. Code stated to Sood and DeAngelo that, as soon as his invoice had gone through the adidas control "processes" and "steps" and "run[] through the corporate structure," he would have funds from adidas to pay them back. In order to deceive adidas as to the true purpose of the funds, Code stated to Sood that adidas's money would need to be first transferred to an AAU team and then it could be transferred to "wherever you guys need it."

47.    Dawkins, Sood, and "DeAngelo" agreed to Code's proposed arrangement. On July 13, 2017, Sood met Bowen Sr. in an office building parking lot in Florham Park, New Jersey, and gave him $19,400 in cash.

48.    By late July 2017, adidas had still not approved the sham invoices for payment to Code and the Karolina Khaos. On July 26, 2017, Gatto emailed adidas's finance department requesting an immediate response and complaining that he had been "having issues getting this paid" and "it has been over a month."

49.    On August 1, 2017, $30,000 in adidas funds were transferred to the Karolina Khaos's South Carolina bank account, a check was issued from that account to Dawkins for $25,000, and Dawkins deposited the check.

50.    On September 14, 2017, Code emailed Gatto a sham invoice for the Karolina Khaos, dated September 18, 2017, for $25,000 for "November travel expenses." Both Gatto and Code knew this description was false and that the funds were in fact to be used to pay Bowen Sr. Gatto forwarded the invoice to adidas's director of finance, who was again unaware of the true purpose of the funds, and Gatto electronically approved payment of the invoice.

51.    Relying on the September 15, 2017 invoice's false statement, adidas wired $25,000 to the Karolina Khaos's bank account on September 20, 2017. That day, Code directed

the Karolina Khaos's coach to issue a $25,000 check from the team's account to LOYD, Inc., and the coach did so, texting Code a picture of the deposit slip.

52.     Before this second payment could be made to Bowen Sr., Gatto and Code were arrested by federal authorities.

53.     In the FBI's initial visit with Bowen Sr. on September 26, 2017, and then again in a subsequent phone call, Bowen Sr. lied to the FBI, and then later threw away the prepaid mobile phone he had been using to maintain contact with Dawkins, because he knew the truth could "get [him] in trouble" and cause Bowen Jr. to "lose his eligibility" to play basketball at UofL.

54.     Later, as a witness in the *United States v. Gatto* trial, Bowen Sr. was asked if he had "in fact been involved in a plan to receive . . . $100,000" in misappropriated adidas funds "in connection with [his] son's decision to attend Louisville," and in response he testified, "Yes."

## COUNT I:  VIOLATION OF RICO § 1962(c) – AGAINST ALL CROSS-DEFENDANTS

55.     Prior paragraphs 1 through 54 are incorporated herein by reference.

56.     At all relevant times, Cross-Defendants were each "persons" within the meaning of 18 U.S.C. § 1961(3).

57.     At all relevant times, Cross-Defendants were all associated in fact, along with other individuals, in an enterprise that had the shared purpose of misappropriating funds from adidas to pay the families of youth basketball players to influence the players in their university selections.   Cross-Defendants were "persons . . . associated with" the enterprise within the meaning of 18 U.S.C. § 1962(c).

58.     In support of this enterprise, Code committed five acts of wire fraud, in violation of 18 U.S.C. § 1343, by submitting and approving the five Bowen-related sham invoices to adidas.   Each of these invoices contained a false statement made to adidas as to the purpose of

the funds.  Code knew the statements were false.  He intended for adidas to rely on the false statements to its detriment and to approve payment of the funds on the false premise that the money would be used for a proper business purpose, instead of for the true purpose of making improper payments to Bowen Sr.  Each of these sham invoices were transmitted over interstate wires, through email.

59.    Additionally, Gassnola committed three additional acts of wire fraud, in violation of 18 U.S.C. § 1343, by submitting the three sham invoices to fund payments to the families of Players 1 and 2.  Each of these invoices contained a false statement made to adidas as to the purpose of the funds.  Gassnola knew the statements were false.  He intended for adidas to rely on the false statements to its detriment and to approve payment of the funds on the false premise that the money would be used for a proper business purpose, instead of for the true purpose of making improper payments to the families of Players 1 and 2.  Each of these sham invoices were transmitted over interstate wires, through email.

60.    Together, these eight acts of wire fraud constituted a pattern of racketeering activity, as that term is defined in 18 U.S.C. § 1961(5).

61.    Bowen Sr. participated in the enterprise by using his authority to cause Bowen Jr. commit to play basketball at UofL in return for the Cross-Defendants' and enterprise participants' agreement to transfer to Bowen Sr. $100,000 in misappropriated adidas funds.

62.    Gassnola participated in the enterprise by drafting and submitting sham invoices to misappropriate adidas funds for payments to the families of Players 1 and 2.  Gassnola also participated by providing $25,000 of misappropriated adidas funds to Bowen Sr. for Bowen Jr.'s play on the Michigan Mustangs.

