IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Brian Bowen, II, | C/A No.: 3:18-3118-JFA |
| Plaintiff, | |
| v. | |
| Adidas America, Inc., James Gatto, Merl Code, Christian Dawkins, Munish Sood, Thomas Gassnola, and Christopher Rivers, | **ORDER** |
| Defendants. | |
| v. | |
| Brian Bowen, Sr. | |
| Cross-defendant. | |

This matter comes before the Court on multiple motions to dismiss. (ECF Nos. 124, 130, 145). Cross-Claimant Adidas, America, Inc. ("Adidas") filed crossclaims[1] ("Crossclaims") against Munish Sood ("Sood") and Brian Bowen Sr. ("Bowen Sr.") (collectively, "Movants"). (Adidas's Ans. to the Am. Compl. and Cross-cls., ECF No. 116). Sood subsequently filed crossclaims against Bowen Sr. (ECF No. 139). Movants filed separate motions to dismiss Adidas's crossclaims against them pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (ECF Nos. 124, 130). Also before the Court is Bowen Sr.'s motion to dismiss Sood's crossclaims. (ECF No. 145). As the

---

[1] Adidas also asserted these crossclaims against Thomas Gassnola ("Gassnola"). Thus far, Gassnola has not appeared by counsel in this case, filed any responsive pleadings, moved to dismiss the claims, or otherwise responded to this lawsuit.

crossclaims against Sood and Bowen Sr. are identical, and the arguments posited by each cross-defendant in support of dismissal are similar, the Court will address Movants' motions to dismiss jointly. In accordance with Local Civil Rule 7.08 (D.S.C.), the Court concludes that oral argument would not materially assist its deliberations. All briefing is complete and the motions are ripe for disposition. After careful consideration of the motions, responses, replies, relevant authority, and for the reasons discussed below, the Court denies Movants' motions to dismiss (ECF Nos. 124, 130) and grants Cross-Defendant Bowen Sr.'s motion to dismiss Sood's crossclaims (ECF No. 145).

## I.     FACTUAL BACKGROUND

In the original suit from which these crossclaims arise, Plaintiff Brian Bowen Jr. ("Plaintiff")—a highly recruited college basketball prospect—alleges Defendants[2] derailed his promising career when they engaged in racketeering activity by conspiring to bribe, and bribing, his father to persuade Plaintiff to play basketball for the University of Louisville ("UofL")—an Adidas-sponsored university. (ECF No. 84). According to Plaintiff, this bribe violated the rules of the National Collegiate Athletic Association and rendered Plaintiff ineligible to play top-tier college basketball and further, prevented him from having a chance to play in the NBA. (*Id.*). Plaintiff brought this suit under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962.

---

[2] The defendants consist of Adidas, Sood, Gassnola, Merl Code ("Code"), James Gatto ("Gatto"), Christian Dawkins ("Dawkins"), and Christopher Rivers ("Rivers") (collectively, "Defendants").

Defendant-Crossclaimant Adidas is a corporation registered in Oregon with its principal place of business in Oregon. Defendants Gatto and Rivers are former employees of the Adidas department responsible for grassroots basketball marketing. Defendants Code, Dawkins, and Gassnola are affiliated with several amateur and high school basketball programs. Defendant and Cross-Defendant Sood is a resident of New Jersey. He is a former financial advisor who aspired to build a clientele of professional athletes. He pleaded guilty to and was convicted on one count of conspiracy to commit bribery and other offenses, one count of bribery, and one count of conspiracy to commit wire fraud following his alleged involvement in schemes to pay the families of amateur basketball players. Cross-Defendant Bowen Sr. is a resident of Michigan and the father of Plaintiff. The Crossclaims at hand allege Movants' involvement in the same scheme averred in Plaintiff's amended complaint, and similarly assert claims under RICO.

The Crossclaims present a contrasting narrative on the circumstances surrounding Plaintiff's commitment to attend UofL. Whereas Plaintiff alleges Adidas spearheaded a RICO enterprise designed to infiltrate amateur athletics by preying upon the families of top-ranked high school recruits to induce student-athlete commitments to play basketball at Adidas-sponsored universities, Adidas's version of events differs greatly. Adidas disputes Plaintiff's account, asserting it was the victim of a scheme perpetrated by Bowen Sr., two rogue mid-level Adidas employees, and others, including Sood, to misappropriate Adidas's funds. The Crossclaims allege Bowen Sr. agreed to accept multiple payments of "Adidas funds" in return for Plaintiff playing for the Michigan Mustangs, a high school

amateur athletics union ("AAU") team sponsored by Adidas, and later for committing to UofL, and agreed to lie about the purpose of those payments to hide the scheme from Adidas. (Cross-cls. ¶ 12). The Crossclaims further aver that Sood and Bowen Sr. were integral and knowing participants in this scheme to misappropriate money from Adidas under false pretenses and funnel it to families of high-school players to influence where they would play basketball. With this background, the Court considers the pending motions.

## II.     PROCEDURAL BACKGROUND

Plaintiff initiated this case on November 19, 2018 and filed an Amended Complaint on August 8, 2019. (ECF No. 1; ECF No. 84). Adidas filed its Answer to the Amended Complaint and Crossclaims on April 16, 2020, naming Bowen Sr. and Sood as Cross-Defendants. (ECF No. 116). Sood filed a Motion to Dismiss the Crossclaims on May 28, 2020. (ECF No. 124). Bowen Sr. filed a Motion to Dismiss the Crossclaims on June 25, 2020. (ECF No. 130). Adidas filed a responsive brief on July 23, 2020 (ECF No. 138). On August 13, 2020, Sood and Bowen Sr. both filed replies. (ECF Nos. 140, 141). Sood filed crossclaims against Bowen Sr. on August 13, 2020, asserting a right to contribution for the claims alleged by Adidas. (ECF No. 139). Bowen Sr. filed a Motion to Dismiss Sood's crossclaims on September 10, 2020 (ECF No. 145). Sood filed a reply on September 24, 2020 (ECF No. 151). Accordingly, the motions are ripe for review.

