# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

## COLUMBIA DIVISION

| | | |
|---|---|---|
| BRIAN BOWEN II, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 3:18-3118-JFA |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES GATTO; MERL CODE; CHRISTIAN DAWKINS; MUNISH SOOD; THOMAS GASSNOLA; and CHRISTOPHER RIVERS, | ) ) ) ) ) | **MOTION TO COMPEL ADIDAS AMERICA, INC. TO FULLY RESPOND TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |
| Defendants, | ) | |
| | ) | |
| ADIDAS AMERICA, INC.; | ) | |
| | ) | |
| Defendant-Cross Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MUNISH SOOD and THOMAS GASSNOLA | ) ) | |
| | ) | |
| Defendant-Cross Defendants, | ) | |
| | ) | |
| and BRIAN BOWEN, SR., | ) | |
| | ) | |
| Cross Defendant. | ) | |

Plaintiff Brian Bowen II respectfully moves the Court, pursuant to Federal Rules of Civil Procedure 26(b) and 37, for an order compelling Defendant Adidas America, Inc. to provide full and complete responses to Plaintiff's First Set of Requests for Production of Documents.

## SUMMARY OF ARGUMENT

Plaintiff seeks an order compelling Defendant Adidas America, Inc. (hereinafter, "Adidas") to produce all responsive documents and other tangible materials in response to

1

Requests Nos. 8 and 9 set forth in Plaintiff's First Set of Requests for Production. (*See* Ex. 1.) In response to these discovery requests, Adidas has rested on boilerplate, unsubstantiated objections, a facially misleading response, and otherwise refused to undertake a good faith effort to produce plainly relevant documents in this case. (*See* Ex. 2.) The requests at issue in this motion seek documents needed to fully understand the extent of Adidas's liability in this case, including Adidas's representations to third-parties regarding its involvement in the college basketball bribery scheme that forms the basis for this case. This includes documents reflecting Adidas's communications with its shoe industry competitor, Skechers, in connection with a lawsuit Skechers filed against Adidas for its participation in the college basketball bribery scheme, and Adidas's communications with the NCAA related to its employees and contractors having engaged in bribery to steer high school players to Adidas-sponsored Division I basketball programs. When presented with these requests, Adidas responded with non-specific, boilerplate objections and formulaic objections followed by vague representations that some documents would be produced. As discussed below, Adidas's objections ignore this Court's long-standing instructions to parties regarding the improper use of non-specific and boilerplate objections that are effectively meaningless and meritless.

Given Adidas's refusal to produce further responsive documents and its evasive and incomplete discovery responses, Plaintiff seeks an order from the Court (1) compelling Adidas to produce all documents responsive to Plaintiff's Requests No. 8 and 9 of his First Requests for Production of Documents; (2) overruling Adidas's boilerplate objections to those two requests; and (3) ordering Adidas to produce all documents responsive to any request for production that it withheld from production on the basis of its improper narrowing of the term "college basketball bribery scheme" that was clearly defined and used throughout Plaintiff's requests.

**BACKGROUND**

This case alleges violations of the civil RICO Act against Adidas, its employees, contractors and other individuals for engaging in a years-long bribery scheme involving wire fraud and money laundering that targeted the families of athletically-gifted amateur basketball players with financial bribes so Adidas could to steer those players to attend Adidas-sponsored schools and sign those kids to the Adidas brand. In doing so, Defendants violated federal wire fraud and money laundering statutes and, for Plaintiff, destroyed his eligibility to play NCAA Division I basketball. The scheme unraveled in September 2017 following a multi-year federal investigation spearheaded by U.S. Attorney's Office for the Southern District of New York and the FBI. All but one of the individual defendants in this case were criminally charged and convicted for their role in the fraudulent bribery scheme. In particular, Defendants Gatto, Code, and Dawkins were convicted following a highly-publicized three-week long trial in New York, while Sood and Gassnola pleaded guilty to their criminal acts and testified against others.

