# NCAA AMENDED NOTICE OF ALLEGATIONS

On September 23, 2019, the University of Kansas received a Notice of Allegations from the NCAA enforcement staff regarding alleged violations of NCAA bylaws within the Kansas men's basketball and football programs. Per NCAA bylaws, the University was instructed it had 90 days to submit a response. On November 21, that deadline was extended to February 19, 2020. On January 30, 2020, the university received an amended NOA, and the deadline to respond was extended to March 5, 2020. The University submitted its full response to the amended NOA on March 5, 2020, and posted it below[1].

On May 6, the NCAA replied to KU's response, and KU shared those documents on this website May 7. The NCAA's reply comprises the following two documents:

- NCAA Reply[2]
- NCAA Statement of the Case[3]

The university also issued the following statement related to the abovementioned documents: "The NCAA enforcement staff's reply does not in any way change the University of Kansas' position that the allegations brought against our men's basketball program are simply baseless and littered with false representations. As the federal trial proved, adidas employees intentionally concealed impermissible payments from the University and its coaching staff. The University has never denied these impermissible payments were made. For the NCAA enforcement staff to allege that the University should be held responsible for these payments is a distortion of the facts and a gross misapplication of NCAA Bylaws and case precedent. In addition, the enforcement staff's assertion that KU refuses to accept responsibility is wrong. The University absolutely would accept responsibility if it believed that violations had occurred, as we have demonstrated with other self-reported infractions. Chancellor Girod, Jeff Long and KU stand firmly behind Coach Self, his staff and our men's basketball program, as well as our robust compliance program."

On June 8, the university posted the following documents related to next steps in the process.

- NCAA Referral Petition[4]
- KU Response to COI Referral Petition[5]
- Coach Self Response to COI Referral Request[6]
- Coach Townsend Response to COI referral request[7]

## Responses to amended NOA (submitted March 5)[8]

- University response overview[9] (pdf)
- University response[10] (pdf)
- University response public exhibits[11] (pdf)
- Coach Self response[12] (pdf)
- Coach Townsend response[13] (pdf)

## University response overview

The University of Kansas (the "University" or "Kansas") is committed to full compliance with NCAA legislation, as has been demonstrated by the comprehensive nature and extent of its compliance efforts over the years. When there are suspected violations of NCAA rules and regulations, the University has not hesitated to investigate, self-report, cooperate, and ultimately when appropriate, accept responsibility. It is because of that commitment to integrity, the rules, and its robust compliance efforts, that the institution has strong ground to stand on when it believes that allegations of NCAA rules and regulations charged against it are simply unsupported by the evidence and the record.

In this case, stemming from federal criminal trials in 2018, there are several facts that are in dispute; there are assumptions made; and, perhaps most importantly, there are unprecedented and novel theories put forward that, if found to have merit by the Panel, would dramatically alter the collegiate sports landscape in ways not contemplated by the Membership. This infractions' proceeding would redefine the criminal verdicts in the federal trials if the Panel adopts the enforcement staff's theories. In its Response, the University formally challenges each of the men's basketball related allegations in the Amended Notice of Allegations ("ANOA") as neither NCAA legislation nor the facts support the enforcement staff's allegations.

**Adidas as a Representative of KU Athletics Interest**

Of particular concern to the institution, is the NCAA's assertion that Adidas, and Adidas employees and associates, were representatives of the University's athletics interests (as defined by NCAA legislation) during the period of the alleged violations and therefore acting on the University's behalf when they engaged in alleged violations of NCAA bylaws. The evidence however, based mainly on trial testimony, fails utterly to support a conclusion that Adidas or any Adidas employees acted as representatives of the University during the period in question. Individuals formally associated with Adidas acted in their own interests when they gave money to the family and guardians of student-athletes. In fact, sworn testimony makes clear that these former Adidas associates went to great lengths to conceal their activities from Kansas and its basketball staff. The University did not know and, as the evidence reveals, could not have reasonably known, about the conduct of these persons formerly affiliated with Adidas.

In issuing the allegations contained in the ANOA, the enforcement staff relies on a never before alleged theory. Specifically, the enforcement staff alleges that: (1) a corporate sponsor of an institution's athletics program is a representative of the institution's athletics interests because, by the very nature of the relationship, sponsors make financial contributions that promote athletics, and (2) every employee, consultant, or other person associated with the corporate sponsor is a representative of the institution if the institution knew or should have known the individual was associated with the corporate sponsor. Stated otherwise, according to the enforcement staff, every corporate sponsor and most, if not all, individuals associated with the sponsor are boosters of every institution with which the sponsor does business. This theory, if adopted by the Panel, would have far reaching ramifications throughout the Membership given the universal use of corporate sponsorships throughout Division I athletics. Moreover, as is explained in the Response, under the terms of NCAA legislation, innumerable current and former student-athletes would be ineligible due to their pre-enrollment participation in non-scholastic events and on non-scholastic teams that were provided financial support by Nike, Under Armour, Adidas, and others.

