# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

## COLUMBIA DIVISION

| | |
|---|---|
| BRIAN BOWEN II, ) | |
| ) | |
| Plaintiff, ) | Civil Action No.: 3:18-3118-JFA |
| ) | |
| v. ) | |
| ) | |
| JAMES GATTO; MERL CODE; ) | |
| CHRISTIAN DAWKINS; MUNISH ) | |
| SOOD; THOMAS GASSNOLA; and ) | **PLAINTIFF'S OPPOSITION TO** |
| CHRISTOPHER RIVERS, ) | **DEFENDANT GATTO'S MOTION** |
| ) | **TO QUASH NON-PARTY** |
| Defendants, ) | **SUBPOENA AND REQUEST FOR** |
| ) | **PROTECTIVE ORDER** |
| ) | |
| ADIDAS AMERICA, INC.; ) | |
| ) | |
| Defendant-Cross Claimant, ) | |
| ) | |
| v. ) | |
| ) | |
| MUNISH SOOD and ) | |
| THOMAS GASSNOLA ) | |
| ) | |
| Defendant-Cross Defendants, ) | |
| ) | |
| and BRIAN BOWEN, SR., ) | |
| ) | |
| Cross Defendant. ) | |

Plaintiff Brian Bowen II ("Brian") respectfully submits his Response in Opposition to Defendant James Gatto's motion to quash the third-party subpoena directed to his spouse, Rachel Gatto, or alternatively, for a protective order. For the reasons set forth below, Defendant Gatto's motion should be denied in its entirety.

1

**PRELIMINARY STATEMENT**

The motion by Defendant James Gatto to quash the third-party subpoena served to Rachel Gatto seeking information unquestionably relevant to one of the defenses raised by him in this case—*i.e.* that this Court's exercise of personal jurisdiction over him is unconstitutional because he lacks sufficient funds to litigate in South Carolina—should be denied. This motion is one in a series of efforts by Defendant Gatto to withhold material evidence from Plaintiff and conceal the truth regarding his conduct and credibility. To be clear, this motion has no procedural or substantive basis and should be denied for four principal reasons.

*First*, although Defendant Gatto may have limited *standing* to seek to quash the subpoena on limited grounds, he has failed to articulate any basis for the Court to quash it under Rule 45. Standing is simply the threshold requirement to bring a motion to quash, it does not supplant the requirement that there be grounds to do so. *Second*, Defendant Gatto has failed to argue why any of the mandatory or permissive bases for quashing a subpoena set forth in Rule 45(d)(3) apply to the subpoena issued to Rachel Gatto. *Third*, Defendant Gatto's alternative request for a protective order is similarly deficient in that he fails to articulate any grounds to issue such an order, let alone "good cause" required under Rule 26(c). *Fourth*, Defendant Gatto's motion should be denied because he failed to comply with the prerequisite set forth in the Federal Rules and this Court's Local Rules to meet and confer with opposing counsel regarding the prospective relief he seeks from the court.

**RELEVANT BACKGROUND**

Plaintiff's claim against Defendant Gatto in this action arises under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), which authorizes nationwide service of process and, concomitantly, personal jurisdiction over defendants pursuant to 18 U.S.C. § 1965(d).

*See ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626-27 (4th Cir. 1997).  In response to Plaintiff's complaint, Defendant Gatto filed a motion under Federal Rule of Civil Procedure 12(b)(2) to dismiss him from this action on the purported basis that this Court's exercise of personal jurisdiction over him would pose an unconstitutional burden because he "is currently unemployed and simply cannot afford to litigate in the District of South Carolina" and, therefore, "requiring Mr. Gatto who currently has no income to expend those funds to be present during protracted and expensive litigation is a violation of his due process rights."  (ECF No. 34-1 at 9.)  The Court heard oral argument on Defendant Gatto's Rule 12(b)(2) motion on June 26, 2019 and, thereafter, denied it.  (ECF No. 77.)  During oral argument, however, the Court granted Plaintiff's counsel's request to conduct jurisdictional discovery as the Court recognized the issue may "come back up again after discovery."  (Ram Decl. Ex. A at 71:18 – 72:22.)

