UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| BRIAN BOWEN, II, <br><br> Plaintiff, <br><br> v. <br><br> JAMES GATTO, MERL CODE, CHRISTIAN DAWKINS, MUNISH SOOD, THOMAS GASSNOLA, and CHRISTOPHER RIVERS, <br><br> Defendants, <br><br> and ADIDAS AMERICA, INC., <br><br> Defendant-Cross Claimant, <br><br> v. <br><br> MUNISH SOOD and THOMAS GASSNOLA, <br><br> Defendants-Cross Defendants, <br><br> and BRIAN BOWEN, SR., <br><br> Cross Defendant. | No. 3:18-cv-3118-JFA |

**DEFENDANT ADIDAS AMERICA, INC.'S OPPOSITION
TO BOWEN JR.'S MOTION TO COMPEL**

Plaintiff Brian Bowen Jr.'s motion to compel should be denied because, as he already has been told repeatedly by Defendant adidas America, Inc. ("adidas"), the documents he seeks either are irrelevant or do not exist.

On November 24, 2020, adidas filed a motion to compel Bowen Jr. to produce several categories of squarely relevant documents that Bowen Jr. either has refused to produce or not yet

produced, without any valid justification for his refusal or delay. (*See* adidas's Mot. to Compel at 2, Nov. 24, 2020, ECF No. 165.) In an apparent effort to create a false equivalency regarding the adequacy of the parties' document productions—and against the backdrop that adidas has produced over 200,000 records in this case, as opposed to approximately 700 produced by Bowen Jr.—Bowen Jr. also brings his own motion. He seeks an order compelling adidas to produce (i) a commercially sensitive confidential settlement agreement between adidas AG and Skechers (neither of which is party to this case) resolving unrelated intellectual property disputes concerning adidas's patents, trade dress, and trademarks and containing no information relevant to any of the claims or defenses in this case ("Global IP Settlement"); and (ii) imagined additional communications with the NCAA regarding the subject matter of this case, even though adidas already has produced all that it has. Bowen Jr.'s motion is wholly meritless, and should be denied.

## ARGUMENT

I.  **The adidas AG-Skechers confidential Global IP Settlement is not discoverable because it is not probative of the facts in dispute in this case.**

adidas has not produced the Global IP Settlement, entered into by adidas AG and Skechers, because it is neither responsive to Bowen Jr.'s document request regarding *Skechers USA, Inc. v. Adidas America, Inc.*, No. 2:18-cv-03882 (C.D. Cal.) ("C.D. Cal. case"), nor relevant to the claims or defenses in this case. Although each of these points is made explicit below and in the supporting Declaration of Sara Vanderhoff ("Vanderhoff Decl."), to the extent there is any question regarding the substance of the Global IP Settlement, adidas is prepared to supply the agreement to the Court for in camera review.

First, the Global IP Settlement is not responsive to Bowen Jr.'s request seeking correspondence and documents regarding the C.D. Cal. case. (*See* Ex. A ("Bowen Jr.'s

Requests") at 6.) Skechers is one of adidas's business competitors in the athletic footwear market, and for more than a decade the two companies were engaged in protracted intellectual property disputes litigated before U.S. federal courts, German courts, and the U.S. Patent and Trademark Office. (Vanderhoff Decl. ¶ 2, Dec. 8, 2020.)[1]  Those disputes had nothing whatsoever to do with the subject matter of this litigation, with college basketball, or with basketball at all—they instead concerned the design of shoes. (*Id.*) adidas AG and Skechers resolved their intellectual property disputes in 2018, after months of negotiations. (*Id.* ¶¶ 3-4.) Toward the end of those negotiations, in a transparent attempt to create some final leverage, Skechers filed the C.D. Cal. case asserting unfair business practices related to adidas' alleged involvement in a scheme to direct payments to high school basketball players and their family members. (*Id.*) But Skechers' negotiation tactic went nowhere: the claims in the C.D. Cal. case were never substantively discussed, and furthermore, Skechers never even served adidas with the summons and complaint. (*Id.*; *see also* Ex. B (docket sheet for *Skechers USA, Inc. v. Adidas Am., Inc.*, No. 2:18-cv-03882 (C.D. Cal.) (displaying no proof of service)).) As such, the Global IP Settlement merely observes that Skechers filed the C.D. Cal. case, states that adidas denies the factual claims in the C.D. Cal. case, and includes the C.D. Cal. case in the global release. (Vanderhoff Decl. ¶ 4.) Those are the only references to the C.D. Cal. case in the 70-page

