UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| BRIAN BOWEN, II, <br><br> Plaintiff, <br><br> v. <br><br> JAMES GATTO, MERL CODE, CHRISTIAN DAWKINS, MUNISH SOOD, THOMAS GASSNOLA, and CHRISTOPHER RIVERS, <br><br> Defendants, <br><br> and ADIDAS AMERICA, INC., <br><br> Defendant-Cross Claimant, <br><br> v. <br><br> MUNISH SOOD and THOMAS GASSNOLA, <br><br> Defendants-Cross Defendants, <br><br> and BRIAN BOWEN, SR., <br><br> Cross Defendant. | No. 3:18-cv-3118-JFA |

**NON-PARTY DAN CUTLER'S AND DEFENDANT ADIDAS AMERICA, INC.'S MOTION FOR A PROTECTIVE ORDER**

Counsel to Plaintiff Brian Bowen II ("Bowen Jr.") sought to invade the attorney-client privilege during the deposition of non-party Dan Cutler by asking the witness to reveal the substance of discussions with counsel relating to his preparation for his deposition. Cutler and Defendant adidas America, Inc. ("adidas") share a common interest in those discussions, and jointly request that a protective order be issued, halting Bowen Jr.'s efforts.

1

Cutler is a former independent contractor to adidas and was served by Bowen Jr. with a deposition subpoena. Prior to his deposition, Cutler and adidas recognized that they shared two legal interests in this case: (i) protecting against the disclosure of privileged information exchanged between the two parties in 2017 and 2018, when they worked together to respond to subpoenas from the U.S. Attorney's Office for the Southern District of New York and in support of adidas's related internal investigation; and (ii) rebutting Bowen Jr.'s erroneous allegation of a broad RICO conspiracy of bribery in NCAA college basketball, in which adidas was allegedly involved and Cutler is suggested to have participated. Given these common interests, communications at the deposition-preparation meeting were privileged.

Bowen Jr.'s one counterargument, offered in a meet-and-confer phone call, is wrong. While not disputing that Cutler and adidas share a common interest with respect to certain issues, counsel for Bowen Jr. suggests that because Cutler's and adidas's interests diverge with respect to another potential issue—the crossclaim asserted by adidas, which implicates actions by Cutler's former immediate supervisor—no common interest can exist. But under the common-interest rule, two parties must share only *some* legal interest on *a* legal issue; they need not share *every* interest on *every* legal issue. Cutler and adidas are therefore entitled to a protective order barring further inquiry by Bowen Jr. into the substance of communications during Cutler's preparation session.

Counsel to Cutler and adidas sought to resolve this issue without the need for court action, but counsel to Bowen Jr. refused. Therefore, in addition to a protective order, Bowen Jr. should be ordered to pay the fees and expenses that Cutler and adidas incurred in preparing this motion.

## BACKGROUND

Defendant adidas America, Inc. is an athletic apparel company based in Portland, Oregon. Dan Cutler is a Massachusetts resident who is not a party to this litigation. (Decl. of Phillip C. Ciccarelli ¶ 1, Mar. 30, 2021.) From 2014 to 2017, Cutler served as an independent contractor to adidas, reporting to Defendant Chris Rivers. (*Id.* ¶ 2.) He supported the Company's basketball sports marketing group in efforts to market the adidas brand to Amateur Athletic Union ("AAU"), college, and NBA basketball programs. (*Id.*) adidas's contract with Cutler was not renewed after it expired. (Ex. A. ("Cutler Dep. Tr.") at 73:9-12.)

On September 26, 2017, the U.S. Attorney's Office for the Southern District of New York ("SDNY") announced "charges of fraud and corruption in college basketball" against several individuals, including Defendants Merl Code and James Gatto.[1] At the time, Gatto was an adidas employee, and Code was an independent contractor to adidas, and both were involved, like Cutler, in marketing the adidas brand to amateur basketball teams. (Decl. of Andrew M. Levine ¶ 2, Mar. 30, 2021.) The SDNY complaint alleged that Code, Gatto, and others had worked to "funnel $100,000" to Bowen Jr.'s father in return for Bowen Jr.'s participation on the University of Louisville's basketball team. *United States v. Gatto*, No. 17-cr-686, at *7 (S.D.N.Y. Sept. 25, 2017) (criminal compl., ECF No. 1). adidas initiated an internal investigation into the conduct alleged in the SDNY complaint. (Decl. of Andrew M. Levine ¶ 2, Mar. 30, 2021.) Separately, adidas and Cutler received subpoenas from SDNY federal prosecutors, requesting the production of certain documents. (*Id.* ¶ 3; Decl. of Tai Park ¶ 2, Mar. 30, 2021.)

