**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

**COLUMBIA DIVISION**

| | | |
|---|---|---|
| BRIAN BOWEN II, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: <u>3:18-3118-JFA</u> |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES GATTO; MERL CODE; CHRISTIAN DAWKINS; MUNISH SOOD; THOMAS GASSNOLA; and CHRISTOPHER RIVERS, | ) ) ) ) | **MOTION TO COMPEL ADIDAS AMERICA, INC. TO FULLY RESPOND TO PLAINTIFF'S INTERROGATORIES** |
| Defendants, | ) | |
| | ) | |
| ADIDAS AMERICA, INC.; | ) | |
| | ) | |
| Defendant-Cross Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MUNISH SOOD and THOMAS GASSNOLA | ) ) | |
| | ) | |
| Defendant-Cross Defendants, | ) | |
| | ) | |
| and BRIAN BOWEN, SR., | ) | |
| | ) | |
| Cross Defendant. | ) | |

Plaintiff Brian Bowen II respectfully moves the Court, pursuant to Federal Rules of Civil Procedure 26(b) and 37, for an order compelling Defendant Adidas America, Inc. (hereinafter, "Adidas") to provide full and complete responses to Plaintiff's Interrogatories Nos. 1, 2, 3, 4, 5, 6, 7, 11 and 12 set forth in Plaintiff's First Set of Interrogatories. (*See* Ex. 1.) In response to these discovery requests, Adidas has rested on boilerplate, unsubstantiated objections and refused to provide basic information relevant not only to Plaintiff's claims but also to the claims Adidas

1

alleges in its Crossclaims. (*See* Ex. 2.) The requests at issue in this motion seek basic and highly relevant information needed to fully understand the extent of Adidas's liability and defenses in this case. Accordingly, Plaintiff seeks an order from the Court (1) compelling Adidas to provide full and complete responses to the above interrogatories and (2) overruling Adidas's boilerplate objections.

### A. Legal Standard

"Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Pursuant to Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). "Over the course of more than four decades, district judges and magistrate judges in the Fourth Circuit . . . have repeatedly ruled that the party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." *Kinetic Concepts, Inc. v. ConvaTec Inc.,* 268 F.R.D. 226, 243 (M.D.N.C. 2010).

### B. Plaintiff's Interrogatories Nos. 1 and 2

Plaintiff first seeks an order compelling Adidas to respond fully to Interrogatories Nos. 1 and 2 of his First Set of Interrogatories to Adidas. The two interrogatories are outlined below:

**INTERROGATORY NO. 1:** Please identify by full name the University of Kansas coaches referred to in paragraphs 17(a) and 18 of Adidas's crossclaims, provide a full description of each coach's coordination, and provide the names of the basketball players referred to as Player 2 and Player 3.

- Paragraph 17(a): "From October 2016 through November 2017, Gatto and Gassnola used sham invoices to transfer approximately $90,000 of adidas funds in coordination with an assistant coach from the University of Kansas in efforts to recruit another high school basketball player ("Player 2") to commit to the school."

- Paragraph 18: "In September of 2017, Gatto and Gassnola worked with coaches at the University of Kansas to secure the commitment of a third amateur basketball

2

>  player ("Player 3").  Gatto and Gassnola discussed by telephone a scheme to use "20 grand" of adidas' money to pay Player 3's family."
>
> **INTERROGATORY NO. 2:** Please identify by full name each of the North Carolina State University "coaches" referred to in paragraph 16(a) of Adidas's crossclaims in which you allege: "In the fall of 2015, Gassnola and Gatto worked together with coaches at North Carolina State University ("N.C. State") to secure the commitment of a high school basketball player ("Player 1") to play at N.C. State."  In your response, please provide a full description of each coach's coordination, and identify the player referenced as Player 1.

In response to these requests, Adidas provided only partial responses and, in particular, declined to provide a full description of the factual basis for the allegations in its Crossclaims regarding the involvement of various NCAA basketball coaches that Adidas alleges "coordinated" the payments or had knowledge of payments to players' families to induce those players to attend Adidas-sponsored universities.  (Ex. 2 at 3-4.)  Although it identified University of Kansas men's head basketball coach Bill Self and assistant coach Kurtis Townsend in response to Interrogatory No. 1, it did not provide any description of what these coaches did to coordinate the bribery scheme and/or their "work" with Defendants Jim Gatto and T.J. Gassnola to secure the commitment of "Player 3" to the University of Kansas.  Adidas, which plainly is reluctant to disclose this information to Plaintiff, simply refers back to the allegations in its Crossclaims.  (*See* Ex. 2 at 3-4.)  But as made clear from the interrogatories themselves, Adidas's allegations in its Crossclaims are entirely devoid of specifics of these coaches' knowledge, participation, coordination, and/or involvement in the college basketball bribery scheme.  Adidas's circular response to these interrogatories simply provides no additional information.  Yet, Adidas is clearly aware of much more regarding these coaches' involvement that it is now withholding from discovery.  For example, paragraph 13 of Adidas's Crossclaim alleges, in part:

3

> "The scheme included then-adidas employees Gatto and Rivers, independent contractors Merl Code Jr. and Gassnola, independent player-advisors Christian Dawkins and Sood, **coaches and assistant coaches at certain universities** . . ."

