**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| BRIAN BOWEN II, | C/A No.: 3:18-CV-3118-JFA |
| v. | |
| ADIDAS AMERICA, INC.;<br>JAMES GATTO; MERL CODE;<br>CHRISTIAN DAWKINS, MUNISH SOOD,<br>THOMAS GASSNOLA; and<br>CHRISTOPHER RIVERS | **BRIAN BOWEN, SR.'S MOTION AND**<br>**MEMORANDUM IN SUPPORT OF**<br>**MOTION FOR SUMMARY JUDGMENT**<br>**ON RICO CROSSCLAIMS** |
| Defendants. | |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Brian Bowen, Sr. ("Bowen Sr."), by and through his undersigned counsel, hereby respectfully moves for Summary Judgment in its favor on Defendant Adidas America, Inc.'s ("Adidas") Cross Claims against him under Racketeer Influenced and Corrupt Organizations Act for the grounds set forth herein.

## I.    FACTS

Adidas has alleged that Defendants and Cross-Defendants engaged in an enterprise to influence amateur basketball players to play for schools with an adidas-sponsorship relationship, and in doing so, misappropriated Adidas funds. (ECF 116, Adidas's Crossclaims, ¶ 12-14). It has further alleged that this enterprise accomplished its goal by submitting invoices that "contained false statement[s] to Adidas," and that these false submissions constitute wire fraud and/or racketeering activity. The enterprise allegedly culminated in Bowen Sr. causing Plaintiff, Brian Bowen, Jr. ("Plaintiff") to attend the University of Louisville ("UofL") in exchange for $100,000,

to be paid by Adidas. (ECF 116, Crossclaims, ¶ 62).  For the purpose of this Motion, Bowen Sr. assumes these things to be true.[1]

Adidas witnesses have testified that invoices submitted to Adidas for payment must be assigned a budget code, be accompanied by vendor information, and be approved by the budget owner, as well as various employees in the finance department, depending on the amount of the invoice.  (**Exhibit 1**, Ames deposition (p. 49, lines 11-18; p. 52, lines 16-23; p. 53, line 21 – p. 54, line 8); **Exhibit 4**, McGuire Deposition (p. 278, lines 1-5 (invoices are approved by budget owner, then finance, then Director of Sports Marketing))).  All money paid by Adidas America is paid through the finance department.  (**Exhibit 2**, Armstrong deposition (p. 199, lines 13-16)).  Zion Armstrong, President of Adidas America, who served as General Manager of Adidas U.S. in 2016 and 2017, was the Adidas executive who ███████████████████████████████ ██████████████████████████████████████.  (Armstrong deposition (pp. 26-27)).  During that time, Chris McGuire, Director of Sports Marketing, reported directly to Mr. Armstrong, and Mr. Armstrong reported to the company president. (Exhibit 2, Armstrong deposition (Ex. 1)).  Mr. Armstrong testified that ███████████████████████ ███████████████████████████████████████████████████████████████████ ████████████████████████████:

        Q:    ███████████████████████████████████

        A.    ████

---

[1] Because this Honorable Court has requested that the parties address the RICO standing issues prior to any other grounds on which they may move for Summary Judgment, Bowen Sr. assumes, for the purpose of this Motion only, that Adidas has developed evidence of a § 1962(c) RICO violation.  Nothing in this Memorandum should be construed as Bowen Sr.'s admission that he committed such a violation.  In addition, Bowen Sr. specifically reserves the right to move for summary judgment on all other grounds, including those affecting the *merits* of the RICO claims, in a subsequent motion.

(p. 201, lines 10-13, referring to Exhibit 11)



(p. 207, line 5 – p. 209, line 3, referring to Exhibit 19).



(p. 216, lines 7-17, referring to Exhibit 20).



(p. 222, lines 9-14, referring to Exhibit 21).

When asked what his process for approving an invoice was, Mr. Armstrong testified, ▮

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

(Exhibit 2, Armstrong Depo. (p. 207, lines 15-17)).  However, testimony from the "frontline"

employees has established that were not proper protocols or procedures in place to ensure that only

proper invoices would be approved. To the contrary, all invoices, including the vague and suspicious invoices Adidas is now claiming were fraudulent, were accepted without question.

