# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

## COLUMBIA DIVISION

| | |
|---|---|
| BRIAN BOWEN II, | ) |
| Plaintiff, | ) Civil Action No.: 3:18-3118-JFA |
| v. | ) |
| JAMES GATTO; MERL CODE; CHRISTIAN DAWKINS; MUNISH SOOD; THOMAS GASSNOLA; and CHRISTOPHER RIVERS, | ) **PLAINTIFF'S OPPOSITION TO NON-PARTY DANIEL CUTLER'S MOTION FOR PROTECTIVE ORDER** |
| Defendants, | ) |
| ADIDAS AMERICA, INC.; | ) |
| Defendant-Cross Claimant, | ) |
| v. | ) |
| MUNISH SOOD and THOMAS GASSNOLA | ) |
| Defendant-Cross Defendants, | ) |
| and BRIAN BOWEN, SR., | ) |
| Cross Defendant. | ) |

## INTRODUCTION

This is a federal civil racketeering case in which Plaintiff Brian Bowen II has alleged RICO claims against Defendant Adidas America, Inc. ("Adidas") and others, while Adidas has alleged similar racketeering violations against Cross Defendants Sood, Gassnola, and Bowen Sr. Both Plaintiff and Adidas agree on a key fact: that Adidas employees and contractors used Adidas funds to bribe the family members of high school athletes "for the purpose of placing players at

1

universities and colleges with adidas sponsorship agreements." (Adidas Crossclaim, ECF No. 116 at ¶ 12.) What remains in dispute is whether Adidas, as a corporation, had knowledge of the bribery scheme engaged in by its personnel.

Against this backdrop, Plaintiff deposed former Adidas consultant Daniel R. Cutler on March 23, 2021. As is standard in most depositions, Plaintiff's counsel asked Mr. Cutler to discuss what he did to prepare for his deposition testimony without disclosing the substance of any attorney-client communications. (*See* D. Cutler Depo. Tr., ECF No. 202-1, at 10:23 – 13:16.) That seemingly innocuous question sparked a highly-contentous Mr. Cutler to state under oath the following:

> Q:   Did you speak with any attorneys from Adidas?
>
> A:   I did not speak with any attorneys from Adidas in regards to this deposition.

(*Id.* 12:24 – 13:16.)

That testimony turned out to be untrue. Four hours later, Mr. Cutler's attorney, Philip Ciccarelli, made a voluntary statement to "clarify for the record" regarding Mr. Cutler's earlier testimony about not speaking with any Adidas attorneys during his preparation for the deposition. (*Id.* 148:10 – 152:3).[1] That clarification prompted Plaintiff's counsel to reexamine Mr. Cutler on the communications he had with Adidas's lawyers regarding his deposition preparations. Mr. Cutler then admitted that Adidas's lawyers, Andrew Levine and Catharine Hart, were present during his preparation. (*Id.* 149:2-10.) In a follow-up question, Plaintiff's counsel asked Mr. Cutler to disclosed "what was discussed on the call with Mr. Levine and Miss Hart." (*Id.* at 149:11-

---

[1] In their motion, Adidas and Mr. Cutler omit any mention of his prior false testimony regarding having not spoken with any Adidas attorneys the week prior when preparing for his deposition. Nor did either of the two attorneys for Adidas present during the deposition (who were also present for his deposition preparation) correct the record at any point during the four-hours that elapsed between Mr. Cutler's false testimony and Mr. Ciccarelli's "clarif[ication] for the record."

2

14.) That question elicited the privilege objections that form the basis of Adidas's and Mr. Cutler's motion for protective order.

Knowing that the involvement of a third-party (i.e. Adidas) in Mr. Cutler's deposition preparations compromises any claim of privilege, Adidas and Mr. Cutler now insist the existence of an alleged "common interest agreement" between them that goes back to 2017. Yet, in support of their motion, neither Mr. Cutler nor Adidas produced any evidence of such an agreement. No written agreement between the parties purporting to protect communications between them, and no description of any alleged oral agreement that comes close to satisfying the standard that applies to the common interest privilege.

