IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | | |
|---|---|---|
| BRIAN BOWEN II, | ) | Civil Action No.: 3:18-3118-JFA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES GATTO; MERL CODE; | ) | |
| CHRISTIAN DAWKINS; MUNISH | ) | |
| SOOD; THOMAS GASSNOLA; and | ) | |
| CHRISTOPHER RIVERS, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| ADIDAS AMERICA, INC.; | ) | |
| | ) | |
| Defendant-Cross Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MUNISH SOOD and | ) | |
| THOMAS GASSNOLA | ) | |
| | ) | |
| Defendant-Cross Defendants, | ) | |
| | ) | |
| and BRIAN BOWEN, SR., | ) | |
| | ) | |
| Cross Defendant. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
ADIDAS' MOTION TO CONFIRM CONFIDENTIAL DESIGNATIONS
AND FOR A PROTECTIVE ORDER**

Because attacking opposing counsel serves little to no legitimate purpose in preparing a

case for trial on the merits, the undersigned will not respond to the numerous inaccurate comments

directed at or attributed to the undersigned. Rather, Plaintiff will address each argument raised by

Adidas in order to demonstrate to the Court the true intent behind Adidas' motion.

Rule 26 of the Federal Rules of Civil Procedure contains general provisions governing discovery between parties in a civil action like the present. Confidentiality Orders like the one entered in this case serve an important purpose in that they encourage the early exchange of information without the involvement of a judge ruling on the discovery request document by document. Such orders are expressly provided in Rule 26(c) of the Fed. R. Civ. P. Joseph F. Anderson, Jr., *Hidden from the Public by Order of the Court: The Case Against Government-Enforced Secrecy*, 55 S.C. L. Rev. 740 (2004). Adidas fails to understand the distinction between discovery exchanged between private parties and judicial records which are used to adjudicate an issue before the Court. Consequently, the company's interpretation of the Confidentiality Order in this case is at odds with its plain language, the Federal Rules of Civil Procedure, Local Rules and Fourth Circuit precedent.

### a. The Plain Language in the Confidentiality Order.

On September 25, 2020, the Court entered a Confidentiality Order which governs whether certain **discovery materials** should be treated as confidential information pursuant to the terms of the Order. (ECF 153). If read in good faith and in conjunction with the Federal Rules of Civil Procedure, this Court's Local Rules and Fourth Circuit precedent, the Confidentiality Order's plain words and application are easy to ascertain. If, however, a corporate defendant attempts to use the Confidentiality Order as a tool for advocacy or to serve its own interest at the expense of the plain reading of the Order then its application is difficult to ascertain. The wisdom of footnote 1 on page 2 and Attachment A of the Court's Confidentiality Order is particularly evident in the instant case considering the positions taken by Adidas in the instant motion.[1]

---

[1] See ECF 153, Confidentiality Order at p. 2, stating, "[t]he attorney who reviews the documents and certifies them to be CONFIDENTIAL must be admitted to the Bar of at least one state but need not be admitted to practice in the District of South Carolina and need not apply for *pro hac vice* admission. By signing the certification, counsel submits to the jurisdiction of this court in regard to the certification."

According to the plain language in the Confidentiality Order, documents that contain certain "information protected from disclosure by statute, sensitive personal information, trade secrets or confidential research, development or commercial information" may be designated as confidential by any party, with the caveat that the assertion of confidentiality does not apply to "[i]nformation or documents which are available in the public sector/ (ECF 152, p. 2)  However, to obtain confidential status, it is not enough that a document merely contains the above sensitive information.  Rather, for a document to be designated as confidential, the Order sets forth detailed requirements of the party seeking confidential treatment.  Pursuant to Paragraph 3 of the Confidentiality Order, a document will receive confidential treatment *only if* an attorney *certifies* in writing that he or she has a good faith belief that the documents designated do in fact contain "information protected by disclosure by statute, sensitive personal information, trade secrets or confidential research, development or commercial information." (*Id.*).  Paragraph 3 further requires the attorney certification be filed "concurrently with the disclosure of the documents" and that the certification be done using "Attachment A" to the Confidentiality Order. *Id.*  Attachment A requires the certifying attorney to affirm three things: (1) that the attorney has been involved in the process by which documents have been reviewed and produced in the litigation; (2) that the attorney has instructed all document reviewers on the requirements of the Confidentiality Order and have directed to mark documents as confidential **only if they are properly subject to protection under the terms of Paragraph 3 of the Confidentiality Order in the form that was in effect at the time of the review**; and (3) that the confidentiality markings made by reviewers constitute a certification that the markings have been done in accordance with those terms.  (*See* ECF 153, Attachment A).  Finally, the Order requires the certifying attorney to confirm that he or she is either a member of the Bar of the United States District Court for the

District of South Carolina, or if not licensed in this District Court, that the certifying attorney understands "that by completing this certification [he or she is] submitting to the jurisdiction of the United States District Court for the District of South Carolina as to any matter relating to this certification." (ECF 153, Attachment A).

