IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Brian Bowen, II, | C/A No.: 3:18-3118-JFA |
| Plaintiff, | |
| v. | |
| Adidas America, Inc., James Gatto, Merl Code, Christian Dawkins, Munish Sood, Thomas Gassnola, and Christopher Rivers, | **MEMORANDUM OPINION & ORDER** |
| Defendants. | |
| v. | |
| Brian Bowen, Sr. | |
| Cross-defendant. | |

This case is set against the backdrop of corruption in National Collegiate Athletic Association ("NCAA") Division I college basketball. The Court is mindful of the public discourse about the exploitation of student-athletes and here, Brian Bowen, II ("Plaintiff" or "Bowen Jr.") was a small spoke in a much larger wheel of the broader recruitment scandals and challenges currently facing college basketball. First and foremost, the Court does not doubt that Bowen Jr.'s life was upended by the revelation of payments to his father and the University of Louisville's decision to withhold him from NCAA competition. Nor does the Court ignore the prosecution of certain individuals involved in making those payments to Bowen Jr.'s father. But while Plaintiff devotes most of his arguments to these undisputed facts, they are not relevant to the Racketeer Influenced and Corrupt Organizations Act's ("RICO") statutory standing requirements. That a fraud has been committed, and that Plaintiff has been negatively impacted by that fraud, does not suffice to confer standing to seek treble damages under civil RICO. Rather, to bring "the litigation

1

equivalent of a thermonuclear device," *Bendfeldt v. Window World, Inc.*, No. 17-CV-39, 2017 WL 4274191, at *7 (W.D.N.C. Sept. 26, 2017) (internal quotation marks omitted), a plaintiff must allege a tangible harm to a property right or business interest directly caused by the defendant's alleged RICO violation. In this key respect, Plaintiff's allegations fail.

Pending before the Court is defendant Adidas America, Inc.'s ("Adidas") motion for summary judgment. (ECF No. 205). Adidas's motion was joined by defendants Christopher Rivers ("Rivers") (ECF No. 207), defendants Merl Code ("Code") and Christian Dawkins ("Dawkins") (ECF No. 210), and defendant James Gatto ("Gatto") (ECF No. 212). Plaintiff's amended complaint asserted claims against seven defendants—Adidas, Gatto, Code, Dawkins, Rivers, Munish Sood ("Sood"), and Thomas Gassnola ("Gassnola") (collectively, "Defendants").[1] (ECF No. 84). Plaintiff timely filed a response opposing summary judgment (ECF No. 224) followed by Adidas's reply in support (ECF No. 242).[2] All briefing is complete and the motions are ripe for disposition. After careful consideration of the motions, responses, replies, relevant authority, and for the reasons discussed below, the Court grants Defendants' motions for summary judgment (ECF Nos. 205, 207, 210, 212) and dismisses Plaintiff's claims in their entirety.

## I.    FACTUAL BACKGROUND

By way of background, the NCAA's avowed purpose is to preserve intercollegiate athletics as the domain of the amateur. As a private organization that oversees collegiate sports in America, it promulgates rules that its member universities must follow, among which is the requirement that all student-athletes remain amateurs to be eligible to compete for their schools. This means that

---

[1] Thus far, Gassnola has not appeared by counsel in this case, filed any responsive pleadings, moved to dismiss the claims, or otherwise responded to this lawsuit.

[2] Defendants Rivers and Gatto joined in Adidas's reply brief and incorporated the arguments therein. (ECF Nos. 244 & 245).

the student-athletes—and their families—may not accept payments of any form for the student-athletes' playing or agreeing to play their sport. This rule extends from the time when the student-athletes are still in high school and are being recruited to play at the collegiate level.

Here, Plaintiff alleges Defendants derailed his promising career when they engaged in racketeering activity by conspiring to bribe, and bribing, his father to persuade Plaintiff to play basketball for the University of Louisville ("UofL")—an Adidas-sponsored university. (ECF No. 84). The gravamen of Plaintiff's complaint is that Defendants committed predicate acts of wire fraud against student-athletes and universities by offering payments to the families of high-school basketball players for those players to attend such universities on scholarships, which allegedly rendered false the certifications of NCAA eligibility that those players made to the universities. (*Id.*). Plaintiff alleges Adidas spearheaded this purported RICO enterprise. Adidas disputes Plaintiff's account, asserting it was the victim of a scheme perpetrated by Bowen Sr., two rogue mid-level Adidas employees, and others, including Sood, to misappropriate Adidas's funds.