63.    Sood participated in the enterprise by physically delivering $19,400 in cash to Bowen Sr., as payment for Bowen Sr.'s causing Bowen Jr. to commit to play basketball at UofL. Sood also participated by planning with Code to fraudulently transfer adidas funds into an AAU Team account in order to disguise the true purpose of their use.

64.    adidas was unaware that statements made in sham invoices were false, and that the Cross-Defendants and enterprise participants were using misappropriated adidas money to pay Bowen Sr. and the families of Players 1 and 2.

65.    As a direct and proximate result of Cross-Defendants and enterprise participants' acts in violation of 18 U.S.C. § 1962(c) and the enterprise participants' predicate acts and pattern of racketeering activity, adidas has been injured in its business and property in that its funds were misappropriated and were and are not available for legitimate business purposes.

### COUNT II:  VIOLATION OF RICO § 1962(d) FOR CONSPIRACY TO VIOLATE § 1962(c) – AGAINST ALL CROSS-DEFENDANTS

66.    Prior paragraphs 1 through 65 are incorporated herein by reference.

67.    Section 1962(d) of RICO provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

68.    Cross-Defendants violated § 1962(d) by agreeing and conspiring to violate 18 U.S.C. § 1962(c).  The object of this conspiracy was to conduct or participate in, directly or indirectly, the conduct of the affairs of the enterprise, as described above, through a pattern of racketeering activity.

69.    Each Cross-Defendant agreed to join the conspiracy.

70.    Cross-Defendants have engaged in numerous overt acts in furtherance of the conspiracy, including multiple instances of the falsification of financial documents, cashing

checks with false statements on memo lines, and planning and communicating about the conspiracy through interstate wire communications.

71.    As a direct and proximate result of Cross-Defendants' overt acts in furtherance of their conspiracy to violate 18 U.S.C. § 1962(c), and the enterprise participants' predicate acts and pattern of racketeering activity, adidas has been injured in its business and property in that its funds were misappropriated and were and are not available for legitimate business purposes.

### COUNT III:  OREGON FRAUD – AGAINST GASSNOLA

72.    Prior paragraphs 1 through 72 are incorporated herein by reference.

73.    Gassnola submitted multiple sham invoices to adidas that contained false statements that the funds being sought were to be used for legitimate business purposes, when, in fact, they were to be used for improper payments to the families of youth basketball players, such as the payments to Bowen Jr.'s father, Bowen Sr.

74.    Gassnola knew that these statements were false.

75.    Gassnola intended for adidas to rely on the false statements to its detriment and to approve payment of the invoices under the false pretense that the funds would be used for legitimate business purposes.

76.    adidas was not aware that Gassnola's true purpose was to obtain funds for improper payments to the families of youth basketball players.

77.    adidas justifiably relied on these misrepresentations when it approved the invoices.

78.    adidas suffered proximate injury through the loss of its funds that were designated to be used for legitimate business purposes.

## COUNT IV:  CONSPIRACY TO COMMIT OREGON FRAUD – AGAINST ALL CROSS-DEFENDANTS

79.     Prior paragraphs 1 through 78 are incorporated herein by reference.

80.     Cross-Defendants agreed to a common plan to fraudulently misappropriate adidas funds and then transfer those funds to Bowen Sr.

81.     Cross-Defendants took numerous steps in support of this conspiracy, including the submission of fraudulent sham invoices to adidas; the actual payment of cash to Bowen Sr.; and mischaracterization of the purpose of funds via false statements on checks and other financial instruments to hide the nature of the conspiracy from adidas and others.

82.     adidas suffered proximate injury through the loss of its funds that were designated to be used for legitimate business purposes.

## REQUESTED RELIEF

WHEREFORE, Defendant-Crossclaimant adidas respectfully prays that this Court grant the following relief:

1.     Entering judgment in favor of Defendant-Crossclaimant adidas on all of adidas's Crossclaim Counts in a final order against each of the Cross-Defendants;

2.     Awarding Defendant-Crossclaimant adidas actual damages, treble damages, forfeiture as deemed proper by the Court, and attorney's fees and all costs and expenses of suit pursuant to Defendant-Crossclaimant adidas's RICO claims; and

3.     Awarding Defendant-Crossclaimant such other and further relief as may be just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Defendant-Crossclaimant adidas, by counsel and pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, hereby demands a trial by jury in this action.

Dated:    April 16, 2020

By:  /s/ *Matthew T. Richardson*

Matthew T. Richardson (D.S.C. Id. No. 7791)
Mary Lucille ("Lucy") Dinkins (D.S.C. No. 11961)
WYCHE
807 Gervais Street, Suite 301
Columbia, South Carolina 29201
Tel: (803) 254-6542
mrichardson@wyche.com
ldinkins@wyche.com

Andrew J. Ceresney (admitted *pro hac vice*)
William H. Taft V (admitted *pro hac vice*)
Nathan S. Richards (admitted *pro hac vice*)
Matthew D. Forbes (admitted *pro hac vice*)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Tel: (212) 909-6000
aceresney@debevoise.com
whtaft@debevoise.com
nsrichards@debevoise.com
mforbes@debevoise.com

*Counsel to Defendant adidas America Inc.*