### III.     LEGAL STANDARD

Sood and Bowen Sr. brought motions to dismiss the Crossclaims pursuant to Federal Rule of Civil Procedure Rules ("FRCP") 12(b)(6) for failure to state a claim upon which relief can be granted. Bowen Sr. separately moved under FRCP 12(b)(1) to dismiss the Crossclaims for lack of subject matter jurisdiction and to dismiss Sood's crossclaims under FRCP 12(b)(6).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction considers whether this is the proper court to consider the action. The motion to dismiss for lack of standing under Rule 12(b)(1) implicates subject matter jurisdiction and must, therefore, be addressed as a threshold matter. *Green v. Beazer Homes Corp.*, No. CA 3:07-1098-CMC, 2007 WL 2688612, at *2 (D.S.C. Sept. 10, 2007) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998)). Absent an evidentiary hearing, the court accepts the relevant allegations of the complaint as true. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) (noting that court may either apply a standard similar to that applied to a Rule 12(b)(6) motion, accepting the allegations of the complaint as true, or may hold an evidentiary hearing). The burden, however, remains on the plaintiff to establish that the allegations are sufficient to support standing. *E.g., McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178 (1936).

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991). Importantly, this motion "does not resolve contests surrounding the

facts, the merits of the claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). When reviewing a claim pursuant to a Rule 12(b)(6) motion, the court must accept well-pleaded allegations as true and construe the factual allegations in favor of the plaintiff. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).

In evaluating the complaint, the court need not accept unsupported legal allegations. *Revene v. Charles Cnty. Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989). Nor must it agree with legal conclusions couched as factual allegations, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst,* 604 F.2d 844 (4th Cir. 1979). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.' " *Iqbal,* 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Moreover, allegations of fraud are subject to a heightened pleading standard under Rule 9(b). *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Rule 9(b) states that "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Such allegations typically "include the 'time, place and contents of the false representation, as

well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.,* 197 F.Supp.2d 298, 313–14 (D.Md.2000) (quoting *Windsor Assocs., Inc. v. Greenfeld,* 564 F.Supp. 273, 280 (D.Md.1983)). In cases involving concealment or omissions of material facts, however, meeting Rule 9(b)'s particularity requirement will likely take a different form. *See Shaw v. Brown & Williamson Tobacco Corp.,* 973 F.Supp. 539, 552 (D.Md.1997) (recognizing that an omission likely "cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation" (internal quotations omitted)).

The purposes of Rule 9(b) are to provide the defendant with sufficient notice of the basis for the plaintiff's claim, to protect the defendant against frivolous suits, to eliminate fraud actions where all of the facts are learned only after discovery, and to safeguard the defendant's reputation. *See Harrison,* 176 F.3d at 784. In keeping with these objectives, "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant[s were] made aware of the particular circumstances for which [they] will have to prepare a defense at trial and (2) that [the] plaintiff has substantial prediscovery evidence of those facts." *Id.*

## IV.    DISCUSSION

### a.    Adidas's Crossclaims Against Sood and Bowen Sr.

Adidas's RICO claims arise under 18 U.S.C. § 1962 and § 1964, and its Oregon state law claims arise out of the same transaction or occurrence as those at issue in

Plaintiff's Amended Complaint and Adidas's RICO crossclaims. Count I alleges violations of 18 U.S.C. § 1962(c), Count II alleges violations of § 1962(d), and Count IV[3] alleges conspiracy to commit Oregon fraud. Movants proffer three primary grounds for dismissal, each to be addressed in turn. First, the Court will evaluate whether Bowen Sr. is a proper cross-defendant. Second, the Court will consider whether the doctrine of *in pari delicto* is a bar to Adidas's Crossclaims. Lastly, the Court will assess whether Adidas adequately pleads its claims against Sood and Bowen Sr. under RICO § 1962(c) and (d), and for conspiracy to commit fraud under Oregon law.

As a threshold matter, the Court addresses Bowen Sr's contention that he is a "phantom party" to this litigation because Adidas's Crossclaims against him do not comply with the Federal Rules of Civil Procedure. (ECF No. 130). Bowen Sr. asserts that Adidas failed to properly utilize Rule 14 to add him as a party. (*Id.*). This argument is without merit, because Bowen Sr. is a proper cross-defendant pursuant to Rules 13 and 20, despite his protests to the contrary.

Rule 13(h) permits joinder of additional parties to a crossclaim "in accordance with the provisions of Rules 19 and 20." Fed. R. Civ. P. 13(h). Courts have construed Rule 13(h) "liberally in an effort to avoid multiplicity of litigation, minimize the circuity of actions, and foster judicial economy." 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1434 (3d ed.). According to Wright & Miller,

---

[3] Count III contains allegations of Oregon fraud exclusively against Gassnola and thus will not be discussed in this order.

> When defendant wishes to interpose a claim against both a
> codefendant and a third person not yet a party to the action, the
> correct procedure is to cross-claim against the existing
> codefendant under Rule 13(g), and to bring in the third person
> as a party defendant to the cross-claim under the procedure for
> joining additional parties in Rule 13(h).

§1431. Here, Adidas filed crossclaims against existing parties—Sood and Gassnola—and

resultantly, under Rules 13 and 20, was permitted to bring crossclaims against Bowen Sr.,

because those claims arise out of at least one transaction or occurrence and involve at least

one question of law or fact raised in Plaintiff's claims. Thus, Bowen Sr. is a proper party

to this action.