In the wake of the government's criminal investigation, two key events occurred that are pertinent to this motion to compel. First, one of Adidas's sports apparel industry competitors, Skechers, filed a lawsuit against Adidas under the Lanham Act alleging essentially the same facts alleged in Plaintiff's amended complaint regarding Adidas' participation in the college basketball bribery scheme and recounting in detail the allegations raised during the prosecution of Adidas's James Gatto, Merl Code, and T.J. Gassnola. As set forth in the complaint filed by Skechers:

> [A]didas would have consumers, investors, and the public believe that hot, up-and-coming collegiate basketball players, as well as talented young players who move on to the National Basketball Association ("NBA"), choose adidas's products due to their supposed superior performance and style. In fact, however, adidas has coopted young players into wearing and expressly or implicitly endorsing its products by funneling hundreds of thousands of dollars in secret payments to players, their coaches, and/or family members in violation of National Collegiate Athletic Association ("NCAA") rules.

(Ex. 3 at ¶ 1.) Second, the NCAA initiated enforcement action against several Adidas-sponsored universities, including the University of Louisville and University of Kansas, and NC State University, seeking to sanction those schools for not closely monitoring their relationships with Adidas and Adidas personnel who engaged in bribery.

Given the significance of these events and their obvious relevance to this case, Plaintiff has requested basic documents and communications that Adidas exchanged with Skechers and the NCAA regarding the college basketball bribery scheme. Despite initially representing that it would produce responsive documents, Adidas has now backtracked and refuses to produce these highly-relevant materials to Plaintiff.

## ARGUMENTS AND AUTHORITIES

### A. Legal Standard

"Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Pursuant to Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). "Over the course of more than four decades, district judges and magistrate judges in the Fourth Circuit . . . have repeatedly ruled that the party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." *Kinetic Concepts, Inc. v. ConvaTec Inc.,* 268 F.R.D. 226, 243 (M.D.N.C. 2010).

### B. Plaintiff's First Request for Production of Documents to Adidas

Plaintiff seeks an order compelling Adidas to respond fully to Request Nos. 8 and 9 of his First Set of Requests for Production. (Ex. 1.) The two requests are outlined below:

> **REQUEST FOR PRODUCTION NO. 8:** Copies of all correspondence and other documents exchanged between Adidas and Skechers USA, Inc. (including

4

>   Skechers USA, Inc.'s attorneys, O'Melveny & Myers LLP) related to the following case brought by Skechers alleging Adidas sought to "prop up the reputation and supposed brand appeal of its footwear products" through the college basketball bribery scheme: *Skechers USA, Inc. v. Adidas America, Inc. et al.*, No. 2:18-cv-03882-VAP-AFM (C.D. Cal. 2018 filed May 9, 2018), including all related electronic and hard copy communications.
>
>   **REQUEST FOR PRODUCTION NO. 9**: Copies of all correspondence and other documents exchanged between Adidas and the National Collegiate Athletic Association ("NCAA") related to the college basketball bribery scheme, including all related electronic and hard copy communications.

In response to these requests, Adidas raises some combination of the following objections:

(1) The request is irrelevant to the claims or defenses in this action;

(2) The request is overbroad, unduly burdensome, and disproportionate to the needs of the case; and/or

(3) The term "college basketball bribery scheme," which is clearly defined in Definition No. 3 to Plaintiff's Requests for Production as "the subject matter of the criminal investigation of bribery in NCAA Division I men's college basketball that resulted, in part, in the prosecution of James Gatto, Merl Code, Christian Dawkins, Thomas Gassnola, and Munish Sood" is unduly burdensome, unbounded in time or scope.

### C. <u>Adidas's Boilerplate, Unsupported Objections Should Be Overruled</u>

Adidas's boilerplate objections are improper, without merit, and can be summarily overruled because they are not permitted under the rules. Rule 34(b)(2)(B) requires that the grounds to any objection must be stated with specificity. Fed. R. Civ. P. 34(b)(2)(B). "General objections to discovery, without more, do not satisfy the burden of the responding party under the Federal Rules of Civil Procedure to justify objections to discovery because they cannot be applied with sufficient specificity to enable courts to evaluate their merits." *Hager v. Graham*, 267 F.R.D. 486, 498 (N.D.W. Va. 2010); *see also State Farm Fire & Cas. Co. v. Admiral Ins. Co.*, 225 F.

Supp. 3d 474, 485485 (D.S.C. 2016) ("Boilerplate, general objections standing alone waive any actual, specific objections."). Moreover, this Court has repeatedly warned litigants that boilerplate objections offered without explanation are "meritless" and "meaningless." *See Curtis v. Time Warner Entm't-Advance/Newhouse P'ship*, No. 3:12-CV-2370-JFA, 2013 WL 2099496, at *2 (D.S.C. May 14, 2013) ("Objections that state that the discovery request is 'vague, overly broad, or unduly burdensome' are, standing alone, meaningless and will be found meritless by this court. A party objecting on these grounds must explain the specific and particular way in which a given request is vague, overly broad, or unduly burdensome.").