**Head Coach as a Representative for Life**

Yet the novel theories put forward by the enforcement staff in the allegations go beyond the Adidas relationship. For example, the enforcement staff alleges that Larry Brown, the former Kansas head men's basketball coach (1983-1988) is a representative of Kansas's athletic interests even though he has not coached in Lawrence in more than thirty years, and since his departure has not promoted or recruited on behalf of the University's athletics programs, and has never donated to the University's athletics programs. The enforcement staff relies on casual and innocuous phone conversations between Brown and members of the University's men's basketball staff, all of whom he knows well. He was never asked to recruit on behalf of Kansas nor did he. Yet here again, the enforcement staff asserts a novel theory—that a head coach becomes a representative of an institution for life—a contention that has no basis in NCAA legislation, case precedent, official interpretations or educational materials. Again, this theory would have a ripple effect across the Membership as any former coach of an institution would be considered a representative of that institution's athletic interests forever.

**Head Coach Responsibility**

As is laid out in great detail in the Response, there is no reasonable conclusion that members of the University, including the men's basketball staff, knew or should have known about any violations of NCAA rules. Head Coach Bill Self had no knowledge of any NCAA rules violations or illicit conduct exhibited by Adidas, its employees or its consultants. In addition, as the University noted in September 2019, voluminous evidence demonstrates uncontestably that Coach Self did, in fact, promote an atmosphere of compliance and fully monitor his staff. The charges leveled against Coach Self are not based on fact.

**Institution's Failure to Monitor**

The University also strongly disagrees with the assertion that it failed to monitor the men's basketball program. The enforcement staff's allegations and conclusions regarding the University's compliance program are misguided. Kansas has one of the strongest compliance programs in the nation and it has been recognized by its peers nationally for its work. In addition, throughout this infractions process, Kansas has fully cooperated with the NCAA, participated in interviews, turned over requested materials and otherwise responded to all requests of the enforcement staff. The University takes seriously all NCAA and Big 12 bylaws, consistently provides education to its staff members, and monitors its programs to ensure compliance with these bylaws.

**Football Allegations**

As noted at above, the University has not hesitated to investigate and self-report violations of NCAA rules and regulations, as evidenced by the football allegations issued in the ANOA. All of the football allegations were discovered and self-reported by the University, and the University accepts responsibility for the violations. The most severe football-related Level II allegations took place under the former head coach and his staff.

In the following pages, the University of Kansas will put forward its detailed arguments regarding the violations and will present a clear and fact-based narrative that addresses each allegation. While there is no denying that the conduct of those associated with Adidas may have broken criminal laws, the University of Kansas and its employees should not be held responsible for that conduct.

**Links on this page:**

1. https://publicaffairs.ku.edu/noa#Responses%20to%20amended%20NOA

2. https://publicaffairs.ku.edu/sites/publicaffairs.ku.edu/files/docs/NCAA%20NOA%20Reply%202020%20FINAL.pdf

3. https://publicaffairs.ku.edu/sites/publicaffairs.ku.edu/files/docs/NCAA%20NOA%20Statement%20of%20the%20Case%20FINAL.pdf

4. https://publicaffairs.ku.edu/sites/publicaffairs.ku.edu/files/docs/NCAA%20Referral%20Petition%205-18-20.pdf

5. https://publicaffairs.ku.edu/sites/publicaffairs.ku.edu/files/docs/KU%20Referral%20Response%206-8-20.pdf

6. https://publicaffairs.ku.edu/sites/publicaffairs.ku.edu/files/docs/Coach%20Self%20response%20to%20COI%20referral%20request.pdf

7. https://publicaffairs.ku.edu/sites/publicaffairs.ku.edu/files/docs/Coach%20Townsend%20response%20to%20COI%20referral%20request%206-5-20.pdf

8. 

9. https://publicaffairs.ku.edu/sites/publicaffairs.ku.edu/files/docs/KU%20FINAL%20RESPONSE%20Overview.pdf

10. https://publicaffairs.ku.edu/sites/publicaffairs.ku.edu/files/docs/KU%20FINAL%20RESPONSE%20Full.pdf

11. https://publicaffairs.ku.edu/sites/publicaffairs.ku.edu/files/docs/Public%20Exhibits%20w%20Bookmarks.pdf

12. https://publicaffairs.ku.edu/sites/publicaffairs.ku.edu/files/docs/Self%20-%20Initial%20Response%203-5-2020%20To%20Post.pdf

13. https://publicaffairs.ku.edu/sites/publicaffairs.ku.edu/files/docs/Townsend%20Response%203-5-2020%20To%20Post.pdf

**Contact Office of Public Affairs**

publicaffairs@ku.edu
Contact us
Strong Hall, Room 230
1450 Jayhawk Boulevard
University of Kansas
Lawrence, KS 66045