      Plaintiff thereafter served requests for production of documents under Rule 34 on Defendant Gatto, a portion of which were identified as "Jurisdictional Discovery Requests."  (See ECF 164-3 at 7-8.)  Defendant Gatto refused to produce the requested materials.  (ECF No. 164-4.)  Accordingly, Plaintiff served a subpoena *duces tecum* on his spouse, Rachel Gatto, requesting production of similar financial records in *her* possession to the extent she is listed as a *joint* account holder or joint taxpayer with James Gatto.  Prior to issuing the subpoena to Rachel Gatto, Plaintiff's counsel conferred with Defendant Gatto's on several occasions, including on the telephone to discuss the relevance of the financial records and via email when offering to withhold issuance of the subpoena if Defendant Gatto agreed to produce the requested documents himself or waive his defense of lack of personal jurisdiction.  (Ram Decl. ¶ 2 and Exhs. B and C.).  Defendant Gatto declined both requests.

## **LEGAL STANDARD**

    A.    <u>Broad Discovery Standard Under Fed. R. Civ. P. 26(b)(1)</u>

The scope of discovery is broad and includes "any matter, not privileged, that is relevant to the claim or defense of any party. . . ." Fed. R. Civ. P. 26(b)(1). The purpose of discovery is to remove surprise from trial preparation and enable the parties to obtain evidence necessary to evaluate and resolve their dispute. Toward this end, Rule 26(b) is liberally interpreted to permit wide-ranging discovery of information even though the information may not be admissible at trial. Further, all discovery, and federal litigation generally, is subject to Federal Rule of Civil Procedure 1, which directs that rules "should be construed, administered, and employed by the court . . . to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

    B.    <u>Under Fed. R. Civ. P. 45, Non-Parties Are Subject to The Same Discovery Standards as Parties</u>

Federal Rule of Civil Procedure 45 authorizes issuance of a subpoena commanding a non-party to produced designated documents, electronically stored information, or other tangible things, and, if requested, to attend and testify at deposition or trial. *See* Fed. R. Civ. P. 45(a)(1)(A)(iii). One of the purposes of Rule 45 is to "facilitate access outside of the deposition procedure provided by Rule 30 to documents and other information in the possession of persons who are not parties." Fed. R. Civ. P. 45 advisory committee's note (1991 amendment). Under Rule 45, "the non-party witness is subject to the same scope of discovery . . . as that person would be as a party . . . pursuant to Rule 34." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005). Importantly, "[t]he party seeking to quash bears a heavy burden to show compliance with the subpoena would be unreasonable and oppressive." *Blackwell v. Wideman*, No. CV 8:08-1992-RBH, 2008 WL 11462906, at *1 (D.S.C. Oct. 7, 2008).

      C.      The "Good Cause" Standard for Issuance of a Protective Order

Under Federal Rule of Civil Procedure 26(c), a district court may only issue a protective order limiting the disclosure of material produced in discovery upon a showing of good cause. *See United States ex rel. Davis v. Prince*, 753 F. Supp. 2d 561, 566 (E.D. Va. 2010). "The standard for issuance of a protective order is high." *Nix v. Holbrook*, No. 5:13–cv–02173, 2015 WL 631155, at *2 (D.S.C. Feb. 13, 2015). The party seeking a protective order has the burden of establishing "good cause" by demonstrating that "specific prejudice or harm will result if no protective order is granted." *United States ex rel. Davis*, 753 F. Supp. 2d at 565; *see also Jones v. Circle K Stores, Inc.,* 185 F.R.D. 223, 224 (M.D.N.C. 1999).

"Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy" Rule 26(c). *Springs v. Ally Fin. Inc.*, 684 F. App'x 336, 338 (4th Cir. 2017). Rather, Rule 26(c) "requires specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm." *Deford v. Schmid Prod. Co., a Div. of Schmid Labs.*, 120 F.R.D. 648, 653 (D. Md. 1987); *see also Jones*, 185 F.R.D. at 224 ("Rule 26(c)'s requirement of a showing of 'good cause' to support the issuance of a protective order. . . contemplates a *particular and specific demonstration of fact* as distinguished from stereotyped and conclusory statements."). "[T]he fact that public disclosure of discovery materials will cause some annoyance or embarrassment is not sufficient to warrant a protective order; the annoyance or embarrassment must be particularly serious." *United States ex rel. Davis*, 753 F. Supp. 2d at 568; *see also Singletary v. Wells Fargo Wachovia Mortg. Corp.*, No. CV 2:11-0484-RMG-BM, 2012 WL 13000539 at *4 (D.S.C. Oct. 11, 2012).