---

[1] *See also* Samantha MacDonald, *Skechers and Adidas Settle Their Legal Battle Over Stripes on Shoes*, Yahoo! Finance (Aug. 5, 2019), https://finance.yahoo.com/news/skechers-adidas-settle-legal-battle-212457114.html ("In 2015, Adidas pointed fingers at Skechers for allegedly infringing on its intellectual property, including the three-stripe design, Supernova mark and its fan-favorite Stan Smith style, contending that Skechers' Onix sneaker was virtually identical to the latter."); RJ Vogt, *Adidas, Skechers Settle Three-Stripe Trademark Row*, Law360 (May 30, 2018), https://www.law360.com/articles/1048619/adidas-skechers-settle-three-stripe-trademark-row (quoting adidas's counsel as stating, "All we can tell you is that the dispute has been resolved amicably").

settlement agreement. (*Id.*) The Global IP Settlement is not responsive to Bowen Jr.'s request for correspondence regarding the C.D. Cal. case.

Second, the Global IP Settlement is not probative of any fact in dispute, and therefore it is neither relevant nor discoverable. Under the Federal Rules, parties may only obtain discovery of "matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). To be relevant, a matter must be both material to and probative of facts that are in dispute. Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."). Here, the Global IP Settlement is not probative of any potentially consequential factual dispute in this case. As noted above, the agreement concerns intellectual property, not college basketball. The references to the C.D. Cal. case in the Global IP Settlement do not make any disputed fact in this case more or less likely. Bowen Jr. has accordingly failed to credibly identify any factual dispute for which he thinks the agreement would shed light. He wishfully speculates that the Global IP Settlement might show that "Adidas made admissions of wrongdoing or otherwise conceded liability," but that is fantasy, not reality. (Bowen Jr.'s Mot. to Compel at 9, Nov. 24, 2020, ECF No. 166.) As noted above, no such admissions—or any substantive content relating to this case at all—are included in the Global IP Settlement. (Vanderhoff Decl. ¶ 4.)

Even if the Global IP Settlement had some miniscule probative value to some factual question in this case—which it does not—that value would be substantially outweighed by the burden of forcing adidas to disclose the confidential agreement. Information is only discoverable to the extent "proportional to the needs of the case, considering . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery

4

outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  Here, the Global IP Settlement is not important to resolving the issues in this case, and its disclosure would be a great burden on adidas (and Skechers), because the contract contains a confidentiality clause that prohibits either party from disclosing the content and terms of the agreement, except in certain specified instances and with certain preconditions.  (Vanderhoff Decl. ¶ 5.)

The Global IP Settlement is not responsive to Bowen Jr.'s discovery requests, not probative, and not discoverable, and adidas should not be required to produce it.

**II.     adidas has produced all relevant adidas-NCAA communications.**

Bowen Jr. also asks the Court to order adidas to produce additional communications between adidas and the NCAA relating to the claims and defenses in this case, but adidas has already produced the material it has, and has communicated such to Bowen Jr. (Bowen Jr. Mot. to Compel at 9.)  The discovery process can only "disgorge whatever facts [a party] has in his possession."  Wright & Miller's Fed. Prac. & Proc. § 2007 (3d ed. Oct. 2020 update) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).  Here, adidas searched its records for non-privileged communications with individuals employed by the NCAA, and produced everything it found after a reasonable search.  (Decl. of Matthew D. Forbes ¶ 2, Dec. 8, 2020.)