---

[1] U.S. Department of Justice, S.D.N.Y, *Press Conference Advisory*, (Sept. 26, 2017), https://www.justice.gov/usao-sdny/pr/press-conference-advisory-2.

During this time, adidas and Cutler recognized a common legal interest in cooperating with the government's investigation and addressing potential legal risks related to the conduct described in the SDNY complaint. (Levine Decl. ¶ 3; Park Decl. ¶ 2.) Accordingly, counsel for adidas and Cutler worked together to respond to the SDNY subpoenas. (Levine Decl. ¶ 3; Park Decl. ¶ 2.) Counsel for adidas collected and reviewed adidas's and Cutler's documents, and then produced hundreds of thousands of documents to the SDNY federal prosecutors. (Levine Decl. ¶ 3; Park Decl. ¶ 2.) Neither adidas nor Cutler has been charged by the SDNY federal prosecutors. (Levine Decl. ¶ 3; Park Decl. ¶ 2.)

On November 19, 2018, Plaintiff Brian Bowen II ("Bowen Jr.") initiated this action, alleging that adidas, Code, Gatto, Rivers, and other defendants engaged in a broad conspiracy to bribe the families of various basketball players to secure their enrollment in adidas-sponsored universities. (Compl. ¶¶ 224-26; 231-232; 239-43; 247, Nov. 19, 2018, ECF No. 1.) adidas vigorously denies Bowen Jr.'s allegations. Moreover, adidas alleges in its crossclaim that it was defrauded of its funds by a separate conspiracy involving Bowen Jr.'s father and others. (adidas's Ans. and Crossclaims ¶¶ 12-54.) adidas does not allege that Cutler participated in this conspiracy. Bowen Jr., however, indicated through his counsel's questioning that he believed Cutler was involved in the conspiracy involving adidas that is alleged in Bowen Jr.'s claims. (*See, e.g.*, Cutler Dep. Tr. at 119:2-6) (asking whether Cutler had "ever given money to a high school basketball player"); *id.* 114:6-115:3 (similar)).

On March 17, 2021, Bowen Jr. served Cutler with a deposition subpoena. Cutler, his attorneys, and adidas's attorneys recognized that adidas and Cutler continued to share a common legal interest in protecting the privileged information they exchanged in 2017-18 when responding to the SDNY subpoenas and in aiding adidas's internal investigation. (Ciccarelli

4

Decl. ¶ 3; Levine Decl. ¶ 4; Park Decl. ¶ 3.) adidas and Cutler also recognized that they shared an interest in rebutting Bowen Jr.'s allegation as to the existence of a broad college basketball bribery scheme in which adidas and Cutler allegedly had both participated. (Ciccarelli Decl. ¶ 3; Levine Decl. ¶ 4; Park Decl. ¶ 3.) On March 22, 2021, Cutler and his attorneys—Philip Ciccarelli, Tai Park, and Christopher Greer—met via videoconference with two of adidas's attorneys, Andrew Levine and Catherine Hart, to prepare for Cutler's upcoming deposition. (Ciccarelli Decl. ¶ 4; Levine Decl. ¶ 5; Park Decl. ¶ 4.) At the meeting, all substantive communications were made in furtherance of adidas's and Cutler's shared common interests. (Ciccarelli Decl. ¶ 4; Levine Decl. ¶ 5; Park Decl.¶ 4.)