(ECF No. 116 ¶ 13 (emphasis added).)  Simply put, with less than a month remaining before the close of discovery, the time has come for Adidas to come forward with the basic facts that it has alleged regarding the "scheme" involving "coaches and assistant coaches at certain universities" or dismiss its Crossclaims.  Adidas's attempt to point back to its pleading in lieu of providing a response is not permitted.  *See King v. E.F. Hutton & Co.*, 117 F.R.D. 2, 6 (D.D.C.1987) ("Defendant cannot avoid answering interrogatories by referring the plaintiffs to its pleadings, no matter how detailed.")

### C. Plaintiff's Interrogatories Nos. 3, 4, 5, and 7

Plaintiff next moves to seek an order compelling Adidas to respond fully to Interrogatories Nos. 3, 4, 5, and 7.  These interrogatories are outlined below:

> **INTERROGATORY NO. 3**: Please identify all other NCAA Division I coaches or university athletic department personnel with whom Adidas Personnel (e.g., Adidas officers, directors, employees, consultants, and/or contractors) communicated with prior to September 26, 2017, regarding the payment of money or other tangible benefits to the families or guardians of amateur high school or NCAA Division I basketball players.  For each such person identified, please provide the name(s) of the individuals involved the communications, their university/team affiliation at the time of the communication, the dates of each communication, and the identities of the families or guardians discussed.
>
> **INTERROGATORY NO. 4:** Please identify all Adidas Personnel (e.g., Adidas officers, directors, employees, consultants, and/or contractors) who had knowledge, prior to September 26, 2017, that money or other tangible benefits from Adidas were provided to the families or guardians of amateur high school or NCAA Division I basketball players.  For each such person identified, please provide a summary sufficient to inform Plaintiff of the basis of your understanding of the person's knowledge.  This request excludes those persons whose sole knowledge is of the provision of standard team merchandise and apparel provided to AAU and NCAA teams sponsored by Adidas.
>
> **INTERROGATORY NO. 5**: Please identify all current or former amateur high school or NCAA Division I basketball players whose families and/or guardians were provided money directly or indirectly from Adidas for the purpose of recruiting those athletes to play basketball for AAU teams or universities sponsored by Adidas. For each such player

identified, please state the amount of money paid and the date(s) of each payment, and identify all Adidas personnel who were aware of such payments prior to September 26, 2017.

**INTERROGATORY NO. 7:** Please describe all payments made by Adidas personnel to the family of Zion Williamson prior to April 2019 and include in your response a complete description of the purpose of each payment.

In response to these interrogatories, Adidas raised boilerplate objections on grounds of overbreadth, proportionality, relevance, and privilege grounds. (*See* Ex. 2 at 5-8). In particular, in asserting its proportionality objections, Adidas simply averred that the interrogatories were "not proportional to the needs of the case" and then raised boilerplate relevancy objections without any explanation of *why* the requests are not relevant or *how* the interrogatories place a disproportionate burden on Adidas when responding. "In applying Rule 26's broad discovery, a party objecting to discovery must first show that the information sought is not relevant before showing that it is not proportional to the needs of the case." *Ashmore v. Williams*, No. 8:15-CV-03633-JMC, 2017 WL 2437082, at *4 (D.S.C. June 6, 2017). *See also* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment (noting that the addition of "proportionality" language is not "intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional.").