Lindsay Harksen, a member of the finance team who had authority to approve invoices at the first level, testified that in the 2015-2017 timeframe, she never checked budget codes to be sure they matched the expenses described on the invoices (**Exhibit 3,** (p. 120, line 21 – p. 121, line 2)), nor did she recall ever checking to be sure that a contractual payment being made actually matched the contract (p. 162, lines 4-18). Additionally, she was not able to describe any procedure for flagging or investigating an excessive invoice charge and could not identify a single time where such an inquiry was made. (Exhibit 3, Harksen Depo. (p. 166, lines 1-23)). Chris McGuire, Adidas America's Director of Sports Marketing, was also unable to describe any process for ensuring that invoices Adidas was paying were properly made pursuant to the budget, any relevant contracts, or any other validation. (**Exhibit 4**, McGuire Depo. (p. 283, lines 4-6 ("Q. Why did you approve this invoice for payment? A. It was brought to me to approve."))). Mr. McGuire admitted that he personally approved a $75,000 invoice from Thomas Gassnola dated January 13, 2016 for "Grassroots Activation," even though Mr. Gassnola's contract only provided for $60,000 in product and $65,000 in travel expenses for the entire 2016 calendar year, and Mr. McGuire could give no explanation for approving the overage. (Exhibit 4, McGuire Depo. (p. 208, line 8 – p. 209, line 18)). Adidas went on to pay Thomas Gassnola almost $450,000 in 2016, and Mr. McGuire personally approved invoices for more than half that amount. (Exhibit 4, McGuire Depo. (Ex. 24)). Mr. McGuire is unable to give any explanation for the rampant approval of vague, unjustified invoices. (Exhibit 4, McGuire Depo. (p. 282, line 1 – p. 288, line 2; p. 290, line 24 – p. 291, line 8)). Counsel's questions regarding why Adidas would approve so many invoices for so much money outside what was contracted and budgeted for are met with nothing more than a shrug:

4

> Q:    [M]y question to you is why did you sign off on another payment to TJ Gassnola after he's received over $200,000 in less than six months?
> MR. LEVINE: Objection.
> THE WITNESS: I don't know.
> Q. (By Mr. Ram) What was he doing for Adidas to earn that money?
> MR. LEVINE: Objection.
> THE WITNESS: I don't know.

(p. 285, line 24 – p. 286, line 8).

> Q.    So when you look at the totals, you add up the totals for 2016 of the Adidas payments to Mr. Gassnola, it totals $447,810. And so my question is why did Adidas pay an AAU basketball grassroots consultant almost $450,000 in 2016 when his contract, which you signed, Mr. McGuire, limited his annual payments to $65,000?
> MR. LEVINE: Objection.
> THE WITNESS: I don't know.

(Exhibit 4, McGuire Depo. (p. 290, line 24 – p. 291, line 8)).  At this point in discovery, it is well established that executive level employees approved vague and excessive invoices—claiming, for example, $50,000 needed for a "tournament fee"[2]—again and again without asking questions, checking contracts, looking at budgets, or otherwise attempting to validate the expenditure.

## II.    LEGAL STANDARD

In considering a Motion for Summary Judgment under Rule 56, "The court shall grant [the motion] if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Summary Judgment should be granted where, "viewing all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party," the moving party is entitled to judgment as a matter of law. *Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018).  "When a properly supported motion for summary judgment is made, the adverse

---

[2] (Exhibit 4, McGuire Depo., p. 289, line 19 – p. 290, line 23) (confirming that the $50,000 "tournament fee" invoice was approved even though a typical fee would be "a couple hundred bucks.").

party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).  Indeed, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

### III.    ARGUMENT

Because Adidas cannot show the existence of both elements of standing for a RICO cause of action against Bowen, Sr., this Motion must be granted.  To have standing under RICO, specifically, the claimant must provide evidence of the defendant's violation of 18 U.S.C. § 1962 **and** that defendant's violation subsequently injured plaintiff's business or property.  *Spelman v. Bayer Corp.,* No. 7:10-CV-00091-JMC, 2011 WL 13312222, at *3 (D.S.C. Feb. 22, 2011) (citing *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.,* 262 F.3d 260, 264 (4th Cir. 2001)); *Dickerson v. TLC Lasik Centers,* No. 6:10-CV-00685 JMC, 2011 WL 382443, at *8 (D.S.C. Feb. 3, 2011) ("[R]ICO plaintiff must show damages to 'business or property' proximately caused by the [defendants'] RICO violation to have standing to bring suit."); *Sadighi. v. Daghighfekr,* 36 F.Supp.2d 279, 286 (D.S.C. 1999).

Once an alleged violation of § 1962(c) has been sufficiently plead, an aggrieved party must prove injury to business or property as a result of a defendant's violation.  The recovery of damages may flow from the commission of predicate acts; however, plaintiff "must additionally plead proximate cause, such that she was injured in her business or property 'by reason of' the RICO violation." *Lyons v. BAIC Inc.,* No. 6:17-CV-02362-DCC, 2018 WL 1762550, at *3 (D.S.C. Apr.