Because Adidas and Mr. Cutler have failed to meet their burden of establishing a common interest privilege, the Court should deny their motion for a protective order and direct Mr. Cutler to disclose whatever information or advice was shared with him by Adidas in preparation for Plaintiff's deposition of him in this case.

## **RELEVANT FACTUAL BACKGROUND**

Dan Cutler was an Adidas grassroots basketball "consultant" from approximately 2014 until his contract apparently "expired" in November 2018 shortly after his former colleagues Jim Gatto and Merl Code were convicted of wire fraud. (*Id.* 73:9-12.) He is adamant that he was never an Adidas employee. (*Id.* 40:16-20.) But his portfolio of responsibility as an Adidas consultant included "[i]dentifying elite, talented basketball players and develop[ing] relationships with them and their families" and engaging in "information sharing" with college basketball coaches and prospective recruits. (*Id.* 45:2-6; 237:7-13.) As a consultant, Mr. Cutler had a contract with Adidas in which he was entitled to receive approximately $85,000 annually in compensation. (*Id.* 66:19 – 67:14.) But like many of Adidas's basketball grassroots consultants, the compensation portion

of his consulting agreement did not restrict him from receiving significant cash payments from Adidas:

> Q: So I guess my question is: What were you doing in February of 2015 where you submitted two invoices within a five-day period totaling $60,000 to Adidas International in Amsterdam?
>
> A: I don't recall. I'm sorry.

(*Id.* 313:7-11.)

What Mr. Cutler did with these and other payments provided to him by Adidas is at issue because he admitted during his testimony to providing gifts, expensive sneakers, plane tickets, a cruise, and other tangible benefits to high school and college amateur basketball players. (*See, e.g.*, Cutler Depo Tr. 281:11-21 (discussing a text message between Cutler and a college student-athlete in which the student asked, "Can Adidas pay for my flight" and Cutler replied, "We can't, but it can magically appear.").)

During his testimony, Mr. Cutler testified that he had no recollection of receiving a criminal subpoena from federal prosecutors investigating the college basketball bribery scheme, (*see id.* 86:23-25), and he had no recollection of "gathering documents and producing documents in response to a subpoena" (*id.* 87:1-5). But he did admit to providing "emails, text messages. [t]hings like that" to two attorneys paid by Adidas to represent him. (*Id.* 90:6-8.) Nevertheless, Mr. Cutler was adamant that he was never interviewed by FBI agents or federal prosecutors in his life, particularly about bribery in college basketball:

> Q: Have you ever been interviewed by federal prosecutors at any point in your life?
>
> A: No.
>
> Q: Have you ever been interviewed by FBI agents at any point in your life?
>
> A: No.

4

>    …
>
>    Q:    From the time period September 2017 forward did you ever sit down in a room with any prosecutors or law enforcement officials?
>
>    A:    Not that I'm aware of.

(Cutler Depo. Tr. 86:5-19.)  Against this backdrop, Adidas claims there is a common legal interest agreement with Mr. Cutler, and vice versa, such that their joint discussions in preparation for Mr. Cutler's March 23, 2021 deposition should be shielded from disclosure to Plaintiff.

## ARGUMENT

### I. Common Interest Doctrine

The common interest doctrine is not an independent basis upon which privilege is conferred upon communications, but an exception to the general rule that no attorney-client privilege attaches when confidential communications are communicated in the presence of or to third parties. It cannot be used to bootstrap the privilege analysis. Thus, first it must be determined whether any privilege exists. Second, it must be determined that its sharing does not violate the requirement of confidentiality because the parties with whom the communication is shared have a common legal interest.