The foregoing clearly sets forth the types of documents which qualify for confidential treatment and what is required in order for a document to receive confidential status under the Order. Notably, Adidas has failed to comply with *any* of the requirements set forth in Paragraph 3 of the Order. Most notably, Adidas has failed to certify who reviewed the documents produced, when they were reviewed, whether the reviewers understood the requirements for confidential designation in this case or whether anyone at Adidas has a good faith basis to believe any of the documents produced in this litigation are protected pursuant to paragraph 3 of the confidentiality order. As a result, the documents produced by the company are not "confidential" pursuant to the plain language of the Order.

Adidas further fails to understand the scope of protection afforded documents which are in fact confidential under the Confidentiality Order. According to Adidas, they would not "have needed to file this motion if Bowen Jr.'s counsel had accepted Adidas's explanation of its confidentiality designations…" (ECF 223, p. 14). This argument ignores the plain language in the Order regarding the general protections afforded confidential documents. According to the terms of the Order, "confidential" treatment is limited to disclosure for purposes "*other than preparing for and conducting the litigation* in which the documents were disclosed (including any appeal of that litigation)." (ECF 153, p. 3). In other words, even if designated as confidential, the documents are permitted to be used in the litigation or adjudication of the case, including, in particular, in summary judgment motions. *Id.* Accordingly, the scope of protection afforded by the Order

4

precludes either party from disclosing documents (which are in fact confidential) to third parties for reasons unrelated to the litigation.  This does not mean, however, that a party is prohibited from using the documents exchanged during discovery in opposition to a dispositive motion nor does this mean Adidas' dispositive motion should be adjudicated in secrecy.

In addition to asking the Court to endorse its own failures, Adidas goes one step further and asks the Court to disregard the actual terms of the Confidentiality Order, the Federal Rules and binding Fourth Circuit precedent by requesting a protective order directing "Bowen, Jr. to comply with the Confidentiality Order's procedures for filing confidential information, including with regard to all summary judgment-related filings." (ECF 223, p.14).  This argument leads Plaintiff to conclude one of two things, either: (1) Adidas does not understand the plain reading and application of the Confidentiality Order; or (2) Adidas is trying to bend and twist the language in the Order to serve its own interest.

It should also be noted that Adidas' attempt to bend and twist language in the order to serve its own interest extends to inserting terms into the Confidentiality Order that do not exist. For example, Adidas seeks an order instructing Plaintiff to comply with the procedures for filing confidential information for all summary-judgment related filings. (ECF 223, p.14). The words "summary judgment" or "dispositive" motion do not appear anywhere in the Court's Order. The Order does; however, contemplate the need for filing confidential discovery "where appropriate (e.g. in relation to **discovery** and **evidentiary motions**)." (ECF 153, Section 6 at pp. 5-6).  Because Adidas fails to understand the distinction between discovery documents and judicial records, it erroneously conflates the meaning of three distinct stages of the litigation process: (1) discovery motions; (2) evidentiary motions; and (3) dispositive motions or trial. There is a reason the Confidentiality Order does not require parties to file under seal documents used in opposition to a

dispositive motion. Such language would violate the express provision of the Local Rules requiring the filing of discovery material or depositions necessary to the resolution of a dispositive motion. *See* Local Civ. Rule 5.01 (D.S.C) (stating, "if **discovery material** or **depositions** are to be used at trial or are necessary to resolution of a pretrial motion that might result in a final order on any issue, the portions to be used **shall be filed** with the court at the outset of the trial or **at the filing** of the motion."). Furthermore, Local Rule 7.04 requires that the documents supporting Plaintiff's memorandum in opposition be filed with the court. Local Civ. Rule 7.04 (D.S.C.) (requiring supporting memorandum to be "filed and made part of the public record" and "where appropriate, motions shall be accompanied by affidavits or other supporting documents").