Plaintiff is a 22-year-old professional basketball player. Defendant Adidas, a sports apparel company, is a corporation registered in Oregon with its principal place of business in Oregon. Defendants Gatto and Rivers are former employees of the Adidas department responsible for grassroots basketball marketing. Defendant Code, an independent contractor to Adidas, and defendants Dawkins and Gassnola are affiliated with several amateur and high school basketball programs. Defendant Sood is a former financial advisor who aspired to build a clientele of professional athletes. Cross-Defendant Brian Bowen Sr. ("Bowen Sr.") is a resident of Michigan and the father of Plaintiff.

While Bowen Jr. was in high school, and, as early as the end of his sophomore year in 2015, he was considered among the top high-school basketball players in the United States. By the

3

time he began his senior year in 2016, publications that rank amateur-basketball talent placed him between the 14th and 21st best recruit in his high school class. Plaintiff's basketball courtship was a central thread in the government's case against Gatto, Code, and Dawkins, who were convicted of engaging in a scheme to defraud three universities by paying tens of thousands of dollars to the families of high school basketball players to induce them to attend the universities, which were sponsored by Adidas, and covering up the payments so that the recruits could certify to the universities that they had complied with rules of the NCAA barring student-athletes and recruits from being paid.

Gatto worked with Code and Gassnola, both Adidas consultants. He also worked informally with Dawkins and Sood. Together, these men paid the families of top-tier high school basketball recruits, including Bowen Jr., to entice those players to enroll at one of the universities. This activity violated NCAA rules, and if the NCAA were to discover the payments, the players would not be permitted to play in games and the universities would be subject to penalties. As a result, payments were concealed by falsifying Adidas invoices to make it seem as though the payments were going to youth basketball teams affiliated with the Amateur Athletic Union ("AAU"), a non-profit, multi-sport organization that, among other things, facilitates youth basketball tournaments. In reality, the money was being funneled through AAU teams with which some Defendants were affiliated to the families of top basketball prospects. To mask these payments, fake expense reports were created.

During his time in high school, Bowen Jr.'s parents received payments from multiple parties. At the time, Dawkins was an aspiring sports agent at ASM Sports, a then-premier sports agency. The Bowens received money and other benefits from Dawkins as inducements for him to serve as Bowen Jr.'s representative. Throughout 2016 and into 2017, Dawkins made repeated

payments to Bowen Sr. In addition to payments and other benefits provided by Dawkins and ASM in return for representing Bowen Jr., the Bowens also received payments from the head basketball coach at La Lumiere high school, where Plaintiff transferred in 2015, in return for Bowen Jr. playing on the school's basketball team.

On May 31, 2017, Bowen Sr. accepted a cash offer for $100,000, to be paid in four installments, for Bowen Jr. to attend UofL, and Bowen Jr. committed to the university ("May 2017 Agreement"). These payments were to be funneled through an AAU program with which Code was affiliated. Within ten days, Bowen Jr. signed forms accepting athletic-based aid and indicating that he was compliant with the NCAA eligibility rules. Bowen's father was paid the first installment of $25,000, but Gatto, Code, and Dawkins were arrested before any other payments were made. In late September 2017, the U.S. Attorney's Office for the Southern District of New York announced charges of fraud and corruption in college basketball against Code, Dawkins, Gatto, and others.

Since the SDNY's allegations implicated parties involved in Plaintiff's recruitment, UofL withheld Bowen Jr. from all men's basketball team practices and games. In January 2018, just before his second semester of college, Bowen Jr. transferred to the University of South Carolina ("USC"), where he again received a scholarship covering his full cost of attendance. He practiced with USC's basketball team but was not allowed to play in games due to the NCAA's transfer rule, which required him to complete one full academic year of residence at USC before being eligible to compete. In addition, Bowen Jr.'s eligibility to play was still uncertain. Rather than returning to USC, whose March 2018 request to reinstate Bowen Jr.'s eligibility had not yet been finally adjudicated by the NCAA, Bowen Jr. signed a contract with Australia's National Basketball League and moved to Australia to join the Sydney Kings, an Australian professional basketball

team. After one season in Australia, Bowen Jr. entered the 2019 NBA draft, but was not selected. With this background, the Court considers the pending motions.