### i.   Doctrine of *in pari delicto* as a bar to claims

Sood and Bowen Sr. invoke the affirmative defense of *in pari delicto* to argue that

Adidas's claims against them are barred. (ECF Nos. 124, 130). Adidas counters this

defense does not apply because Movants rely on factual assertions that are contrary to

Adidas's allegations and thus must be rejected at the motion-to-dismiss stage. (ECF No.

138). Second, Adidas maintains that this defense is not available because rogue employees

and agents exceeded the scope of their authority and did not act with intent to benefit

Adidas, and thus Adidas—despite having failed to uncover a scheme to misappropriate its

own funds—is not equal in fault to individuals who knowingly participated in that scheme.

(*Id.*).

*In pari delicto*, a common law doctrine meaning "of equal fault," is "an affirmative

defense that precludes a plaintiff who participated in the same wrongdoing as the defendant

from recovering damages from that wrongdoing." *In re Derivium Capital LLC*, 716 F.3d

355, 367 (4th Cir. 2013). Whether such a defense is available to Movants depends upon a

fact-intensive inquiry that may not be resolved at the pleadings stage. *See id.* at 368 n. 9

(citing with approval *In re Derivium Capital, LLC*, 380 B.R. 407, 417 (Bankr. D.S.C. 2006)

(finding that the applicability of the *in pari delicto* defense is a fact-intensive inquiry not

appropriate on a motion to dismiss)). Where courts have applied the doctrine of *in pari*

*delicto* at the motion-to-dismiss phase, it is the rare case in which the imputation of alleged

wrongdoing is beyond factual dispute. *See In re Infinity Bus. Grp., Inc.*, 497 B.R. 794, 816

(Bankr. D.S.C. 2013) (declining to resolve attribution of fault at the motion-to-dismiss

stage and accordingly declining to dismiss on the basis of *in pari delicto*); *In re Student*

*Fin. Corp.*, 335 B.R. 539, 547 (D. Del. 2005) (finding a complaint should not be dismissed

under the doctrine of *in pari delicto* where it appears from the allegations that there are

issues of fact that would bar the application of the doctrine). That is not the case here,

where the key issues are replete with factual disputes that cannot be resolved on the

pleadings.

Whether Adidas is a mere victim of the alleged scheme is not for this Court to

resolve presently, but to be determined by a jury at a later date. Likewise, applying *in pari*

*delicto* to the Crossclaims on this highly contentious factual record would be inappropriate.

Such an analysis of fault would be premature on these motions to dismiss, and the Court

"may not properly dismiss a complaint that states a plausible version of the events merely

because the court finds a different version more plausible." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).

Movants' arguments are based upon respondeat superior principles. Sood and Bowen Sr. contend that Adidas is responsible for the actions of its two employees, Gatto and Rivers, in using Adidas funds to influence the school choices of individual amateur athletes. (ECF Nos. 124, 130). Without expressing any opinion on the ultimate question of the level of guilty knowledge required of a corporate RICO defendant, the Court emphasizes the pleadings stage is not the time or place to resolve that question given the favorable inferences to which the nonmoving party is entitled on the current motion. Movants assert legal arguments this Court has already deemed insufficient to warrant a dismissal of Plaintiff's first and second complaints. As a result, Movants' motions to dismiss are denied to the extent that they are based on the *in pari delicto* doctrine.

### ii.  Count I – Section 1962(c) RICO claim

RICO § 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To state a § 1962(c) RICO civil claim, a plaintiff must allege: (1) injury caused by (2) conduct, (3) of an enterprise, (4) through a pattern, (5) of racketeering activity. *See Giuliano v. Fulton*, 399 F.3d 381, 386 (1st Cir. 2005). Plaintiff must additionally plead proximate cause; that is, she was injured in her business or property "by reason of" the

RICO violation. *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 6 (2010). As set forth below, the undersigned finds the Crossclaims have alleged sufficient facts to survive a motion to dismiss.

### 1. Proximately-Caused Injury

In his motion to dismiss, Bowen Sr. avers that Adidas did not suffer a cognizable RICO injury and thus lacks standing to bring its RICO claims. (ECF No. 130). The undersigned disagrees. Bowen Sr.'s argument that Adidas lacks Article III standing for failing to allege an injury-in-fact is also unavailing because for standing purposes, a loss of even a small amount of money is ordinarily an "injury." *See, e.g., McGowan v. Maryland*, 366 U.S. 420, 430–31 (1961) (finding that appellants fined five dollars plus costs had standing to assert an Establishment Clause challenge). Assuming the truth of Adidas's allegations, the purported harm falls squarely within RICO's statutory ambit.

Fraudulently induced payments are sufficient to constitute an injury pursuant to RICO's requirement that the plaintiff be "injured in his . . . property," 18 U.S.C. § 1964(c). As to the requirement to plead injury, the Supreme Court has held that "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific fasts that are necessary to support the claim." *NOW v. Scheidler*, 510 U.S. 249, 256 (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). To state a claim under civil RICO, a plaintiff is required to show that a RICO predicate offense "not only was a 'but for' cause of his injury, but was the proximate cause as well." *Holmes v.*

*Sec. Investor Protection Corp.,* 503 U.S. 258, 268 (1992). Here, Adidas has specifically alleged $190,000 in misappropriated funds, articulating a concrete harm sufficient to meet the injury element.