Here, Adidas makes general objections that Plaintiff's definition of the phrase "college basketball bribery scheme" in Instruction No. 3 of his Requests for Production is vague, ambiguous, and "unduly burdensome, unbounded in time or scope, and refers to an investigation undertaken by others with an unknown scope and time."  (Ex. 2 at 3 (Adidas Gen'l Obj. No. 6).) Contrary to this boilerplate assertion, Adidas knows full well the scope of its participation in the "college basketball bribery scheme," as represented by the numerous letters and presentations it provided to the U.S. Attorneys' Office regarding its criminal investigation that goes well beyond the prosecution of Gatto, Code, Dawkins, Sood, and Gassnola and, therefore, it has no good faith basis to claim ignorance of it when responding to Plaintiff's discovery requests.  By intentionally narrowing Plaintiff's definition, Adidas is not attempting to "clarify' a term but to redefine it in a manner that permits it to avoid producing relevant documents that would expose bribery targeting student-athletes that were not a subject of the prior criminal prosecutions.  This would included bribe payments made or facilitated by *other* Adidas employees and contractors, including Defendant Christopher Rivers.  The Court, therefore, should order Adidas to review its entire response to Plaintiff's First Requests for Production and produce all documents withheld on the

6

basis of its improper limiting of Plaintiff's definition of "college basketball bribery scheme." *See Patrick v. Teays Valley Trustees, LLC*, 297 F.R.D. 248, 257 (N.D.W. Va. 2013) ("A party responding to discovery requests should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in [discovery requests].") (internal citation and quotation marks omitted).

Additionally, Adidas's general objections to Requests Nos. 8 and 9 similarly are not sufficient to carry its burden to oppose discovery and should, therefore, be denied.

### D. Adidas's Baseless Relevancy Objections

Adidas cannot credibly argue that the two requests at issue in this motion have no relevancy to this case. Both the *Skechers* litigation and the NCAA's investigation center on the payment of bribes by Adidas, through its employees and contractors, to the families of high school basketball players. And both the *Skechers* complaint and NCAA's investigation relate directly to the factual predicate set forth in Plaintiff's Amended Complaint regarding the conduct of the "Adidas Bribery Enterprise." (*See* ECF No. 84 at ¶¶ 118-234.) For example, the *Skechers* complaint makes specific references to Adidas's efforts to target Plaintiff Brian Bowen through the bribery scheme, including the following allegation:

> University of Louisville is an NCAA Division I university whose athletic programs are sponsored by adidas, and the purpose of the payment from adidas was to secure Bowen's attendance at the University of Louisville, as opposed to other schools, and to ensure that Bowen would sign an endorsement deal with adidas upon entering the NBA.

(Ex. 3 (*Skechers* Compl.) at ¶ 44.) Skechers also describes in depth the pattern of criminal wire fraud engaged in by Adidas that ensnared other top basketball recruits to other Adidas-sponsored universities, including players Billy Preston, Dennis Smith, Jr., and Silvio DeSousa. (*Id.* ¶¶ 29-33; 35-39; 40-43.) These are not passing references unrelated to the causes of action in the

*Skechers* litigation: the *Skechers* complaint centers on Adidas's bribery scheme and refers to Defendant Gatto's name 38 times, Defendant Merl Code's name 35 times, Defendant Gassnola's name 22 times, Defendant Christian Dawkins's name 13 times, and Defendant Sood's name 7 times.  In sum, the *Skechers* cases uses the identical factual predicate underlying the criminal prosecutions of the individual defendants by the U.S. Attorney for the Southern District of New York in alleging unfair trade practices under the Lanham Act and California law.  Yet, in its response to Plaintiff's Request for Production No. 8, Adidas offered the utterly baseless objection that it "objects to Request No. 8 on the grounds that it seeks documents concerning a <u>patent dispute unrelated to the college basketball bribery scheme</u> as defined in Paragraph 6 above, which would include documents irrelevant to the claims or defenses in this action." (*See* Ex. 2 at 8.)  Adidas cannot in good faith offer any explanation of *why* it provided such a misleading response nor can it simply claim error or misunderstanding.  Rather, after Plaintiff's counsel pointed out during a telephone conference that the *Skechers* case could not credibly be described as patent litigation, Adidas doubled-down on the company's position in a letter dated October 16, 2020, stating that "adidas maintains its objection [to Request No. 8] on grounds of relevance."  (Ex. 4 at 9.)  Missing from Adidas's response and subsequent letter, however, is any *explanation* of why documents and communications exchanged between Adidas and Skechers regarding that lawsuit bear no relevance to the claims and defenses in this case.