## ARGUMENT

    **A.**    **The Subpoenaed Records Are Unquestionably Relevant to Defendant Gatto's Jurisdictional Defense**

Shortly after this case was initiated, Defendant Gatto filed a motion to dismiss under Fed. R. Civ. P. 12(b)(2) arguing that it would be unconstitutionally burdensome for him, a resident of the State of Oregon, to defend himself in litigation pending in South Carolina. (*See* Gatto's R. 12(b)(2) Motion to Dismiss, ECF No. 34). In support of his Rule 12(b)(2) defense, Gatto made the following claim:

> Mr. Gatto is currently unemployed and simply cannot afford to litigate in the District of South Carolina. An airplane flight from Portland, Oregon to Columbia, South Carolina is on average approximately $750.00. Requiring Mr. Gatto who currently has no income to expend those funds to be present during protracted and expensive litigation is a violation of his due process rights.

(ECF No. 34-1 at 9.) At the June 26, 2019 hearing on his motion, Defendant Gatto's counsel reiterated to the Court that "Mr. Gatto is unemployed" and "doesn't have the funds" to travel from his home in Oregon to South Carolina but that "he has fundamental right to be at these proceedings if Your Honor leaves him in, and that just works an extreme burden and hardship on his family. . . ." (Ram Decl. Ex. A, Hrg'g Tr. 36:14, 37:6-10). As discussed above, the Court denied the motion but permitted Plaintiff to seek jurisdictional discovery because the issue "may come back up again after discovery." (*Id.* 72:16-22.)[1]

Thus, there can be no serious argument that Defendant Gatto has not affirmatively placed his employment and personal finances at issue in this case. Consequently, Plaintiff served Defendant Gatto with Requests for Production of Documents that included a separate section entitled "Jurisdictional Discovery." (ECF 164-3.) Under that heading, Plaintiff requested that Defendant Gatto produce records relating to the payment of his legal fees in this case by others,

---

[1] Defendant Gatto's most recent refusal to waive his jurisdictional defense in lieu of producing the requested discovery makes it all the more likely that he will reassert it after the close of discovery in this case, when Plaintiff will have no ability to seek relevant records from anyone regarding his finances. For this reason, Plaintiff's counsel requested jurisdictional discovery from him at the outset.

his tax returns for years 2017-2019; account statements from any credit card, banking, investment, and frequent flyer accounts; records of real estate holdings; and records reflecting the payment of any portion of the $342,427 in restitution that was ordered following his criminal conviction for wire fraud in the Southern District of New York. (*Id.* at 7-8.) He refused to produce these materials to Plaintiff. (ECF No. 164-4.) So Plaintiff noticed and served a subpoena to non-party Rachel Gatto requesting the following records in *her* possession, custody, or control:

1. Copies of all federal and state tax income tax returns jointly filed by you and your spouse, James Gatto, reflecting income received in calendar years 2017, 2018, and 2019, including all W-2 forms received by you and your spouse for this period.

2. Copies of all monthly account statements for credit card accounts held jointly in the name of you and your spouse, James Gatto, reflecting charges made during the period November 2018 through the present.

3. Copies of all monthly or quarterly statements for the period November 2018 through the present from all financial institutions where you and your spouse hold or held accounts jointly in your names, including all banks, credit unions, brokerage firms, mutual funds, and other institutions managing any 401(k) or retirement accounts.

4. Copies of all deeds for real estate presently owned jointly by you and your spouse, James Gatto.

5. Copies of the most recent mortgage loan statements for all mortgages on properties owned jointly by you and your spouse, James Gatto, including home equity loans and lines of credit secured by such properties.

6. Copies of all documents reflecting the payment by you, or from any account held by you, of any portion of the $342,437.75 in restitution that James Gatto was ordered to pay to victims following his criminal conviction.

(ECF No. 164-2 at 5.)