After Bowen Jr. filed his motion to compel, adidas performed an additional search and confirmed that no additional responsive communications with NCAA employees could be located.  (*Id.* ¶ 3.)  Although not specifically sought by Bowen Jr.'s document requests, adidas's subsequent search extended to individuals *not* employed by the NCAA but who were involved in NCAA-related initiatives and located three additional emails.  adidas provided those emails, with their attachments, to Bowen Jr. today.  (*Id.* ¶ 3.)  The first of the three emails is from Shannon York, chief of staff to Stanford University's Condoleezza Rice, the chair of the Independent

5

Commission on College Basketball. (Ex. C (Email from Shannon York to Paul Ehrlich, May 4, 2018.) Ms. York sent her email from an @stanford.edu email domain, attaching a letter from the Independent Commission on College Basketball to adidas AG, the German parent company of adidas. (Ex. D (Letter from Condoleezza Rice to adidas AG, Apr. 27, 2018).) The second and third emails were between counsel to adidas and an independent investigator appointed by the Independent Accountability Oversight Committee. (*See* Ex. E (Email from Steven Berryman to Andrew Ceresney, Oct. 30, 2020); Ex. F (Attachment to Berryman's Oct. 30, 2020 Email); Ex. G (Email from Andrew Ceresney to Steven Berryman, Nov. 9, 2020).)

In sum, Bowen Jr. has already received all responsive communications between adidas and the NCAA relating to the claims and defenses in this case.

**III.     Bowen Jr.'s defined term "college basketball bribery scheme" is unworkable, although that issue is irrelevant to this motion.**

Bowen Jr. asks the Court to impose his unworkable definition of the term "college basketball bribery scheme," but does not explain how that relief is relevant to this motion or the discovery he seeks from adidas. Bowen Jr.'s Requests for Production define "college basketball bribery scheme" as encompassing everything within the scope of the relevant "criminal investigation" performed by the U.S. Attorney's Office for the Southern District of New York: "As used herein, the term 'college basketball bribery scheme' refers to the subject matter of the criminal *investigation* of bribery in NCAA Division I men's college basketball that resulted, in part, in the prosecution of James Gatto, Merl Code, Christian Dawkins, Thomas Gassnola, and Munish Sood." (Bowen Jr.'s Requests at 2 (emphasis added).) The problem with Bowen Jr.'s proposed definition is that it ties the term's meaning to the scope of the federal prosecutors' investigation, when only the prosecutors know what they investigated—everyone else (including adidas) only knows their own particular involvement in the investigation and what was made

6

public in the criminal prosecution. To the extent the investigation was broader than the prosecution or adidas's role, which seems likely, adidas would have no way of knowing whether a particular issue falls within the scope of Bowen Jr.'s proposed definition for "college basketball bribery scheme." That is why adidas objected to Bowen Jr.'s definition and instead proffered that it would consider the term to refer to "the subject matter of the criminal *prosecution* of James Gatto, Merl Code, Christian Dawkins, Munish Sood, and Thomas Gassnola." (Ex. H ("adidas's R&Os") at 3 (emphasis added).)

Either way, adidas is not withholding documents based on the dispute over the defined term, and Bowen Jr. has identified no reason why the dispute over the term would be material to his motion or warrant the Court's attention.

## **CONCLUSION**

Bowen Jr.'s motion to compel should be denied because the adidas AG-Skechers Global IP Settlement is irrelevant, and adidas has no additional NCAA communications to produce.

[*Signature on following page*]

By: /s/ Matthew T. Richardson

Matthew T. Richardson (D.S.C. Id. No. 7791)
Mary Lucille ("Lucy") Dinkins (D.S.C. No. 11961)
WYCHE
807 Gervais Street, Suite 301
Columbia, South Carolina 29201
Tel: (803) 254-6542
mrichardson@wyche.com
ldinkins@wyche.com

Andrew J. Ceresney (admitted *pro hac vice*)
William H. Taft V (admitted *pro hac vice*)
Nathan S. Richards (admitted *pro hac vice*)
Matthew D. Forbes (admitted *pro hac vice*)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Tel: (212) 909-6000
aceresney@debevoise.com
whtaft@debevoise.com
nsrichards@debevoise.com
mforbes@debevoise.com

*Counsel to Defendant adidas America, Inc.*

Dated: December 8, 2020