On March 23, 2021, counsel for Bowen Jr., Colin Ram, deposed Cutler for approximately seven hours. (*See* Cutler Dep. Tr.) During the deposition, Mr. Ram asked Cutler whether he could "tell me the substance of the conversation that you had in preparation for your deposition testimony today on the call with Catherine [Hart] and Andrew Levine?" (*Id.* at 151:7-10.) Mr. Ram did not limit his questions based on the subject matter of the topics discussed. (*Id.*) Mr. Ciccarelli objected to the question based on "privilege" and agreed with Mr. Ram's observation that he was "instructing the witness not to answer that question." (*Id.* at 151:11-18.) Mr. Levine stated that adidas supported Mr. Ciccarelli's objection. (*Id.* at 151:21-23.) Mr. Cutler accepted his attorney's instruction and did not answer the question. (*Id.* at 151:24-152:3.) In response, Mr. Ram offered to "pick this up offline if we need to later." (*Id* at 152:4-5).[2]

---

[2] The relevant part of the transcript states in full:

> Q. Just briefly before we move on to other topics, Mr. Cutler, do you recall the name of the attorney from Debevoise who was present during the call that you had in preparation for the deposition?
> A.   Mr. Levine.

5

Q. Was there anybody else from his firm that you recall being on the telephone call?

A. I believe Miss Hart was there as well.

Q. All right. I'm not going to be antagonistic to anybody, but, Mr. Cutler, can you tell me what was discussed on the call with Mr. Levine and Miss Hart

A. I don't believe --

MR. LEVINE: Just to confirm, you just mean the subject matter of the conversation; right?

MR. RAM: Well, I just want to establish -- and I'll be straight with you. Are you asserting a privilege on behalf of adidas of any communications that you had with Mr. Cutler?"

MR. LEVINE: Thanks for asking. So on behalf of Adidas and with respect to that meeting in particular we would say that there is a preexisting attorney/client privilege that we have an interest in protecting that relates to his prior work on behalf of the company and then there is a common interest as well that extends to the subject matter of the litigation and his testimony today. So, you know, questions you might ask that don't ask him to reveal privileged communications like the topic generally of the discussions seems to be totally fair game, but we would object to anything that gets into the substance of the communications in that meeting.

MR. RAM: Okay. Is anybody going to instruct the witness not to answer the question?

MR. LEVINE: Well, I was just clarifying it. If you were just asking him what the subject matter was of the conversation I think he can answer that, but if you're going to probe any particular things that his counsel told him in the presence of Debevoise, then we would object and, you know, would expect that he wouldn't answer those questions.

MR. RAM: Okay. And again, I'm not trying to get the witness to say something that -- I want to just go through the process of preserving the record on this issue.

MR. LEVINE: Sure.

BY MR. RAM:

Q. So Mr. Cutler, again I'm going to ask you a question. And Mr. Levine or your lawyer may object, so listen to their objection, please. Can you tell me the substance of the conversation that you had in preparation for your deposition testimony today on the call with Catherine Hart and Andrew Levine?

MR. CICCARELLI: Object to that.

MR. RAM: What is the basis for the objection, Philip?

MR. CICCARELLI: Privilege.

MR. RAM: All right. Is anybody instructing the witness not to answer that question?

MR. CICCARELLI: I am.

MR. RAM: Okay. Andy, are you as well? Your head was nodding, but --

MR. LEVINE: I think it's Phil's place to instruct the witness not to answer, but we support that position.

## RULE 26(c)(1) CERTIFICATION

On March 27, 2021, counsel for adidas, William Taft, called Mr. Ram in an effort to resolve the objection without the need for litigation. (Decl. of William H. Taft V ¶ 2, Mar. 30, 2021.) Mr. Ram stated that Cutler and adidas would need to file a motion for a protective order if they believed their communications were privileged. (*Id.*)

Similarly, on March 30, 2021, counsel for Cutler, La'Jessica Stringfellow, called Mr. Ram and left a voicemail and sent a follow-up email in an effort to resolve the objection without the need for litigation. Ms. Stringfellow did not receive a response prior the filing of this motion. (Decl. of La'Jessica Stringfellow ¶ 2, Mar., 30, 2021.)