Additionally, in responding to these interrogatories, Adidas instead instructs Plaintiff to sift through the over 200,000+ records it produced in this case and asserts without any explanation that "the burden of deriving or ascertaining the answer . . . will be substantially the same for either party." (Ex. 2 at 5-6, 8.) This approach to responding to discovery is entirely inappropriate and runs afoul of the limited circumstances under Fed. R. Civ. P. 33(d) in which a party may in limited circumstances produce business records in lieu of answering an interrogatory. As district court in this circuit observed:

> The producing party must satisfy a number of factors in order to meet its justification burden. First, it must show that a review of the documents will actually reveal answers to the interrogatories. . . . In other words, the producing party must show that the named documents contain all of the information requested by the interrogatories. *Oleson v. Kmart Corp.*, 175 F.R.D. 560, 564 (D. Kan. 1997). Crucial to this inquiry is that the producing party have adequately and precisely specified for each interrogatory, the actual documents where information will be found. . . . Document dumps or vague references to documents do not suffice. *Capacchione v. Charlotte–Mecklenburg Schools*, 182 F.R.D. 486 (W.D.N.C. 1998) (220 boxes); *In re Bilzerian*, 190 B.R. 964 (Bankr. M.D. Fla. 1995) (28 boxes). Depending on the number of documents and the number of interrogatories, indices may be required. *O'Connor v. Boeing North Am., Inc.*, 185 F.R.D. 272, 278 (C.D. Cal. 1999). *United States Sec. & Exch. Comm'n v. Elfindepan, S.A.*, 206 F.R.D. 574, 576–77 (M.D.N.C.2002); *see also Hillyard Enter., Inc. v. Warren Oil Co., Inc.*, No. 5:02–CV–329, 2003 WL 25904133, at *2 (E.D.N.C. Jan. 31, 2003) ("However, [Rule 33(d) ] is subject to the following important limitation: 'A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained.' "). "This provision of Rule 33(d) is meant to 'make it clear that a responding party has the duty to specify, by category and location, the records from which answers to interrogatories can be derived." *Hillyard*, 2003 WL 25904133, at *2 (quoting *Am. Rockwool v. Owens–Corning Fiberglas Corp.*, 109 F.R.D. 263, 266 (E.D.N.C.1985) (citation omitted)).

*See Stillwagon v. Innsbrook Golf & Marina, LLC*, No. 2:13-CV-00018-D, 2014 WL 1652562, at *3–4 (E.D.N.C. Apr. 23, 2014).

Here, Adidas has failed to show that a review of the 200,000+ records it produced in this case will reveal complete answers to the interrogatories, and with respect to Interrogatories Nos. 3 and 4, failed to specify any documents containing the requested information. For example, Interrogatory No. 4 asks Adidas to identify all Adidas Personnel who had knowledge of money or other benefits provided to families or guardians of amateur high school or NCAA Division I basketball players, yet the Adidas has not pointed to any document(s) that fully answers this interrogatory.

Although Adidas identifies specific documents in response to Interrogatories Nos. 5 and 7, those documents are simply presentations made by Adidas to the U.S. Attorney's Office for the

Southern District of New York as part of its effort to avoid criminal prosecution and do not come close to providing a full or complete answer to Plaintiff's interrogatories. As an example, the March 23, 2021 deposition of Adidas's Dan Cutler disclosed payments of gifts, such as airplane tickets, to high school recruits, student-athletes, and their families yet that information is only partially disclosed in Adidas's presentations to federal prosecutors—demonstrating that the specified documents are insufficient to serve as an adequate response under Rule 33(d). Further, with respect to Interrogatory No. 7, the document referred to by Adidas contains no information regarding the "purpose" of the payments made by Adidas to the family of Zion Williamson prior to April 2019, nor was Adidas's counsel willing to confirm during the parties' April 5, 2021 meet and confer call that each of the listed payments accurately reflected payments to the family of Mr. Williamson by Adidas's Christopher Rivers.

### D. Plaintiff's Interrogatory No. 6

Plaintiff also moves to compel Adidas to respond fully to Interrogatory No. 6:

**INTERROGATORY NO. 6**: Please identify the names and job titles of all Adidas senior level employees and/or corporate officers and directors who had knowledge at any time during the period January 2015 through September 2017 of the NCAA Division I Bylaws addressing Amateurism and Athletics Eligibility and Recruiting as set forth in Articles 12 and 13 of the NCAA Division I Manual.

In response, Adidas objects that the term "knowledge" is vague and ambiguous despite Plaintiff's Instruction No. 14, (*see* Ex. 1 at 4), that any term it claims as vague or ambiguous should be interpreted as carrying its "most inclusive meaning as it defined by Merriam-Webster" and provided a link to look up the definition of any such terms. The allegations in this case (and in the parallel criminal case against Defendants Gatto, Code, and Dawkins which serves as the foundation of several of the predicate acts of racketeering) centered on the Adidas bribe payments destroying the NCAA eligibility of the affected student-athletes, including Plaintiff. Discovery in this case has clearly demonstrated that Adidas's almost billion-dollar investment in sponsorships

7

of various NCAA schools and related sponsorship of AAU basketball teams inherently requires it to conform to NCAA bylaws. Moreover, Adidas's own documents, along with the testimony of its employees and witnesses, confirms that Adidas played an active role in *recruiting* talented high school athletes to its sponsored-universities' basketball teams and assisted coaches at schools such as the University of Kansas in the recruitment of players—conduct that is clearly governed by NCAA bylaws. (*See, e.g.*, Depo. of Dan Cutler, ECF No. 202-1 at 181:17 – 182:19; 247:15 - 250:12.)