12, 2018) (citing *Hemi Group, LLC v. City of New York, N.Y.,* 559 U.S. 1, 6 (2010)).

"The RICO pattern or acts proximately cause a plaintiff's injury 'if they are a substantial factor in

the sequence of responsible causation and if the injury is reasonably foreseeable or anticipated as

a natural consequence.'" *Haviland v. J. Aron & Co.,* 796 F.Supp. 95, 98 (S.D.N.Y. June 10, 1992)

(citing *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 23–24 (2d Cir. 1990)).

> ### A.    Adidas Did Not Suffer Any Injury to Business or Property

The RICO claims against Brian Bowen, Sr. should be dismissed as a matter of law for lack

of standing because Adidas did not suffer an injury to its business or property.  Here, Adidas claims

that its injury was a "misuse of adidas's money" that was then "not available for legitimate business

purposes."  (ECF 116, Crossclaims, ¶ 71).  For this "misuse" of money to be an injury to Adidas,

the company has to prove its theory that the Cross-Defendant employees involved in the enterprise

acted independently, without knowledge or approval of Adidas.  However, discovery has shown

that Adidas employees at all levels were complicit, if not actively involved, in paying the families

of promising young basketball players.  Adidas's expenditure of its own funds cannot be

considered an "injury" to the company, even if it chose to use those funds for an improper purpose.

To find otherwise would require holding that Adidas suffered a legal injury to business or property

by its own actions.  What Adidas has actually suffered is more accurately characterized as buyer's

remorse.

As described above, and as recognized by this Court, the invoices that allegedly misled,

deceived, and/or defrauded Adidas were approved by Adidas' director of finance, Adidas' head of

sports marketing, and Adidas America's second in command.  (*See* ECF 112, p. 7).  Further,

Adidas's witnesses failed to give any explanation for approving excessive, unwarranted invoices

or identify any practice, procedure, or protocol in place in the 2015-2017 timeframe that even

attempted to prevent an invoice from being paid if it was not justified by a contract and/or budget. This kind of rampant disregard for whether money was being used as stated on the invoice is strong evidence that Adidas knew exactly what was going on.  In contrast, discovery has not revealed any evidence that the Cross-Defendant employees were acting on their own and without Adidas's knowledge and consent.

It is important to note that Adidas does not allege that Brian Bowen Sr. misused Adidas' money, which is how it alleges to have been injured.  It has alleged it lost $190,000 in misappropriated funds,[3] but it has failed to produce evidence to support that allegation in discovery. In fact, Adidas has failed to provide any information in discovery showing any injury or loss it suffered specifically because of Bowen Sr.  Because Adidas has suffered no injury, it does not have standing to assert RICO claims against Bowen Sr., and this Motion must be granted in Bowen Sr.'s favor.

### B.   Bowen Sr.'s Alleged RICO violations Did Not Directly Cause Adidas Funds to be Misappropriated

Even if Adidas was injured by its funds being misappropriated, which Bowen Sr. does not concede, Adidas lacks standing for its RICO claims because it has not and cannot show that Bowen Sr.'s actions were the proximate cause of its purported injury.  To proceed on a civil RICO claim, a plaintiff is required to make "a showing that the defendant's [RICO] violation not only was a "but for" cause of his injury, but was the proximate cause as well." *Holmes v. Sec. Inv. Prot. Corp*., 503 U.S. 258, 268, 112 S. Ct. 1311, 1317 (1992). In this context, proximate cause is "a demand for some direct relation between the injury asserted and the injurious conduct alleged." *Id.*, 503 U.S. at 268, 112 S. Ct. at 1318.  A party has standing for civil RICO claims only "to the extent"

---

[3] Even assuming Adidas could prove damages in this amount, it could not all be fairly attributed to Bowen Sr.'s involvement in the scheme.

each aspect of its injury was proximately caused by the RICO violation. *Sedima, S.P.R.L. v. Imrex*, 473 U.S. 479, 496 (1985). Thus, to the extent any of Adidas's claimed damages were not proximately caused by Bowen's engagement in the alleged enterprise, those claims must be dismissed. *See Dickerson v. TLC THE Laser Eye Ctr. Inst., Inc.*, 493 F. Appp'x 390, 394 (4th Cir. 2012) (assessing whether the plaintiff has standing as to each part of the injury).