In the Fourth Circuit, the proponent of the common interest privilege must produce evidence of an agreement between the individuals with the common legal interest. *In re Sanctuary Belize Litig.*, No. PJM-18-3309, 2019 WL 6717771, at *3 (quoting *Am. Mgmt. Servs., LLC v. Dep't of the Army*, 703 F.3d 724, 733 (4th Cir. 2013)). While a written agreement is not required, and it is not necessary that "both parties to the communications at issue be co-parties in litigation," *Am. Mgmt. Srvs.*, 703 F.3d at 733 (citing *In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990)), "there must be an agreement or a meeting of the minds." *Id.*; *Hunton & Williams v. U.S.*

5

*Dep't of Justice*, 590 F.3d 272, 285 (4th Cir. 2010) ("While agreement need not assume a particular form, an agreement there must be."); *Prowess, Inc. v. Raysearch Labs. AB*, No. WDQ-11-1357, 2013 WL 509021, at *5 (D. Md. Feb. 11, 2013) (finding that because communications at issue occurred "well before any common interest agreement existed," they were not protected by the common interest privilege). "Mere 'indicia' of joint strategy as of a particular point in time are insufficient to demonstrate that a common interest agreement has been formed." *Hunton & Williams*, 590 F.3d at 285; see also Edna Sela Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine* 1.III.3.G (5th ed. 2007) ("Some evidence that an agreement that a common interest was to be pursued must exist, even though there is no requirement that such an agreement must be memorialized in writing.")

Absent written evidence memorializing a common interest agreement, the party asserting the privilege exception must present actual evidence that they had a meeting of the minds sufficient to establish a common interest agreement. "The existence of an oral agreement can be conclusively proved in two ways. First, the party asserting the oral agreement can show that the parties voted or otherwise agreed to take a specific litigation stance. . . . Second, the party asserting the oral agreement can show that the communications between the parties 'were only with respect to the agreed common shared litigation interest.'" *Beyond Sys., Inc. v. Kraft Foods, Inc.*, No. CIV.A. PJM-08-409, 2010 WL 3059344, at *4 (D. Md. Aug. 4, 2010). The burden of proving such agreement rests with the party asserting it "to come forward with specific facts showing these matters." *Id.*

Just like any other agreement, the purported parties to a common interest agreement must establish an express understanding that they are entering into such an agreement. A shared desire to see the same outcome in litigation is not sufficient; rather, there must be communication in

6

pursuit of a joint strategy in accordance with some form of agreement. *See Pac. Pictures Corps. v. United States Dist. Court*, 2012 U.S. Dist. LEXIS 7643, at *17-18 (9th Cir. Apr. 17, 2012). Where communications take place prior to the entry of a joint defense agreement, no protection should be afforded to those communications. *See, e.g.*, *Prowess*, 2013 WL 509021, at *5.

Courts in the Fourth Circuit apply the common interest privilege only in limited circumstances, such as where information is shared "by agreement relating to some shared actual or imminent, specific litigation." *United States v. Duke Energy Corp.*, 214 F.R.D. 383, 388 (M.D.N.C. 2003) (discussing the Fourth Circuit's application of the common interest doctrine). "[U]nless there is 'common ownership or control,' courts engage in painstaking analysis to determine whether 'the third party . . . shares an identical, and not merely similar, legal interest as the client with respect to the subject matter of the communication between the client and its attorney." *Neuberger Berman Real Est. Income Fund, Inc. v. Lola Brown Tr. No. 1B*, 230 F.R.D. 398, 416 (D. Md. 2005)

## II. Cutler and Adidas Have Failed to Establish the Existence of a Common Legal Interest Agreement

Because Mr. Cutler's communication with a third party (i.e., Adidas's attorneys) is, by definition, not subject to the attorney-client privilege, the existence of some common interest agreement between Cutler and Adidas is the only possible justification for his refusal to disclose the substance of his and Adidas's attorney's communications made in preparation for his deposition testimony in this case. Yet, despite their heavy burden of proving the existence of a common interest agreement—either in writing or through oral agreement, Cutler and Adidas's sole offer of proof comes not from the parties themselves (i.e., Adidas or Cutler) but through three virtually identical declarations signed by their attorneys that seemingly share almost verbatim text from one declaration to the next. These include the declarations from counsel for Adidas (Andrew

7

M. Levine) and two from counsel for Mr. Cutler, (Tai Park and Phillip C. Ciccarelli).  (*See* ECF No. 202-2 ("Levin Decl."), 202-4 ("Ciccarelli Decl."), and 202-5 ("Park Decl").)