The legitimate protections afforded documents which are in fact confidential pursuant to the Order are consistent with the Federal Rules of Civil Procedure because discovery exchanged between private parties is not filed with the Court. Fed. R. Civ. P. 5(d). However, Rule 5(d), FRCP, goes on to state that such documents are not filed until "used in the proceeding." *Id.* Thus, under Rule 5(d), FRCP, documents exchanged during discovery, though not filed during discovery, are filed with the Court when they become part of a Court proceeding.

### b. Disclosure to third parties for purposes unrelated to the litigation.

Adidas argues Plaintiff's letter, dated March 29, 2021, supports the present motion. (See ECF 223-4). Yet again, the company fails to understand the language, scope, and application of the Confidentiality Order. Plaintiff did not send the March 29, 2021 correspondence in an effort to determine which documents to use in opposition to Adidas' summary judgment motion. Rather, Plaintiff challenged the blanket confidentiality designations of plainly non-confidential materials by Adidas (1) because of its utter non-compliance with the terms of the Confidentiality Order and (2) for a reason contemplated in the Order: dissemination to third persons and more particularly

the NCAA.  Discovery in this case has revealed evidence which is critical to the NCAA's enforcement of its bylaws against the University of Louisville and the representative of Louisville's athletic interest, Adidas.  As set forth in detail in Plaintiff's memorandum of opposition to summary judgment, there exists irrefutable evidence that Louisville was in on the deal and may have committed additional crimes in altering records to cover up their and Adidas' involvement in the bribery scheme.  It does not appear that Louisville has been forthright with the NCAA and in fact, Louisville continues to deny any implication in the Adidas scheme and even sought restitution for being a victim of it, claiming "the real financial impact [on the school] is in the millions of dollars." (See ECF 225-27, UofL Victim Impact Statement).

      **c.  Presumptive right of public access to documents used at this stage of litigation.**

Under the common law and the first amendment there is a presumptive right of public access to documents used at this stage of litigation regardless of any confidential discovery designations which may exist. The right of access to judicial documents arises both from the common law right of access to public records and from the First Amendment. *See*, *Globe Newspaper Co. v. Superior Court of Norfolk County*, 457 U.S. 596, 604 (1982).  Further, "openness is an important feature of the American legal system[,]" as "[t]he Supreme Court has observed justice cannot survive behind walls of silence."  Anderson, Jr., *Hidden from the Public by Order of the Court: The Case Against Government-Enforced Secrecy*, at 740.  Underpinning this right of access is the goal of promoting public confidence in the judicial system: "the bright light cast upon the judicial process by public observation diminishes the possibilities for injustice, incompetence, perjury, and fraud….and should provide the public with a more complete understanding of the judicial system and a better perception of its fairness.  *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 140 (2d Cir. 2004).

With specific regard to documents pertaining to a summary judgment motion, the rationale supporting public access is even more compelling:

> [C]onsistent with this rationale for public access, the presumptive right to public observation is at its apogee when asserted with respect to documents relating to matters that directly affect an adjudication. Such documents include those relating to the decision of a motion for summary judgment, such as the grant and denial of partial summary judgment by the district court here. In part because they relate to a court's adjudication process, documents used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons.

*Id.* (internal citations and quotations omitted). As the Fourth Circuit has long held, once documents are made part of a dispositive motion, such as one for summary judgment, they lose their status of being raw fruits of discovery and therefore "such discovery, which is ordinarily private, stands on a wholly different footing than does a motion filed by a party seeking action by the Court." *Rushford v. New Yorker Magazine, Inc*. 846 F.2d 249 (4th Cir. 1988) (emphasis added). Further, "[b]ecause summary judgment adjudicates substantive rights and serves as a substitute for a trial, we fail to see the difference between a trial and the situation before us now." *Id*. (*citing Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (1st Cir. 1986) (recognizing that documents submitted as a part of motions for summary judgment are subject to public access)). While a district court "has supervisory power over its own records and may in its discretion, seal documents if the public's right of access is outweighed by competing interests, the presumption in such cases favors public access." *Id.* Furthermore, "the public's right of access to judicial records and documents may be abrogated only in unusual circumstances." *Stone v. University of Maryland Medical Sys. Corp*. 855 F.2d 178 (4th Cir. 1988).