## II.     PROCEDURAL BACKGROUND

Previously, this Court, on two sets of motions to dismiss, pared Bowen Jr.'s allegations but permitted him to engage in discovery on his alleged standing to bring RICO claims. As to RICO standing, in ruling on the motions to dismiss Bowen Jr.'s original complaint, the Court "reserved its decision on whether Plaintiff's allegations satisfied the RICO standing requirements 'due to the leave granted to Plaintiff to amend his pleadings.'" (ECF No. 82). When Defendants raised the issue again in moving to dismiss the amended complaint, the Court recognized that "Defendants' standing arguments may have merit," but declined to dismiss Bowen Jr.'s claims on that ground at "this early stage in the proceedings." (*Id.*). The Court reasoned that, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" and that Defendants' standing arguments "remain[] open to review at all stages of the litigation." (*Id.*). At a February 3, 2021 discovery conference, the Court granted Adidas's request for leave to file summary judgment in two phases, with the first motion focused on RICO standing.

## III.     LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248–49.

6

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets that burden and a properly supported motion is before the court, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 323. All inferences must be viewed in a light most favorable to the non-moving party, but the non-moving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## IV.    DISCUSSION

Bowen Jr. alleges four counts of violations of RICO: two counts of substantive RICO violations (Am. Compl. ¶¶ 274–82, Aug. 23, 2019, ECF No. 84; *id.* ¶¶ 291–99 (alleging violations of 18 U.S.C. § 1962(a) and (c)), and two counts of conspiracy to commit RICO violations (*id.* ¶¶ 283–90; *id.* ¶¶ 300–06 (alleging violations of 18 U.S.C. § 1962(d)). The civil RICO statute provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue . . . in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). A private RICO plaintiff must show damage to "business or property" proximately caused by the defendant's RICO violation to have standing to bring suit. *Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.,* 262 F.3d 260, 264 (4th Cir.2001). "A defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured." *Sedima, S.P.R.L. v. Imrex,* 473 U.S. 479, 496–97 (1985) (internal citations omitted). Allegations of personal injuries and the pecuniary losses incurred therefrom do not qualify as injury to "business or property." *Bast v. Cohen, Dunn & Sinclair, PC,* 59 F.3d 492, 495 (4th Cir.1995).

### a.  RICO's Injury Requirement

Bowen Jr. claims that, as a result of the alleged acts of racketeering, he suffered "three . . . categories" of damages: "(1) damage to his protected property interest and the services guaranteed therein via the June 1, 2017 contract with the University of Louisville; (2) damage to his NCAA eligibility; and (3) damage to his earnings as a professional basketball player." (ECF No. 205-33). The Court will review each of Bowen Jr.'s claimed harms *ad seriatim* to determine whether they individually satisfy RICO's injury requirement.

#### i.  Louisville Scholarship

Turning, first, to Bowen Jr.'s allegations that he lost the benefits of his UofL scholarship as a direct and proximate result of Defendants' RICO violations—here, the record belies Plaintiff's contention. It is indisputable that UofL did not withdraw Bowen Jr.'s scholarship and Plaintiff acknowledged that he was permitted to remain on scholarship at UofL despite being withheld from the basketball team. Adidas posits "Bowen Jr. only 'lost' his Louisville scholarship when he voluntarily relinquished it, transferred to USC, and effectively exchanged it for another full scholarship from that institution." (ECF No. 205).

Plaintiff's opposition brief fails to offer a rebuttal to these specific factual arguments raised by Adidas. (ECF No. 224). Instead, Plaintiff's argument pivots, asserting that he nevertheless lost a contractual right under his scholarship to "prepare for the NBA" at UofL. (*Id.*). Plaintiff asserts "[t]he bargained for exchange that occurred between [Bowen Jr.] and UofL had nothing to do with tuition, room, board or the books offered by the university" because the "transaction was not about an academic scholarship, but about [Bowen Jr.] providing basketball labor to the school in exchange for his receiving athletic development, preparation, and entry into the NBA." (*Id.*). As a practical matter, Plaintiff cannot claim damages for what he voluntarily relinquished. Moreover,

Bowen Jr.'s scholarship promised him cost of attendance—"Tuition & Fees," "Books," "Housing," "Meals," and "Misc. Expenses." (ECF No. 205-50). The June 1, 2017 contract with UofL did not guarantee a right to "professional development, nutritional support, strength training, and playing time," as Plaintiff suggests. (ECF Nos. 224, 205-50).