In addition to alleging injury, Adidas has adequately alleged causation. In *Slay's Restoration, LLC v. Wright National Flood Insurance Company*, the Fourth Circuit determined that the establishment of proximate cause under RICO "turns on the *directness* of the resultant harm, not the *foreseeability* of that harm." 884 F.3d 489, 493 (4th Cir. 2018) (emphasis in original). The Fourth Circuit held that the plaintiff had not established that its injury was the direct result of the defendant's acts but instead was the result of a chain of causation. 884 F.3d at 494. In that case, City Line Associates owned an apartment complex that was damaged by flooding. *Id.* at 491. City Line hired First Atlantic Restoration to do repairs. *Id.* First Atlantic then hired plaintiff Slay's Restoration as a subcontractor to perform some of the repair work. *Id.* City Line submitted claims to its insurance company, defendant Wright National Flood Insurance Company, for the work Slay's Restoration did. *Id.* To adjust the claim, Wright hired Colonial Claims Corporation and two consulting firms to provide professional assessments of the repair work. *Id.* at 491–92. Based on the consultants' assessments, Wright offered City Line less than half the amount City Line requested. *Id.* at 492.

Slay's Restoration brought a RICO claim against Wright Insurance, Colonial Claims, and the two consulting firms, alleging that they participated in a fraudulent scheme to create false reports to deny policy benefits. *Id.* Slay's Restoration's theory was that the

reduction of City Line's claims as a result of this scheme prevented First Atlantic from receiving full payment, which then prevented Slay's Restoration from receiving full payment. *Id.* The Fourth Circuit found that Slay's Restoration did not allege facts showing that its injury was the direct result of the defendants' conduct. *Id.* at 494. The court acknowledged that Slay's Restoration had alleged that the defendants' fraudulent conduct caused its injury. *Id.* However, Slay's Restoration's theory of causation extended significantly beyond the first step: the injury from the fraud proceeded from Wright Insurance to City Line, then to First Atlantic, and then ultimately to Slay's Restoration. *Id.* Because the injury "was not the direct result" of the fraud, the injury was not proximately caused by the fraudulent conduct. *Id.* at 495.

This case is distinguishable because the relationship between Adidas and Movants is not so tenuous. Adidas alleges that Bowen Sr., Sood, and other defendants engaged in a scheme that defrauded Adidas of $190,000. The alleged injury—misappropriated funds— is the direct result of Movants' and enterprise participants' alleged conduct in the putative enterprise, discussed *infra*, in violation of 18 U.S.C. § 1962(c). This conduct includes, *inter alia*, falsifying invoices to funnel Adidas money into improper payments to Bowen Sr., among others, and committing various illegal acts in furtherance of that objective. Accordingly, the Court is satisfied that Adidas has alleged causation at this juncture. "Whether [they] will be able to prove it at trial is not a question on which we express any view. Rather, we are deciding whether this aspect of the complaint survives a Rule 12(b)(6) motion, and we confine ourselves to the allegations of the complaint." *Busby v. Crown*

*Supply, Inc.*, 896 F.2d 833, 840 (4th Cir. 1990). Therefore, drawing all inferences in favor of Adidas, the undersigned finds that the proximate cause element is met at this stage.

### 2.  Conduct

RICO's conduct element requires that a defendant "conduct or participate, directly or indirectly, in the conduct" of the enterprise. 18 U.S.C. § 1962(c). The Supreme Court construed this element to mean that a defendant must "participate in the operation or management of the enterprise." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). Sood contends that Adidas has not sufficiently alleged he conducted and participated in the conduct of the enterprise's affairs. (ECF No. 124). Although Bowen Sr. does not directly challenge this element, the reasoning discussed herein as to Sood applies equally to Bowen Sr.

In support of his argument, Sood relies heavily on the *Reves* case. However, Sood's reliance misses the mark. The *Reves* "operation or management" test requires that the defendant have only "some part in directing the enterprise's affairs." *Reves*, 507 U.S. at 179. RICO was intended to "reach all who participate in the conduct of [the] enterprise, whether they are generals or foot soldiers." *United States v. Oreto*, 37 F.3d 739, 751 (1st Cir. 1994). Sood is alleged to have participated through: (1) his meeting with D'Angelo and Code in which the three individuals plotted to misappropriate Adidas funds; (2) his physical delivery of $19,400 in cash to Bowen Sr.; and (3) his agreement with Code to have Adidas funds transferred to an AAU team "[i]n order to deceive Adidas." (*See* Cross-cls. ¶ 46).

*Reves* "rejected the proposition that the defendant's management or operation of the RICO enterprise must be significant" in order to constitute participation. *Clark v. Milam*, 847 F. Supp. 409, 415 (S.D.W. Va. 1994) (analyzing *Reves* and holding that defendant's alleged concealment of the enterprise's activities was sufficient to state a claim under § 1962(c)) (emphasis omitted). Sood is alleged to have directed the enterprise through planning its affairs with Code, and also to have personally made the bribe payment to Bowen Sr. to send Plaintiff to UofL. The Supreme Court in *Reves* noted that an enterprise may "be 'operated' or 'managed' by others 'associated with' the enterprise who exert control over it as, for example, by bribery." *Reves*, 507 U.S. at 184. Accordingly, the Court finds that Adidas has sufficiently alleged participation in the operation or management of the enterprise to withstand a motion to dismiss.

### 3. Enterprise

The Court further finds the Crossclaims have sufficiently alleged that Movants engaged in an "enterprise." Enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Boyle v. U.S.*, 556 U.S. 938, 945 (2009) (internal quotation marks and citation omitted). The enterprise element of a RICO charge is broadly interpreted "to effectuate its remedial purposes" and the enterprise need not have ascertainable structure beyond that inherent in the racketeering activity. *Boyle v. United States*, 556 U.S. 938, 944–47 (2009); *see also United States v. Tillett*, 763 F.2d 628, 631 (4th Cir. 1985) (finding that the ongoing nature of organization and operational structure of group sufficient to prove enterprise). Further, under *Boyle*, "it is not necessary that the enterprise have any particular

or formal structure, but it must have sufficient organization that its members function and operated in a coordinated manner in order to carry out the alleged common purpose or purposes of the enterprise." 556 U.S. at 942 n.1 (emphasis omitted).