Aside from the obvious relevancy of the *Skechers* lawsuit to this case, the requested communications exchanged between Adidas and Skechers's counsel are potentially highly relevant due in part to the fact that the case was resolved in <u>twenty days</u>: the *Skechers* complaint was filed on May 9, 2018 and settled on May 29, 2018.  (*See* Ex. 5 (*Skechers* case docket).)  So quickly, in fact, that Adidas's attorneys never bothered to make an appearance in the case.  (*Id.*)

8

Indeed, Adidas was quick to settle with Skechers through a written agreement that is relevant due, in part, to the likelihood that Adidas made admissions of wrongdoing or otherwise conceded liability in the settlement agreement with Skechers.  If so, those admissions would be relevant to the company's position regarding its liability in this case and counterclaims against other parties. (*See* Ex. 6 (Nov. 6, 2020 Ltr. to Plaintiff's counsel stating that "[t]he settlement agreement resolving the case *Skechers USA, Inc. v. Adidas America, Inc.*" is being withheld from production.).)

Likewise, Adidas's communications with the NCAA regarding the "college basketball bribery scheme" are unequivocally relevant to this case.  Plaintiff's amended complaint alleges that "Adidas is a representative of its sponsored-universities' athletic interests (commonly known as a 'booster')."  (*See* ECF No. 84 at ¶ 135.)  The significance of this designation is made clear by various NCAA Bylaws, which prohibit representatives of a university's athletic interests, such as apparel sponsors, from recruiting student-athletes in violation of NCAA rules.  (*See id.*)  Such recruitment renders a student-athlete ineligible to participate in athletics, which is exactly what happened to Plaintiff.  Thus, communications between Adidas and the NCAA regarding the college basketball bribery scheme may include discussions of the NCAA's designation of the company as a "representative of [a university's] athletic interests."  *See, e.g.*, Ex. 7 at 1 (NCAA Notice of Allegations to the University of Louisville designating Adidas as "a representative of the institution's athletic interests"); Ex. 8 at 2 (Statement Issued by University of Kansas Office of Public Affairs describing the NCAA's designation of Adidas as a "representative of KU's Athletics Interest" as a "particular concern" to the university).

Additionally, discovery in this case has already revealed that Adidas's money was used to bribe a far greater number of top basketball recruits than was disclosed during the criminal trial of

Defendants Gatto, Code, and Dawkins, including revelations of a significant number of payments made by Defendant Christopher Rivers and other Adidas employees and/or consultants who were not prosecuted. Thus, Adidas's communications with the NCAA "regarding the college basketball bribery scheme" may likely include self-disclosures regarding these unidentified student-athletes whose eligibility was affected by these bribe payments.

## CONCLUSION

Based on the foregoing, Plaintiff Brian Bowen respectfully requests the Court to issue an order (1) compelling Adidas to produce all documents responsive to Plaintiff's Requests No. 8 and 9 of his First Requests for Production of Documents and (2) overruling Adidas's boilerplate and unsupported objections, and (3) ordering Adidas to produce any documents withheld on the basis of its improper redefining the scope of discovery set forth in Plaintiff's Instruction No. 3 ("college basketball bribery scheme").

## AFFIRMATION OF CONFERENCE

Prior to filing this motion, counsel for Plaintiff attempted to resolve this discovery dispute in good faith with counsel for Adidas America, Inc. during several meet and confer telephone conferences, with the last one occurring on November 23, 2020. The parties agreed to extend the time to discovery requests to November 24, 2020. (See Ex. 9.)


Respectfully submitted,                **McLEOD LAW GROUP, LLC**
                                       Post Office Box 21624
                                       Charleston, South Carolina 29413
                                       (843) 277-6655

                                       *s/ Colin V. Ram*
                                       Colin V. Ram, No. 12958
                                       W. Mullins McLeod, Jr., No. 7142
                                       colin@mcleod-lawgroup.com
                                       *Attorneys for Plaintiff*


November 24, 2020
Charleston, South Carolina