The purpose and relevance of these requests is threefold-fold. First, the requested financial records will likely reveal Defendant Gatto's ability to satisfy a substantial trebled damages verdict in this case. Second, the requested materials directly address Defendant Gatto's defense that he is unemployed and lacks the financial resources to travel from his home in Portland, Oregon to the

7

District of South Carolina to a degree that doing so would pose an unconstitutional burden on him, as records from financial accounts and real estate held jointly with Rachel Gatto would reveal the extent of financial resources that he possesses. It matters not that Rachel Gatto is Defendant Gatto's spouse—if he holds financial assets in his own name or jointly with anyone else, those funds should be credited in determining whether the cost of litigating in the District of South Carolina poses an unconstitutional burden on him. Additionally, the requested tax returns will undoubtedly be relevant to Gatto's defense regarding a purported lack of employment and income.

Third, the requested materials will likely demonstrate that Defendant Gatto's prior representations to this Court regarding his financial condition and employment status were patently false at the time they were made—thus undermining the legitimacy of his jurisdictional defense and his credibility as a witness in this case. For example, on March 13, 2019, just five days after Plaintiff submitted his response in opposition to Defendant Gatto's Rule 12(b)(2) motion to dismiss the complaint on jurisdictional grounds, Gatto sent a letter, through counsel, to the Hon. Judge Kaplan of the Southern District of New York (who was presiding over Gatto's related criminal case) requesting permission to travel–with his family–to Los Angeles for a week-long vacation. (Ram Decl. Ex. D.) One week after submitting that letter to Judge Kaplan, and before departing on his vacation, Defendant Gatto formed a sports marketing company called Leap Marketing Group, LLC, which he continues to operate. (*See* Oregon Secretary of State records, Ram Decl. Exhs. E and F.) Thus, his claim of unemployment to this Court in 2019 appears to have been a mere half-truth—he owns the company he works for and openly holds himself out to the public as a "small business owner." (Ram Decl. Ex. G.) Further, just one month after forming his sports marketing business, Defendant Gatto sent another letter to Judge Kaplan, dated April 30,

2019, requesting permission to return to Los Angeles, this time for business reasons, and to fly to Chicago a week afterward, again, for business reasons. (Ram Decl. Ex. H.).

Not one to stay grounded for too long, just weeks prior to *this Court's* June 26, 2019 hearing on his jurisdictional motion, Defendant Gatto sent another letter to Judge Kaplan requesting permission to travel to Arizona on June 12-14 so he could visit with his son during college orientation, which arguably would have been a fun and leisurely trip rather than a "hardship." (Ram Decl. Ex. I.) Taken together, in the few short months preceding his arguments to this Court regarding his inability to afford airfare to travel from Portland, Oregon to Columbia, South Carolina to litigate this case, Defendant Gatto managed to rack up an estimated 10,800 air miles for business and pleasure.

When the Court inquired during the June 2019 hearing, "[I]s there a big difference between a seven-hour plane flight from Oregon to Columbia for $750 versus a five-hour flight for $500?" Defendant Gatto's counsel replied, "I think that you have to look at the individual circumstances and whether those individual circumstances comport with due process and the Fifth Amendment." (Ram Ex. A at 36:17-20.) That, in essence, is what Plaintiff's subpoena to non-party Rachel Gatto is designed to do—to look into Defendant Gatto's financial circumstances to divine how he could travel a distance equivalent to a roundtrip flight from Portland, Oregon to Moscow, Russia in the months prior to raising his jurisdictional defenses, but nevertheless insist that the cost of airfare to South Carolina is so great as to infringe on his constitutionally-protected Due Process rights.