## STANDARD OF REVIEW

During a deposition, "[a] person may instruct a deponent not to answer a question only when necessary to preserve the privilege." Fed. R. Civ. P. 30(c)(2). When counsel directs a deponent not to answer a question on permissible grounds, that party "shall move the court for a protective order under Fed. R. Civ. P. 26(c) or 30(d)(3) within (7) days of the suspension or termination of the deposition." Local Civ. Rule 30.04(c) D.S.C. ("Failure to timely file such a motion will constitute waiver of the objection, and the deposition may be reconvened.").

Under Rule 26(c)(1), "a party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . [and t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by forbidding or limiting the scope of discovery. Fed. R. Civ. P.

---

Q. (Continued) Mr. Cutler, are you accepting your attorney's instruction about not to answer the substance of what was discussed on the call with Mr. Levine and Miss Hart?
A. Yes.
Q. Okay. All right. Well, we'll pick this up off line if we need to later.

(Cutler Dep. Tr. 148:10-152:5.)

26(c)(1).  Under Rule 30(d)(3), "[t]he court may order that the deposition be terminated or may limit its scope and manner as provided in Rule 26(c)."  Fed. R. Civ. P. 30(d)(3).

"The party moving for a protective order bears the burden of establishing good cause." *See Page v. Johnson*, No. 2:19-cv-2673, 2019 WL 5566519, at *2 (D.S.C. Oct. 29, 2019) (quoting *Webb v. Green Tree Servicing LLC*, 283 F.R.D. 276, 278 (D. Md. 2012)).  Ordinarily, to determine good cause, "a court will balance the interest of a party in obtaining the information versus the interest of his opponent in keeping the information confidential or in not requiring its production."  *UAI Tech., Inc. v. Valutech, Inc.*, 122 F.R.D. 188, 191 (M.D.N.C. 1988) (internal citations omitted).  Thus, "the Court must weigh the need for the information versus the harm in producing it."  *A Helping Hand, LLC v. Baltimore Cty., Md.*, 295 F.Supp.2d 585, 592 (D. Md. 2003) (internal quotation marks omitted).

## ARGUMENT

**I.     Cutler's and adidas's communications at the March 22, 2021 meeting are protected by the attorney-client privilege and the common-interest rule.**

Pursuant to the attorney-client privilege and the common-interest rule, communications at the March 22, 2021 deposition-preparation meeting are protected from disclosure.  The attorney-client privilege "affords confidential communications between lawyer and client complete protection from disclosure."  *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998).  The common-interest rule acts as "an extension of the attorney-client privilege, [and] protects communications between parties who share a common interest in litigation."  *In re Grand Jury Subpoena: Under Seal,* 415 F.3d 333, 341 (4th Cir. 2005).  Thus, through the common-interest rule, parties with a common interest may "communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims."  *Hanwha Azdel, Inc. v. C & D Zodiac, Inc.*, 617 F. App'x 227, 243 (4th Cir. 2015) (quoting *Under Seal*, 415 F.3d at 341).  To

8

establish protection under the common-interest rule, the "proponent of the privilege" must show that "the parties had 'some common interest about a legal matter.'" *Id.* (quoting *Sheet Metal Workers Int'l Ass'n v. Sweeney*, 29 F.3d 120, 124 (4th Cir.1994)).

Here, there is no dispute that Cutler and his counsel engaged in communications for the purpose of providing legal advice at the March 22, 2021 meeting—the only question is whether those communications remained confidential in the presence of adidas's attorneys. In light of Cutler and adidas's longstanding recognition of two common legal interests the presence of adidas attorneys did not destroy the privilege: First, Cutler and adidas each have an interest in protecting from disclosure the privileged information exchanged during adidas's and Cutler's joint work responding to the SDNY subpoenas, and during adidas's related internal investigation. (Levine Decl. ¶ 4; Park Decl. ¶ 3.)  And second, Cutler and adidas share a legal interest in defending against Bowen Jr.'s allegations regarding a broad college basketball bribery scheme, in which Bowen Jr. has alleged adidas was a participant (Am. Compl. ¶¶ 103-234, Aug. 23, 2019, ECF No. 84) and suggested Cutler's involvement as well (*see* Cutler Dep. Tr. at 114:6-115:3; *id.* at 119:2-6).