The significance of Adidas's knowledge of NCAA bylaws is also made clear by the bylaws themselves, which prohibit representatives of a university's athletic interests, such as apparel sponsors like Adidas, from recruiting student-athletes in violation of NCAA rules. Such recruitment renders a student-athlete ineligible to participate in athletics, which is exactly what happened to Plaintiff. Accordingly, Adidas's corporate knowledge of the NCAA bylaws is inherently relevant to the claims and defenses in this case and, particular, scienter.

Finally, to the extent Adidas asserts that it cannot provide an answer because "not all individuals who were officers or directors during the stated time frame remain at adidas today," (Ex. 2 at 7), does nothing to address its obligation to query current corporate officers and directors who worked for Adidas during the requested time frame of January 2015 through September 2017.

### E. Plaintiff's Interrogatories Nos. 11 and 12

Plaintiff moves to compel Adidas to respond fully to Interrogatories No. 11 and 12, which relate to whether it funded the criminal defense of Defendants Gatto, Code, and Dawkins and whether it is funding the defense of its co-defendants in this case:

> **INTERROGATORY NO. 11:** Please state whether Adidas agreed to pay or reimburse any portion of the attorney's fees or costs of any defendant in this case and, if so, please identify the name of the defendant and the amount of attorney's fees and costs that Adidas agreed to pay or reimburse.

**INTERROGATORY NO. 12:** Please state whether Adidas agreed to pay or reimburse any portion of the attorney's fees or costs incurred by Defendants James Gatto, Merl Code, and/or Christian Dawkins in connection with their criminal defense in *United States v. Gatto*, Case No. 17-cr-686 (LAK) (S.D.N.Y.). If so, please state the total amount of attorney's fees and costs that Adidas paid or reimbursed for each defendant.

In response to these requests, Adidas remarkably claims that providing a simple yes or no answer and, if applicable, disclosing the total amount of attorney's fees and costs paid by it is "not proportional to the needs of the case because it seeks information that is irrelevant to claims or defenses of this litigation." Once again, Adidas is resting on boilerplate objections without any explanation of *why* the requested information is not relevant to the claims in this matter or any explanation of *how* providing a simple and straightforward answer to these interrogatories imposes an undue burden on the company. Curiously, Adidas found no burden and raised no relevancy objection in answering a related interrogatory regarding the payment of criminal restitution assessed against Defendants Gatto, Code, and Dawkins. (*See* Adidas answer to Interrogatory 13, Ex. 2 at 15.)

The Court has already heard argument regarding the relevance of the substance of these requests during hearings held on February 2, 2021 and March 17, 2021 in connection with similar requests made to Defendant Christopher Rivers. In sum, the issue of whether Adidas is funding and/or controlling the defense of others in this case—particularly the defense of Jim Gatto and Christopher Rivers who Adidas alleges "misappropriated" company funds—is directly relevant to Adidas's credibility and corporate knowledge. Put simply, why would Adidas fund the defense of its former employees that it claims stole company money and used it in a racketeering scheme that harmed student-athletes? When this case goes to trial later this year, the jury should have an answer when weighing the credibility of these defendants' live testimony.

9

**CONCLUSION**

Based on the foregoing, Plaintiff Brian Bowen respectfully requests the Court to issue an order (1) compelling Adidas to respond fully to Plaintiff's Interrogatories No. 1, 2, 3, 4, 5, 6, 7, 11 and 12; and (2) overruling Adidas's boilerplate and unsupported objections.

**AFFIRMATION OF CONFERENCE**

Prior to filing this motion, counsel for Plaintiff attempted to resolve this discovery dispute in good faith with counsel for Adidas America, Inc. during a telephonic meet and confer conference held on April 5, 2021. Adidas's counsel stated they would consider providing supplemental responses or explanation of their objections on certain interrogatory responses in writing by Thursday, April 8, 2021; however, that date passed without any response from Adidas's counsel.

Respectfully submitted,

**McLEOD LAW GROUP, LLC**
Post Office Box 21624
Charleston, South Carolina 29413
(843) 277-6655

*s/ Colin V. Ram*
Colin V. Ram, No. 12958
W. Mullins McLeod, Jr., No. 7142
colin@mcleod-lawgroup.com
*Attorneys for Plaintiff*

April 9, 2021
Charleston, South Carolina