First, Adidas cannot claim any damages sustained before Bowen Sr. was involved in the alleged scheme or enterprise were proximately caused by Bowen Sr.. Adidas's crossclaims are broken into two parts: "The Scheme Prior to Bowen Sr.'s Involvement" and "Bowen Sr.'s Collusion with Scheme Participants."[4] (ECF 116, ¶¶ 15-54). Further, some of the alleged racketeering activities inured to the benefit of players other than Plaintiff, and there is no evidence—or even allegation—that Bowen Sr. was involved in those payments. (ECF 116, ¶¶ 16-17). Therefore, to the extent Adidas's claims are predicated on falsified invoices, misrepresentations, or misappropriation of funds either (1) prior to Bowen Sr.'s alleged interaction with the other "scheme participants," or (2) related to players other than Plaintiff, such damages cannot be proximately caused by Bowen Sr.'s conduct.

Second, Adidas has not developed any evidence that Bowen Sr. proximately caused it injury. Adidas alleges that Bowen Sr. "participated in the enterprise by using his authority to cause Bowen Jr. commit [sic] to play basketball at UofL in return for the Cross-Defendants' and enterprise participants' agreement to transfer to Bowen Sr. $100,000 in misappropriated adidas funds." [ECF 116, ¶ 61]. There is no direct relationship between Bowen Sr. "causing" Bowen Jr.

---

[4] Despite deposing Bowen Sr. for nearly seven (7) hours, Adidas has failed to develop evidence that Bowen Sr. colluded with or shared a common purpose with other members of the alleged scheme or enterprise. Although these are issues to be heard and decided in a later motion, the lack of new evidence pertaining to Bowen Sr. in this case only goes to show that the claims against Bowen Sr. are a mere tool to attempt to gain leverage over the plaintiff.

to go to UofL and Adidas's claimed injury.  Neither Bowen Jr.'s decision to go to UofL nor Bowen Sr.'s role in that decision cost Adidas anything.  At best, they were a link in the chain.  Bowen Sr.'s efforts to cause Bowen Jr. to commit to UofL, which caused other Defendants to submit fraudulent invoices, which could have resulted in funds being misappropriated, is too attenuated to be the direct cause of any injury to Adidas.

To the extent Adidas alleges that Bowen Sr. participated in the enterprise by accepting monies from Adidas, the lack of proximate cause is again fatal to Adidas's claims.  According to Adidas, the racketeering activity consisted of a series of fraudulent invoices being submitted through Adidas's payment system by Adidas employees that contained false descriptions of what the invoices were for.  Then, after the invoice was submitted, approved, and paid, the money was utilized to pay (by cash or personal check) Bowen Sr.  Thus, by the time Bowen Sr. accepted the funds, they had already been misappropriated.  There is no evidence that Bowen Sr. initiated, submitted, or had any input into any invoice ever submitted to or through Adidas's payment system.  Further, there is no evidence that Bowen Sr. represented to Adidas or to anyone else that he provided "staff help" or "consulting" services to Adidas. In other words, Bowen Sr. did not **<u>cause</u>** any Adidas funds to be misappropriated.  Had he refused to accept the funds, they would not cease to be misappropriated.  Thus, Bowen Sr.'s actions were not the but-for or proximate cause of Adidas's purported injury.

In sum, Adidas's inability to show that Bowen Sr.'s actions were the direct and proximate cause of its purported injury results in a lack of standing to bring civil RICO claims.

### C. Adidas' Cross Claim for Violation of RICO § 1962(d) For Conspiracy is not Actionable Against Brian Bowen, Sr.

Because Adidas does not properly allege facts to support a substantive RICO claim against Brian Bowen Sr, as to the existence of an enterprise, Adidas's RICO conspiracy claim fails as well.

10

*GE Inv. Private Placement Partners II*, 247 F.3d at 551 n.2 (citing *Elfron v. Embassy Suites (P. R.), Inc.*, 223 F.3d 12, 21 (1st Cir. 2000), *cert. denied*, 532 U.S. 905 (2001)).

## IV.    **CONCLUSION**

WHEREFORE, Plaintiff respectfully requests this Court enter an order dismissing with prejudice all RICO causes of action against Brian Bowen Sr. as alleged in Adidas' Cross Claims.

**[SIGNATURE PAGE TO FOLLOW]**

Respectfully submitted,


By:    s/ Jessica L. Gooding
        Robert F. Goings (Fed. Bar # 9838)
        Jessica L. Gooding (Fed. Bar # 11754)
        Christopher M. Paschal (Fed. Bar # 13384)
        Goings Law Firm, LLC
        1510 Calhoun Street
        Post Office Box 436 (29202)
        Columbia, South Carolina 29201
        Email: rgoings@goingslawfirm.com
                jgooding@goingslawfirm.com
                cpaschal@goingslawfirm.com
        Phone: (803) 350-9230
        Fax:    (877) 789-6340

April 12, 2021

Columbia, South Carolina