These declarations from Adidas's and Cutler's attorneys are plainly deficient to satisfy their clients' respective burdens.  First, the *Levine*, *Park*, and *Ciccarelli* declarations are notable for their lack of any claim that Cutler and Adidas entered into a common interest agreement or otherwise reached an express understanding that each party was entering into such common interest agreement.  The declarations make no mention of the term 'agreement'—written or oral—at all.  Instead, they simply suggest that at some undetermined point in time Adidas and Cutler "recognized that they currently share two common interests: (i) protecting from disclosure all privileged information they exchanged in 2017 and 2018 when jointly working to respond to two SDNY subpoenas they each respectively received, and during adidas's related internal investigation; and (ii) defending themselves against Bowen Jr.'s allegations regarding a broad college basketball bribery scheme, in which adidas was supposedly a participant and Cutler was purportedly involved."  (Ciccarelli Decl. ¶ 3; Levine Decl. ¶ 4; Park Decl. ¶ 3.)  Yet their mere "recognition" is far from sufficient to establish the existence of *an agreement*.

Second, none of the three declarations present any specific facts as to the existence, terms, scope, duration, subject matter or timing of this alleged common interest.  This deficiency alone is grounds to deny the motion for a protective order.

Moreover, the notion that Mr. Cutler has an identical shared interest with Adidas is meritless.  First, it is not clear why Cutler – who never spoke with prosecutors and who apparently has no recollection of receiving a subpoena from federal prosecutors – would share an identical legal interest with Adidas on matters relating to the company's "internal investigation" or regarding information they shared with each other when responding to two SDNY subpoenas.  At

8

best, the declarations establish that Cutler, who was not an Adidas employee, (*see* Cutler Depo., ECF 202-1 at 25:10-12; 71:17-19.), and Adidas communicated with each other regarding their respective responses to subpoenas issued to them by federal prosecutors.  But there is no evidence put forth in the declarations that any communications they had in 2017 and 2018 was made pursuant to any then-existing common interest agreement let alone any shared interest that could have existed at that time.   Cutler's attorney, Mr. Park, states only that "they shared a common legal interest in cooperating with the government's investigation" and "addressing potential legal risks related to the conduct described in the SDNY complaint."  (Park Decl. ¶ 2.)  There is no mention by Mr. Park, however, of how or why Cutler and Adidas shared a common legal interest in cooperating with the government's investigation or why "cooperation" constitutes a legal interest.  Indeed, Mr. Cutler's deposition testimony seemingly disputes this notion of any possible shared interest in privileged attorney-client communications made by him in the course of responding to the SDNY subpoenas. (Cutler Depo. Tr. 86:5-10.)

Mr. Cutler's testimony during his deposition included such admissions that he had no recollection of receiving a criminal subpoena (*id.* 86:23-25) and that he had no recollection of "gathering documents and producing documents in response to a subpoena" (*id.* 87:1-5).  Those admissions, coupled with the fact that Mr. Cutler was apparently never interviewed by law enforcement officials in connection with the U.S. Attorney's criminal investigation of the college basketball bribery scheme, suggests that Mr. Cutler was not on the same plane as Adidas during the government's investigation or that he would not have been in a position—then or now—to share in a common interest regarding the government's criminal investigation.  Absent such identical and shared legal interest, the mere suggestion that they shared similar goals of "cooperation" cannot shield their communications from disclosure. *See Hunton & Williams*, 590

F.3d at 285 ("Mere 'indicia' of joint strategy as of a particular point in time are insufficient to demonstrate that a common interest agreement has been formed.").

Nor do the declarations provide any specifics of the "potential legal risks related to the conduct described in the SDNY complaint" that Cutler and Adidas purportedly shared a common interest in "addressing." At bottom, these declarations contain merely highly conclusory assertions of privilege that provide no evidentiary foundation to establish the existence of any common interest agreement; they are pure *ipse dixit*. Court have required full evidentiary hearings to establish the existence of a common interest agreement, yet Mr. Cutler and Adidas are apparently content to rest on a paragraph of proof copied and pasted among three declarations.