Fourth Circuit jurisprudence on this issue is in accord with other circuits. For example, the Third Circuit Court of Appeals has explained the common law right to access "means more than the ability to attend court proceedings; it also encompasses the right of the public to inspect and to

copy judicial records." *Littlejohn v. Bic. Corp.*, 851 F.2d 673 (3d Cir. 1988). Furthermore, "the right, which antedates the Constitution, is based upon both the historical experience and societal utility. The public's exercise of its common law access in civil cases promotes public confidence in the judicial system by enhancing testimonial trustworthiness and the equality of justice dispensed by the court." *Id.*

Adidas' assertion that the materials at issue should be filed under seal in response to a dispositive motion is in direct contravention to the presumption of public access to judicial records. Allowing Adidas to benefit from adjudicating this matter in secrecy is especially offensive where, as here, the involvement of Adidas in improperly and illegally influencing recruitment in intercollegiate athletics is a matter of great public interest.  "Public confidence in the legal system is fragile," and permitting "orders restricting public information about a case might be doing a disservice to our system."  Anderson, Jr., *Hidden from the Public by Order of the Court*, at 749.

Despite the foregoing, and presumably to serve its own interest, Adidas yet again represents to this Court that the Confidentiality Order requires something it does not with regard to filing documents under seal.  Assuming the documents produced by Adidas were in fact confidential under the order, Section 6 of the Order does not require documents to be filed under seal at this juncture of the litigation.  Rather, because **discovery** is generally not filed with the Court the Order allows a mechanism for the parties to do so "where appropriate (e.g. in relation to **discovery** or **evidentiary** motions). (ECF 153, p.6).

Indeed, Paragraph 6 does not say what Adidas represents it says, nor could it.  The Fourth Circuit has held:

> Before a district court may seal any court documents … it must (1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object; (2) consider the less drastic alternatives to sealing documents; and (3) provide specific reasons and factual findings supporting its decision to seal the

documents and for rejecting the alternatives…. These procedures must be followed when a district court seals judicial records or documents.

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000); *accord In re Knight Publ'g Co.*, F.2d. 231 (4th Cir. 1984).  The plain language of the Confidentiality Order in this case appears to be carefully chosen to comply with Fourth Circuit jurisprudence on this issue, which precludes routine sealing of documents marked as confidential during the discovery process.  *See also* Local Civ. Rule 5.03 (D.S.C.).

In light of the foregoing, Plaintiff need not address the 25 documents identified by Adidas. However, in an effort to further assist the Court in understanding the true purpose of this motion Plaintiff will address each document below.  Again, as noted above, only two of the referenced documents and two deposition excerpts were filed as exhibits to Plaintiff's Memorandum in Opposition to Defendants' Motions for Summary Judgment.  These documents include:  1) the Louisville Adidas Endorsement Agreement (ECF 224-38, referencing ADID 1188-98); 2) the Endorsement Agreement with Sharonda Sampson (ECF 224-13, referencing ADID 15696-708); 3) McGuire Deposition at 182:5-20 (ECF 224-7); and 4) McGuire Deposition at 125:14-126:15 (*Id.*).  As discussed below, none of these documents or excerpts contain information protected from disclosure by statute or sensitive personal information, protected trade secrets, confidential research, development, or confidential commercial information.

### d. Adidas' alleged financial information: 16 documents; 9 deposition-transcript excerpts

Adidas' assertion of protection from disclosure is rooted on the grounds that these materials contain sensitive commercial information.  As observed in Adidas' motion, "confidential commercial information" is defined to include "important proprietary information that provides the business with a financial or competitive advantage when it is kept secret and results in financial or competitive harm when it is released to the public."  *See Rech v. Wal-Mart Stores E., L.P.,* No.

8:19-CV-2514, 2020 WL 3396723 at 2.  For the reasons discussed below, however, none of the documents identified by Adidas meets this standard warranting protection from public disclosure.

### i.     Endorsement agreements and related documents

Adidas's sponsorship agreement with the University of Louisville is a public document (ADID 1188 – 1198).  The Portland Business Journal maintains a database of Adidas' apparel sponsor deals with universities, which includes versions of Adidas's prior and current sponsorship agreements with Louisville, Kansas, and other schools. *See* Claire Duffy, *Exclusive: See the Top NCAA Apparel Deals for 2017-2018*, Portland Business Journal, Aug. 31, 2017.[2]  When Louisville deal was announced, it attracted significant scrutiny from the media, which also published copies of the agreement. *See, e.g.*, Kate Howard, *A Deeper Look at UofL's Contract with Adidas*, WFPL.org. Oct. 3, 2017.[3]  Moreover, Plaintiff's Amended Complaint includes as an exhibit a copy the sponsorship agreement between Adidas and Louisville and did so without any protest from Adidas.  (ECF 84-1).  Adidas fails to acknowledge any of this prior public disclosure or discuss how the information it maintains is confidential varies from the publicly-disclosed documents or media reporting.