Plaintiff's argument is impassioned, but unsupported by sound legal principles. Although Plaintiff sets forth a compelling story of a young athlete's promising career, reciting evidence to show that he and UofL's coaching staff expected Bowen Jr. would be a member of the men's basketball team, those expectations do not amount to a contractual right to play basketball at UofL. The proposition that a college athlete's scholarship creates a protectable property interest in participation in college athletics was rejected in *Colorado Seminary (University of Denver) v. NCAA,* 417 F.Supp. 885 (D.Colo.1976),[3] *aff'd,* 570 F.2d 320 (10th Cir.1978). In *Colorado Seminary,* the court held that the "interest" in playing intercollegiate athletics which the college athletes contended was created by their scholarships was "too speculative to establish a constitutionally protected right," and commented that "the athlete on scholarship has no more 'right' to play than the athlete who 'walks on.'" *Id.* at 895 n. 5. A RICO plaintiff's claimed "injury to mere expectancy interests or to an intangible property interest" cannot confer RICO standing. *Taylor v. Bettis*, 976 F. Supp. 2d 721, 737 (E.D.N.C. 2013) (dismissing for lack of RICO standing), *aff'd*, 693 F. App'x 190 (4th Cir. 2017) (affirming for the reasons stated by the district court). Because the plain language of § 1964(c) limits actionable harms to injuries to business or property, and Plaintiff's claims with respect to his UofL scholarship are neither, Plaintiff lacks standing as to this claim.

---

[3] While the decisions of other district courts are not binding, the Court finds their reasoning persuasive given the dearth of appellate authority directly addressing the issue in this Circuit.

ii. NCAA Eligibility

Bowen Jr. next claims "damage to his NCAA eligibility," under which he also groups certain alleged costs of an attorney helping Bowen Jr. to attempt to return to college basketball. (ECF No. 205-33). Neither is a cognizable injury here. Notwithstanding the personal value Plaintiff undoubtedly ascribed to his eligibility to play NCAA basketball, it is not a cognizable interest upon which he can assert RICO claims. Unfortunately, Plaintiff's response, in large part, lacks relevant law directed to the arguments raised and authority advanced by Defendants. As such, it is of limited value on the precise questions before the Court.

Courts have referred to decisions in the due-process context for discerning whether a claimed harm constitutes injury to "business or property" under RICO. *E.g.*, *Strates Shows, Inc. v. Amusements of Am., Inc.*, 379 F. Supp. 2d 817, 828 (E.D.N.C. 2005) (citing *Ricker v. Edmisten*, No. 931756, 1994 WL 32807, at *1–2 (4th Cir. 1994)). The Fourth Circuit has previously held that there is no right to "participation in interscholastic athletics." *Denis J. O'Connell High Sch. v. Va. High Sch. League*, 581 F.2d 81, 84 (4th Cir. 1978). Caselaw flatly rejects the notion that student-athletes' expectations of future athletic careers are constitutionally protected. *See, e.g., Parish v. NCAA,* 506 F.2d 1028, 1034 n. 17 (5th Cir.1975), *rev'd on other grounds, McCormack v. NCAA,* 845 F.2d 1338 (5th Cir.1988); *see also Colorado Seminary,* 417 F.Supp. 885 (D.Colo.1976), *aff'd,* 570 F.2d 320 (10th Cir.1978).

The prevailing judicial approach does not recognize a constitutionally protected property interest in intercollegiate athletic competition and rejects arguments that such participation is necessary to develop the skills necessary for a future professional sports career. Likewise, persuasive authority has held "hoped for careers in basketball" are too speculative to comprise a constitutionally protected property right. *Parish,* 506 F.2d at 1034 n. 17. "While participation in

intercollegiate basketball has been recognized as a training ground for a professional basketball career, the possibility of obtaining that professional basketball career is too speculative to even constitute a present economic interest." *Knapp v. Northwestern Univ.,* No. 95 C 6454, 1996 WL 495559, at *2 (N.D.Ill. Aug.28, 1996), *rev'd on other grounds,* 101 F.3d 473 (7th Cir.1996), *cert. denied,* 520 U.S. 1274 (1997).