While Movants do not directly dispute the existence of an enterprise, neither do they concede it. Rather, Bowen Sr. and Sood argue as a general matter that Adidas has not plausibly alleged that they shared the alleged enterprise's "common purpose" and resultantly, Adidas has failed to allege a necessary element of its RICO claim. This argument is unpersuasive, for the reasons delineated below.

The Fourth Circuit has not required a unitary purpose among the membership of a putative RICO organization to demonstrate the existence of a common purpose. *See, e.g.*, *United States v. Griffin*, 660 F.2d 996, 1001 (4th Cir. 1981) (finding that although the evidence may well have suggested a variety of individual motivations on the defendants' part for their bribery activities, it also sufficed to support the requirement that they had a "common objective" of associating themselves in an ongoing, informally organized enterprise to bribe and corrupt). In *United States v. Griffin*, the court was faced with evidence of an association between several gamblers, each of whom was bribing police officers to protect their illegal gambling operations. *Id.* at 997. The defendants argued that they had no common purpose but "instead acted, 'each man for himself and the devil take the hindmost,' only to protect the interests of his own operation." *Id.* at 1000. Affirming the jury's verdict, the court reasoned "whatever private purposes there may have been there

was also the requisite commonality of purpose between the defendants to give form to the associational enterprise charged." *Id*.

In the case at bar, the alleged common purpose was to misappropriate Adidas's money to fund a bribery scheme to "influenc[e] players to play for schools or programs with an Adidas sponsorship relationship." (Cross-cls. ¶¶ 12, 14). Adidas's averments set forth factual allegations as to the involvement of both Sood and Bowen Sr. in the enterprise and the benefits each received therefrom. The Crossclaims postulate that when Bowen Sr. agreed to accept bribes in return for Plaintiff playing with the Mustangs or at UofL, and when Sood agreed to facilitate the payment of bribes from misappropriated Adidas money to lead Plaintiff to UofL, they each then shared the enterprise's alleged common purpose.

Bowen Sr. argues the allegations that he accepted separate bribes from Nike[4] reinforce that he did not share the enterprise's purpose of sending his son to an Adidas-affiliated school—that, "[a]t most," he "acted solely out of self-interest." (ECF No. 130 at 9). Sood similarly argues his only motivation was "to build notoriety and reputation as [a] successful player advisor[]" and that he therefore lacked the requisite common purpose. (ECF No. 124 at 14) (quoting Cross-cls. ¶ 14). However, self-interest and a common purpose are not mutually exclusive in the instant case. The Crossclaims adequately allege

---

[4] Adidas alleges that in return for Plaintiff's commitment to play for a Nike-sponsored AAU team in Chicago, Bowen Sr. received $5,000 to $8,000 from individuals affiliated with Nike. (Cross-cls. ¶ 23). Bowen Sr. contends that the allegations he "accepted Nike money to steer his son to Nike-sponsored programs eviscerate[] any plausible notion that he was operating under any common purpose to promote the Adidas brand." (ECF No. 130 at 10). Moreover, Bowen Sr. asserts that "[a]t best, all Adidas has alleged is that Bowen Sr. accepted money to steer his son to play for particular schools without regard to which apparel company sponsored the school." (*Id.*).

Movants each shared the common purpose with respect to facilitating bribes to dictate where Plaintiff chose to play basketball. Movants' argument is therefore unpersuasive.

As set forth above, the Court finds that Adidas has sufficiently plead a common purpose as to the enterprise. Accordingly, Sood and Bowen Sr.'s contention is not a basis for dismissing the RICO claims at this stage of the litigation.

### 4. Pattern of Racketeering Activity

To allege a RICO pattern, "two or more predicate acts of racketeering must have been committed [by a defendant] within a ten year period." *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 181 (4th Cir. 2002) (citing 18 U.S.C. § 1961(5)). "Racketeering activity" includes federal mail and wire fraud. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 233 (4th Cir. 2004). A plaintiff asserting a RICO claim predicated on mail or wire fraud must show both (1) a scheme disclosing an intent to defraud and (2) the mails or interstate wires were used in furtherance of the scheme. *Chisholm v. TranSouth Fin. Corp.*, 95 F.3d 331, 336 (4th Cir. 1996). It is possible for defendants to violate RICO if they commit two or more acts of mail or wire fraud and the acts are sufficiently related and sufficiently continuous. *Morley v. Cohen*, 888 F.2d 1006, 1009–11 (4th Cir. 1989).

The Court is mindful of the Fourth Circuit's reservations regarding RICO claims predicated on mail and wire fraud. *Al–Abood v. El–Shamari*, 217 F.3d 225, 238 (4th Cir.2000) (expressing "cautio[n] about basing a RICO claim on predicate acts of mail and wire fraud because it will be the unusual fraud that does not enlist the mails and wires in its service at least twice" (internal quotations and citations omitted)). Notwithstanding,

after considering Adidas's allegations, the undersigned concludes the Crossclaims establish the requisite pattern, even if only by a narrow margin. Determining whether a RICO pattern exists is a "commonsensical, fact-specific inquiry," not a "mechanical" one determined solely by the number of predicate acts over a given time period. *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 182 (4th Cir. 2002). Of importance here, "the mails and wires do not have to be used by each defendant, but merely in furtherance of the scheme." *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 594 (D. Md. 2014) (quoting *Kerby v. Mortg. Funding Corp.*, 992 F. Supp. 787, 801 (D. Md. 1998)).