**B.     Defendant's Argument that Plaintiff's Subpoena Subjects Third-Party Rachel Gatto to Undue Burden Fails**

1. Defendant Gatto Lacks Standing to Protest Any Burden Associated with Discovery Directed to Non-Party Rachel Gatto

9

In his motion, Defendant Gatto argues "the discovery sought here is irrelevant and imposes an undue burden on a nonparty." (Mot. to Quash at 2.) Yet, the law is clear: a party does not have standing to quash a subpoena on the basis that the non-party recipient of the subpoena would be subjected to an undue burden when the non-party has failed to object. *See, e.g.*, *Zajac v. Red Wing, LLC*, No. CV 2:16-1856-PMD, 2018 WL 9989662, at *2 (D.S.C. Feb. 27, 2018) ("The Court is constrained to agree with the Defendants that if the information being sought is otherwise discoverable, it is for the subpoenaed entities themselves to object on the ground of undue burden."); *see also* Charles Wright & Arthur Miller, 8A Fed. Prac. & Proc. Civ. § 2035 (3d ed.) ("A party may not ask for an order to protect the rights of another party or witness if that party or witness does not claim protection for himself, but a party may seek an order if it believes its own interest is jeopardized by discovery sought from a third person."). Therefore, Defendant Gatto has no standing to move to quash the subpoena on the basis that it poses an undue burden on non-party Rachel Gatto. Accordingly, Defendant Gatto's "undue burden" arguments—which on their face are conclusory and lack any particularized argument or specific demonstration of fact—should be disregarded. *Zajac*, 2018 WL 9989662, at *2 ("[T]he Court will at this time only review the merits of Zajac's motion based on her personal interest in the documents requested.").

2. Neither Defendant Gatto Nor Third-Party Rachel Gatto Has Presented Any Evidence or Carried Their Burden To Show Any Burden—Let Alone An Undue Burden

Even if Defendant Gatto did have standing to assert objections on behalf of non-party Rachel Gatto, which he lacks, he nonetheless failed to come forward with any evidence that she would be subject to any burden—let alone an undue burden—by having to respond to Plaintiff's records-only subpoena. Significantly, neither Defendant Gatto nor Rachel Gatto has submitted any evidence—not a single declaration or affidavit—regarding the claimed burden (e.g., time, cost,

or expense) associated with responding to the subpoena. All that has been supplied in support of the "undue burden" argument is mere conclusory *argument* from his counsel.

To engage in the balancing of the benefits and burden of discovery, there must be evidence of the purported burden of production placed on Rachel Gatto. And it is her burden to come forward with facts substantiating the burden. *Blackwell*, No. CV 8:08-1992-RBH, 2008 WL 11462906, at *1. Yet here there can be no credible argument that Rachel Gatto would be *unduly* burdened in any way in producing documents related to her and James Gatto's *joint* financial and tax records. Plaintiff is requesting nothing more than what is readily-available for accountholders to download from financial institutions' websites (i.e., monthly credit card account statements; statements from banks, brokerage firms, etc.; a monthly mortgage loan statement; and a copy of a canceled check or wire transfer form reflecting payment of the restitution ordered in Gatto's criminal case; PDFs of tax filings) or hard copy documents maintained in Rachel Gatto's household files (i.e., copies of joint tax returns and W-2 forms for a three-year period that would identify James Gatto's employment status, photocopies of any real estate deeds). Each of the six categories of requests in the subpoena is specific to the type of document requested and, where applicable, time limited. Yet, there is "no effort to explain or show how the request is, in fact, unduly burdensome." *Id.* at *1. No argument from Defendant Gatto as to why the volume of documents implicated by the subpoena (which is temporally limited) is unduly burdensome on his spouse and no argument that the time reasonably required to accumulate this evidence poses an undue burden on her. Finally, to the extent she has any privacy concerns, the requested records can be produced subject to the confidentiality order issued in this case.

  **C.**  **Gatto Misstates the Law Regarding Discovery of Financial Information**

11

Defendant Gatto's motion further rests on the misplaced contention that discovery of financial information is generally available only in cases alleging punitive damages. (ECF No. 164-1 at 4-5.) Gatto argues that because Plaintiff "has not alleged a claim for punitive damages, Mr. Gatto's financial information is irrelevant to any claim." (*Id*. 5.) In sidestepping what is likely almost a century of commercial and business litigation case law, Defendant Gatto cites a handful of personal injury cases in support of his view of the law, including a dram shop action (*Kappel v. Garris*), a products liability case (*Moore v. BPS Direct, LLC*), a workplace accident case (*Cardoso v. Holder Constr. Co*.), and a car accident case (*Nix v. Holbrooke*). (ECF No. 164-1 at 4-5.) From these limited authorities, Defendant Gatto extrapolates a broad rule purportedly applicable to <u>all</u> cases that a litigant must allege punitive damages in order to discover a party-opponent's financial information. (*Id.* at 5 ("As Plaintiff has not alleged a claim for punitive damages, Mr. Gatto's financial information is irrelevant to any claim.")). The law is hardly limited in the manner Defendant Gatto suggests.