Bowen Jr. resists this conclusion by asserting incorrectly that adidas could not possibly have a common interest with Cutler, given allegations in adidas's crossclaim that Rivers, for whom Cutler worked, defrauded adidas. (Taft. Decl. ¶ 2.)  This argument is wrong, for two reasons: First, the common-interest rule does not require that two parties share a common interest over *all* legal issues; instead, parties need only show that they share "*some* common interest about *a* legal matter." *Hanwha Azdel*, 617 F. App'x at 243 (emphasis added) (quoting *Sheet Metal Workers Int'l*, 29 F.3d at 124).  "The fact that the parties also possess other, potentially divergent interests does not change the analysis." *Wellin v. Wellin*, 211 F. Supp. 3d

9

793, 812 (D.S.C. 2016), *order clarified on other grounds*, No. 2:13-CV-1831-DCN, 2017 WL 3620061 (D.S.C. Aug. 23, 2017).

Second, adidas's crossclaims do not allege that Cutler was a participant in the conspiracy to defraud adidas to pay college basketball players; Cutler is mentioned nowhere in the crossclaims. And as Cutler testified, he did not engage in the conduct at the heart of the conspiracy alleged by adidas, which involved submitting fraudulent invoices purportedly linked to AAU teams to obtain funds used to make large cash payments of the type that were paid to Bowen Jr.'s father. (*See generally* adidas's Ans. and Crossclaims (not mentioning Cutler); *see also* Cutler Dep. Tr. at 119:2-6 ("I have not ever given money to a high school basketball player, to the best of my recollection.").) The mere fact that Cutler reported to an individual who adidas alleges was involved in a conspiracy to defraud adidas does not necessarily create an opposing interest between adidas and Cutler. Nor does it override the clear common interest they share with respect to Bowen Jr.'s claims.

## II.     Bowen Jr. should pay Cutler and adidas's fees and expenses pursuant to Rule 37(a)(5).

Cutler and adidas should be awarded fees and expenses because Bowen Jr. necessitated this motion. If a motion for a protective order is granted, courts generally must "require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A); *see also* Fed R. Civ. P. 26(c)(3) (stating "Rule 37(a)(5) applies to the award of expenses" for motions for protective orders). Upon an appropriate order, Cutler and adidas will provide records of their respective fees and expenses caused by Bowen Jr.'s unnecessary refusal to respect the attorney-client privilege.

## CONCLUSION

The communications exchanged at the March 22, 2021 meeting are privileged under the attorney-client privilege and the common-interest rule. An order should be issued, protecting Cutler and adidas from requests by Bowen Jr. or any other party to provide the substance of those communications, and awarding Cutler and adidas fees and expenses.

By: /s/ *Matthew T. Richardson*

Matthew T. Richardson (D.S.C. Id. No. 7791)
Mary Lucille ("Lucy") Dinkins (D.S.C. No. 11961)
WYCHE
807 Gervais Street, Suite 301
Columbia, South Carolina 29201
Tel: (803) 254-6542
mrichardson@wyche.com
ldinkins@wyche.com

Andrew J. Ceresney (admitted *pro hac vice*)
William H. Taft V (admitted *pro hac vice*)
Nathan S. Richards (admitted *pro hac vice*)
Matthew D. Forbes (admitted *pro hac vice*)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Tel: (212) 909-6000
aceresney@debevoise.com
whtaft@debevoise.com
nsrichards@debevoise.com
mforbes@debevoise.com

*Counsel to Defendant adidas America, Inc.*

La'Jessica Stringfellow, Fed. ID. No. 13006
ROBINSON GRAY STEPP & LAFFITTE, LLC
PO Box 11449
Columbia, SC 29211
Telephone: 803.231.7819
lstringfellow@robinsongray.com

Philip C. Ciccarelli
Attorney at Law

                                      55 N. Pleasant Street
                                      Amherst, MA 01002
                                      (413) 230-3255
                                      phil@cicarelli.law
                                      *pro hac vice forthcoming*

                                      *Counsel for Non-Party Dan Cutler*

Dated: March 30, 2021