Yet, even if some semblance of an agreement could be inferred from the declarations, Plaintiff has made no allegations against Mr. Cutler such that it would be plausible that he could share an identical legal interest with Adidas *in this litigation*. Plaintiff made no mention of Mr. Cutler in his pleadings; rather, Mr. Cutler is merely one of many fact witnesses in this case. More importantly, Adidas's attorneys have not acknowledged in their motion or declaration the extent to which the company's interests departed from Mr. Cutler's interests during the government's investigation—information squarely in their possession and which undermines any good faith assertion of a common interest now.

Indeed, Adidas has not been shy to allege in its Crossclaims that its "employees and contractors used Adidas funds to bribe the family members of high school athletes for the purpose of placing players at universities and colleges with adidas sponsorship agreements." (Adidas Crossclaim, ECF No. 116 at ¶ 12.) The factual basis of Plaintiff's claim and Adidas's crossclaim are substantially similar such that one cannot credibly parse out Mr. Cutler's legal interest in Plaintiff's claims as distinct from his legal interest in Adidas's crosslclaims. What is clear thus far

10

from Mr. Cutler's testimony is that he was an Adidas contractor and that he plied amateur high school and college basketball players with gifts and other tangible benefits.  Against this backdrop, there can be no credible suggestion that Adidas and Mr. Cutler now share any common interest in this litigation.

### III.     Adidas and Cutler's Request for Fees Is Misleading and Should Be Denied

Finally, Adidas and Cutler incredulous assert in their motion that "[c]ounsel to Cutler and adidas sought to resolve this issue without the need for court intervention." What they mean is that Adidas's counsel asked Plaintiff's counsel during a meet and confer call to disregard Plaintiff's well-founded concern regarding the existence of a common interest agreement among Adidas and Mr. Cutler. Apparently, "Bowen Jr.'s unnecessary refusal to respect the attorney-client privilege" and take them at their word that Adidas's counsel's communications with Mr. Cutler during his deposition preparation were *bona fide* and privileged justifies Plaintiff paying their fees and expenses for bringing this motion.  (ECF No. 202 at 10.)

Left unstated in their motion or in the declaration filed by Adidas's counsel William Taft is that during the parties meet and confer call on Saturday, March 27, 2021, Plaintiff's counsel voluntarily extended to Adidas and Mr. Cutler the courtesy of his consent for additional time for them to file their motion for a protective order should they wish to request an extension from the Court.  The declarations filed by Mr. Taft (ECF No. 202-3) and Ms. Stringfellow (ECF No. 202-6) make no mention of this offer and, instead, fault Plaintiff's counsel for not returning a voicemail and email sent mere hours before they filed their motion and while Plaintiff's counsel was taking the deposition of another witness in another case.  Plaintiff's counsel recognizes now that Mr. Taft failed to inform Mr. Cutler's local counsel, Ms. Stringfellow, that Plaintiff offered an extension of time to file the motion so that they could have sufficient time to get up to speed and discuss any

11

issues with Plaintiff. Indeed, in subsequent communications with Ms. Stringfellow, she acknowledged that she was not made aware by Mr. Taft of Plaintiff's offer to provide her or Mr. Ciccarelli additional time to prepare and discuss their client's position on the common interest privilege prior to filing their motion. (*See* Ex. 1, March 31, 2021 email correspondence between C. Ram and L. Stringfellow). Accordingly, should the Court be inclined to award fees or costs to Mr. Cutler or Adidas, Plaintiff's counsel requests an opportunity to cross-examine Mr. Taft and Ms. Stringfellow on the representations in their declarations regarding the meet and confer process.

Respectfully submitted,                **McLEOD LAW GROUP, LLC**
                                        Post Office Box 21624
                                        Charleston, South Carolina 29413
                                        (843) 277-6655

                                        *s/ Colin V. Ram*
                                        Colin V. Ram, No. 12958
                                        W. Mullins McLeod, Jr., No. 7142
                                        colin@mcleod-lawgroup.com
                                        *Attorneys for Plaintiff*

April 13, 2021
Charleston, South Carolina