Bates numbers ADID 2026-2040 and bates numbers ADID 2806-2808 are endorsement deals with current NBA players. Although these endorsement deals are not confidential for the reasons cited above, they were not filed in opposition to Adidas' motion for summary judgment because they are not needed to meet the Plaintiff's burden of proof at this juncture of the litigation. Further, these two NBA player endorsement deals likely will not be needed in this litigation unless

---

[2] *See* https://www.bizjournals.com/portland/news/2017/08/31/see-the-top-ncaa-apparel-deals-for-2017-18.html

[3] *See* https://wfpl.org/a-deeper-look-at-u-of-ls-contract-with-adidas/

Adidas contests at trial the fact that these types of endorsement deals were identified by the company as key to increasing market share in North America.

However, the consulting agreement between Adidas and Sharonda Simpson/SC Supreme (ADID 15696-15708), as with similar agreements between Adidas and Dan Cutler and Jillyn Pendleton, is not confidential and is both relevant and admissible in this case for the reasons cited in Plaintiff's memorandum in opposition. For example, the Sampson agreement is virtually identical to the consulting agreement between Adidas and Defendant T.J. Gassnola that is also in the public domain and contains the same "adidas Standard Terms & Conditions" and the same "Schedule 1." (See Amended Complaint Exhs. 3, 11, ECF 84-3, 84-11). The fact that Adidas sponsored Sharonda Simpson / SC Supreme is also not confidential for the simple reason that the purpose of the agreement was to ensure Adidas's relationship with the SC Supreme was well-publicized and that the team, and more particularly Zion Williamsons, would wear Adidas-branded apparel and play in the Adidas AAU circuit. According to the consulting agreement Adidas agreed to pay Sampson $40,000 annually as a "travel allotment" and provide her $20,000 worth of products for use by the youth basketball team. In exchange for this cash and adidas product Adidas secured the right to market team and its best player. In addition, the consultant was required to upon request "satisfy adidas advertising needs, either individually or as a part of a group not to exceed eight (8) in duration per appearance (exclusive of travel time)." (Sect. IV)

As indicated above, even if this document was in fact confidential pursuant to the plain language in the Confidentiality Order, which it cannot as explained above, that would not preclude Plaintiff from using the document in opposition to Adidas's dispositive motion. Nonetheless, the purported attempt at confidentiality is important.

These consulting agreements were produced by Adidas before the Confidentiality Order was entered in this case then "re-produced" by Adidas with "updated confidentiality designations" on November 6, 2020 (*See*, Ltr. Forbes to Ram).  As indicated above, Adidas failed to produce or file with the Court the attorney certification required by the Confidentiality Order.  In support of the present motion Adidas submitted an affidavit signed by Keith Mcintire on April 22, 2021.  According to the affidavit, Mr. Mcintire is "licensed to practice law in the state of Oregon." (Mcintire, Affidavit).  The affidavit does not affirm Mr. Mcintire is admitted to practice before any United States District Court. In addition, and perhaps not coincidentally, Mr. Mcintire fails to attest "I understand that by completing this certification I am submitting to the jurisdiction of the United States District Court for the District of South Carolina as to any matter relating to this certification." ( ECF 153, Attachment A). The Mcintire affidavit fails to comply with the clear requirements of this Court's Order. Rather, the affidavit contains a conclusory statement that this document "contains adidas confidential commercial information." (*Id.* pp. 3). However, the document at issue is a consulting agreement with a youth basketball team that does not involve the sale of goods much less the sale of any Adidas products. Further, the consulting agreement doesn't contain trade secrets nor does it contain any information sensitive commercial information related to manufacturing, pricing or commercial sales of Adidas products.  Rather, as discussed in Plaintiff's memorandum in opposition to summary judgment contracts like these were used by Adidas to sign, service and activate elite prospects. Under the terms of the consulting agreement Adidas "shall have the right to disclose the terms of this agreement to any of its affiliates, partners, distributors, manufacturers or licensees." (para. 12).  Plaintiff is not aware of any legal authority which confers confidentiality upon black market commercial activity.