The Court's task is not to determine whether Bowen Jr.'s "NCAA eligibility and basketball services are essentially worthless," as Plaintiff's brief suggests. (ECF No. 224). Plaintiff cites no authority holding that a student-athlete has a business or property right in NCAA eligibility and the undersigned's extensive research revealed no authority supporting that proposition. As such, the Court declines to expand RICO's reach and finds the loss of Plaintiff's NCAA eligibility insufficient to confer RICO standing and thus, not an actionable harm.

### iii.  Legal Fees and Costs

Plaintiff cites legal fees and costs of $28,342.48 incurred attempting to regain his NCAA eligibility under the same genre of damages as his loss thereof. (ECF No. 205-33). Bowen Jr.'s claimed legal fees cannot constitute an injury sufficient to confer standing because they fail to qualify as an injury to "business or property" and as such, are not compensable under the RICO statute.

First, Bowen Jr.'s claimed legal fees are insufficient to confer RICO standing because he did not pay the fees and costs in question. In his deposition, Plaintiff admitted that his father, Bowen Sr., paid Setchen for the "legal fees and costs" for advice during Bowen Jr.'s efforts to regain his NCAA eligibility. In rebuttal, Plaintiff offers portions of deposition testimony stating he is reimbursing his parents for the legal costs he incurred in connection with his efforts to restore his NCAA eligibility, characterizing these as expenses that were advanced to his lawyer on his

behalf by his parents when he was in college and had no money. Plaintiff also cites Setchen's deposition, which occurred after Adidas filed the motion for summary judgment on RICO standing. Bowen Jr. does not dispute that his father, not he, retained Setchen and paid his fees; however, he contends he can still claim those fees as *his* injury for two reasons: he purportedly chose to pay Setchen $750 two years *after* this litigation began and he claims he will now repay his father. (ECF No. 224). The Court finds neither is sufficient because Bowen Jr. has provided no evidence that he is legally obligated to do either.

Second, even if Plaintiff had paid the fees, they are not recoverable for the additional reason that they derive from an attempt to remedy non-cognizable harm—a claimed inability to compete in NCAA basketball. Such derivative injuries, even if nominally to business or property, do not suffice for RICO standing. *E.g.*, *Bast*, 59 F.3d at 495 (holding that a RICO plaintiff cannot recover "pecuniary losses" as a result of "personal injury"); *Doe v. Roe*, 958 F.2d 763, 770 (7th Cir. 1992) (although "[m]ost personal injuries . . . will entail some pecuniary consequences," those resulting pecuniary harms "are not compensable under RICO").

The RICO statute does not contemplate an injury in the form of legal fees and costs. Plaintiff cites to *Stochastic Decisions, Inc. v. DiDomenico*, among other out-of-circuit decisions, for the uncontroverted proposition that legal fees can be recovered under RICO so long as they were proximately caused by a RICO violation. 995 F.2d 1158, 1167 (2d Cir. 1993), *cert denied*, 510 U.S. 945, (1993). However, Plaintiff's citation to *Stochastic* to supplement his argument is unavailing because that case holds that legal fees may constitute as RICO damages—not as a RICO injury, as is asserted here. Plaintiff conflates injury and damages under the RICO statute. Persuasive authority in this Circuit provides that legal fees and costs that a plaintiff chose to incur are an indirect injury from a defendant's conduct. *See Strates Shows v. Amusement of Am.*, 379 F.

12

Supp. 2d. 817, 833 (E.D.N.C. 2005). *Strates* held that a plaintiff who chooses to incur legal fees to mitigate a defendant's conduct, where it is not automatically incurred, cannot recover under the RICO statute. *Id.* at 833. Here, similar to *Strates*, Plaintiff chose to incur the aforesaid legal fees and related costs. They were not automatically incurred. Plaintiff voluntarily chose to mitigate the effects of Defendants' alleged conduct and the legal fees and related costs are, at most, an indirect injury. As such, Plaintiff cannot state a RICO claim on the basis of the claimed legal fees.