Bowen Sr. argues the Crossclaims fail to adequately plead that he has committed any predicate acts, much less engaged in a pattern of racketeering activity, or that he had any intent to deceive or defraud Adidas. Further, he posits that Adidas has not alleged the RICO predicate acts with sufficient specificity under FRCP 9(b). With respect to these arguments, the Court is not persuaded. The Crossclaims allege multiple predicate acts, for each of which Bowen Sr. is alleged to have knowingly acted with intent to deceive Adidas. (ECF No. 116). Adidas asserts, *inter alia*, Bowen Sr. knowingly committed the predicate act of wire fraud when he misrepresented the purpose of his receipt of Adidas funds (falsely claiming it was for "staff help" and that he was a "consultant"), he and others used wires in furtherance of this deception, and he further committed the predicate act of obstruction when he lied to the FBI and destroyed his phone to obscure detection of the scheme. (*Id.*).

Bowen Sr. suggests he did not make any misrepresentations himself (ECF No. 130 at 12), but the Crossclaims allege that he falsely labeled himself a "consultant" to disguise

the true purpose of the bribe payments he accepted to steer Plaintiff to UofL (Cross-cls. ¶ 36). The Crossclaims further allege he made a similar misrepresentation in furtherance of the scheme when he falsely stated that the money Rivers paid him to steer Plaintiff to play for the Mustangs was for Bowen Sr.'s "staff help." (*Id*. ¶ 22). As "Bowen Sr. understood that the funds he was accepting had originated at Adidas, and that he had never in fact provided any staff help to Rivers, the Michigan Mustangs, or Adidas" it is a fair inference that he agreed to these misrepresentations knowing that their purpose was to hide the payments from Adidas. (*See id.* ¶ 22).

Adidas further alleges that even if Bowen Sr. had never made those misrepresentations, he is still liable for his participation in the overall scheme to commit wire fraud. So long as a defendant "participated in the scheme to defraud," it is "sufficient" for the actual misrepresentations to be made by "someone connected with the scheme." *Park v. Jack's Food Systems, Inc.*, 907 F. Supp. 914, 918 (D. Md. 1995) (quoting *United States v. Odom*, 736 F.2d 104, 109 (4th Cir. 1984)). Further, Rule 9(b) requires only that state of mind be averred generally, which Adidas has done. Based upon the foregoing, the allegations are sufficient to survive a motion to dismiss.

Taking the allegations in the Crossclaims as true and giving Adidas the benefit of all reasonable inferences, as it must for the purposes of the instant motion, the Court concludes Adidas has alleged sufficient facts to proceed with Count I.

### iii.  Count II – Conspiracy to violate RICO

Adidas also alleges a violation of § 1962(d), which states, in relevant part, that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Movants first argue that Adidas has failed to allege a substantive violation of § 1962(c) and thus, its RICO conspiracy claim fails by default. As discussed *supra*, Adidas's claims for substantive RICO violations under § 1962(c) can proceed at this stage, thus this argument is without foundation.

Second, Bowen Sr. argues that the Crossclaims raise no allegations that he conspired with anyone to engage in racketeering activity. (ECF No. 130). Pursuant to 18 U.S.C. § 1962(d), to state a claim for RICO conspiracy, a plaintiff must allege: (i) the existence of an enterprise affecting interstate commerce; (ii) "that each defendant knowingly and intentionally agreed with another person to conduct or participate in the affairs of the enterprise"; and (iii) "that each defendant knowingly and willfully agreed that he or some other member of the conspiracy would commit at least two racketeering acts." *United States v. Mouzone*, 687 F.3d 207, 218 (4th Cir. 2012). Important here, "a defendant can conspire to violate RICO and violate § 1962(d) without himself committing or agreeing to commit the two or more acts of racketeering activity." *Mouzone*, 687 F.3d at 218 (internal brackets and quotation marks omitted) (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)). He need only "agree to pursue the same criminal objective" as that of the enterprise. *Salinas*, 522 U.S. at 63–64; *United States v. Mathis*, 932 F.3d 242, 260 (4th Cir.).

Noting the distinction between a substantive RICO violation and a conspiracy to violate, the Fourth Circuit has held that a charge of conspiracy to violate RICO does not require proof of any overt act or proof that a charged defendant committed or agreed to commit any predicate racketeering act himself. *Mouzone*, 687 F.3d at 218 (citing *Salinas*, 522 U.S. at 65)). "Rather, simply agreeing to advance a RICO undertaking is sufficient." *Mouzone*, 687 F.3d at 218. For a subsection (d) claim, a plaintiff must allege that "each defendant agreed that another coconspirator would commit two or more acts of racketeering." *United States v. Pryba,* 900 F.2d 748, 760 (4th Cir.1990).

Here, Adidas's Crossclaims meet this standard. Regardless of Sood's or Bowen Sr.'s involvement in the making of specific false invoices, each putatively agreed to facilitate or accept bribes using money that would be misappropriated from Adidas and Movants allegedly committed overt acts to further that scheme. Purportedly, Bowen Sr. negotiated with Christian Dawkins to receive $100,000 fraudulently obtained from Adidas if his son agreed to attend UofL and promised to conceal the true purpose of the funds as payment for acting as a "consultant." (Cross-cls. ¶ 36). According to the Crossclaims, Sood discussed and agreed to a plan with Code, Dawkins, Rivers, and "D'Angelo"—an FBI informant—that Sood, D'Angelo, and Dawkins would front certain funds necessary to pay Bowen Sr. until Code's fraudulent invoices had cleared Adidas's compliance system and been funneled through an AAU team. (Cross-cls. ¶¶ 45–46). Adidas further alleges that Sood then delivered the bribe and Bowen Sr. obstructed the FBI's investigation. (ECF No. 116).

Based on the foregoing, the Court finds that Movants' alleged "participat[ion] in the conspiracy with knowledge of the essential nature of the plan" is sufficient for a claim for relief under § 1962(d). *United States v. Tillett*, 763 F.2d 628, 632 (4th Cir. 1985). Movants' motions to dismiss are hereby denied as to these claims.