Defendant Gatto put his financial condition at issue when he argued that his appearance in South Carolina violates his Due Process rights; thus, discovery is plainly warranted by his defense. And Plaintiff is seeking *treble* damages against Defendant Gatto under the federal RICO Act, which courts have long-recognized are punitive in nature, thus undermining Gatto's myopic position that no financial discovery should be allowed unless punitives are at issue. *See, e.g.*, *SouthStar Funding, LLC v. Sprouse*, No. 3:05-CV-253-W, 2007 WL 812174, at *5 (W.D.N.C. Mar. 13, 2007) ("RICO's trebling provision serves, at least in part, a distinctly punitive purpose.").

### D. Defendant Gatto's "Circumventing Discovery" Argument Is Misplaced and Serves No Basis to Quash the Subpoena

Without citation to any legal authority, Defendant Gatto raises the specious argument that the subpoena issued to Rachel Gatto should be quashed because it "is an improper attempt to

12

circumvent direct discovery." (ECF 164-1 at 6). Yet, in the same breath, Defendant Gatto concedes that Plaintiff originally requested these materials directly from him through a Rule 34 request for production, and that he refused to produce these materials to Plaintiff as he was required to do. (*Id.*); *see also* Fed. R. Civ. P. 26(g)(1)(B)(2). Accordingly, Plaintiff is now forced to obtain them from an alternative source—which should come as no surprise to Defendant Gatto because prior to serving the subpoena, Plaintiff candidly informed Gatto's counsel that it would be forthcoming if Gatto persisted in his failure to comply with his discovery obligations. (*See* Ram Decl. Exhs. B and C.) There is nothing improper about a party attempting to acquire evidence from an alternative source when an opposing party violates its obligation to produce it in response to a bona fide discovery request. Were this true, a non-compliant party could simply foreclose discovery on entire issues by simply refusing to participate in the discovery process.

Indeed, there are only narrow circumstances where courts consider use of a Rule 45 subpoena to "circumvent direct discovery," such as when a third-party subpoena is used to obtain documents otherwise available from a party *when the time for discovery is about to lapse. See, e.g.*, *Layman v. Junior Players Golf Acad., Inc.*, 314 F.R.D. 379, 386 (D.S.C. 2016) (holding that a subpoena "was an attempt to circumvent Rule 34 via Rule 45" because "less than thirty days remained for discovery" when the subpoena was served.). This is not that circumstance, and Defendant Gatto does not suggest that it is. Accordingly, his "circumventing discovery" argument is no basis to quash the non-party subpoena to Rachel Gatto.

### E.     Gatto Has Failed to Provide Any Basis for His Request For A Protective Order, Let Alone Argue Why "Good Cause" Exists

Because a court cannot issue a protective order under Rule 26(c) in the absence of good cause, it is incumbent upon the moving party to articulate the need for such an order. In the absence of any articulated basis for issuing a protective order the Court must deny this motion. Here,

13

Defendant Gatto simply insists on a blanket protective order without explaining what it would protect or why it is justified under Rule 26(c). There is simply no discussion in his motion of *why* the requested records would untenably result in "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Indeed, the "good cause" inquiry here is particularly nebulous because Gatto makes absolutely no attempt to fulfill his burden to establish it by stating particular and specific facts supporting it. *See Palmetto Pharm. LLC v. AstraZeneca Pharm. LP*, No. 2:11-CV-00807-SB-JDA, 2012 WL 12896232, at *6 (D.S.C. June 29, 2012). ("To establish 'good cause' for a protective order under Rule 26(c), '(t)he courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."). Rather, he has offered only conclusory statements regarding "undue burden" on the now-discredited grounds that the requested records are not relevant to any claim or defense in this case.