13

Consequently, it is difficult to ascertain the good faith basis for which Mr. Mcintire believes the consulting agreements should be protected under this Court's confidentiality order. It is, however, readily apparent why Adidas would want to keep the agreements with Louisville, Sampson, Cutler, and Pendleton secret in this case: like all of the agreements at issue in this case, they are signed by Adidas's senior director of sports marketing, Chris McGuire, and its general counsel, Paul Ehrlich. Adidas maintains in this action and has represented to the United States Department of Justice that Defendants Gatto and Rivers were "rogue" employees who acted on their own, but documentary evidence and deposition testimony of Adidas's executives dispels this argument.

Moreover, given the age of these agreements (ranging from 2013 to 2017) it can hardly be asserted that these documents contain sensitive commercial information that would threaten Adidas' competitive advantage in 2021.  Furthermore, as discussed above, the content of many of these endorsement documents has already been disclosed in the public record.  Thus, Adidas cannot now maintain that these agreements are a matter meriting protection from the public. Indeed, Plaintiff's memorandum in opposition thoroughly addresses the relevance of the Louisville Endorsement Agreement to this case, which directly establishes Adidas' motivation to steer Plaintiff to its flagship school, through whatever means necessary.

### ii.    Emails

Regarding the four emails which Adidas maintains discuss contracts, negotiations, or financial information, none of these emails contain the type of sensitive information necessitating protection.  (ADID  2483, 22821-2, 22889-90, 32968-72).[4]  The same can be said as to the four

---

[4] ADID 2483 is an email requesting payment on an invoice to a professional player; ADID 22821-2 is an auto-generated email, dated Aug. 9, 2017, showing the approval of a new contract with University of Kansas; ADID 22889-90 contains an auto generated email, dated Aug. 10, 2017, showing the approval of a new contract with the University of Louisville and a reply from Chris McGuire questioning the value mistakenly assigned in the system; and ADID

14

emails allegedly discussing and summarizing budgeting and forecasting issues. (ADID 13897-98, 20153-54, 20545-49, 21473-77).  As an initial matter, some of these emails date back as early as 2013, and as late as 2017.  Given the age of these communications, Adidas' argument that these emails contain sensitive business information is a gross mischaracterization.  A five-year-old email discussing the company's budget forecast bears little insight into where the company stands today.  Such historic documents are not the sort of material deserving of secrecy on the basis of competitive advantage.

Moreover, ADID 20545-49 and ADID 20153-54 contain an August 2016 email chain recapping year-to-date spending in various categories, including grassroots basketball.  Because the amount of resources dedicated to grassroots basketball is an integral contextual component in the underlying scheme, and given the age of these documents, their relevance far outweighs any potential risk to Adidas by public disclosure.  ADID 13897 contains an April 19, 2016 email chain regarding invoices and payments to Jillyn Pendleton, another participant in the underlying scheme.  Nothing in this email contains confidential commercial information warranting protection from the public.  Finally, ADID 21473-77 consists of a Dec. 2016 email chain regarding college endorsement deals, including that of Louisville, which is of particular relevance to the underlying scheme.  The disclosure of these communications to the extent they shed light on the circumstances surrounding this case is far outweighed by any potential competitive or financial harm to Adidas.

### iii.    Deposition excerpts

As to the nine deposition excerpts from Chris McGuire's December 8, 2020 deposition, none of these excerpts merit confidential designation because Adidas failed to designate any

---

32968-72 is an email chain ending on June 30, 2017, regarding the status of negotiations the endorsement deal with University of Kansas.  The details of the underlying agreements, including with Kansas, are already a matter of public record and in the public domain.

portion as confidential within 10 days of receipt of the transcript. (ECF 153, p. 2, stating "[p]ortions of depositions shall be deemed confidential only if designated as such when the deposition is taken or within ten business days after receipt of the transcript."). Ignoring the plain language of the Order, Adidas failed to notify Plaintiff until April 18, 2021, over four months after McGuire's deposition and within days of Plaintiff's deadline to respond to Adidas' Motion for Summary Judgment. (ECF 223-5, p.2). Even if portions of McGuire's deposition were in fact confidential for discovery purposes, for the reasons set forth above, these excerpts can most certainly be used in a public filing in opposition to Defendant's dispositive motion.

Further, only abbreviated excerpts of two of the noted excerpts were included in Plaintiff's opposition brief. (See ECF 224-7 at 182:5-20 and 125:14-126:15).[5] In particular, page 182 lines 5-20 of McGuire's deposition is referenced at page 7 of Plaintiff's opposition, observing essentially that Adidas was shut out of the midwestern market but for its relationship with the University of Louisville. (ECF 224-7 at 182:5-20). This excerpt is simply a statement of fact. There is nothing proprietary or otherwise commercially sensitive warranting the courts intervention to protect this excerpt from disclosure.