iv. Professional Earnings

Bowen Jr.'s claim of lost professional earnings is likewise deficient because it is not an injury to his "business or property," but an unrecoverable expectancy interest. Bowen Jr. asserts that the May 2017 Agreement eventually caused him to not be selected in the first round of the NBA draft, thereby hurting his future "career earnings." (ECF No. 205-33). Defendants argue Bowen Jr. cannot claim a business or property interest in the supposed lost professional earnings he hoped to obtain as a first-round NBA draft pick. The Court agrees Plaintiff had no right or guarantee to be drafted, only an expectation. Student-athletes do not have a property right in their anticipated professional careers. Furthermore, because Bowen Jr. asserts that he lost future earnings due to a personal harm—a purported reduced ability to play basketball from not playing in the NCAA—those claimed lost earnings would still not be cognizable under RICO. Bowen Jr. had a mere expectation of (and not an entitlement to) a lucrative professional career, and that expectation—no matter its likelihood—is not a cognizable business or property interest under RICO.[4] *Strates Shows*, 379 F. Supp. 2d at 827–28 (plaintiff lacked interest in expectation of being

---

[4] This rule is undoubtedly premised on the fact that future expectations are just that—expectations. It bears mention that, while many promising athletes fulfill predictions of high draft status followed by rewarding professional careers, such is not always the case. To take a recent example, a highly-touted offensive lineman for a major university in South Carolina set school records for career starts and snaps played; was a three-time first-team All-Atlantic Coast Conference (ACC) selection; and twice won the Jacobs Blocking Trophy as the best blocker in the ACC, yet went undrafted following his senior year.

awarded a state contract, even though it had been awarded the contract "as a matter of course in past years" and "could expect to a high degree of certainty that it would be awarded the contract in the future").

Plaintiff's opposition brief indicates that his claimed reason for why he was not drafted was that he was unable to develop his basketball skills at UofL. (*E.g.*, ECF No. 224 at 28 (claiming loss of "basketball development services at [UofL]"), *id.* at 32 (claiming inability to "develop" at a "top tier college program"), *id.* at 37 (claiming lack of opportunity to "improve his basketball skills"), *id.* at 38 (claiming importance to Bowen Jr. of "develop[ing his] basketball skills under elite coaching, precise strength and conditioning and proper nutrition support" for his "preparation for the NBA")). But reduced basketball skills is undeniably a personal injury, and the Fourth Circuit has held that "[a]n allegation of personal injury and pecuniary losses occurring therefrom are not sufficient to meet the statutory requirement of injury to 'business or property'" under RICO. *Bast*, 59 F.3d at 495. That alone precludes Bowen Jr.'s reliance on his claimed lost earnings as a basis for his RICO claims.

### b.  RICO's Causation Requirement

In light of the above disposition, there is no need to address the remaining arguments of the parties on causation. However, to the extent considered, the undersigned finds Plaintiff's causal theory lacks merit and observes that his attenuated causal chain "oversimplifies" how an amateur basketball player is drafted in the NBA. *Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, 884 F.3d 489, 495 (4th Cir. 2018) (refusing to "assume" that "potential intervening causes" in an indirect causal chain would not have reduced plaintiff's insurance claim regardless of the alleged fraud). Defendants advance alternative arguments, including, *inter alia*, that Bowen Jr. cannot show that the May 2017 Agreement was a but-for cause of losing his NCAA eligibility, because

his family's earlier, independent acceptance of improper benefits from non-Adidas entities had already caused Bowen Jr. to lose his NCAA eligibility. It is unnecessary for the Court to address the merits of these arguments, as Plaintiff's failure to show an injury to his business or property interests is fatal to his RICO claims.

### c.  Injunctive Relief

Plaintiff's prodigious request for injunctive relief asks this Court for an order enjoining Adidas from sponsoring any NCAA Division I men's basketball programs. (ECF No. 84). In broad strokes, Plaintiff asserts that "absent injunctive relief, RICO would be rendered hollow as it applies to illegal bribery schemes by corporate sponsors to influence intercollegiate recruiting for profit. Preventive injunctive relief is the sole vehicle to provide meaningful impact on the livelihood and development of student-athletes, like [Bowen Jr.], who have been exploited by corrupt enterprises motivated by corporate and institutional gain." (ECF No. 224 at 54). This argument lacks merit, for the reasons described below.