### iv.   Count IV – Conspiracy to commit Oregon fraud

The Crossclaims contend that Sood's and Bowen Sr.'s participation in the conspiracy to commit fraud against Adidas also violated Oregon law. Under Oregon law, a civil conspiracy exists if there are: "(1) [t]wo or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Yanney v. Koehler*, 935 P.2d 1235, 1238 (Or. 1997) (quoting *Bonds v. Landers*, 566 P.2d 513, 516 (Or. 1977)).

Adidas has adequately alleged these elements. The alleged conspiracy involved more than two people, extending to Sood, Bowen Sr., Code, Dawkins, Gatto, and Gassnola. (Cross-cls. ¶¶ 12–14). The purported object to be accomplished was dictating where Plaintiff would play basketball. (*Id*. ¶¶ 14, 22). An alleged agreement was reached among all of the individual defendants that Adidas funds would be taken from the company, concealed, and paid to Bowen Sr. to accomplish that purpose. (*Id*. ¶¶ 34–36, 46). The Crossclaims allege multiple unlawful overt acts were taken in furtherance of the objective, in particular the fraudulent invoices submitted to Adidas to misappropriate its funds. (*Id*. ¶¶ 16–17, 49). Finally, Adidas claims it suffered damages via the $190,000 it lost in

misappropriated funds due to the conspiracy and the fraudulent invoices. (*See id*. (detailing $190,000 in invoices)).

Sood and Bowen Sr. argue there was no agreement, and, more specifically, they supposedly did not agree to any frauds against Adidas. (ECF Nos. 124, 130). But Oregon conspiracy law does not require a defendant to have agreed to each particular illegal act before liability can attach; rather, a "defendant[] involved in the conspiracy can be held liable for the overt act which is committed by one of the defendants pursuant to the conspiracy." *Granewich v. Harding*, 329 Or. 47, 58, 985 P.2d 788, 794–95 (1999) (quoting *Still v. Benton*, 251 Or. 463, 466, 445 P.2d 492, 494 (1968)). The Court finds Adidas's allegations—that Sood and Bowen Sr. each agreed to, and committed acts in furtherance of, a scheme to facilitate and accept bribes using money that was or would be misappropriated from Adidas—are sufficient to state a claim for conspiracy to commit fraud under Oregon law.

Finally, Bowen Sr. makes a statute-of-limitations argument premised on Oregon's limitations period. (ECF No. 130). However, it is South Carolina's period that governs. A federal court exercising supplemental jurisdiction applies the choice of law rules of the forum state. *Michelin North America, Inc. v. Inter City Tire & Auto Ctr., Inc.*, No. CV 6:13-1067-HMH, 2015 WL 12843916, at *3 (D.S.C. Jan. 20, 2015) (citing *Klaxon Co. v. Stentor Elec. Mfg., Co.*, 313 U.S. 487, 496–97 (1941)). In this case, the forum is South Carolina, and "[u]nder South Carolina law," when a tort action is brought, "the substantive law is determined by the law of the state in which the injury occurred and procedural matters by

the law of the forum." *Gentry Tech. of S.C., Inc. v. Baptist Health S. Fla.*, Inc., No. 1:14-cv-2127, 2016 WL 403879, at *4 (D.S.C. Feb. 3, 2016) (quoting *Thornton v. Cessna Aircraft Co.*, 886 F.2d 85, 87 (4th Cir. 1989)). South Carolina considers statutes of limitations procedural, and therefore South Carolina courts apply their own limitations periods to tort claims, even if those tort claims are brought under other states' laws. *See Fiberlink Commc'ns Corp. v. Magarity*, 24 F. App'x 178, 181 (4th Cir. 2001) ("[F]ederal courts look to the law of the forum state to determine the applicable statute of limitations"); *Coe v. Thermasol*, Ltd., 785 F.2d 511, 514 n.5 (4th Cir. 1986) (same); *Gentry Tech*, 2016 WL 403879, at *5 (applying South Carolina limitations periods to Florida claims).

Here, Adidas's conspiracy claim is subject to a three-year limitations period, pursuant to South Carolina law. *See* S.C. Code Ann. § 15–3–530(5) (providing the statute of limitations for an action sounding in tort is three years). Bowen Sr. argues the limitations period must run from September 25, 2017, the date the Southern District of New York indictments were made public. Even so, Adidas had until September 25, 2020 to file its Oregon fraud claim. Here, they filed it on April 16, 2020. Accordingly, this claim will not be dismissed at this time.

Whether Adidas is a passive victim of the chicanery alleged is ultimately for a jury, not the Court at this juncture, to determine. Drawing all inferences in favor of the nonmoving party, the Court finds the Crossclaims contain sufficient allegations to withstand the present motions to dismiss.

### b. Sood's Crossclaims Against Bowen Sr. for Contribution

Finally, the Court turns to the crossclaims between Movants. Sood seeks contribution from Bowen Sr. on the causes of action discussed above (Counts I, II, and IV). (ECF No. 139). Sood's crossclaims neglect to establish the basis of his asserted right to contribution and both parties cite extensively to South Carolina state law in their briefs without providing explanation as to how or why it is the applicable law. (*See* ECF Nos. 145, 151). This authority is not germane. Because Sood's claims for contribution are substantive claims arising under federal causes of action and Oregon state law causes of action, the right to contribution is thereby governed by federal law and Oregon state law.

Bowen Sr. proffers several arguments for dismissal inappositely premised on South Carolina state law. However, the Court need not reach these arguments since it finds that Sood's crossclaims fail for other reasons stated herein. Because Sood's claims fail under both Oregon and federal law, Bowen Sr.'s motion to dismiss is hereby granted.