### F. Defendant Gatto's Motion to Quash and Motion for Protective Order Should Be Denied for Failing to Comply with Fed. R. Civ. P. 26(c) and L. Civ. R. 7.02

Finally, Defendant Gatto's motion should be denied because he failed to comply with Local Civil Rule 7.02 and Rule 26(c) prior to filing his motion. Local Civil Rule 7.02 requires a substantive discussion of the issues and a pre-filing conference between the parties before proceeding with a motion. There was never any such conference between counsel in connection with this motion to quash. (*See* Ram Decl. ¶ 3.) Nor does Gatto's motion contain any affirmation of counsel as required by the Local Rule. Likewise, Rule 26(c)(1) requires that a motion for a protective order "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action," Fed. R. Civ. P. 26(c)(1), which is plainly lacking here.

Without question, Defendant Gatto has failed to follow the rules of this Court in connection with this motion. Prior to noticing and serving the subpoena, Plaintiff's counsel asked Defendant

Gatto's counsel twice if she was authorized to accept service of the subpoena on behalf of Rachel Gatto. Plaintiff's served all parties to this case with a Notice of Subpoena on November 9, 2020. (ECF No. 164-2.) Because Defendant Gatto's counsel declined to accept service of the subpoena, the subpoena was personally served on Rachel Gatto. Since the time Plaintiff served his notice of subpoena to all parties in this case, Defendant Gatto's counsel has not been in communication with Plaintiff's counsel regarding the subpoena, his intent to quash it, or his intent to seek a protective order. (Ram Decl. ¶ 3.) Accordingly, the motion to quash and motion for a protective order should be denied. *See Robinson v. Brennan*, No. CV 3:18-3460-MGL-PJG, 2020 WL 6469268, at *2 (D.S.C. Nov. 3, 2020) ("Initially, the court finds that the motion for protective order should be denied because Defendant fails to include a certification under Federal Rule of Civil Procedure 26(c)(1) that Defendant conferred or attempted to confer with Plaintiff in good faith to resolve this matter without court action.").

### G.    The Court Should Award Plaintiff Reasonable Expenses Incurred in Responding to Gatto's Motion to Quash and Motion for Protective Order

Given the extensive communications between counsel for Plaintiff and Defendant Gatto's counsel regarding the purpose and relevancy of the records requested in the subpoena before it issued–none of which is discussed let alone acknowledged in Defendant Gatto's motion, Plaintiff requests attorney's fees incurred in responding to his baseless motion. *Robinson v. Med. Univ. of S.C.*, No. CV 2:05-1558-DCN, 2007 WL 9747302, at *2 (D.S.C. Feb. 14, 2007) ("If a motion to quash is opposed successfully, the issuer of the subpoena may request attorneys' fees related to the motion to quash, unless the court finds that the losing party was justified substantially in making the motion or that an award would be otherwise unfair.").

Defendant Gatto had an obligation to acknowledge his Rule 12(b)(2) defense in discussing the relevancy of the subpoena in his motion, particularly when claiming the requested materials

15

are not relevant to any claim or defense in this matter, as he was clearly informed by Plaintiff's counsel of the purpose of this discovery before it was issued.  In doing so, he could have at least mustered arguments, as untenably as they may have been, addressing the relevancy of the subpoena to his claim of insufficient finances to litigate in South Carolina.  Instead, he chose to ignore the defense entirely and, in doing so, deliberately painted a misleading picture of the relevancy of the subpoena he now seeks to quash, which raises a genuine question of whether the motion was brought in good faith.  Plaintiff should not have to incur time and expense in responding to a frivolous motion that deliberately withholds material information from the Court.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant Gatto's motion to quash the third-party subpoena to Rachel Gatto, deny his request for a protective order, and, pursuant to Fed. R. Civ. P. 37(a)(5) and Local Civil Rule 7.09, award Plaintiff reasonable expenses, including attorney's fees, incurred in responding to his unsubstantiated motion.


Dated: December 3, 2020                    Respectfully submitted,

**MCLEOD LAW GROUP, LLC**

 /s/ Colin V. Ram
Colin V. Ram (Fed ID No.: 12958)
W. Mullins McLeod, Jr.  (Fed ID No.: 7142)
H. Cooper Wilson, III (Fed ID No.: 10107)
P.O. Box 21624
Charleston, South Carolina 29413
Tel: (843) 277-6655
Fax: (843) 277-6660

*Attorneys for Plaintiff Brian Bowen II*