The second and final excerpt referenced in Plaintiff's opposition brief observes that by 2016, grassroots basketball was the third largest marketing budget for Adidas. (ECF 224, p. 10, referencing McGuire Depo. at 125:14-126:15). This excerpt is critical to assisting the court in understanding the context in which Adidas implemented its scheme to influence NCAA Division I basketball. As explained in detail in Plaintiff's memorandum, Adidas targeted and groomed its elite prospects at the grassroots level when these players were as young as age thirteen. Thus, the

---

[5] In total, Adidas requested the following excerpts be designated as confidential: 123:1-127:22, 136:18-137:22; 178:12-180:9; 181:12-183:12; 192:8-195:21; 199:14-202:5; 214:5-218:06; 224:16-226:03; 244:21-251:8. (See ECF 223-5 at p. 2).

fact that Adidas devoted a large portion of its marketing budget to that market is especially relevant to this case.

Moreover, it is essentially common knowledge that shoe companies spend a large portion of their budgets marketing to the youth age group. While Adidas maintains this excerpt is commercially confidential because it discusses the company's budget, the age of this information being over five years old forecloses any argument that it is commercially confidential. Rather, the relevance of this excerpt to the instant case far outweighs any potential risk to Adidas' competitive advantage—Adidas lost its competitive advantage when it engaged in illegal conduct to influence college basketball.

### e. Adidas' alleged business research and development information: 4 documents

The same holds true with regard to the four documents allegedly containing business research, development, and strategy information. (ADID 1999-2016, 31521-23, 105340-361, 357497-562). Given the age of these documents, they are simply not relevant to Adidas strategy, research or development as these concerns stand in 2021. For instance, ADID 1999-2016, entitled Global Basketball Portfolio Strategy, dates back to 2012. While this presentation admittedly concerns "strategy," the "strategy" is nine years old and undoubtedly obsolete. A nine-year-old "strategy" or overview regarding an ever-changing and evolving athletic apparel market is simply irrelevant for purposes of obtaining protection on the basis of competitive advantage. The strategy, however, is especially relevant in this case as it provides the context for Adidas' need to increase its influence in the basketball market and, thus, provides the foundation for Adidas' resultant scheme to influence college basketball recruiting.

As to the other documents, ADID 357497-562, entitled "Adidas is All In," also dates back to 2012, and thus cannot credibly be characterized as an accurate reflection of Adidas' current

17

strategy or position in 2021.   ADID 31521 contains a February 25, 2016 email regarding Adidas' pitch to UCLA, wherein there is reference to how Adidas' new setup, *i.*e., "grassroots, Compton magic . . . [will] benefit them" and how Adidas is "going to showcase them in the market and to the kid/recruit."   (ADID 31521).   The remaining document is a 2016 manual entitled "Global Policy Manual," which includes basic accounting details and processes for promotional contracts, like an endorsement deal. (ADID 105340-361). None of these materials, however, contain the type of commercially sensitive material that would merit protection from public disclosure for purposes of adjudicating this case.

### f.   Sensitive personal information: 1 document

Regarding the employee disciplinary document (ADID 472-473), this document concerns an August 31, 2009 disciplinary warning arising out of a sham invoice similar to the type used in the Adidas bribery scheme.   It does not contain personal identifiers, such as social security numbers or private health information.   Rather, it is a disciplinary document that directly relates to the underlying conduct at issue in this case. The letter served as a "final written warning" and emphasized that the employee's self-dealing was a violation of Adidas' standards, Code of Conduct and Conflicts of Interest policies.  Because this letter stands in stark contrast to Adidas' treatment of the sham invoices and other conduct by its employees in furtherance of the RICO scheme at issue, it is relevant to show the vast change in culture at Adidas between 2009 and 2014/2015 in pursuing its race with Nike and Under Armour.  Moreover, this document is not a random warning letter to an unrelated person; rather, the individuals mentioned in this 2009 warning letter worked in Adidas's basketball group and were directly involved in the Adidas bribery scheme such that that this document corroborates Adidas's knowledge and predilection to violate rules in the interest of corporate gain.  There is no blanket rule that renders a record from

18

a personnel file inherently confidential, unless Adidas's position now is that its sham invoicing scheme is a 'trade secret." Indeed, other personnel file documents, such as Defendant Gatto's compensation records, have already been made public in criminal trial. This disciplinary document is especially relevant and admissible under the Federal Rules of Evidence 404, 405 and 406 to prove motive, opportunity, intent, knowledge and to prove Adidas' change in routine practices and the company's character.

### g. Adidas-SDNY documents containing research and commercial information: 4 documents

Finally, as to the four documents allegedly containing sensitive information regarding Adidas internal investigation disclosed to the U.S. Attorney for the Southern District of New York, An *in camera* review would demonstrate that nothing in these documents contains confidential commercial information regarding the details of Adidas' internal business structure or finances. (adidas 369-411, 412-452, 284-324, 343-355). In fact, the only finances referenced include payments to players families or Adidas' support for grassroots and college basketball. There is simply no sensitive financial or commercial information warranting protection in these documents. To the extent these materials make reference to Adidas's "Fair Play Code of Conduct," that too is a publicly-available document posted on Adidas's website.[6] Rather, these documents bear direct relevance to the instant case and do not contain the type of commercially sensitive information contemplated by the Federal Rules or the Confidentiality Order.

Perhaps recognizing this, Adidas asserts these documents are protected from disclosure under FOIA exemption 7, which protects from disclosure certain "records or information compiled for law enforcement purposes, including documents whose release "could reasonably be expected

---

[6] *See https://www.adidas-group.com/media/filer_public/d9/05/d9051875-01f3-4d17-a98b-31017b9d97ed/adidas_fair_play_code_of_conduct_english.pdf*

to interfere with law enforcement proceedings." However, the criminal enforcement proceeding has concluded, thus, exemption 7 is inapplicable. Moreover, Adidas has no right under FOIA to exempt these documents from public dissemination. If a news outlet requested this information directly from the U.S. Attorney's Officer, these materials would have to be disclosed. *See, e.g.*, U.S. Attorney's Manual 3-17.100 (stating policy and criteria for disclosing information pursuant to a FOIA request); *see also* SEC Division of Enforcement, Enforcement Manual, Office of the Chief Counsel. §3.2.3.2 (28 October 2016) (specifying that White Papers, excluding Wells notices, submitted to the SEC may be discoverable by third parties in accordance with applicable law).

Moreover, the confidential designation "FOIA Confidential Treatment Requested" was placed on these documents when they were provided to the United States Department of Justice in connection with the criminal case and long before the present action was filed. Presumably, person(s) at Adidas or counsel working for Adidas would have reviewed these documents and in good faith determined these documents fit one of the enumerated exceptions to the Freedom of Information Act, but this would have been merely a request. Plaintiff has no way of verifying whether this is in fact true because Adidas has failed to identify the person or persons who stamped the designation on the documents. Nor does Plaintiff have any way of verifying whether a licensed attorney was involved in designating these documents confidential. Regardless, there is no argument from Adidas that its disclosures to federal prosecutors were made pursuant to an express confidentiality agreement.

Plaintiff is able to conclude, however, both because the substantive content is not confidential and because the purported confidential designations violate the Confidentiality Order in this case because Attachment A clearly requires an attorney (subject to the jurisdiction of this Court) to certify the confidential designations are subject to **protection under the terms of**

20

**Paragraph 3**.   Given Adidas' failure to certify the designations, Adidas' request to confirm confidentiality with regard to these documents is seriously misleading if not a clear violation of its Rule 11 obligations.  The extent to which Adidas seeks to conceal information directly relevant to this case proves just how far Adidas is willing to go to conceal its involvement in the underlying scheme in the interest of protecting its brand.

Accordingly, for the foregoing reasons, Plaintiff respectfully requests that the court deny Adidas' motion and issue an order permitting Plaintiff to file documents obtained during discovery in support of its memorandum in opposition to Adidas' Motion for Summary Judgment.


Dated: April 26, 2021                                      Respectfully submitted,

                                                                          McLEOD LAW GROUP, LLC

                                                                          s/ W. Mullins McLeod, Jr.
                                                                          Colin V. Ram (Fed ID No.: 12958)
                                                                          W. Mullins McLeod, Jr. (Fed ID No.: 7142)
                                                                          H. Cooper Wilson, III (Fed ID No.: 10107)
                                                                          P.O. Box 21624
                                                                          Charleston, SC 29413
                                                                          Tel.: (843) 277-6655
                                                                          Fax: (843) 277-6660

                                                                          *Attorneys for Plaintiff Brian Bowen II*