Plaintiff's brief notes that "[w]hile the Fourth Circuit has not weighed in on the availability of injunctive relief to private parties under RICO, oral argument on this issue was recently held" and "the Fourth Circuit is expected to issue a ruling within the coming months." (ECF No. 224 (citing *Hengle v. Treppa*, 433 F. Supp. 3d 825 (E.D. Va. 2020) (Appeal Nos. 20-1062(L), 20-1063, 20-1358, 20-1359)). However, whether the Fourth Circuit determines RICO authorizes private plaintiffs to seek injunctive relief will have no impact on the Court's disposition on the instant matter. Plaintiff's request for injunctive relief was predicated on the alleged RICO violations, and because none of Bowen Jr.'s claimed harms satisfy RICO standing, then he cannot recover any relief, even injunctive, under the statute. *E.g.*, *Dickerson v. TLC The Laser Eye Ctr. Inst., Inc.*, 493 F. App'x 390, 396 (4th Cir. 2012) (explaining that because plaintiff "has not sufficiently pled a

RICO claim" he could not "be entitled to injunctive relief"); *Nunes v. Fusion GPS*, No. 1:19-cv-1148, 2021 WL 1225983, at *13 (E.D. Va. Mar. 31, 2021) (expressing doubt "that equitable relief is available to a private RICO plaintiff," but dismissing claim for equitable relief because plaintiff failed to state a RICO claim). As determined above, Plaintiff lacks standing for his RICO claims, and resultantly, he is foreclosed from injunctive relief on that basis.

The Court extended Plaintiff latitude in permitting the opportunity to establish factual support for his allegations in discovery before entertaining Adidas's arguments on RICO standing, but discovery has confirmed Plaintiff cannot make the required showing. Zeal alone cannot cure the deficiencies in Plaintiff's RICO claims. The availability of civil relief under RICO is narrowly circumscribed, and the record makes clear that Bowen Jr.'s claimed harms were not to cognizable business or property interests. Nor were the claimed harms actually or proximately caused by the alleged RICO violations. Each of these twin flaws is, on its own, a sufficient basis to dismiss Bowen Jr.'s RICO claims. Plaintiff's arguments to the contrary being unavailing, and there being no genuine dispute as to any material fact in this case, the Court concludes Plaintiff lacks statutory standing for his claims under RICO and summary judgment in favor of Defendants is appropriate.[5]

---

[5] Because Plaintiff has not established a viable claim under the substantive provisions of RICO, his RICO conspiracy claims likewise fail. *See Walters v. McMahen*, 684 F.3d 435, 445 (4th Cir. 2012) (holding that, as a matter of law, plaintiffs' RICO conspiracy claim failed where the underlying substantive claim was deficient); *cf. Robinson v. Fountainhead Title Grp. Corp.*, 252 F.R.D. 275, 283 n.9 (D. Md. 2008) (citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) ("Any claim under section 1962(d) based on a conspiracy to violate any of the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.")).

## V.     CONCLUSION

For the aforementioned reasons, the following motions for summary judgment are hereby granted: ECF Nos. 205, 207, 210, and 212. Defendants are entitled to summary judgment as a matter of law. Because the material facts demonstrating the lack of cognizable RICO injury may not be genuinely in dispute, the Court exercises its discretion pursuant to Rule 56(f) of the Federal Rules of Civil Procedure to grant summary judgment on behalf of the nonmoving defendants—Gassnola and Sood.[6] Plaintiff's claims are dismissed, with prejudice, in their entirety.

IT IS SO ORDERED.

May 26, 2021                                        Joseph F. Anderson, Jr.
Columbia, South Carolina                           United States District Judge

---

[6] The Fourth Circuit has observed "district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence." *Hughes v. Bedsole*, 48 F.3d 1376, 1379 (4th Cir.1995) (quoting *Celotex*, 477 U.S. at 326). Other courts have "distinguished between *sua sponte* grants of summary judgment in cases involving purely legal questions based on complete evidentiary records, and cases involving factual disputes where the non-moving party has not been afforded an adequate opportunity to develop the record." *Artistic Entertainment, Inc. v. City of Warner Robins*, 331 F.3d 1196, 1201 (11th Cir.2003); *see also Jones v. Fulton County, Ga.*, 2011 WL 5244788, *1 (11th Cir. Nov. 2, 2011) ("formal notice may not be necessary where a legal issue has been fully developed and the evidentiary record is complete"). This case falls squarely within the former category.