### i. Contribution under RICO

As a matter of law, Sood has no right to contribution under RICO. Traditionally, a right to contribution is not available at common law to joint tortfeasors who intentionally cause injury. *See* Restatement (2d) of Torts § 886A(3) (1965). As the Supreme Court has observed: "The course of tort law in this century has been to reverse the old rule against contribution, but this movement has been confined in large part to actions in negligence." *Musick, Peeler & Garrett v. Employers Ins. of Wausau*, 508 U.S. 286, 297 (1993). Here, a RICO defendant is akin to an intentional tortfeasor.

RICO does not provide either an express or implied right to contribution. *City of Hudson v. Janiszewski,* 351 F. App'x 662, 666–67 (3d Cir. 2009). Although the Fourth Circuit has not directly addressed this issue, every district court opinion located by this Court has reached this conclusion. "The text of the RICO statute does not explicitly permit defendants in civil RICO actions to obtain either contribution or indemnity from third parties, and courts have consistently held that no such right exists." *Freedman v. Hartman,* 787 F. Supp. 411, 415 (S.D.N.Y.1992) (listing ten district court opinions from six states).

In determining that an action for contribution is unavailable to RICO defendants, many of these courts have applied the reasoning of *Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630 (1981), in which the Supreme Court held that federal antitrust statutes do not provide a right to contribution. The antitrust treble damages provisions are analogous to those in RICO, and both statutes "reveal an intent to punish past, and to deter future, unlawful conduct." *Freedman,* 787 F. Supp. at 416 (citing *Texas Industries,* 451 U.S. at 639–40). This clearly reflects Congress's lack of concern with "softening the blow on joint wrongdoers in this setting," which contribution would do if available to a RICO defendant. *Id*. at 416–17. Furthermore, RICO's "comprehensive legislative scheme and integrated system of procedures for enforcement" clearly indicate that Congress did not intend courts to have the power to supplement the enacted remedies with contribution. *Id*. at 417 (quoting *Texas Industries*, 451 U.S. at 645).

Following the Supreme Court's analysis set forth in *Texas Industries*, and finding the decisions and reasoning of lower courts persuasive, this Court dismisses all claims asserted against Bowen Sr. for contribution under RICO. The Court notes that its decision is consistent with that of other district courts within the Fourth Circuit that have examined this issue. *See, e.g., Prior v. Teamsters Local 101*, No. 3:14-cv-527, 2015 WL 500173, at *3 (E.D. Va. Feb. 4, 2015) (holding that RICO does not provide an express or implied right to contribution); *Andrews v. Fitzgerald*, No. C–89–649–G, 1992 WL 159766, at *1–2 (M.D.N.C. Feb. 7, 1992) (dismissing all third-party plaintiffs' claims for contribution under RICO and stating that "[c]ourts directly addressing the issue have held that there is no right to indemnity or contribution under RICO"); *First Fin. Sav. Bank, Inc. v. Am. Bankers Ins. Co. of Fla., Inc.*, No. 88–33–CIV–5–H, 1990 WL 260541, at *13–14 (E.D.N.C. July 5, 1990) ("It is also well established that there is no right to contribution under the federal RICO statute."). Because the RICO statute does not provide either an express or implied right to contribution, Sood's action for contribution fails as a matter of law.

## ii.  Contribution under Oregon Law

In Oregon, claims for contribution are cognizable under Or. Rev. Stat. § 31.800.[5] The statute provides "where two or more persons become jointly or severally liable in tort for the same injury to person or property . . . there is a right of contribution among them." Or. Rev. Stat. § 31.800. Here, Sood seeks contribution for Adidas's state law allegations— conspiracy to commit fraud. "Oregon law establishes the elements of the tort of civil

---

[5] Or. Rev. Stat. § 31.800 was originally numbered as § 18.440. It was renumbered in 2003. For ease of reference, it will be referred to here by its current numbering.

conspiracy and provides that civil conspiracy is an intentional tort." *Bridges v. U.S. Dep't of Agric.*, No. CIV. 02-1685-AA, 2003 WL 25804199, at *3 (D. Or. Aug. 7, 2003). However, this Court's thorough examination of the legislative history of Oregon's contribution statute and relevant case law located no authority indicating that the right to contribution applies between *intentional* joint tortfeasors.

Applying Oregon law, the District Court for the District of Oregon observed that "Oregon's comparative fault scheme, of which its contribution statutes are an integral part, does not allow a comparison of fault between intentional tortfeasors." *Hurley v. Horizon Project, Inc.*, No. CV-08-1365-ST, 2009 WL 5511205, at *2 n.3 (D. Or. Dec. 3, 2009), *report and recommendation adopted as modified*, No. CV 08-1365-ST, 2010 WL 273806 (D. Or. Jan. 15, 2010). While Oregon's comparative fault statutory scheme does not contain a definition of "fault," the Oregon appellate courts have gleaned that fault, as used in the statute, "includes 'tortious conduct . . . in which contributory negligence is an appropriate defense'" and therefore does not include intentional misconduct since contributory negligence was not a defense to willful or intentional misconduct. *Shin v. Sunriver Preparatory School*, 199 Or.App. 352, 376, *review denied*, 339 Or. 406 (2005). Furthermore, where Oregon's statute replaced "negligence" with "fault," prior judicial rulings and legislative history explain that the change was not meant to expand the statute's scope. *See Shin,* 199 Or.App. at 374. Adidas's state law claims constitute intentional torts, for which Oregon law does not authorize contribution. Sood's contribution claim therefore fails as a matter of law.

## V.    CONCLUSION

For the aforementioned reasons, Movants' respective motions to dismiss Adidas's Crossclaims are hereby denied. (ECF Nos. 124 & 130). As to Sood's crossclaims for contribution (ECF No. 139), Bowen Sr.'s motion to dismiss (ECF No. 145) is granted based on the reasoning set forth above.

IT IS SO ORDERED.

October 23, 2020
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge